JOHN M. NEUKOM (CA Bar No. 275887)
johnneukom@quinnemanuel.com
ANDREW M. HOLMES (CA Bar No. 260475)
drewholmes@quinnemanuel.com
ALICIA VEGLIA (CA Bar No. 291070)
aliciaveglia@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Plaintiff FORTINET, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FORTINET, INC., a corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>SOPHOS, INC., a corporation, and MICHAEL VALENTINE, an individual,<br><br>    Defendants. | Case No. 5:13-cv-05831<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND INTENTIONAL INTERFERENCE WITH CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

1
COMPLAINT

Plaintiff Fortinet, Inc. ("Fortinet") hereby alleges for its Complaint against Defendants Sophos, Inc. ("Sophos") and Michael Valentine ("Valentine") on personal knowledge as to its own actions and on information and belief as to the actions of Sophos, Valentine, and third parties as follows:

## INTRODUCTION

1. Fortinet brings this action against Sophos and Valentine to seek remedies for the repeated and ongoing violations—by Sophos and Valentine—of Fortinet's legal rights. This includes Sophos' infringement of United States Patent Nos. 7,698,744, 8,069,487, and 8,195,938 (collectively, the "Asserted Patents"). This also includes the wrongful conduct of Sophos and Valentine with respect to Fortinet's contractual and common-law entitlements.

## PARTIES

2. Fortinet is a Delaware corporation with a principal place of business at 1090 Kifer Road, Sunnyvale, California 94086. Fortinet is a leading provider of network security appliances and services, and a market leader in unified threat management systems.

3. Defendant Sophos is a Massachusetts corporation having its principal place of business in the United States at 3 Van de Graaff Drive, Second Floor, Burlington, Massachusetts 01803.

4. Defendant Valentine is an individual who was previously employed by Fortinet, and is now employed by Sophos as the "Senior Vice President, Worldwide Sales" of Sophos, as alleged in greater detail below. Valentine lives and works in this District. On information and belief, Valentine maintains his primary residence in Los Gatos, California.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising in part under the patent laws of the United States, codified at 35 U.S.C. §§ 1, *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has supplemental jurisdiction over Fortinet's state law claims pursuant to 28 U.S.C. § 1367. The federal and state claims alleged herein are so related that they form part

of the same case or controversy. Judicial economy, convenience, and fairness to the parties will result if this Court asserts jurisdiction over the state claims.

7. This Court has personal jurisdiction over Sophos. On information and belief, Sophos has transacted business in this District, contracted to supply goods or services in this District directly or through its agents, has offered for sale, sold and/or advertised its products and services in the this District, and has otherwise purposely availed itself of the privileges and benefits of the laws of the State of California. In addition, this Court has jurisdiction over Sophos because Sophos has committed acts of patent infringement during the course of its business in this District. In addition, as alleged below, Sophos currently employees 1+ individuals in this District and is therefore physically present here, has poached 1+ individuals in this District from the employment of Fortinet, and has induced 1+ individuals in this District to breach contractual agreement(s) with Fortinet. Furthermore, Sophos maintains systematic, ongoing business operations inside this District, including a physical presence inside this District. By way of example, Sophos currently lists numerous job openings inside this District on its own web site, including an opening for a "Channel Manager – West Coast" with a "Location" defined as "Santa Clara, California." Sophos is currently advertising a job opening for an "Enterprise Account Executive – Northern California" with a "Location" defined as "San Francisco, California." Sophos is currently advertising a job opening for an "Office Administrator" with a "Location" defined as "Santa Clara, California," and with a job description that indicates that Sophos maintains at least one permanent office inside this District, given that the "Main Duties" include "Greeting and directing visitors" and "Issuing visitor badges." According to the web site for the California Secretary of State, Sophos has a California business entity number, and maintains an agent for service of process inside California.

8. This Court has personal jurisdiction over Valentine because he maintains his primary residence in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391.

## INTRADISTRICT ASSIGNMENT

10. This is an intellectual property action exempt from intradistrict assignment under Civil Local Rule 3-2(c), which makes this action subject to assignment on a district-wide basis.

## FACTUAL BACKGROUND

11. Founded in 2000, Fortinet is a leader and worldwide provider of innovative network security appliances and unified threat management solutions. Fortinet's products and subscription services provide broad, integrated and high-performance protection against security threats while simplifying IT security infrastructures. Fortinet is a pioneer in the creation of Unified Threat Management ("UTM") security systems, which enable secure business communications. Fortinet's "Fortigate" systems detect and eliminate the most damaging, content-based threats from email and web traffic without degrading network performance. By integrating the industry's broadest suite of security protections, Fortigate systems allow Fortinet customers to obtain the most comprehensive UTM solutions. Fortinet is now the world's leading provider of UTM security systems, with over 20,000 customers worldwide. Fortinet is headquartered in Sunnyvale, California, with customer support, development, and sales facilities located throughout the world.

12. Fortinet has expended substantial resources researching and developing its patented technologies, technical strategies, and business plans related to its security products and services through the expenditure of considerable employee work hours and company resources. This research and development has led to numerous innovative products in the network security market. The United States Patent and Trademark Office has recognized Fortinet's achievements by awarding numerous patents to Fortinet and its inventors as a result of these innovations.

13. Fortinet has likewise expended substantial resources in recruiting, hiring, training and retaining its personnel.

14. On information and belief, Sophos competes with Fortinet in the network security industry.

**Michael Valentine's Tenure At Fortinet**

15. For a period of almost six years—from May 2007 until February 2013—Valentine served as an officer and senior executive at Fortinet. His title at Fortinet was "Vice President Americas – Sales and Support." (Fortinet does not have any "Senior" or "Executive" Vice Presidents.) Valentine occupied the highest possible executive management position for a sales and service function at Fortinet.

16. Valentine was one of the highest ranking officers and executives at Fortinet. Fortinet maintained a public profile for Valentine on its public web site, identifying Valentine as a key member of Fortinet's "Executive Management."

17. Valentine reported directly to Fortinet's Founder, Chairman of the Board and CEO. Valentine met with the board of directors of Fortinet in his capacity as a senior executive of the company. Valentine was responsible for supervising a large team of sales and support employees of Fortinet, both domestically and internationally.

18. While Valentine served as an officer and senior executive of Fortinet, he was provided substantial compensation by Fortinet.

19. Valentine's duties at Fortinet from 2007 to 2013 have recently been described by Valentine and/or Sophos on the public web site for Sophos as follows:

> . . . With more than twenty years of senior sales and channel experience at global IT security companies, Michael most recently served as vice president, Americas sales and support at Fortinet. In this role, *he oversaw all facets of the company's network security offerings—VPN, UTM, web filter, security software—and business development across North America, Latin America and Australia/New Zealand*, helping to increase corporate revenues by nearly 40 percent.
>
> *He guided Fortinet's multi-national sales team through the company's successful IPO and played a major role in the integration of two acquired companies' sales teams*. During his tenure, *he also expanded the company's network of North America technology distributors, signed more than 700 new Americas partners and grew the internal channel team by more than 80 percent, ultimately helping the company grow from $200 million to over $500 million in worldwide annual revenue*.
>
> He is a recognized and respected sales executive who in 2008 and 2009 was named a top "Channel Chief" by CRN magazine. . . .

(*See* http://www.sophos.com/en-us/company/management/michael-valentine.aspx, last visited December 16, 2013, emphasis added.)

20. When Valentine began his duties at Fortinet, in exchange for good and valuable consideration, he chose to execute a written agreement ("Agreement") with Fortinet. Valentine chose to sign the Agreement on May 21, 2007. A copy of the Agreement, signed by Valentine, is attached hereto as ***Exhibit A***.

21. In executing the Agreement on May 21, 2007, Valentine agreed to a clause with the title "Solicitation of Employees." Valentine agreed as follows:

> I agree that ***for a period of twelve (12) months immediately following the termination of my relationship with the Company*** for any reason, whether voluntary or involuntary, with or without cause, ***I shall not either directly or indirectly solicit any of the Company's employees to leave their employment***, or attempt to solicit employees of the Company, either for myself or for any other person or entity.

(*See* Exhibit A at ¶ 8, emphasis added.)

22. In executing the Agreement on May 21, 2007, Valentine also agreed to a clause with the title "Termination Certification." Valentine agreed as follows:

> ***Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification"*** attached hereto as Exhibit C. I also agree to keep the Company advised of my home and business address for a period of three (3) years after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

(*See* Exhibit A at ¶ 6, emphasis added.)

23. Valentine chose to leave Fortinet in February 2013.

24. When Valentine chose to leave Fortinet in February 2013, he abided by the requirement in the Agreement that he execute a Termination Certification ("Certification"). Valentine signed his Certification on February 25, 2013. A copy of the Certification, signed by Valentine, is attached hereto as ***Exhibit B***.

25. In signing the Certification, Valentine confirmed that he was bound by the Agreement. He indicated that he was leaving Fortinet to become the "SVP WW Sales" at "Sophos." He also reiterated his promise not to solicit any Fortinet employees to leave Fortinet

for a period of 12 months following his own termination at Fortinet. From Valentine's Certification:

> I also agree that for twelve (12) months from this date, I will not directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment . . . .
>
> After leaving the Company's employment, I would be employed by __SOPHOS__ in the position of: __SVP WW Sales__.

(*See* Exhibit B.)

### **Valentine and Sophos Raid Fortinet's Employees**

26. Valentine joined Sophos as the "Senior Vice President, Worldwide Sales" in February 2013.

27. Valentine and Sophos—together and through the conduct of Valentine, at the intentional direction and/or encouragement and/or request of Sophos—violated Valentine's contractual and other lawful duties to Fortinet by attempting to solicit and induce numerous Fortinet employees to leave Fortinet. On information and belief, this unlawful solicitation occurred both before and after Valentine resigned from Fortinet.

28. Valentine's unlawful solicitation activities are evidenced by numerous facts, including—as examples—the following.

29. In April 2013—just two months after Valentine left Fortinet for Sophos—numerous important Fortinet employees, including senior executives, in fact departed Fortinet for Sophos at the inducement of Valentine and Sophos.

30. Fortinet's *Vice President* of Channel Sales (hereafter, "KK"), left Fortinet for Sophos in April 2013. At Sophos, KK was given the title "Vice President, Channel Sales, North America." KK's "LinkedIn" profile indicates that she conducts business on behalf of Sophos physically based out of the "Greater Chicago Area."

31. Fortinet's *Vice President* of Distribution for North America (hereafter, "RG"), also left Fortinet for Sophos in April 2013. At Sophos, RG was given the title "Director of Distribution, North America." RG's "LinkedIn" profile indicates he conducts business on behalf of Sophos physically based out of "Orange County, California."

32. A "Distribution Account Manager" at Fortinet (hereafter, "CB") also left Fortinet for Sophos in April 2013. At Sophos, CB was given the title "Channel Account Executive." CB's "LinkedIn" profile indicates that he conducts business on behalf of Sophos physically based out of the "Greater Denver Area."

33. Fortinet's "Director, Central Region Channel Sales" (hereafter, "DD") left Fortinet for Sophos in October 2013. At Sophos, DD was given the title "Director of Central Region Channel Sales." DD's "LinkedIn" profile indicates that he conducts business on behalf of Sophos physically based out of the "Dallas/Fort Worth Area."

34. Not coincidentally, KK, RG, and CB all resigned from Fortinet—to join Valentine and to accept jobs at Sophos—in the exact same week of April 2013. Those three employees resigned from Fortinet just a few days shy of two months after Valentine left Fortinet.

35. Fortinet's *Vice President* – Systems Engineering (hereafter, "JC") left Fortinet for Sophos in November 2013. At Sophos, JC was given the title "Director of Sales Engineering." On information and belief, this followed an in-person meal and/or meeting between JC, Valentine, and KK in approximately August 2013.

36. On information and belief, Valentine and Sophos solicited numerous Fortinet employees to leave Fortinet less than 12 months after Valentine left the company. Valentine and Sophos did this to damage Fortinet, to diminish Fortinet's position in the marketplace, and to unfairly enhance their own positions.

37. On information and belief, Valentine and Sophos furthermore induced other former Fortinet employees to violate their Agreement with Fortinet by inducing them to solicit other Fortinet employees to leave the company. KK, RG, CB, and DD all signed an Agreement—just as Valentine did—requiring them as a contractual matter not to solicit other employees to leave Fortinet within 12 months of their employment at Fortinet. And yet, on information and belief, KK, RG, CB, and/or DD have solicited Fortinet employees (including each other) to leave the employment of Fortinet.

7
COMPLAINT

## COUNT NO. I (Against Sophos)

## INFRINGEMENT OF U.S. PATENT NO. 7,698,744

38. Fortinet realleges and incorporates herein by reference the allegations contained in paragraphs 1–37.

39. United States Patent No. 7,698,744 ("the '744 patent"), titled "SECURE SYSTEM FOR ALLOWING THE EXECUTION OF AUTHORIZED COMPUTER PROGRAM CODE," issued on April 13, 2010. A true and correct copy of the '744 patent is attached as *Exhibit C* to this Complaint.

40. Fortinet owns all right, title, and interest in and to the '744 patent, including all rights to enforce the '744 patent.

41. On information and belief, without a license or permission from Fortinet, Sophos has infringed and continues to infringe, induced others to infringe and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement, literally or under the doctrine of equivalents, of one or more claims of the '744 patent, including at least claim 8 of the '744 patent. Sophos' infringing activities in the United States and in this District include importing, making, using, offering to sell, and/or selling products and devices that embody and/or practice the patented invention, including but not limited to Sophos Anti-Virus software which, on information and belief, is incorporated into, sold with, and/or used with infringing products marketed and/or sold under the names Sophos Enduser Protection Suites, Sophos Endpoint Security and Control, Sophos Endpoint Anti-Virus, Sophos Cloud, and other Sophos products, and contributing to, and inducing consumers and users to make and use the patented invention and to practice the claimed methods.

42. Specifically, on information and belief, Sophos induces others, including its customers and end-users, to infringe at least claim 8 of the '744 patent by encouraging and facilitating them to perform actions known by Sophos to infringe and with the intent that performance of the actions will infringe. Sophos has been aware of the '744 patent since at least the filing of this complaint.

43. On information and belief, Sophos induces consumers, including its customers and end-users, to make and use the claimed inventions and to practice the claimed methods by (i) providing Sophos Anti-Virus software and (ii) instructing consumers to use Sophos Anti-Virus software along with, *inter alia*, its anti-virus capabilities and in conjunction with Sophos Cloud and/or SophosLabs such that the combination as intended practices each of the elements of at least claim 8 of the '744 patent.

44. On information and belief, consumers make and use the claimed inventions and practice the claimed methods by using Sophos products, including but not limited to those identified above, that incorporate Sophos Anti-Virus software along with Sophos Cloud and/or SophosLabs, thereby directly infringing at least claim 8 of the '744 patent.

45. Sophos also contributes to the infringement of the '744 patent because Sophos knows that its products are made for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing uses. Sophos' products, including those enumerated above, which it sells directly to consumers as well as through its distribution partners, are designed to be used (and are used by consumers and end-users) in an infringing manner. Additionally, on information and belief, Sophos' products, including those identified above, are especially designed, made, or adapted for use in an infringing manner. Sophos' products have no substantial non-infringing uses and are material to the claimed inventions.

46. On information and belief, Sophos' direct, induced, and/or contributory infringement of the '744 patent has caused and continues to cause substantial damage to Fortinet.

**COUNT NO. II (Against Sophos)**

**INFRINGEMENT OF U.S. PATENT NO. 8,069,487**

47. Fortinet realleges and incorporates herein by reference the allegations contained in paragraphs 1–46.

48. United States Patent No. 8,069,487 ("the '487 patent"), titled "CLOUD-BASED APPLICATION WHITELISTING," issued on November 29, 2011. A true and correct copy of the '487 patent is attached as *Exhibit D* to this Complaint.

49. Fortinet owns all right, title, and interest in and to the '487 patent, including all rights to enforce the '487 patent.

50. On information and belief, without a license or permission from Fortinet, Sophos has infringed and continues to infringe, induced others to infringe and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement, literally or under the doctrine of equivalents, of one or more claims of the '487 patent, including at least claim 24 of the '487 patent. Sophos' infringing activities in the United States and in this District include importing, making, using, offering to sell, and/or selling products and devices that embody and/or practice the patented invention, including but not limited to Sophos Anti-Virus software which, on information and belief, is incorporated into, sold with, and/or used with infringing products marketed and/or sold under the names Sophos Enduser Protection Suites, Sophos Endpoint Security and Control, Sophos Endpoint Anti-Virus, Sophos Cloud, among other Sophos products, and contributing to, and inducing consumers and users to make and use the patented invention and to practice the claimed methods.

51. Specifically, on information and belief, Sophos induces others, including its customers and end-users, to infringe at least claim 24 of the '487 patent by encouraging and facilitating them to perform actions known by Sophos to infringe and with the intent that performance of the actions will infringe. Sophos has been aware of the '487 patent since at least the filing of this complaint.

52. On information and belief, Sophos induces consumers, including its customers and end-users, to make and use the claimed inventions and to practice the claimed methods by (i) providing Sophos Anti-Virus software and (ii) instructing consumers to use Sophos Anti-Virus software along with, *inter alia*, its anti-virus capabilities and in conjunction with Sophos Cloud and/or SophosLabs such that the combination as intended practices each of the elements of at least claim 24 of the '487 patent.

53. On information and belief, consumers make and use the claimed inventions and practice the claimed methods by using Sophos products, including but not limited to those

identified above, that incorporate Sophos Anti-Virus software along with Sophos Cloud and/or SophosLabs, thereby directly infringing at least claim 24 of the '487 patent.

54. Sophos also contributes to the infringement of the '487 patent because Sophos knows that its products are made for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing uses. Sophos' products, including those enumerated above, which it sells directly to consumers as well as through its distribution partners, are designed to be used (and are used by consumers and end-users) in an infringing manner. Additionally, on information and belief, Sophos' products, including those identified above, are especially designed, made, or adapted for use in an infringing manner. Sophos' products have no substantial non-infringing uses and are material to the claimed inventions.

55. On information and belief, Sophos' direct, induced and/or contributory infringement of the '487 patent has caused and continues to cause substantial damage to Fortinet.

## COUNT NO. III (Against Sophos)

### INFRINGEMENT OF U.S. PATENT NO. 8,195,938

56. Fortinet realleges and incorporates herein by reference the allegations contained in paragraphs 1–55.

57. United States Patent No. 8,195,938 ("the '938 patent"), titled "CLOUD-BASED APPLICATION WHITELISTING," issued on June 5, 2012. A true and correct copy of the '938 patent is attached as *Exhibit E* to this Complaint.

58. Fortinet owns all right, title, and interest in and to the '938 patent, including all rights to enforce the '938 patent.

59. On information and belief, without a license or permission from Fortinet, Sophos has infringed and continues to infringe, induced others to infringe and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement, literally or under the doctrine of equivalents, of one or more claims of the '938 patent, including at least claim 30 of the '938 patent. Sophos' infringing activities in the United States and in this District include importing, making, using, offering to sell, and/or selling products and devices that embody and/or practice the patented invention, including but not limited to Sophos Anti-Virus

software which, on information and belief, is incorporated into, sold with, and/or used with infringing products marketed and/or sold under the names Sophos Enduser Protection Suites, Sophos Endpoint Security and Control, Sophos Endpoint Anti-Virus, Sophos Cloud, among other Sophos products, and contributing to, and inducing consumers and users to make and use the patented invention and to practice the claimed methods.

60. Specifically, on information and belief, Sophos induces others, including its customers and end-users, to infringe at least claim 30 of the '938 patent by encouraging and facilitating them to perform actions known by Sophos to infringe and with the intent that performance of the actions will infringe. Sophos has been aware of the '938 patent since at least the filing of this complaint.

61. On information and belief, Sophos induces consumers, including its customers and end-users, to make and use the claimed inventions and to practice the claimed methods by (i) providing Sophos Anti-Virus software and (ii) instructing consumers to use Sophos Anti-Virus software along with, *inter alia*, its anti-virus capabilities and in conjunction with Sophos Cloud and/or SophosLabs such that the combination as intended practices each of the elements of at least claim 30 of the '938 patent.

62. On information and belief, consumers make and use the claimed inventions and practice the claimed methods by using Sophos products, including but not limited to those identified above, that incorporate Sophos Anti-Virus software along with Sophos Cloud and/or SophosLabs, thereby directly infringing at least claim 30 of the '938 patent.

63. Sophos also contributes to the infringement of the '938 patent because Sophos knows that its products are made for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing uses. Sophos' products, including those enumerated above, which it sells directly to consumers as well as through its distribution partners, are designed to be used (and are used by consumers and end-users) in an infringing manner. Additionally, on information and belief, Sophos' products, including those identified above, are especially designed, made, or adapted for use in an infringing manner. Sophos' products have no substantial non-infringing uses and are material to the claimed inventions.

64. On information and belief, Sophos' direct, induced, and/or contributory infringement of the '938 patent has caused and continues to cause substantial damage to Fortinet.

### COUNT NO. IV (Against Valentine)

### BREACH OF CONTRACT

65. Fortinet realleges and incorporates herein by reference the allegations contained in paragraphs 1–64.

66. Fortinet and Valentine entered into a contract, described herein as the Agreement.

67. Fortinet did all, or substantially all, of the significant things that the Agreement required it to do, and/or that Fortinet was excused from doing those things based on Valentine's breaches of the Agreement.

68. All conditions required by the Agreement for Valentine's performance occurred and/or were excused.

69. Valentine breached the Agreement by soliciting, directly and indirectly, and attempting to solicit numerous Fortinet employees to leave Fortinet within 12 months of less of Valentine's termination from Fortinet.

70. Fortinet was harmed by this breach in an amount to be proven at trial.

71. Fortinet has been and will be harmed irreparably as a result of Valentine's continued violations of the Agreement, unless that conduct is enjoined by this Court.

### COUNT NO. V (Against Sophos & Valentine)

### INTENTIONAL INTERFERENCE WITH CONTRACT

72. Fortinet realleges and incorporates herein by reference the allegations contained in paragraphs 1–71.

73. Fortinet entered into the Agreement—a valid contract—with Valentine, pursuant to which Valentine agreed not to solicit Fortinet employees to leave Fortinet during a reasonable period of time. Likewise, KK, RG, CB, and DD all signed the Agreement with Fortinet or a document substantially identical to the Agreement.

74. Upon information and belief, Sophos became aware of Valentine's Agreement no later than Valentine's decision to accept an offer of employment from Sophos, in or before

February 2013. Sophos likewise became aware of the Agreement between Fortinet and KK, RG, CB, and DD at the same time.

75. Valentine was aware of the Agreement between Fortinet and KK, RG, CB, and DD well before 2013.

76. Upon information and belief, Sophos intentionally induced Valentine to breach the Agreement by inducing him to solicit Fortinet employees to leave Fortinet, including KK, RG, CB, DD, and/or JC, both before and shortly after (and less than 12 months from the date that) Valentine terminated his employment with Fortinet.

77. Upon information and belief, both Sophos and Valentine intentionally induced numerous individuals to breach their Agreement with Fortinet—including KK, RG, CB, DD, and/or JC—by inducing them to solicit Fortinet employees to leave Fortinet shortly after (and less than 12 months from the date that) those employees terminated their employment with Fortinet.

78. Upon information and belief, Sophos induced Valentine to breach the Agreement by inducing him to solicit Fortinet employees to leave Fortinet, including while those employees were still employed by Fortinet.

79. Upon information and belief, Sophos and Valentine induced numerous former Fortinet employees—including KK, RG, CB, DD and/or JC—to breach the Agreement by inducing them to solicit Fortinet employees to leave Fortinet, including while those employees were still employed by Fortinet.

80. Sophos engaged in wrongful conduct by intentionally disrupting Valentine's performance of, and by inducing his breaches of, the Agreement.

81. Sophos and Valentine engaged in wrongful conduct by intentionally disrupting the performance of, and by inducing breaches of, the Agreement between Fortinet and numerous former Fortinet employees.

82. The actions of Sophos and Valentine identified in this pleading were done with the intention of disrupting the contractual relationships between Fortinet and Valentine, and between Fortinet and numerous other Fortinet employees.

14
COMPLAINT

83. The actions of Sophos and Valentine identified in this complaint resulted in numerous breaches of the Agreement by Valentine and other former Fortinet employees.

84. As an actual and proximate result of Sophos' and Valentine's conduct, Fortinet has been damaged in the amount to be proven at trial.

85. Sophos' and Valentine's conduct was a substantial factor in causing Fortinet's harm.

86. In performing the acts described above, Sophos and Valentine acted willfully, maliciously, oppressively, with the intent to interfere with Fortinet's contractual interests and with conscious disregard for Fortinet's rights and the damages it would suffer thereby.

## **DEMAND FOR JURY TRIAL**

87. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Fortinet demands a jury trial on all triable issues.

## **PRAYER FOR RELIEF**

WHEREFORE, Fortinet prays for judgment and relief as follows:

A. A declaration that the Asserted Patents are valid and enforceable, and that Sophos has infringed and continues to infringe one or more claims of the Asserted Patents;

B. A preliminary and/or permanent injunction enjoining Sophos, its directors, officers, agents, and employees, and those acting in privity or in concert with them, and their partners, subsidiaries, divisions, successors, and assigns, from further acts of (i) interference with Fortinet contractual benefits, and (ii) infringement, contributory infringement, or inducement of infringement of the Asserted Patents;

C. An award of damages adequate to compensate Fortinet for Sophos' infringement, in accordance with 35 U.S.C. § 284, including all pre-judgment and post-judgment interest and costs;

D. Increasing the damages to three times the amount found or assessed by virtue of the deliberate and willful nature of Sophos' infringement, in accordance with 35 U.S.C. § 284;

E. A judgment that this is an exceptional case and that Fortinet be awarded attorneys' fees under 35 U.S.C. § 285;

F. A judgment that Fortinet be awarded damages as a result of Sophos' intentional interference with Fortinet's contracts;

G. A judgment that Fortinet be awarded damages as a result of Valentine's intentional interference with Fortinet's contracts;

H. A judgment that Fortinet be awarded damages as a result of Valentine's breach of contract;

I. A judgment that Fortinet be awarded pre-judgment and post-judgment interest on any award; and

J. That the Court award Fortinet any other relief as the Court deems just and proper.

Dated: December 16, 2013

Respectfully submitted,

By: */s/John M. Neukom*

JOHN M. NEUKOM (CA Bar No. 275887)
johnneukom@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Plaintiff FORTINET, INC.