**Pages 1 - 26**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

FORTINET, INC., a corporation, )
                             )
         Plaintiff,       )
                             ) NO. C 13-05831 EMC
   vs.                         )
                             )
SOPHOS, INC. and SOPHOS LTD., )
corporations,                 )
                             ) San Francisco, California
        Defendants.      ) Thursday, March 27, 2014
                             ) 2:00 p.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**           Quinn, Emanuel, Urquhart & Sullivan LLP
**Fortinet, Inc.:**      50 California Street, 22nd Floor
                         San Francisco, CA  94111
                         (415) 875-6600
                         (415) 875-6700 (fax)
          BY:  **ANDREW MICHAEL HOLMES**
                 **JOHN M. NEUKOM**

**For Defendants**       DLA Piper LLP US
**Sophos, Inc.;**        401 B Street, Suite 1700
**Sophos, Ltd.;**        San Diego, CA  92101
**Michael Valentine;**   (619) 699-2900
**et al.:**                (619) 699-2701 (fax)
          BY:  **SEAN C. CUNNINGHAM**

                         DLA Piper LLP US
                         2000 University Avenue
                         East Palo Alto, CA  94303
                         (650) 833-2235
                         (650) 687-1167 (fax)
          BY:  **RYAN WILLIAM COBB**

Reported By:  Lydia Zinn, CSR No. 9223, Official Reporter

**THE CLERK:**  Calling Case C. 13-5831, *Fortinet versus Sophos*.  Counsel, please come to the podium and state your name for the record.

**MR. NEUKOM:**  May it please the Court.  John Neukom, on behalf of Plaintiff.  With me today is my colleague, Andrew Holmes.

**THE COURT:**  All right.  Thank you, Mr. Neukom, Mr. Holmes.

**MR. CUNNINGHAM:**  Good afternoon, Your Honor. Sean Cunningham, with DLA Piper, on behalf of Sophos, Inc., Sophos Limited, Michael Valentine, and a limited appearance for Jason Clark.  With me is Ryan Cobb.

**THE COURT:**  All right.  Welcome.  Thank you, Mr. Cunningham.

**MR. CUNNINGHAM:**  Okay.

**THE COURT:**  So we've got two motions:  The motion to dismiss for lack of personal jurisdiction -- and that is brought by Mr. Clark -- and then motion to compel arbitration bought by two other defendants, and to stay the non-patent claims until the arbitration's completed.

So let me address the jurisdictional question first.  There are two types of claims brought against Mr. Clark.  One is contract in nature, and the other is sort of tortious in nature.

And with respect to the contract claim, I understand that a

mere employment relationship perhaps is not enough even if you're employed by a California corporation, but when you're employed in a high position -- Vice President for nearly 10 years -- and that the employment agreement contemplates a stream of continuing obligations, not just a one-time, for instance, provision of goods or services, and you have Mr. Clark admitting that he went to California twice annually during his tenure with Fortinet, why doesn't that fulfill the purposeful-availment prong of jurisdiction -- specific jurisdiction?

**MR. CUNNINGHAM:**  Your Honor, before I answer that question, I want to bring Your Honor up to speed on some discussions that counsel and I have been having, including here in the courtroom just before you came in.  I think we have an agreement now to put Mr. Clark's claims into arbitration, along with Mr. Valentine's.

**THE COURT:**  Okay.

**MR. CUNNINGHAM:**  If that's the case, then we're prepared to either hold in abeyance the jurisdictional motion, or withdraw it, without prejudice to bringing it again if the claims aren't resolved through the arbitration.

**THE COURT:**  Okay.  And there was an arbitration clause in --

**MR. CUNNINGHAM:**  -- in Mr. Valentine's agreement; not in Mr. Clark's.

THE COURT:  Not in Mr. Clark's?

MR. CUNNINGHAM:  Correct.  This is a voluntary agreement between the parties.

THE COURT:  I thought I read somewhere that there was -- maybe I misread that.  So it's only in the Valentine agreement?

MR. CUNNINGHAM:  Correct, correct.

This is a voluntary agreement between the parties --

THE COURT:  Oh, all right.

MR. CUNNINGHAM:  -- to include his claims -- Mr. Clark's claims -- in the arbitration.

THE COURT:  All right.  So --

MR. NEUKOM:  Agreed, Your Honor.

THE COURT:  All right.  Well, that makes sense, if you go arbitrate.  So you would then prefer to hold this -- or have this motion taken off calendar, without prejudice --

MR. CUNNINGHAM:  Correct, Your Honor.

THE COURT:  -- basically?

MR. CUNNINGHAM:  I think that's the best vehicle, unless Your Honor has a better solution.

THE COURT:  Well, you could just stipulate to jurisdiction.

MR. CUNNINGHAM:  We're not prepared to do that, Your Honor.

THE COURT:  Okay.  All right.  So you're agreeable to

that?

MR. NEUKOM:  Yes, Your Honor.

THE COURT:  Okay.  So then the only questions that we have to address is the motion to stay the non-patent claims against Mr. Sophos -- I mean, against Sophos.  Right?

MR. CUNNINGHAM:  Correct, Your Honor.

THE COURT:  And is there some reason not to stay those claims, given that there's obviously some overlap?

I mean, whatever is found in arbitration, whether or not other employees were induced to seek others, and whether or not, in fact, there was a trade secret -- some trade secrets were taken -- they were misappropriated somehow -- I understand it may not be totally dispositive of the claim here, but it does make sense, since there's going to be some discrete factual issues that are quite material to some of these claims, many of these claims are going to be adjudicated, rather than having two different venues adjudicating, with the possibility of verdicts, duplicative effort, and everything else.  It does seem like it makes sense to let the arbitration play out.

MR. NEUKOM:  Understood, Your Honor.  And my response would be as follows.  I think not only is it not -- does it not promote efficiency to stay these claims; it actually results in a pretty substantial inefficiency to stay the three claims that we posed to stay for in our papers; namely, trade-secret misappropriation, unfair competition, and the tortious

interference clauses.

And I would explain why as follows. Suppose that Mr. Cunningham and his team do an absolutely killer job at arbitration, and we get poured out. I don't like to contemplate that possibility, but suppose that happens. So every theory or claim that we have against Mr. Valentine and Mr. Clark -- we get a finding against Fortinet that there's "no there there," if you will.

Even in that instance, even if Clark and Valentine secure a total dominating victory at arbitration, these three claims are going to stay alive, and they're going to be right back before this Court. Trade-secret misappropriation, tortious interference with the eight or ten other employee contracts, and the unfair-competition claims are going to come back here before Your Honor.

So we could -- right? -- the movant here has not asked for a stay of the case. They've asked to move forward with patent claims. We have asserted six patents against Sophos. Sophos has asserted seven as counterclaims. And the defendant here, Sophos, is happy to move forward with those 13 patent litigation claims.

**THE COURT:** You all may be happy about that, but I'm not. But go on.

**MR. NEUKOM:** I should not use "happy," either.

**THE COURT:** Remember the ten-term limit that

presumptively applies here, but go on.

**MR. NEUKOM:**  So the parties are going to litigate -- happily, willingly, in some state of mind -- those 13 patents over the next year or two.

While that's happening, if there is no litigation of the -- no discovery into the trade-secret, the intentional-interference, and the unfair-competition claims, we're all -- all of us; the parties in the court -- are going to be in a position where, a year from now, as we're far down the line or down the road on patent litigation, these other related supplemental, subject-matter jurisdiction, state-law claims are going to be come back, right back into the case.  We will have wasted an opportunity for the parties, on a coördinated, unified calendar, to move forward with patent and non-patent claims, including with coördinated discovery.

And to that point, Your Honor, just so we're clear, Mr. Valentine or, say -- maybe I should use one of my own client witnesses as an example.  If Sophos wants to depose a Fortinet witness with relevant knowledge, it's certainly the case -- and I don't deny that there's some overlap of factual issues -- that person should be deposed, one.

And we would stipulate, likewise, that Mr. Valentine should be deposed once.  That can happen four months from now.  It will be relevant, and used in the arbitration.  It would be relevant and used in this court for trade-secret

misappropriation.

**THE COURT:** And that can be stipulated to now, in advance. "Stay" doesn't mean you can't do anything. You can stipulate to say, for instance, any discovery that is taken in conjunction with the arbitration is 100 percent usable here; that there will be no further -- if you can take somebody's deposition, this is it. No two bites at the apple. Or I could order that. So I'd say a stay, except specifically in regard to, for instance, discovery; whatever is propounded, whatever is received. And that case will apply with full force and effect here. That depositions -- take your shot now. You're not going to come back and ask for multiple depositions, just because --

So we can accomplish some of that, to make sure we're piggybacking, without generating motions to dismiss, motions for summary judgment, you know, trial/pretrial motions, and all of that, only to not know exactly what the scope of the trial is, until we --

**MR. NEUKOM:** Agreed. Your Honor, the only problem with that, from Fortinet's point of view, is say, for example, we get one shot to depose Mr. Valentine. If that happens while these state-law claims against Sophos are stayed, we're going to only be able to take Mr. Valentine's deposition only once, and only using whatever discovery materials we've gotten from Mr. Valentine as an individual former executive in private

arbitration against Fortinet.

We will not have, for example, our trade-secret discovery into Sophos, and what's in Sophos' files.

**THE COURT:**  So the trade secrets -- what is going to be arbitrated?  Maybe I should understand.  What is the arbitration?

**MR. NEUKOM:**  It will be, against Mr. Valentine, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing.

**THE COURT:**  By soliciting employees, is one part of the claim.  Right?

**MR. NEUKOM:**  Yes.

**THE COURT:**  And about what the trade secrets, taking of trade secrets?

**MR. NEUKOM:**  We also do have -- I believe one basis for a breach-of-contract claim against Mr. Valentine is that he improperly disclosed sensitive trade-secret material to Sophos.

Now, that does not a trade-secret-misappropriation claim make.

It -- an improper disclosure by Mr. Valentine to Sophos would constitute a breach of contract.  For his --

**THE COURT:**  Do you have to prove it is a state secret, in order to make that claim of improper disclosure?

**MR. NEUKOM:**  I don't -- I believe that the terms of the contract are not as strict as a California

trade-secret-misappropriation claim, or definition of a trade secret.

THE COURT:  So the contract claim may not align with the trade-secret definition?  There are contractual obligations that are broader than the statutory trade secret obligations?

MR. NEUKOM:  I believe that's correct, Your Honor, but just to be clear -- I don't want to overplay my hand -- there is certainly some overlap there.  And we're the first to acknowledge that, but I guess I'm trying to respond to Your Honor's case-management proposal that, you know, even if we stay these claims, the parties could still move forward with a -- call it "coördinated cross-use discovery."  And, while I like that idea, the problem is if Fortinet gets only one bite at the apple with Valentine and Clark, for example, if we have to take that shot without any trade-secret discovery from Sophos, that prejudices our ability to move forward with this case.

THE COURT:  All right.  Then the answer to that may be while you generally have one shot, it is a presumption, and you can always move for a second deposition.  You could, in any case, you know, move to exceed the seven-and-a-half-hour -- seven-hour limit.  You can move to exceed the one-time-deposition limit.  And if you come back and say, "Arbitration.  We were restricted to $X$, $Y$, $Z$.  We couldn't get to the core of the trade secret -- some of the trade-secret

transactions," or something else, that sounds like a pretty good cause to -- I don't know if you want to call it "reopen" discovery, "extend" discovery, "enlarge" discovery, but you know, my -- my -- the gist, though, of what I was trying to say:  We can avoid duplication and delay, because you can get 80 percent, 90 percent of what you want.  That will be reusable if arbitration doesn't resolve it.

Then you've got residual claims here that are not issue or claims precluded, and can use the stuff.  You know, it's not like we've lost a year doing nothing.

**MR. NEUKOM:**  Sure.

**THE COURT:**  And actually, by the time we -- given the way patent cases work out, that's on a longer track, anyway. So in some sense, it may actually be okay.  You don't want a parallel line to sort of stay, with the discovery caveat that I mentioned.  The non-patent cases -- as arbitration proceeds, while we proceed down the long road of patent -- Markman hearing, and everything else -- by the time we finish with that, it may well be about the time you finish your --

How long will arbitration take?  What's your sense?

**MR. NEUKOM:**  We're at the very initial stages.  The parties have not conferred on or received a schedule from the arbitrator, so we're not sure.

**THE COURT:**  I would hope you could do it within the next nine to twelve months.

**MR. CUNNINGHAM:**  That's our expectation.

**THE COURT:**  You would think.

**MR. CUNNINGHAM:**  Yeah.

**THE COURT:**  And if you look at most people's time line, when we actually do get around to a Markman hearing, and a ruling, and summary judgment on a patent claim, they're easily 12, 15 months out.  I mean, this could work out quite well in terms of timing, as long as I agree, as long as we don't --

If we can cross-designate discovery and use it, then you're also just not standing still, wasting time, doing nothing in this case, should it come back.

**MR. NEUKOM:**  Sure.  And, Your Honor, I don't mean to tilt at the windmill too many times.  And I want to be responsive to Your Honor's comments.

**THE COURT:**  Yep.

**MR. NEUKOM:**  From Fortinet's point of view, it may be no surprise that the parties have grossly different views of the merits of this Complaint, but this is a -- a fairly detailed, fact-based, unusual trade-secret-misappropriation case.  We have two companies that are direct competitors in the market for network-security products and services that are oftentimes referred to as "Unified Threat Management."

We've got a defendant who -- rightly or wrongly -- has successfully convinced four Vice Presidents to switch shops;

approached at least two more that we're aware of.  And I think the total employee movement or exodus is somewhere at between 10 and 14 employees.

We've got troubling aberrational access records from the departing employees into our password-protected trade-secret database.

From Fortinet's point of view -- right? -- the ability to move forward now with the trade secrets and other state-law claims against Sophos -- it's a pressing issue for my client.

**THE COURT:**  Your claim is that individuals other than Clark and Valentine were engaged in the misappropriation?

**MR. NEUKOM:**  Absolutely, Your Honor.

**THE COURT:**  So, no matter what is found with respect to those two individuals, your claim is that Sophos was acting through other agents?

**MR. NEUKOM:**  That's correct.  And that goes right back to my initial point, which is:  No matter how good Mr. Cunningham is at the arbitration, even if it's a resounding victory for Mr. Valentine and Mr. Clark, that will not dispose of these claims.

So really what we're talking about here is, if the parties are agreed that we should move forward with patent litigation right now, Mr. Cunningham's team and my team are going to be geared up and engaging in fact discovery and patent disclosures.  Why wouldn't we also move forward with our

trade-secret, tortious-interference, and unfair-competition claims as part of the same process, given that they're not going to go away?

And, just by way of comparison, Your Honor, you know, you may note in our opposition, we have not opposed the motion to stay the civil conspiracy claim against Sophos, nor the claim for aiding and abetting a breach of a fiduciary duty. And here's why. We have alleged that Mr. Clark and Mr. Valentine breached their fiduciary duties as former high-ranking executives to Fortinet. That's one claim.

A separate claim is against Sophos, alleging that Sophos aided and abetted those breach of fiduciary duties.

Now if, during the arbitration, Mr. Valentine and Mr. Clark were, against my best efforts, able to persuade the arbitrator that there was no breach, at all, of their fiduciary duties, then that would kill the aiding-and-abetting claim against Sophos. Right?

So, to my mind, that is claim which it makes sense to stay, because there is a chance that, over nine to twelve months of arbitration, if Valentine and Clark are found not to have breached any fiduciary duty, then Fortinet will back away from the aiding-and-abetting claim against Sophos; but that is in contrast to these other claims, which are based on the alleged conduct of -- again, I apologize. I don't have the numbers right, but between 10 and 14 employees who moved over; a

collection of trade secrets; whole sets of facts and legal claims which are -- which cannot be disposed of based on the facts and law at issue in the arbitration.

**THE COURT:** So the scope of, for instance, discovery that you would want, assuming that the Clark and Valentine claims go into arbitration, and that we have to sort of respect that arbitration process, maybe do a cross-designation.

**MR. NEUKOM:** Mm-hm.

**THE COURT:** How would you define that; that any alleged trade-secret misappropriation by the other eight employees -- or ten, or however many -- be on the table? You can take their depositions and seek their correspondence; that kind of thing?

**MR. NEUKOM:** That's right, Your Honor. And actually, I think -- so let's just say -- I don't think it will play out this way, but let's just say that the discovery was confined to depositions of those 10 to 14 migrating employees. Each of those 10 to 14 depositions would be relevant to the trade-secret-misappropriation claims against Sophos here in this court; and they would also be relevant -- or portions of them would be relevant to the arbitration claims against Mr. Valentine and Mr. Clark.

So on the morning of that deposition, I may ask them, "And while you were sitting at your desk at Fortinet, did Mr. Valentine call you, and whisper sweet nothings into your

ear, and ask you to come over to Sophos?"  That would be relevant to the breach-of-contract claim, for example, against Mr. Valentine proceeding before the arbitrator.  It would be relevant to a tortious-interference claim proceeding in this court against Sophos.

In the afternoon of that hearing [sic], I may ask that same -- or pardon me -- that deposition, I may ask that same employee, "What did you download from the sales-force database?  What did you do with it?"  And, you know, for Mr. Valentine, for example, that line of questioning would be relevant both to the breach-of-contract claim against him proceeding in arbitration, but it would also absolutely be relevant to the trade-secret-misappropriation claim against Sophos proceeding before this Court.

**THE COURT:**  All right.  What's your response to that, given the argument that there's a broad claim against Sophos that transcends just the two individuals for whom we now have an arbitration agreement?  Why should that be stayed?

**MR. CUNNINGHAM:**  Okay.  Well, Your Honor, I think two points.  Number one, we -- Sophos has offered to -- we thought the best way to go about this was to take all of the non-patent claims and put them into the same arbitration, so we'd have one arbitration that covers the non-patent claims, and a separate patent-infringement lawsuit that proceeds in this court.

Fortinet does not want to do that.

That's fine.  No -- it would be purely a voluntary agreement; but that was our sort of case-management idea, to try and streamline this.

THE COURT:  Yeah.

MR. CUNNINGHAM:  But secondly, this isn't a situation -- and there's nothing in the Amended Complaint here -- that alleges an independent trade-secret violation or misappropriation by Sophos.

In other words, it's not as if unnamed Sophos employees were hacking into Fortinet's computer databases, and stealing trade secrets here.  That's not the allegation.

The allegation is that Mr. Valentine, Mr. Clark, and the others who came from Fortinet to Sophos brought with them -- allegedly brought with them trade secrets that were the property of Fortinet.  And all of those allegations go to the claims that will be arbitrated, overlapping with the claims that would remain here under a stay.  So I don't view the discovery issues as being so separate, that they won't be bound up within the discovery that occurs in the arbitration.

We're going to have depositions of the people who migrated from Fortinet to Sophos.  There's going to be questions about whether they took things with them that they shouldn't have taken.  Those questions are going to get asked of Mr. Valentine, of Mr. Clark.  So we're going to have, in effect, trade-secret discovery conducted in the arbitration, in

response to the claims for intentional interference with contract, with breach of contract, with breach of fiduciary duty.  We all agree now that those claims are subject to arbitration.  So why not have one discovery period going in the arbitration?  If and when the remaining claims before this Court are reignited following the arbitration, there's obviously the opportunity to use that discovery to leverage from it.

And there's going to be opportunity, as Your Honor, I think, has concluded, to conduct additional discovery if it's needed; but having a full-blown litigation on three claims against Sophos while the arbitration is proceeding, we don't think, is the efficient way to --

**THE COURT:**  But you haven't addressed the fact that the claim, as I understand it, is a -- it wasn't just Clark and Valentine.  There were a bunch of other folks that committed alleged trade-secret misappropriation.

**MR. CUNNINGHAM:**  Correct, Your Honor.

**THE COURT:**  And so why should those -- they're not in arbitration.  Why should --

**MR. CUNNINGHAM:**  They're not, but they will be subject to discovery in the arbitration.  So why have duplicative proceedings, where depositions are being taken in this case as well as in the arbitration; where motions are being filed in this case that --

THE COURT:  Well, is that clear; that each of the other --

Well, so who are some of these individuals that you alleged?  Give me an example of somebody whose deposition wouldn't be relevant; is not likely to be fully taken in the Clark/Valentine arbitration, but very relevant to your trade-secrets-misappropriation claim.

MR. NEUKOM:  Sure.  So, well, as an initial matter, Your Honor, it's -- it's not nearly as clear to me as it sounds like it is to Mr. Cunningham that third-party discovery is permitted in arbitration in anything like the way it is before a Federal Court, but I'll return to that point in a minute.

An example would be the individual referred to in our complaint as "KK."  KK was also a Vice President of Fortinet. KK was solicited by Mr. Valentine to move from Fortinet to Sophos.  And we would want her deposition.

Another example would be the individual named "DD."  And I apologize.  Bear with me, Your Honor, so I can get to just the right spot.  In paragraphs 89 through 92 of the First Amended Complaint we discuss the -- those aberrational access records to our password-protected website that I mentioned earlier today.  There's an individual who we've referred to as "DD" in this Complaint who accessed that sensitive-material database numerous times on his last day with Fortinet from different IP addresses; what appeared to be different locations.  It appears

to us as though this individual, DD, was accessing and downloading information from Fortinet's employee-only database his last day as an employee of Fortinet; and he may have been doing it from a coffee shop or at home.

Now, that individual -- DD -- I do not believe that we're going to be able to get third-party discovery of DD, the way we would before this Court.

Another example, Your Honor, would be -- I think we all know that in modern-day trade-secret litigation, some of the best stuff isn't going to come from my clients' servers or from Mr. Cunningham's servers.  It's going to come from third parties like Yahoo!, or gmail accounts, or Dropbox accounts.

And any litigator half as good as Mr. Cunningham in defending a trade-secret case would, of course, want discovery into that kind of claim to be in arbitration instead of before a Federal Court, because my ability to get recompensed for my client is substantially impaired if I'm going after important third-party discovery with the letterhead of an arbitrator, as opposed to Your Honor, and Federal Court subpoenas.

So it is -- it is important to us.

I don't mean to be arguing for form over substance; just that discovery be allowed to proceed in a timely way, and captioned under a federal case, so we can find what we need from all of these people.

THE COURT:  All right.  What's your response to

people like KK, DD, and potential third-party sites/servers?

**MR. CUNNINGHAM:** Well, Your Honor, on the third-party discovery, I think Counsel has a point.

As to the employees under my control, we can agree to whatever scope of discovery, essentially, that we want as between the parties.

You know, I represent Sophos. I will continue to represent Sophos. And if there are employees whose depositions need to be taken for purposes of developing the arbitration record fully, then we will work with counsel to get --

**THE COURT:** Well, that's the point. KK -- the depth and the existence or not of a deposition of KK or DD may not be -- sounds like may be for very limited purposes, you know, directed towards the arbitration issues with respect to Clark and Valentine; but there are many questions sounds like you're going to be asked that transcend whatever dispute there is between those two individuals and the plaintiff here. And so --

**MR. CUNNINGHAM:** Your Honor, I don't think they transcend, at all. I mean, the allegations here are that Mr. Clark and Mr. Valentine wrongfully solicited other employees and/or each other, and either themselves took or induced others to take trade secrets of Fortinet. That is the scheme that is alleged in the Amended Complaint. It's not true, but that's what's alleged.

And so by submitting those claims -- and, by the way, we're talking about, at the beginning of the day, an arbitration clause that was -- that was given to Mr. Valentine.  And he was asked to sign it by Fortinet.  So this is not -- you know, they didn't go unwillingly into arbitration.  We're here because Fortinet demanded that Mr. Valentine, as a condition of employment, agree to arbitration.

All of those issues, we'll receive a hearing in the arbitration that is the basis of it.

**THE COURT:**  But there's alleged in this some conduct by DD, JA, and CS that is independent of having been solicited that is -- okay.  You solicit them to do something, but they -- it is alleged that those three, for instance, among others, developed a habit of accessing and circulating Fortinet's trade secrets shortly before leaving.  Whether they did this at the instance of Clark or Valentine kind of doesn't matter.  If they did it, they did it.

I mean, it may be neither Clark and Valentine, but it may not matter with respect to their conduct as it is attributable, potentially, to Sophos.  So it's not clear to me that there's not some independent conduct that might be inquired into here that is broader than what would be at issue in the arbitration.

**MR. CUNNINGHAM:**  And I agree with that.

I think that we have a difference of opinion about the scope of discovery in the arbitration, versus the scope of

discovery in a trade-secret case in this court.

However, I submit that there's enough overlap here that -- under the appropriate standard, that the claims should be stayed.  When we get to the end of the line and we have an arbitrator's decision, we'll look at what's left.  We'll look at what discovery remains to be done, and we'll get after it.

**MR. NEUKOM:**  Your Honor, if I may, while I appreciate the suggestion that Sophos will be forthcoming during the arbitration, if that's the offer, what's the point of a stay? The parties sound like they're in violent agreement that over the next six to twelve months, there should be discovery into trade-secret, breach-of-contract, tortious-interference allegations against not just Valentine and Clark, but this broader collection of employees and others at Sophos.

If that is the case, my client begs the Court to allow us to proceed with Federal Court subpoenas and before Your Honor to discover the facts behind these claims.

Otherwise, we're -- we're in an awkward position, I guess, if the parties are asking the Court to not stay patent claims, but stay some other non-patent claims, allow the parties to proceed with an unusually broad discovery scope in private arbitration, while asking this Court not to touch those issues. At this point, I've lost -- I mean, I still have in mind of my argument why it's inefficient to do a partial stay.  I have now lost the basic argument for the efficiency of this.

**THE COURT:**  All right.  Here's what we're going to do.  First of all, based on stipulation, I'm going to reaffirm the parties' commitment, and order that the claims against Clark and Valentine be arbitrated pursuant to both the contract on Valentine's part, and the agreement, which I assume will adopt the same standard.  I presume this -- presuming with respect to Mr. Clark that, therefore, the non-patent claims against Clark and Valentine be stayed in this matter.

But I am not going to stay the case with respect to patent claims and non-patent claims against Sophos qua Sophos.  To the extent that then requires or opens the door to depositions of alleged agents of Sophos who downloaded and took with them trade secrets or engaged in other conduct, even if there might be some arguable connection to the claims that are being arbitrated vis-à-vis Clark and Valentine, that is not going to prevent discovery here.  That discovery should proceed against Sophos.

I'm also going to require that any discovery that is done in the context of arbitration with respect to the Clark and the Valentine arbitrations be cross-designated and fully used here, and that the parties are to avoid duplicate discovery.  Make every effort to avoid any kind of duplicate discovery, because I want to kind of treat and -- respect the arbitration process as against those two defendants.

But I am going to allow, for the reasons stated, that the

Complaint is broader; appears to make allegations that are quite a bit broader than those claims that are hinged solely against Clark and Valentine.  Because of that, I think it is appropriate to allow discovery to proceed in this case; to proceed on the non-patent claims vis-à-vis Sophos.

Now, in terms of, you know, coördination of the scheduling, I think we can -- we'll have to think about that.  And I think I want to get a sense of how quickly things are moving in arbitration.

I don't think we need to entertain -- what I'd like to do is get on track with a patent schedule, because that's the thing that's going to hold this case up, it seems to me.  And I don't know if you have stipulated or suggested a time line for Markman, and everything else in this case.

**MR. NEUKOM:**  We have not, Your Honor.  The parties' deadline to meet and confer on case-management issues is, I believe, next week, on the 3rd.  And so shortly thereafter, we'll be submitting to Your Honor a joint submission.

**THE COURT:**  All right.

**MR. CUNNINGHAM:**  I think we've got you for a CMC on the 24th.  Is that right?

**MR. NEUKOM:**  Sounds right.

**THE COURT:**  Then at that point, that's when we'll set schedules.  And, you know, if there's further issues regarding discovery that come up, we can address it at that point; but

that's the gist of what I want to do.

And I understand that there's going to be some overlap, and -- but I do accept the proposition that the case against Sophos is a case that is broader than that which hinges solely on the claims that are going to go into arbitration.  That's why I'm allowing discovery and the rest of this case to proceed, including the non-patent claims.  All right?

So we'll see you at the CMC, I guess.  And we can figure out the scheduling at that point; map out this case.

**MR. CUNNINGHAM:**  Thank you, Your Honor.

**MR. NEUKOM:**  Thank you, Your Honor.

**THE COURT:**  Thank you.  I appreciate it.

(At 2:35 p.m. the proceedings were adjourned.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____   March 28, 2014
Signature of Court Reporter/Transcriber    Date
Lydia Zinn