UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Donna M. Ryu, Magistrate Judge


FORTINET, INC.,                    )
                                   )
          Plaintiff,               )
                                   )
vs.                                )     No. C 13-05831 EMC (DMR)
                                   )
SOPHOS, INC., et al.,              )
                                   )
          Defendants.              )
_____)

                                   Oakland, California
                                   Thursday, June 5, 2014

 TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                          RECORDING


APPEARANCES:

For Plaintiff:
                            Quinn Emanuel Urquhart &
                              Sullivan, LLP
                            50 California Street
                            22nd Floor
                            San Francisco, California
                              94111
                        BY: JOHN M. NEUKOM, ESQ.
                            ALICIA MARIE VEGLIA, ESQ.

For Defendants:
                            DLA Piper, US, LLP
                            401 B Street
                            Suite 1700
                            San Diego, California  92101
                        BY: SEAN C. CUNNINGHAM, ESQ.

2

Transcribed by:                 Echo Reporting, Inc.
                                Contracted Court Reporter/
                                Transcriber
                                echoreporting@yahoo.com

3

Thursday, June 5, 2014                                    1:00 p.m.

                        P-R-O-C-E-E-D-I-N-G-S

                              --oOo--

        THE CLERK:  Calling Case Number C-13-5831, Fortinet, Inc. versus Sophos, Inc., et al.  Counsel, please step forward to the podiums and state your appearances.

        MR. NEUKOM:  Good afternoon, your Honor.  May it please the Court, John Neukom for Plaintiff.

        THE COURT:  Mr. Neukom.

        MR. NEUKOM:  With me today is my colleague, Alicia Veglia.  And also with us today are two summer associates, Michael Bruns (phonetic) and Ryan Stevens.  Mr. Bruns is a student at University of Virginia Law School.  Mr. Stevens here in town at Hastings.

        THE COURT:  Welcome to you all.

        MR. CUNNINGHAM:  Good afternoon, your Honor.  Sean Cunningham for Defendant Sophos.  I have no one with me.

        THE COURT:  Okay, Mr. Cunningham.  You're outnumbered.

        MR. CUNNINGHAM:  I am.

        THE COURT:  All right.  Mr. Neukom, has any discovery happened in this case so far?

        MR. NEUKOM:  Some has, your Honor.  The parties have exchanged a series of interrogatories and also requests for production of documents.

4

THE COURT: Any of those interrogatories ask who was involved in the hiring?

MR. NEUKOM: We have an interrogatory -- the direct answer to your question, your Honor, is I don't remember as I stand here. However, we do have an interrogatory asking Sophos to identify and describe all communications to the poached employees, if you will.

We also have, I believe, 11 or 12 requests for production of documents specific to Mr. Hagerman (phonetic) asking for Sophos to produce e-mails, messages to or from Mr. Hagerman and all of the suspect or poached employees.

THE COURT: And when are the responses due?

MR. NEUKOM: The response -- that due date has already passed. And we have -- with regards to the interrogatory, your Honor, that's Interrogatory Number 6. No substantive response has yet been provided. And the parties are currently in the process of teeing up a joint letter to be filed to the court on that.

On the request for production of documents, we have received objections and a commitment to produce certain of Mr. Hagerman's documents. However, we've received no such documents.

THE COURT: When were the responses due?

MR. NEUKOM: I believe responses to both the interrogatories and the requests for production of

5

documents, your Honor, were due about 10 days, two weeks ago.  If I'm off on that by a bit, that's an innocent mistake.

THE COURT:  Okay.  So when are the documents going to be produced?

MR. CUNNINGHAM:  Well, your Honor, the rest of the story is that there's also an arbitration going on involving claims against two of the employees who came over from Fortinet to Sophos.

THE COURT:  Right.

MR. CUNNINGHAM:  There's been a document production by Sophos in that -- in the arbitration, some of which will no doubt be relevant to -- the documents will be relevant to the overlapping claims in this case.  So some of the documents related to Mr. Hagerman have been produced in the arbitration.  I doubt that there's been time -- I think the production happened a week ago maybe.  I doubt there's been time to go through those documents.  We certainly haven't gotten through all of the documents that Fortinet produced to us.

But I know that there were -- there are certain communications between Mr. Valentine, who is one of the employees who came from Fortinet to Sophos, and Mr. Hagerman in that production.

THE COURT:  Okay.  So what is the answer to when

6

will the documents be produced to Fortinet that have to do with Mr. Hagerman's, I guess -- tell me again.  It was communications regarding the hiring of the so-called poached employees or --

MR. NEUKOM:  Yes.  I believe, your Honor, it was -- rather than my trying to guesstimate, I have the specific language right here.

THE COURT:  Well, let me -- while you're looking for that, Mr. Neukom, let me just back up.  And the reason obviously I'm asking for this is because, although Fortinet did not address this in the letter, the governing law would say you're looking at an Apex deposition, usually that's not the first thing you do.  You want to figure out first what is the involvement of the Apex officer.

And so there was nothing in the paper.  And I know the case was filed relatively recently.  There was nothing in your joint letter that suggested that much discovery had been done.  And so I didn't understand -- and maybe you can explain to me why you need Hagerman's deposition even before you get something as simple as responses on requests for documents or interrogatories that would give you some background on whether or not he was involved.  And if so, what his involvement was.

MR. NEUKOM:  Thank you, your Honor.  I think I can address those concerns or questions from the Court.

THE COURT:  Okay.

MR. NEUKOM:  As I infer the Court is aware, this case includes contract interference claims.

THE COURT:  Right.

MR. NEUKOM:  Fortinet alleges that Sophos interfered with some narrowly drafted employment contracts that Fortinet had with executives and others.  In particular, by not just poaching Michael Valentine, who was the first employee to move from Fortinet to Sophos, but then working with Mr. Valentine to go after a cast of a dozen or so employees, including five Fortinet vice presidents.

So just in terms of the landscape here, we have a private company that took the top-ranking sales executive from a publicly traded company and five other vice presidents --

THE COURT:  I understand that that -- I mean, you set up in your letter -- although you didn't discuss the relevant case law, you set up that this is -- he must know something.  These are the key people, and look what he wrote in this blog.  I actually did not find the blog postings to be all that illuminating of the current dispute.  Okay.

So my question is, why do you need him now instead of waiting a little while to get some confirmation of what his involvement is?

MR. NEUKOM:  Understood, your Honor.  There are a

8

few answers to that question.

THE COURT:  Okay.

MR. NEUKOM:  What we do know is that -- well, let me just explain -- give you an answer in one sentence, and then I'll give you some facts that will explain it.

THE COURT:  That would be great.

MR. NEUKOM:  It's our understanding that Mr. Hagerman is the most central character in this campaign by Sophos.  He is the architect of the poaching campaign.  And I don't say that on a whim.  I say that because the facts play out as follows.

Sophos has been around for 20 plus years.  They hired Mr. Hagerman, a well-known Silicon Valley executive to be their CEO in September 2013.  Within a matter of months, Mr. Hagerman did an executive shake-up at Sophos.  Among other things, he hired Michael Valentine.  That was in February 2013.  And in the press release, it's quite clear --

THE COURT:  Wait.  You just said Hagerman came over to Fortinet in --

MR. NEUKOM:  I apologize, your Honor.

THE COURT:  -- Sophos in September of 2013.

MR. NEUKOM:  Hagerman took the helm of Sophos in September of 2012.

THE COURT:  Okay.  And then you said in February. So --

9

MR. NEUKOM:  Yeah.

THE COURT:  -- five months later.

MR. NEUKOM:  Hagerman then hires Valentine.

THE COURT:  Okay.

MR. NEUKOM:  In the press release, it is clear that Mr. Hagerman was the decision-maker to hire Mr. Valentine.  There are glowing quotes from Mr. Hagerman about why he hired Mr. Valentine.  That is February of 2013.

Immediate -- well, let me choose --

THE COURT:  None of that is in the record before me, by the way.  So I'm not -- well, let me -- Mr. Neukom, I asked you a very specific question.  Why do you need him now as opposed to waiting until -- I get you think he's at the middle of this.  You may or may not be right.  Why not wait until you get a few more pieces of information to confirm that so that you have a good hook for an Apex deposition.  So why now?

MR. NEUKOM:  I will try once more.  I don't mean to be testing the Court's patience.  Two reasons.  Number one, there is a simultaneously pending arbitration.  The parties have agreed that each side gets one shot only for each witness and that that testimony may be used between the case and the arbitration.

The deadline for a motion for summary judgment in the arbitration is the first week of July.  We are -- we have

asked for, as of this morning, and we hope to get both Valentine and Clark and numerous other -- call them migrating employee depositions before that time.

We also would like and I respectfully submit we need Mr. Hagerman's deposition before the deadline to move for summary judgment in arbitration.

So a part of me, your Honor, feels like we are all here on a fool's errand, that it's much harder to argue that we don't get to take Mr. Hagerman's deposition before the motion for summary judgment deadline and arbitration.  If that's agreed to, then we're really fighting about whether they put him up in the next week or two or whether they put him up in four or five weeks from now.

THE COURT:  Did you raise this before the arbitrator?

MR. NEUKOM:  We -- did we raise the issue of the Hager- -- I don't believe that we had gotten a refusal yet for the Hagerman deposition when we addressed the schedule with the arbitrator.

THE COURT:  Okay.  Well, so what -- what I think you're telling me -- which, again, none of this is in the letter to me, so I'm not sure how you all thought I was supposed to figure this out.  But when there's gaps, it's pretty confusing.

But I think what you're telling me now, Mr. Neukom, is

11

the reason why you want him now is because you want to have his testimony in support of your anticipated motion for summary judgment in the arbitration which is due the first week of July.

MR. NEUKOM:  Yes.

THE COURT:  You've sought his deposition in the arbitration, and they haven't said no yet, correct?

MR. NEUKOM:  We have only sought his deposition pursuant to the District Court proceeding.  I think it was a Local Rule that we asked for dates.  And we only -- we did that under the Northern District of California procedure rather than the arbitration procedure because the parties are agreed that discovery taken in one matter may be used in the other.  So --

THE COURT:  Is there a mechanism for discovery in the arbitration?

MR. NEUKOM:  Yes.

THE COURT:  Okay.  Why haven't you used that to get the deposition of Mr. Hagerman?

MR. NEUKOM:  Out of deference to the process, your Honor.  If we did that, I think we would be serving two sets of papers for the exact same deposition.  So we were simply choosing one mechanism to move forward with.  But that wasn't intended to frustrate the arbitration process.

THE COURT:  Well, I wonder, if you have a

12

deadline -- you don't have a deadline here.  This case has just gotten off the ground.  If you have a deadline of July for arbitration and you need that deposition for arbitration, then why aren't you moving in front of the arbitrator to say, you know what?  We need that deposition.

It seems like a much stronger argument for what may be an Apex argument before that forum.  I don't know.  But in this case, it's pretty strange to ask for an Apex before you've done hardly any -- you've gotten no discovery responses.  We're at the beginning of the case.  So why haven't you followed that process?

MR. NEUKOM:  Your Honor, we have chosen to engage our adversary in just one process.  It was -- would not have been my intention to do a duplicitous motion to compel.

THE COURT:  What do you mean duplicitous?  In front of the arbitrator?

MR. NEUKOM:  Asking for the exact same relief.  We only want one deposition with Mr. Hagerman.

THE COURT:  Nobody needs to hide that.  You can -- but it seems like it's more timely there.  Because if you have a set deadline coming up in less than a month and you need that deposition, you can explain to the arbitrator why you need it and that there is an actual deadline that drives your request.

In this case, discovery has barely started.  And under

13

the rules, discovery rules, I'm not sure that you've met your burden.

MR. NEUKOM:  Well, that's a good point, your Honor.  Let me address that.  The burden is actually not on Fortinet.

THE COURT:  It is.

MR. NEUKOM:  I think, according to case law cited by my adversary, for example --

THE COURT:  This is not the clearest area of the law.  So what we have are two competing concepts.  Fortinet, your client, only addressed one of them, which is that if you're trying to resist discovery, the burden is on you to explain why you're resisting it.

That concept lives -- is a broad concept, but it's difficult to reconcile with all the cases that you didn't talk about, Mr. Neukom, but that your opponent did, which have to do with the Apex doctrine.  Apex doctrine says, you know, because these can be so abusive, we want to make sure that the Apex officer can provide information that's relevant, that's nonrepetitive, and that you've done some other discovery to figure that out before you get there.

None of that has happened.  Okay.  So it's not okay to sort of cite one area of the law and not look at the whole body of law that would govern Apex depositions.

MR. NEUKOM:  If I may, your Honor.  I have a

14

binder behind me.  With the pleasure of the Court, may I move away from the podium for just a moment?

THE COURT:  Go ahead.

MR. NEUKOM:  Sophos cited a few decisions on the Apex rule and how it's applied.  Their lead case was the Apple v. Samsung decision from Judge Grewal, which was not about general discovery burdens but was very specifically about Apple's demand to take the depositions of six or so high-ranking Samsung executives.

From that court, from that decision cited by Sophos, the court wrote, quote, "The party seeking a protective order bears the burden of showing good cause for the order by demonstrating harm or prejudice that will result from the discovery," end quote.

And the next paragraph down, the court writes, quote, "In determining whether to allow an Apex deposition, courts consider" -- and the opinion then recites the two factors that I think are well known to everyone in this courtroom. "However, a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied.  Thus it is very unusual for a court to prohibit the taking of a deposition altogether, absent extraordinary circumstances."

THE COURT:  That's what I mean.  It's messy.  It is.  Those concepts live together in the law.  So there was no attempt, zero attempt by your client to show some of

15

these other factors.  And that's what was puzzling to me. Because it seems like in a week or two, you could have those answers.

It may well be, Mr. Cunningham, that your client needs to show up for deposition, and that is going to happen soon. But I don't have a record here to support the request.  All I have is sort of speculation and stuff that is not in the record, such as a February press release that supposedly -- I think you used the word "clearly shows" that Mr. Hagerman was involved in hiring decisions.

So again, I come back to -- I don't know that this is ripe in this court, but if you're using this court really in order to get the information for a looming dispositive motion in arbitration, maybe that's where that needs to play out.

MR. NEUKOM:  And your Honor, I don't mean to be playing fast and loose.  I need to be using it for both. For both this case and for the arbitration.

THE COURT:  That's fine.  And you can tell the arbitrator that.  You didn't tell me that until here in the hearing, but -- and I always encourage transparency, and most judges do.  Because usually if there's some big question mark, your mind fills in all kinds of blanks that may not be true.  We have to make assumptions where we don't know -- you know, because counsel haven't provided us with

16

information that seems pretty obvious.

So I encourage you, if you're going to talk to the arbitrator about it, explain straightforwardly, look, we're going to -- we only need the one deposition. We're going to use it in both cases. In this case, Mr. or Ms. Arbitrator, we have an urgent need. Okay.

And Mr. Cunningham, to be clear -- that's why I want to push you on when the discovery is going to be turned over. If it turns out that Mr. Hagerman is verified to be involved in some significant way -- I'm not going to quantify it, but in some way that makes it clear that he should -- this is not a harassing deposition. This is somebody who has facts that are relevant to the case. Then he's going to be deposed. And he might even be deposed quickly.

So when is the discovery going to be turned over?

MR. CUNNINGHAM: Your Honor, we are currently reviewing his e-mails and other documents. I expect those documents to be produced inside of one week. The production will occur in the arbitration, as Mr. Neukom pointed out. The documents -- we've agreed that the documents can be cross-used in both cases.

But -- and so I will commit to getting his documents to them as quickly as we possibly can. And if I can do it in a week, I will. But this is the very first time that I've heard through the meet and confer process, through creating

17

this letter that went to your Honor, that his deposition was necessary -- excuse me -- in the arbitration before a summary judgment deadline that's coming up in early July. There's been no request for any depositions that I'm aware of in the arbitration yet.

And obviously, we're going to use those depositions for multiple purposes in this litigation. But if it were an urgent need for a deposition in the arbitration, we should be in front of the arbitrator having this discussion and letting him decide what the correct sequence of depositions is.

Because that's really what this is about. It's a sequencing issue. It's take Mr. Valentine's deposition. He's the defendant in the arbitration. Take Mr. Clark's deposition.

THE COURT: Well, just a moment, Mr. Cunningham. I'm not -- Mr. Neukom's client has a right to ask for discovery here. I was merely pointing out that in arbitration, he may have more of a hook to actually get the deposition, given that I don't think you have fulfilled the factors or even tried to fulfill the factors that are the principles that guide this Court.

You may be able to fulfill them pretty soon. There's nothing that will stop him from renewing the request.

MR. CUNNINGHAM: Sure.

THE COURT: But I -- let me -- let me put this out there. Mr. Neukom, since this seems to be new to Mr. Cunningham -- and again, folks, you need to meet and confer in a real way. If this is the real reason you needed it, you should have told the Court and Mr. Cunningham so that we're not engaging in some kind of hide and seek here.

MR. NEUKOM: I appreciate that, your Honor. And I apologize. The joint letter was filed before the arbitration schedule was set, to the best of my memory. So we did not withhold it in any cat and mouse game with your Honor.

THE COURT: Joint letter was filed on -- less than a month ago. Arbitration schedule for summary judgment was set less than a month ago?

MR. NEUKOM: I believe that's right. And if I'm wrong on that, that's another innocent mistake. But I do not believe that we had the arbitration schedule at the time we submitted the joint letter.

THE COURT: Okay.

MR. CUNNINGHAM: Your Honor, my notes are that the arbitration schedule -- at least that the hearing and the motion for summary judgment deadlines were set on April 22.

THE COURT: Okay. So we'll do a little meet and confer right here. Mr. Neukom, what -- in order to facilitate the -- a faster production of information that

19

has to do with Mr. Hagerman, what do you need him to produce first?

MR. NEUKOM:  We need e-mails to and from Mr. Hagerman mentioning either Fortinet or any of the individual names of the poached employees.

THE COURT:  Is there a time frame that you want them to start on?

MR. NEUKOM:  Yes.  Starting September 2012, when Mr. Hagerman joined the company.

THE COURT:  Until when?  So at least -- I'm not saying this is the scope of discovery.  I'm just saying if you -- to get the information quickly, let's give Mr. Cunningham something to start with.  It doesn't define the limits of what you need to produce, but at least it gives you a starting point.  So --

MR. NEUKOM:  I would say until the end of February of 2014, your Honor.  And I -- which is two months after they filed suit.  However, in the amended complaint, we allege that their poaching activity actually accelerated upon the filing of the initial complaint.  So there is a reason why I'm asking for two months following suit.

THE COURT:  Okay.

MR. NEUKOM:  And obviously, I don't want any privileged documents, but I --

THE COURT:  Right.  What else could you ask for?

*Echo Reporting, Inc.*

So what I'm trying to get is, you may have asked for a lot of things, but if you want this to be a priority and you want Mr. Cunningham's team to be able to focus on what you need first, then you need to make sure that you're giving him focused information now and not asking for too much.

So beyond the e-mails that you just described, is there anything else that you need right away to be able to flesh out your motion here?

MR. NEUKOM:  I don't want to press my luck, your Honor, but I would ask for three more things.  Two and three would be e-mails from -- to or from Valentine or Clark, two of the vice presidents who moved from Fortinet to Sophos, mentioning Mr. -- pardon me -- Mr. Hagerman.  For each of them -- for Mr. Valentine, I would say from January 1, 2013 until the date he was hired, which would have been April 2013.  So that should just be a four-month period of time.

THE COURT:  Okay.

MR. NEUKOM:  And for Mr. Clark, I would ask for a search of mentions of Hagerman, Sophos to or from Valentine or Hagerman from January 1, 2013 until the end of 2013.  And that would cover the period in which Mr. Valentine moved over and then, so we allege, solicited Mr. Clark to move.

The fourth and final thing I would ask for is a substantive response to Interrogatory Number 6, where we've asked them to identify and describe communications that

21

Sophos has had with Fortineters, your Honor, which is the name my client has for its employees.

THE COURT:  Okay.  So that sounds like that's in a meet and confer process.  I don't know what the nature of the dispute is about the response.

MR. CUNNINGHAM:  Your Honor, let me just start at the top.  Number one is a subset of the documents that are currently being reviewed.  Number two and three, I will confirm following this conference -- requests two and three, I will confirm following this conference have been produced --

THE COURT:  Okay.

MR. CUNNINGHAM:  -- already.

Number four, we have agreed to provide a supplemental response to Interrogatory Number 6.  I don't know as I stand here what shape it's in, but I would expect -- today is Thursday.  I will commit to getting him a response to that interrogatory, a supplemental response by next Tuesday.

THE COURT:  Okay.  Supplemental response by -- let's see.  That's June 10th.  Okay.

And the production of the documents -- so of the three categories of documents two and three --

MR. CUNNINGHAM:  Two, I believe, are done.

THE COURT:  Two and three you believe are done. One that he asked for is a subset of what's already under

22

review, so that should make it even easier.

MR. CUNNINGHAM:  Right.

THE COURT:  So when can you produce that subset?

MR. CUNNINGHAM:  Well --

THE COURT:  It's got to be a period of less than a week, since a week was going to be the entire --

MR. CUNNINGHAM:  How about Wednesday, then?

THE COURT:  Okay.  Wednesday the 11th, you get the information.  You'll meet and confer.  If you need to refile a motion on an Apex deposition, then you'll do that.  If you -- either the information doesn't bear out Hagerman's involvement or it bears it out such that Sophos believes that they're not going to prevail on trying to block an Apex, then you won't need to come back.  Okay.

So that's the ruling.  So this -- the current motion is denied without prejudice to further discovery that's prioritized and being ordered in the next five days or whatever, through June 11th.  And then you're to meet and confer further about Hagerman's deposition.

The other thing I absolutely want you to talk about in that process, if it turns out that Hagerman's deposition is going to be taken, you're going to need to agree on is he coming back, is this the one shot, all of those things so that you don't -- you need to anticipate the potential problems that would arise from taking a deposition on the

23

early end of things.  Okay.

Is there anything further?

MR. NEUKOM:  No.  Thank you, your Honor.

MR. CUNNINGHAM:  No, your Honor.

THE COURT:  All right.  Thank you very much.

MR. CUNNINGHAM:  Thank you.

THE COURT:  Court is in recess.

(Proceedings were concluded at 1:26 p.m.)

24

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Thursday, June 12, 2014

*Echo Reporting, Inc.*