UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Donna M. Ryu, Judge


FORTINET, INC.,                    )
                                   )
          Plaintiff,               )
                                   )
vs.                                )     No. C 13-05831 EMC (DMR)
                                   )
SOPHOS, INC., et al.,              )
                                   )
          Defendants.              )
_____)

                                   San Francisco, California
                                   Thursday, March 26, 2015

  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
            RECORDING 11:36 - 11:58 = 22 MINUTES


APPEARANCES:

For Plaintiff:             Quinn Emanuel Urquhart &
                             Sullivan, LLP
                           50 California Street
                           22nd Floor
                           San Francisco, California
                             94111
                      BY:  JOHN M. NEUKOM, ESQ.

For Defendants:            DLA Piper, LLP US
                           401 B Street
                           Suite 1700
                           San Diego, California  92101
                      BY:  SEAN C. CUNNINGHAM, ESQ.

                                              *Echo Reporting, Inc.*

2

Transcribed by:                    Echo Reporting, Inc.
                                   Contracted Court Reporter/
                                   Transcriber
                                   echoreporting@yahoo.com

3

<u>Thursday, March 26, 2015</u>                                    <u>11:36 a.m.</u>

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Calling Case C-13-5831, Fortinet versus Sophos.

Counsel, please come to the podium and state your name for the record.

MR. NEUKOM:  Good morning, your Honor.

THE COURT:  Good morning.

MR. NEUKOM:  John Neukom on behalf of Plaintiff Fortinet.  And with me today is my colleague, Jordan Jaffe.

THE COURT:  Welcome.  Thank you.

MR. CUNNINGHAM:  Good morning, your Honor.  Sean Cunningham with DLA Piper for Defendant Sophos.

THE COURT:  Good morning, Mr. Cunningham.

MR. CUNNINGHAM:  Good morning.

THE COURT:  So I did order you back to private mediation.  I know you had a session with Mr. Kleinberg (phonetic).  Any developments to report in terms of any further idea or --

MR. NEUKOM:  Well, the last CMC before your Honor, the parties made some attempts to schedule a private mediation.  Unfortunately, we weren't successful in getting one on the books.  However, as of this morning, I believe Mr. Cunningham and I are agreed that we will be reaching out

4

to Judge Infante to ask him to conduct a private mediation for the parties.

THE COURT:  The only problem is, it usually takes him a few months to get on his calendar, but hopefully that will happen within the next -- I don't know -- couple of months maybe.

MR. NEUKOM:  We hope so.  I think, your Honor, the last time that I called Judge Infante's office, he was four to six weeks out on scheduling.  And we will -- we will get dates from his office shortly and confer with our clients and try to get something on the books.

THE COURT:  Good.

Let me also ask, the parties had agreed with respect to the implementation of the Federal Circuit advisory rules limiting claims and asserted prior art references that within 28 days after claim construction, you would get it down to the five claims for patent and the eight asserted prior references.

Has that happened?  What's going on with that?

MR. NEUKOM:  I believe, your Honor, that the parties' deadline to narrow their claims is Friday of this week.

MR. CUNNINGHAM:  I think that's right.

MR. NEUKOM:  So that -- that process is under way on both sides.

THE COURT:  Still on track.  We'll have it done by --

MR. CUNNINGHAM:  Yes, your Honor.

THE COURT:  And I see you have a discovery dispute about how to count the 100 hours or whatever it is that --

MR. NEUKOM:  We do, your Honor.

THE COURT:  And it sounds like Fortinet used up about 80 hours in connection with the arbitration; is that right?

MR. NEUKOM:  That is correct, your Honor.  By my count, 81 hours and 27 minutes for 20 depositions.

THE COURT:  It was 20 hours?

MR. CUNNINGHAM:  Yes, your Honor.

THE COURT:  Well, what more needs to be done in terms of the nonexpert?

MR. NEUKOM:  So -- a lot, your Honor, is the succinct and direct answer to that question.  In hopes it will help, let me start by giving what I hope to be a neutral, agreeable recitation of the background facts.

So Fortinet initially filed this case.  Fortinet and Sophos are competitors in the network security industry. And Fortinet's top ranking sales executive left to go to Sophos.  And for whatever reason -- and the parties have a dispute about those reasons -- about 10 or 12 employees subsequently moved from Fortinet to Sophos.

6

When Fortinet filed this case, it asserted six patents against Sophos, trade secret claims, breach of contract claims against Mr. Valentine and inducement claims against Sophos.  Mr. Valentine and Mr. Clark, the other individually named Defendant, asked to move Fortinet's claims against them at a private arbitration, which we all agreed to.

Early in this case -- I believe it was May of 2014 in a CMC before your Honor, the parties were in agreement.  And I believe it was commemorated in a Court order at least the following.  Number one, there would be only one deposition per witness across both the arbitration and the federal action.  Number two, there would be a 100-hour limit.

Now, in April of 2014, Fortinet started asking for depositions of fact witnesses from Sophos.  In May of 2014, Fortinet answered an interrogatory identifying its trade secrets.  The parties had a dispute about the sufficiency of those trade secret disclosures, and that dispute has been ongoing.

And not only has it been ongoing, I think it has been progressing.  Fortinet has served, I think, two supplemented trade secret disclosures, and the parties have had a series of good-faith, although spirited discussions between counsel about the sufficiency of those.

In the meantime, by the time we got to August of last year, there was still a dispute about the sufficiency of

7

Fortinet's trade secret disclosures.  So Sophos was -- and I don't begrudge Mr. Cunningham for this -- was refusing to give us fact discovery into certain of the state law claims pending here in the federal action.

In the meantime, we had an arbitration before Judge Komar, which was coming up awfully fast.  So Mr. Cunningham and I struck an agreement.  We have a different memory of what that agreement was.  For purposes of today, I will confine myself to, I think, the most narrow understanding of that agreement, which we share.  And that was that the parties would relax the rule of only one deposition per witness.

The practical result of that was that Fortinet could take the depositions it needed for its arbitration claims at the time so we could get that teed up for a hearing before Judge Komar in November, without being prejudiced at a second bite at the apple for some of those same witnesses for trade secret claims or other purposes here in the federal action.  Fortinet took those depositions, 20 depositions spanning 81 hours and 27 minutes.

Now, not only did we take those depositions, we used those depositions at the arbitration in front of Judge Komar.  All 20 of the depositions that I have in mind, the witness either testified live or the transcript was submitted to Judge Komar.

8

Not only were all of these 20 depositions used, Fortinet was awarded its costs for taking every single one of these depositions. Now, of course when Judge Komar granted Fortinet its costs for those depositions, that constitutes a finding that those depositions were reasonably necessary for the arbitration.

Now, where we are -- and I should say, Sophos was paid its costs for 16 of those 20 same depositions. In short version, the results of the arbitration were as follows. Fortinet prevailed on some, but not all of its claims against Mr. Valentine and was rewarded with compensatory, punitive damages, attorney's fees and costs, albeit less in damages than Fortinet sought. And as to Mr. Clark, Mr. Clark prevailed in the arbitration. Fortinet did not succeed in those claims.

Because of that, both Mr. Clark, for his defense of claims from Fortinet, and Fortinet for its success in its claims against Mr. Valentine, had the basis to ask for costs for reasonably necessary depositions for the arbitration.

We were awarded our costs for all of those, and Sophos was awarded the costs for every deposition that it asked for, which was 16 of the 20. There was no suggestion at the time that those cost awards should be discounted based on a cost use agreement or some sort of apportionment between a federal action and the arbitration.

9

Now, where we are today -- I think, your Honor, by Fortinet's slice, there are two ways to skin this proverbial cat.  First is guidance from the Court that the 20 depositions that Fortinet took of 81 hours and 27 minutes and the 12 depositions by my count that Sophos took totaling 22 hours and 46 minutes, that those will not be counted towards the 100-hour limit for this federal action.

An alternative solution would be to increase -- to say they count, but to increase the allowance for each side. And I guess what I'm focused on, your Honor, is not so much having a gotcha competition with Mr. Cunningham -- he and I both have been able to do that a few times -- but thinking practically about case management here.

Sophos has, just to put this into context, 53 witnesses on its most recently identified -- pardon me -- served initial disclosure list.  Of those 53 witnesses, Fortinet hasn't taken a deposition -- even a minute of a deposition of 38 of those 53 witnesses.

Of the remaining 15 that we have deposed, our depositions were focused on the arbitration claims.  And I'm quite confident that a reading of those transcripts would support that statement.

And of course, Sophos' initial disclosures includes the witnesses that they plan to use.  It's not even a complete roster of the folks whose deposition we need to take.  Now,

10

my point here is not to prove everybody right about the inefficiency of civil litigation and say that we need to take 70 depositions.  My point is that if Fortinet is not given an allowance for its efficient use of 20 depositions to prevail on some of its arbitration claims, that would put Fortinet in the position of having about 15 hours with 38 witnesses that Sophos has identified that we've not been able to touch at all, 15 more who we've not been able to touch on our federal action claims.

THE COURT:  How much of the 80 hours that was -- of depositions that were taken in connection with the arbitration preparation applies or is usable, has any application to the case here?

MR. NEUKOM:  Some of those will be applicable here, your Honor.  You know, we -- in arbitration, we were seeking to prove that Mr. Valentine and Mr. Clark breached their employment contracts.  In the federal action, we will be seeking to prove that Sophos induced them to breach their contracts.

So we will certainly get some good use out of that. But I -- you know, there's one final point.  And I don't want to test the Court's patience, but there's also been a change in perspective since May of 2014, when the parties set the 100-hour limit.

We all knew it was a big complicated case at the time.

There were 13 patents being asserted between these two competitors, trade secret claims, contract claims.  But what has become clear to us and what became clear to Judge Komar was the unusually tricky or intricate nature of discovering the facts here.

And if I may, your Honor, I'm going to read one sentence from Judge Komar's final award.  Quote:

"This was not a simple factual case, and claimant" -- or Fortinet -- "could not have proved its case without the considerable effort in searching voluminous records, tracing phone calls and e-mail messages and deposing the many employees who were Mr. Valentine's friends and associates."

What we've learned since May of 2014, your Honor, is that the alleged solicitation campaign, discovering it or seeking to prove it is not a matter of putting two e-mails up on the viewer screen for the jury.  We've got the use of cell phone text messages, the use of spousal cell phones to try to send undetected messages.

There was a dummy website set up for fake job applications to try to create the appearance of no solicitation.  We've gone through hundreds of pages of phone records.  There were special HR recruiting procedures put

into place in Sophos.

And I will admit, your Honor, in the last minute or two, I may have veered away from the neutral, factual recitation of the background here.  But this --

THE COURT:  It begs the question -- so you've done a lot of work.  I catch the drift.

MR. NEUKOM:  Yes.

THE COURT:  What more needs to be done here in this case?

MR. NEUKOM:  There has been almost no discovery into the patent claims on either side.  We have taken the deposition of two Sophos inventors in the U.K.  We are not asking for credit for those deposition hours.  We believe we're accountable for those under the 100-hour limit.

I believe from Sophos' end, they've taken the deposition of Doctor Neilson (phonetic) for claim construction purposes, but on neither side yet has there been any discovery into the background of the patents and the inventors and the inventions, the operation of the accused products, damages issues.  There has also been no documentary or deposition discovery into the trade secret claims.

So for purposes of the claims in the federal action, we are on both sides, especially for depositions, almost at the starting line.

THE COURT: Let me ask Mr. Cunningham. If you only look at those last two things, patent infringement and trade secret claims -- I know you've got 80 hours in your reserve. Do you expect to use all of that or what do you think you're going to --

MR. CUNNINGHAM: I don't -- no, I don't expect to use all 80 hours that we have left. It feels like it's more 50 or 60 hours that I need to do the discovery into the patent claims.

I had previously offered, if the parties wanted to agree to extend the limit to say 120 hours, we'd be happy to do that, which would leave them with roughly 40 hours left. But in our view, all of these depositions that were taken were subject to notices in this case and were taken under both auspices in the Northern District case and in the arbitration.

And virtually all of it is useable. And I'm certain that we won't reach agreement with Fortinet that certain portions of those deposition transcripts aren't usable in this litigation.

So your prior order to cross-use the depositions in this case and in the arbitration, we think still applies. And certainly nothing we agree to following the Court's CMC order had anything, in our view, to do with the number of deposition hours that folks would be allowed to expend.

14

So if your Honor was interested in ordering some increase in the total number of hours, we'd be happy to live with that.  But simply starting over at zero --

THE COURT:  Yeah.

MR. CUNNINGHAM:  -- is not something we care to do.

THE COURT:  Yeah.  Well, I'm not going to start over at zero.  I had already made clear at the outset that I anticipated cross-designation, cross-use.  But I think the -- so the critical issue at this point is, we're going to count, you know, I think those hours because I don't know how much of it is exactly usable, but there is substantial overlap with this case, and I anticipated that they would be used for dual purposes.

The question is, now that -- if it's accurate that there are 53 witnesses disclosed, 38 of whom have not been deposed and it's going to take -- you know, just on the patent on the nonarbitrated -- so the patent case and the trade secret case, that alone may warrant 50, 60 hours of some deposition work, it does seem to me that some expansion is warranted.  And I think the question is how much.

So I'm not sort of interested in exactly how many hours were used then, but let's -- I'm going to look forward at this point.  It seems to me that if we assume maybe 50 or 60 hours on the patent and trade secret claims and some amount

15

of time -- and I don't know if  you're going to need to depose all 38.  I have no idea who these people are and how critical they are and how much of those are patent-related and trade secret-related.  But, you know, if you had another 20 or 30 hours -- you've got 20 hours left on the clock, basically.

MR. NEUKOM:  I believe, according to -- I'm sorry, your Honor.  I didn't mean to interrupt.

THE COURT:  Well, you've got 20 hours left on the clock, and I said, you know, another 60, 70 hours is warranted.  That suggests, you know, a limit around 140, maybe 150.  It seems a bit high, but I mean -- and that's a simple way of doing it.  It's going to be more than you need, but --

MR. CUNNINGHAM:  Right.

THE COURT:  But it does take into account that, you know, you're going to be charged with some of the time that you use, understandably, and still keep some reasonable lid on this thing.

MR. CUNNINGHAM:  Your Honor, we'd be happy with 140 hours.  We won't use all of that, and we won't even come close, but if that's your Honor's preference, we're willing to accept that.

MR. NEUKOM:  Well, your Honor said 140 to 150. You may not be surprised to hear --

16

THE COURT:  I shouldn't have said that.  I should have just --

MR. NEUKOM:  I heard the 150 in there.

THE COURT:  Do I hear 145 somewhere?

MR. CUNNINGHAM:  Deal.

MR. NEUKOM:  I think, your Honor -- look, we will -- we will continue to try to be judicious, pardon the pun, with our use of deposition hours.  I do believe, because of the trade secret claims, the 13 patents, if your Honor moves the limit to 150 -- I'm not sure this is right, but according to a letter from opposing counsel, that would -- we only have 15 hours left.  So that would leave us with about 65 total.

I respectfully submit that keeps us on a pretty short leash for the remaining depositions.

THE COURT:  Given the apparent complexity of the arbitration proceedings and the number of -- you know, this is a very diverse suit with so many disparate kind of claims here, I will increase the limit to 150.  And obviously, you've already agreed that the one deposition per witness has been sort of waived in view of the -- but obviously, you're not going to go over the same questions, and I'm sure there will be objections if that happens.  But over new ground, that's fine.

MR. CUNNINGHAM:  Understood, your Honor.

MR. NEUKOM:  One small point of clarification, your Honor.  I don't mean to nip at the heels too much, but I would ask that on both sides -- we each took a deposition of the other's hired gun expert for damages.  It was a couple of hours on each side.

I think we -- I think we would all be in agreement that those two depositions have zero applicability or use.  For the court case and however we're adding up the hours, those two depositions on both sides should not be counted.

MR. CUNNINGHAM:  And the 150 hours, in my understanding, doesn't count experts anyway.

THE COURT:  Right.  I think it was meant for percipient.

MR. CUNNINGHAM:  For fact witnesses.  So --

THE COURT:  Right.

MR. CUNNINGHAM:  Yeah.  And I think we can come to an agreement that it's -- the experts are on a per-report basis.  So presumably, the experts will submit new reports in the District Court case, and we can redepose them on those.

MR. NEUKOM:  That's absolutely right.

THE COURT:  Yeah.  And I can't remember whether you had some agreement on experts, whether there was --

MR. CUNNINGHAM:  We did, your Honor.

THE COURT:  I thought there was.

18

MR. CUNNINGHAM:  We did.

THE COURT:  Somewhere in this big pile, I know that there's --

MR. CUNNINGHAM:  It's in here somewhere.

THE COURT:  I don't need -- it sounds like there's not a dispute there, and I think you can work that out.

MR. NEUKOM:  It's a nonissue.  I was wrong to have raised that.

MR. CUNNINGHAM:  It's seven hours for each issue upon which the expert provided an opinion.

THE COURT:  That's what it was.  Right.  All right.  Well, we don't need to change that.

MR. CUNNINGHAM:  Right.

THE COURT:  So in terms of scheduling, what's the next thing?  We've got -- the last day to hear dispositive motions is October.

MR. CUNNINGHAM:  Correct.

THE COURT:  Anticipating, I guess, probably -- I assume there's going to be some motion work before we get to trial?

MR. CUNNINGHAM:  Yes, your Honor.

THE COURT:  All right.  Well, all I can tell you is that the dates are still good here.  We're on.  And don't expect a continuance.  And with that, good luck with Judge Infante.

19

MR. NEUKOM:  Thank you, your Honor.

MR. CUNNINGHAM:  Thank you, your Honor.

THE COURT:  All right.  Thank you.

MR. CUNNINGHAM:  Appreciate it.

(Proceedings adjourned at 11:58 a.m.)

20

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Thursday, April 2, 2015