UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Donna M. Ryu, Judge

FORTINET, INC.,                    )
                                   )
          Plaintiff,               )
                                   )
vs.                                )    No. C 13-05831 EMC (DMR)
                                   )
SOPHOS, INC., et al.,              )
                                   )
          Defendants.              )
_____)

                              Oakland, California
                              Thursday, June 25, 2015

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
          RECORDING 11:21 - 11:42 = 21 MINUTES

APPEARANCES:

For Plaintiff:
                         Quinn Emanuel Urquhart &
                           Sullivan, LLP
                         50 California Street
                         22nd Floor
                         San Francisco, California
                           94111
                    BY:  JORDAN JAFFE, ESQ.

                         Nolan, Barton, Bradford &
                           Olmos, LLP
                         600 University Avenue
                         Palo Alto, California 94301
                    BY:  DANIEL OLMOS, ESQ.


          (APPEARANCES CONTINUED ON NEXT PAGE.)

APPEARANCES:  (Cont'd.)

For Defendants:
                              DLA Piper, LLP US
                              401 B Street
                              Suite 1700
                              San Diego, California   92101
                         BY:  SEAN C. CUNNINGHAM, ESQ.
                              DAVID KNUDSON, ESQ.


Transcribed by:              Echo Reporting, Inc.
                             Contracted Court Reporter/
                             Transcriber
                             echoreporting@yahoo.com

3

Thursday, June 25, 2015                          11:21 a.m.

                    P-R-O-C-E-E-D-I-N-G-S

                         --oOo--

          THE CLERK:  Calling civil case C-13-5831-EMC, Fortinet, Incorporated versus Sophos, Incorporated, et al.

     Counsel, please state your appearances.

          MR. OLMOS:  Good morning, your Honor.  Daniel Olmos from Nolan, Barton, Bradford and Olmos.  I'm here with Jordan Jaffe from Quinn Emanuel on behalf of Plaintiff, Fortinet.

          THE COURT:  Good morning.

          MR. OLMOS:  Good morning.

          MR. CUNNINGHAM:  Good morning, your Honor.  Sean Cunningham from DLA Piper on behalf of Defendant Sophos. And with me is David Knudson from my firm.

          THE COURT:  Good morning to you both as well.

          MR. CUNNINGHAM:  Good morning.

          THE COURT:  Okay.  Well, we're on for two discovery letters.  It's Letter Number 130 and 138.  I note that the parties filed a new discovery letter just the other day.  It might have been yesterday.  Yesterday or the day -- let's see.  It was due the 23rd.  It was filed at 3:00 in the morning on the 24th.  Okay.

     I get that there was a deadline and everybody was rushed to get that done.  It feels like a work in progress.

4

It feels like there's things that you were still meeting and conferring about.  So am I right about that, Mr. Olmos?

MR. OLMOS:  Yes, your Honor.

THE COURT:  Okay.

MR. CUNNINGHAM:  Yes, your Honor.

THE COURT:  All right.  So please finish your meet and confer.  I'll give you extra time.  But I think -- my sense is that you -- you'll be able to work some of this through, and I'd rather just have a clean understanding of anything that is still remaining.

How long do you need to do that and -- given the rest of the case schedule?  Meaning I think it needs to happen soon, but I don't know what else is on your plate right now.

MR. OLMOS:  Some of that may be impacted by the more substantive discussion that we're going to have.

THE COURT:  Okay.

MR. OLMOS:  So my preference would be to leave that particular question to the end of the hearing, if that's okay with the Court.

THE COURT:  Mr. Cunningham, is that okay with you?

MR. CUNNINGHAM:  That's fine.

THE COURT:  All right.

MR. CUNNINGHAM:  And I understand exactly what he means --

THE COURT:  Okay.

5

MR. CUNNINGHAM:  -- given what we discussed for the last hour.

THE COURT:  Okay.  So we'll revisit that.  What has been -- what have you been discussing for the last hour?

MR. CUNNINGHAM:  Good stuff.

THE COURT:  Okay.  Again, this seems to be a work in progress, 130 and 138.  I thought I understood what was still at issue, but then things seemed to shift.  I know there was new submissions I took a look at.

So what -- somebody tell me, what is the remaining dispute as to 130 and 138?

MR. OLMOS:  Your Honor, from Fortinet's perspective, there may not be a dispute over the substance of those letters.  I think that we have reached an agreement just in the last hour about the processes that will govern the production of the materials identified.

THE COURT:  Okay.

MR. OLMOS:  And we're happy to spell that out for the Court.  That -- to be perfectly frankly, we share the Court's frustration that this happened at the last minute.  It seems to happen a lot in this case.  But I think that for the benefit of the Court, Mr. Cunningham and I can walk through what we have tentatively agreed to today.

THE COURT:  Please do.

MR. OLMOS:  And then discuss how to kind of deal

with timing issues and the rest.

THE COURT:  Okay.

MR. OLMOS:  As the Court knows, what is at issue here is our ability to inspect digitally that we have been requesting for some time.  There are kind of two universes of that media.  One is what we'll call personal devices, devices that the individuals who left Fortinet to go to Sophos took with them in their personal capacity or retained when they left.

The second universe of media consists of the machines media that they obtained when they arrived at Sophos.  With respect to all of those machines, we are -- have agreed to -- we're entitled to an accounting of them.  If -- including whether there are individuals among those folks who left who will now claim they don't have any of those personal devices or if they were destroyed at some point in the last -- call it year and a half.

With that accounting, all of the devices will be delivered to Stroz Friedberg's San Francisco office by close of business Monday, this coming Monday, June the 29th.

THE COURT:  And that's the expert's office?

MR. OLMOS:  The expert's office in San Francisco on California Street.

THE COURT:  Okay.

MR. CUNNINGHAM:  Images of the devices.

THE COURT:  The mirror images.

MR. OLMOS:  Well, the previously made -- there are images, as the Court is aware, that were previously made of those -- of some of those devices or a great deal of those devices early last year.  We're requesting those and new images.  My understanding was that Stroz Friedberg would conduct the forensic imaging of those machines at its office.

THE COURT:  So there's some mirrored images that were done back in 2014.

MR. OLMOS:  Correct.

THE COURT:  What additional information?  If there's a device that has not yet been mirrored, you want that to be provided or do you want the devices to be represented for mirroring to update from early 2014?

MR. OLMOS:  The latter, your Honor.  And the reason for that is that an updated image can be compared to an image from early last year to determine whether there have been changes to the data contained therein.

THE COURT:  Okay.

MR. OLMOS:  So for many of these devices -- I understand not all -- for example, there was a device that was recently preliminarily inspected belonging to Mr. Gatis (phonetic).  And that was just imaged in the last month.  So we're not going to be requesting a new image of that.

8

But for those devices that were imaged, say, more than six months ago, we would like a new image.  And for the Court's benefit, we're talking about computers, removal storage devices that we've identified and cell phones.

MR. CUNNINGHAM:  Your Honor, can I -- there's just one point of clarification, based on the conversation that Mr. Olmos and I had about five minutes before you walked into the room.  Can I have just 30 seconds to confer with him to try and straighten it out?  Because I think we can.

THE COURT:  Okay.

(Pause.)

MR. OLMOS:  So your Honor, the Monday close of business deadline is for the already-produced images.

THE COURT:  Okay.

MR. OLMOS:  For the original machines, we will permit Sophos until the end of the week next week.  They have folks who live out of town, they have folks who live overseas.  So -- or who may be overseas, I suppose.  So getting some of those original machines by Monday may not be feasible.

THE COURT:  Okay.  And they don't have to present an original device if it's been imaged less than six months ago, right?

MR. OLMOS:  Correct.

THE COURT:  Okay.  All right.

9

MR. CUNNINGHAM:  And I believe, your Honor, the only image that applies to is Mr. Gatis.

THE COURT:  Okay.

MR. CUNNINGHAM:  The rest of them predate that.

THE COURT:  Okay.

MR. CUNNINGHAM:  There may be one other exception, but we can work that part out.

THE COURT:  Okay.

MR. OLMOS:  Both the old images and the new images, we'll call them, will reside with Stroz Friedberg under conditions that are satisfactory to both parties, but with no limitations on the parties' access to them, other than the reasonable restriction that Stroz Friedberg has.

For -- we'll call them the private devices, the non-Sophos machines, we will instruct Stroz Friedberg to run keyword searches as we see fit, to pull file names that we can then -- for which we can view the metadata and other high-level data, but not access the content of the file to determine which files we believe may be relevant and discoverable.

Then Stroz Friedberg will send a list of those files with that metadata to counsel for the Defendant.

THE COURT:  Okay.

MR. OLMOS:  That will trigger a 10-day deadline for the Defendant to respond with a privilege log, any other

objections to production of those materials.

THE COURT:  Okay.

MR. OLMOS:  And thereafter, production of those materials will occur in an expedited fashion, perhaps on a rolling basis.

For the Sophos machines -- I'll pause for a minute.

THE COURT:  No.  I'm good.  Thank you.

MR. OLMOS:  Okay.  For the Sophos machines, we will -- before running our keyword searches, we will provide a list of the search terms that we intend to use to counsel for the Defendant prior to our running them or prior to Stroz Friedberg running them.  And they will have a reasonable amount of time to respond.  We didn't talk about a deadline, but --

MR. CUNNINGHAM:  I was going to say three days.  Somewhere between 48 hours and three days.

THE COURT:  Okay.

MR. CUNNINGHAM:  Forty-eight hours is fine.

THE COURT:  All right.

MR. OLMOS:  Forty-eight hours to respond with any objections to the search terms.

THE COURT:  All right.

MR. OLMOS:  Absent objection, we go through the same process that I just described for the personal devices.

THE COURT:  Okay.

MR. OLMOS:  Our request, your Honor -- and the reason I said what I said at the beginning of the hearing -- so our request is because fact discovery has closed.  We've got expert report deadlines coming.

We believe there will be a substantial amount of new discovery material forthcoming in the next few weeks.  Our request, which I believe is a joint request, is -- and I don't know whether the Court -- this Court can do this, but to issue a freeze on deadlines for 20 days, and we'd commit to report to this Court at that 20-day deadline with our progress implementing these procedures.

THE COURT:  Which deadline specifically, your expert report deadlines?  And by the way, I don't have any power to change any of those things, but I think it would be useful to let me know what you're thinking about, in case Judge Chen were to call over to ask what's going on.  Okay.

MR. CUNNINGHAM:  I believe, your Honor, it's just the opening and rebuttal expert report deadlines that would be impacted.  Those are on June 30 and July 30.

MR. OLMOS:  So I think that counsel is right -- this is Daniel Olmos.  We're instructed to --

THE COURT:  Yes.

MR. OLMOS:  Counsel is right that those are the only deadlines that fall within that initial 20-day window. But with the understanding that we may ask for, you know,

additional freezes beyond that, as they become relevant and timely.

THE COURT:  Okay.  So thank yo for explaining that prat to me, but you need to put that in front of Judge Chen so that he can decide whether he wants to make adjustments to the case management schedule based on what's going on.

MR. OLMOS:  Yes.

THE COURT:  Okay.

MR. OLMOS:  But I suppose, your Honor, if we are reporting -- if this Court does order us to report back in 20 days, that will help us in terms of our communications with Judge Chen.

THE COURT:  Sure.  I can say if he grants that, then it can come back to me to report.

MR. OLMOS:  Well, I think regardless, your Honor, to be frank -- this is Daniel Olmos again -- that we would like to report to your Honor regarding this process that we have just -- that we are putting before the Court in 20 days, regardless of whether we get a freeze.  Because I hope we don't require a court intervention, but our preference is to come back to court in a defined period of time so there's some fire under the parties to do this.

THE COURT:  Okay.  Mr. Cunningham.

MR. CUNNINGHAM:  Yes, your Honor.  I just had a couple of things to add, and then I'll respond to that.

13

There was a reference to reasonable access to the images. Just to be clear, counsel for Fortinet will not have access to the original images, but will only have access, once we've produced the documents that they cull from the images. Just to be clear.

THE COURT:  In other words, after the -- if we're talking about the personal devices, after the keyword search process and the metadata list-over, the logging and objection process, Sophos will provide documents --

MR. CUNNINGHAM:  Correct.

THE COURT:  -- and that's the only source of content.  Is that what you're getting at?

MR. CUNNINGHAM:  Correct, your Honor.

THE COURT:  Okay.

MR. CUNNINGHAM:  That's our way of protecting the privilege.

THE COURT:  Okay.  All right.  And I see Mr. Olmos nodding his head in agreement that that's how that's going to work.

MR. OLMOS:  Yes.  Once we -- once -- once we are entitled to the files, we don't get to go to Stroz Friedberg and download the files ourselves.  They will be produced by Sophos, as they should be under discovery obligations.

THE COURT:  Right.  But I think the other concept that Mr. Cunningham is putting out there is, there doesn't

14

appear to be any instance in which Fortinet will be able to access content on the mirror images or devices.

MR. OLMOS:  That will happen at Stroz Friedberg by those experts, yes.

THE COURT:  Okay.  I'm sorry.  But not -- but just the expert is going to be looking.  Okay.

MR. CUNNINGHAM:  The expert and his staff is my understanding of how this is going to work.

THE COURT:  Okay.

MR. CUNNINGHAM:  This is Sean Cunningham.

THE COURT:  Okay.

MR. CUNNINGHAM:  The other couple of things I just wanted to add is, for the agreement on the personal devices, we're in full agreement.  We have no issues.  For the new protocol that we put in place in the last hour or so on the Sophos machines, I need to get permission from my client.

I tried to call my client.  He's in London.  I couldn't get through.  I'm sure he's probably at dinner.  I -- I promised Mr. Olmos that I would get an answer on the Sophos machines on this protocol by close of business tomorrow, and I will do that.

THE COURT:  Okay.  To the extent it helps, please let your client know that the judge thinks it's a good idea.

MR. CUNNINGHAM:  Thank you, your Honor.

THE COURT:  All right.

15

MR. CUNNINGHAM:  And I would suggest, although we didn't talk about this, that aside from relying on the transcript of these proceedings, that we actually submit to your Honor a stipulation that says, here's how it's going to work.

THE COURT:  I think that would be preferable.

MR. OLMOS:  This is Daniel Olmos.  I agree, your Honor.  We would prefer the Court's signature on an order to this effect.

THE COURT:  Okay.

MR. OLMOS:  We will provide that.

THE COURT:  Okay.  Great.  I'll keep an eye out for it.

MR. CUNNINGHAM:  And your Honor, finally, I do agree with the concept of some sort of reporting in, whether it be 20 days, 30 days, whatever your preference is.  But I do think that's a good -- a good way to proceed.

THE COURT:  If you're asking for a freeze on deadlines in front of Judge Chen for 20 days and that seems like a good -- that that would be the benchmark, I don't know that you need to come back to court.  What you should do is prepare a joint statement of progress or problems.  And then if I need to have you come in, I can have you come in so we can talk about it.

Because it's possible I'll be able to spare you a trip

16

if it's pretty straightforward or I can convene a phone call or something like that if it's -- if it's quick.  Okay.

MR. CUNNINGHAM:  And your Honor, what -- sorry. What I had in mind was just what I would call a joint status report.

THE COURT:  Yes.

MR. CUNNINGHAM:  It's submitted to your Honor within 20 days that says, here's the progress we've made.

THE COURT:  Perfect.  That sounds good to me.

Mr. Olmos?

MR. OLMOS:  That sounds good, your Honor.

THE COURT:  Okay.  All right.  Does that -- so now should we turn to the newer discovery letter or is there more to talk about on 130 and 138?

MR. OLMOS:  I think we can turn to the new discovery letter.

MR. CUNNINGHAM:  That's fine.

THE COURT:  Okay.  And I think the only outstanding question is when you want to submit a new -- a new letter that will replace it after you've had a chance to meet and confer a bit more.

MR. OLMOS:  I suppose what might make sense, your Honor -- this is Daniel Olmos -- is we use the same 20-day deadline.  And we won't conflate the two letters.  We will submit two letters, one on the issue that we've been

17

discussing today, the May 22nd and June 2nd letters, and a second -- a second distinct letter with respect to this June 23rd discovery letter.

THE COURT:  That seems pretty long, actually. Because I don't know -- I didn't have a chance to review it in any level of detail.  I know that there's some overlap, so some of the things like asking for whose devices are out there, if you have an accounting, that sounds like it'll be taken care of in this protocol that you're going to submit that you just described on the record.

But if there are a lot of other separate discovery disputes, I would hate to wait three weeks, essentially, if they're also going to have an impact on the case management deadline.  I just don't have enough information to be able to assess that.  But that's my concern.

If counsel tells me they're pretty tied up with each other, the different disputes and that there's really some synergy and 20 days makes sense, then so be it.  But I just don't want to create further possibilities of interference with Judge Chen's calendar.

MR. CUNNINGHAM:  Your Honor, what -- this is Sean Cunningham.  What about July 10th?  That's 11 business days from now.

THE COURT:  Mr. Olmos?

MR. OLMOS:  That's fine, your Honor.

18

THE COURT: Okay. July 10th. So you'll finish meeting and conferring. And this will be your replacement letter.

Is there anything else we need to cover?

MR. OLMOS: Can I have a moment to confer with counsel?

Just so we're clear, your Honor, with respect to our conversations with Judge Chen on scheduling, counsel -- we are agreeing on the record that the 20-day freeze at this point is in agreement by the parties. Is that fair, Counsel?

MR. CUNNINGHAM: That's fair. If Judge Chen will grant it, we'll support it.

THE COURT: So my suggestion is that you submit a stipulated request. My minute order from today is going to say that I instructed you -- that you asked for this, and I instructed you to make that request of the presiding judge, and that whether or not he grants that freeze, you are to file the status report with me within 20 days. That will give him a clue. Okay?

MR. CUNNINGHAM: Okay.

THE COURT: All right. And, you know, he may well call me just to check in about this. So -- anything further?

MR. CUNNINGHAM: Nothing from Sophos, your Honor.

19

MR. OLMOS:  Nothing for Fortinet, your Honor.

THE COURT:  Okay.  Thank you.

MR. OLMOS:  Thank you.  Thank you for your time.

(Proceedings adjourned at 11:42 a.m.)

20

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Friday, June 26, 2015