Pages 1 - 13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

| | |
|---|---|
| FORTINET, INC., a corporation, )<br>)<br>)<br>          Plaintiff,     )<br>)<br>    v.                    )<br>)<br>SOPHOS, INC., a corporation, )<br>MICHAEL VALENTINE, an        )<br>individual, and JASON CLARK, )<br>an individual,               )<br>)<br>          Defendants.   )<br>_____) | NO. 3:13-cv-05831-EMC-DMR<br><br><br><br>San Francisco, California<br>Thursday, July 23, 2015 |

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 10:38 a.m. - 10:53 a.m. =  15 minutes

**APPEARANCES**:

For Plaintiff:          Quinn, Emanuel, Urquhart
                          & Sullivan, LLP
                        50 California Street, 22nd floor
                        San Francisco, California  94111
                   BY:  **JOHN M. NEUKOM, ESQ.**

                        Quinn, Emanuel, Urquhart
                          & Sullivan, LLP
                        555 Twin Dolphin Drive, 5th floor
                        Redwood Shores, California  94065
                   BY:  **JORDAN ROSS JAFEE, ESQ.**


          (Appearances continued on following page.)

Transcribed by:          Leo T. Mankiewicz, Transcriber
                         leomank@gmail.com
                         (415) 722-7045

APPEARANCES:  (cont.)


For Plaintiff:          Nolan Barton Bradford & Olmos LLP
                        600 University Avenue
                        Palo Alto, California  94301
                 BY:  **DANIEL BENJAMIN OLMOS, ESQ.**


For Defendants:         DLA Piper LLP US
                        401 B Street, Suite 1700
                        San Diego, California  92101
                 BY:  **SEAN C. CUNNINGHAM, ESQ.**


ALSO PRESENT:  **Todd Nelson**
               Vice President - Legal, Fortinet, Inc.

Thursday, July 23, 2015

10:38 a.m.

P R O C E E D I N G S

THE CLERK:  Calling case C13-5831, Fortinet versus Sophos.  Counsel, please come to the podium and state your name for the record, and please say your name before you speak.

MR. NEUKOM:  Good morning, your Honor.  John Neukom on behalf of Fortinet.

THE COURT:  All right, good morning, Mr. Neukom.

MR. CUNNINGHAM:  Good morning, your Honor.  Sean Cunningham -- oh, I'm sorry, I stepped all over you.  Go ahead.

MR. NEUKOM:  With me today, your Honor, is Daniel Olmos, who is co-counsel for Fortinet, Jordan Jaffe, a colleague from Quinn Emanuel, and Todd Nelson, who's the Vice President of legal at the company.

THE COURT:  Thank you, and welcome.

MR. CUNNINGHAM:  Good morning, your Honor.  Sean Cunningham with DLA Piper for defendant Sophos.

THE COURT:  All right.  Thank you, Mr. Cunningham.

So I see we have a discovery-related issue, which may or may not impact on some deadlines, here.  Fortinet is asking for some additional discovery rights, and an extension of eight weeks -- is that eight weeks from the original deadline or eight weeks from today, or what's the request, here?

MR. NEUKOM:  Fortinet would prefer eight weeks from

today, your Honor.

**THE COURT:** Okay. Well, eight weeks from today is not going to work. I'm not moving the trial date, I'm not moving the pretrial conference, I'm not moving summary judgment; and so if we're going to move anything, I may be able to squeeze, at best, four weeks.

And looking at the deadlines, it seems to me there's -- and we can get into a dispute as to whether due diligence was exercised and how much of this delay was caused by failure to identify trade secrets quickly, et cetera, et cetera, but frankly, I want to move forward, not backwards, and if we extend the discovery cutoff for this additional discovery to August 20th, followed quickly by any supplemental expert disclosure as related to this discovery a week after, and then any response thereto -- a supplemental response thereto a week after that, that gets us right into the time when the summary judgment motion, if there's going to be one, is going to have to be filed. I calculate that's going to be filed on September 3rd, under the normal 35-day deadline, because in our scheduling order, that's got to be heard by October 8th.

So it compresses everything together. I don't know how much any summary judgment motion might be keyed to the expert stuff. It seems to me if you have to rely on experts, you've got a problem on summary judgment, but that does give you enough time from final discovery cutoff on non-expert

discovery, it still gives you a couple of weeks to prepare summary judgment papers and keep us on track for trial date.

And it seems do-able.  I mean, to the extent, you know, you want to take some supplemental depositions of custodians and 30(b)(6), I mean, that can be done in the next four weeks.

So that's my reaction, but I'll -- tell me if that's not workable, in your view, for some reason.

**MR. NEUKOM:**  Well, I make it a point, your Honor, to try to tell a federal judge that whatever he proposes is workable.

**THE COURT:**  Good.

**MR. NEUKOM:**  Fortinet is intent not to lose the trial date, so we're inclined to do whatever we can to make this work.  The only issue I would flag for your Honor is just the volume of data, and I'm not talking about the volume of data now in a -- the parties have another dispute, which -- our sanctions motions, which is pending, so I'm not trying to tread into that, but just where we're at today, last night, you know, with the forensic scanning data, that there's a protocol set up, and the protocol is, our vendor received image files and created new image files of these devices.

So our vendor has that data.  We're not -- we at Quinn Emanuel and at Mr. Olmos' law firm, we're not allowed to look at that data.  Instead, we then identify files and make a

request of DLA Piper.

We just put our first request across the door yesterday.  It's a very large number of files.  I think it's 400,000 computer files that we've identified with search terms like looking for things that say "Fortinet" and "confidential" and were accessed after the migrated employees' start date at Sophos.

So the reason I bring that up is just to say I do not want to test the Court's patience in the future.  At Fortinet we will work our tails off -- pardon the expression -- to get this done by August 20th, but I do want the Court to be aware of the quantity of work that will have to be done on both sides.

For example, Mr. Cunningham's team is going to have to -- well, they have the opportunity to conduct a privilege review before allowing us access to those 400,000 files nine days from now.

So it will be a sprint, on both sides.

MR. CUNNINGHAM:  I couldn't agree more.  Four weeks was what I had in mind when I walked up here.  I think we can do it.  It's just a question of us reviewing the documents, getting them to them in enough time for them to review them before the depositions occur, but I've been staring at my calendar while counsel was talking, and I think we can do it.  I think we can do it.

THE COURT:  And I know Judge Ryu is engaged, and is she available on an expedited basis if there are emergent, emergency sort of disputes, if you get into issues about privilege or form or something else?

MR. NEUKOM:  We have not asked Judge Ryu to be available on that basis.  However, watching the docket, she's fully engaged in this case and the discovery disputes between the parties.  So I don't -- I would be surprised if there was a timing issue on that end.

THE COURT:  All right.

MR. CUNNINGHAM:  I agree with that, your Honor.  She's been very responsive.

THE COURT:  Good.  Well, if there's no objection, I'm going to alert her to this new schedule and make sure she's aware of the compressed nature of this, and cancel any vacation plans she has.

MR. NEUKOM:  I hope that's not the case, your Honor.

THE COURT:  All right, let me ask -- and I forget where we're at, and I know you've tried ADR, as we get closer and closer to the trial date and completion of discovery, is there any more thought about further ADR in this matter?

MR. NEUKOM:  The parties met with Judge Infante at JAMS in San Jose last week on Wednesday.  Judge Infante has continued the mediation, and so it is an ongoing process, albeit through phone calls and e-mails and such.

THE COURT:  Ongoing, then, okay.

MR. CUNNINGHAM:  I don't think it reveals too much of the process, your Honor, to say that he has suggested that there be a meeting among the principals and him, without outside counsel present, as the next step.

MR. NEUKOM:  Mr. Cunningham and I have been excluded.

MR. CUNNINGHAM:  Been asked to take our ball and --

THE COURT:  I can't imagine why.  Well, as long as there's full disclosure and your clients know what to expect when they walk into Judge Infante's conference room, I think that's probably a good idea.

All right, well, I hope you proceed along those lines and continue to explore that.  Meanwhile, you can assure your clients that the trial date is the trial date.  We're not moving it and we're moving forward, and I'll get out a new minute order or some kind of order with the new scheduling that we just mentioned, so we're all on the same page.

MR. CUNNINGHAM:  Right.

MR. NEUKOM:  One final question from Fortinet's perspective, your Honor.  In addition to the extension for this targeted discovery, Fortinet has also asked for a handful of allowances that don't have to do with the deadline, but rather the substance of discovery.

You know, one of those is the deposition hours.  We've been before the Court on this issue before, and I certainly

don't want to test your Honor's patience, but we have a -- with this quantity of data and with 10 or 11 custodians, we have no intention of keeping these poor folks on the record for seven hours to exhaust their memories of elementary school, but we are going to need some time to ask them about these documents.

**THE COURT:** So how much time -- you say four hours supplemental depositions of each. Are you saying 10 or 11 times four hours?

**MR. NEUKOM:** That's right.

**THE COURT:** Then why do you need -- this is supplemental. You've already taken some custodian depositions, I take it.

**MR. NEUKOM:** That's absolutely correct, and here's why, your Honor. I think I can best answer this question anecdotally.

Four hours was our attempt to try to be quick and efficient about this. We have taken these folks' depositions before, but never with access to the Fortinet documentation, or what we allege is Fortinet documentation that they took with them, so Fortinet's competitor.

And just for example, we've got -- 12 of these individuals -- or 12 of the 14 custodians whose machines that we have collected have documents containing both the words "Fortinet" and "confidential" and that show an access date after they started Sophos. We've got files that show

"Fortinet" and "confidential" on Sophos-issued laptops is over 260,000 files.

We've got, so far -- this review is ongoing.  What I've learned through this process, your Honor, is that if I would like to retire early, I should open up a forensic scanning business.  So this work is ongoing with our vendor, but just for example, we have so far identified two former employees who each appear to have something like over 10,000 files containing the keywords "Fortinet" and "confidential" and that show an access date after their first day at Sophos.

Now, I am not planning, in four hours' time, or in any amounts of time, to go through 10,000 documents with any one of those witnesses, but given this new -- this volume of new, what certainly appears to be highly relevant stuff, we need some time to ask them about why they had those files and what they did with them.

THE COURT:  And these custodians are former staff or employees?

MR. NEUKOM:  That's right.  There were 10 Fortinet employees, including a handful of vice presidents and a number of sales engineers who, at different points in time, resigned from Fortinet and then accepted jobs at, or started jobs at Sophos.

THE COURT:  All right, Mr. Cunningham, what's your view?

MR. CUNNINGHAM:  Well, I think this is just a practical issue.  When we were here last, you increased the deposition hours on both sides to 150 from 100.  Our count is that they have 28 hours left on the clock, and if we're talking about 40 versus 28, that's not a material, in my view, a material difference in hours.  So if it's, you know, 4 times 10, you know, I'm not going to quibble over 10 or 12 hours of deposition time.

THE COURT:  Okay.

MR. CUNNINGHAM:  I don't think that's worth the Court's time.

THE COURT:  All right.  Well, is that about right?  Do you think you have about 28 hours on the clock still?

MR. NEUKOM:  That is consistent with my understanding.

THE COURT:  All right.  Well, then, I'm going to allow it.  To the extent you exceed that in order to take -- it sounds like these are material -- some material depositions with witnesses who may well be material, four hours for each of what sounds like 10 or 11 -- is that right?

MR. NEUKOM:  That's right, your Honor.

THE COURT:  To the extent that requires an extension of, you know, 12 hours or 15 hours, I'm going to allow that.  And there's a 30(b)(6) deposition that you want to take, as well?

MR. NEUKOM:  That's right, we would like to re-take

the Sophos corporate representative on their response to allegations of trade secret misappropriation, now that we have these materials.

**THE COURT:**  How long is that -- how long do you need for that person?

**MR. NEUKOM:**  I would say five hours for that deposition, your Honor, and if I can beat that, I will.

**MR. CUNNINGHAM:**  And it just occurred to me that there's some overlap there, because the witness we would likely put up is one of the former Fortinet employees.  So there may be some efficiencies to be gained by having that --

**THE COURT:**  Right.

**MR. CUNNINGHAM:**  -- come together.

**THE COURT:**  That witness may be wearing two different hats, I guess --

**MR. CUNNINGHAM:**  Yes.

**THE COURT:**  -- in two different phases, but --

**MR. CUNNINGHAM:**  Right.

**THE COURT:**  -- certainly some time for that.  We set a limit of five hours devoted to the 30(b)(6) hat.  That seems like a reasonable --

**MR. CUNNINGHAM:**  That's fine, your Honor.

**THE COURT:**  I assume that any written discovery, you can agree on a expedited basis.  I mean, as you mentioned, some additional interrogatories and requests for production,

I assume those are going to be narrowly tailored based on the new discovery, and that you can agree on some expedited response date so you can get this all done in time.

MR. CUNNINGHAM:  I'm sure we can do that, your Honor.

THE COURT:  All right?

MR. NEUKOM:  Agreed.

THE COURT:  Good.  All right, then, it sounds like the next time we meet may well be summary judgment hearing.  Is there summary judgment planned?  What's the plan at this point?

MR. NEUKOM:  Fortinet anticipates filing a motion for summary judgment, yes.

MR. CUNNINGHAM:  Same, your Honor.

THE COURT:  Well, I guess we'll see you back in October.

MR. NEUKOM:  Thank you.

MR. CUNNINGHAM:  Thank you, your Honor.

THE COURT:  All right.  Thank you.

10:53 a.m.

---o0o---

**CERTIFICATE OF TRANSCRIBER**

I, Leo Mankiewicz, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____  07/28/2015

        Signature of Transcriber          Date