# EXHIBIT 6

1  SEAN C. CUNNINGHAM, Bar No. 174931
   sean.cunningham@dlapiper.com
2  JOHN E. FITZSIMMONS, Bar No. 182467
   john.fitzsimmons@dlapiper.com
3  KATHRYN RILEY GRASSO, Bar No. 211187
   kathryn.riley@dlapiper.com
4  DAVID R. KNUDSON, Bar No. 265461
   david.knudson@dlapiper.com
5  KEVIN D. HARLOW, Bar No. 265565
   kevin.harlow@dlapiper.com
6  DLA PIPER LLP (US)
   401 B Street, Suite 1700
7  San Diego, CA  92101-4297
   Telephone:    619.699.2700
8  Facsimile:    619.699.2701

9  Attorneys for Respondents
   MICHAEL VALENTINE and JASON CLARK

BEFORE JAMS

FORTINET, INC., a corporation,

       Claimant,

       v.

MICHAEL VALENTINE, an individual;
JASON CLARK, an individual,

       Respondents.

REFERENCE NO. 1110016737

**RESPONDENTS' INITIAL PREHEARING BRIEF**

forth above, the evidence is that Mr. Valentine's and Mr. Clark's former coworkers affirmatively reached out to them about opportunities at Sophos. Once their former colleagues initiated contact, Mr. Valentine and Mr. Clark were permitted under California law to communicate with the employees, receive and consider their applications, and ultimately hire them. *Loral*, 174 Cal. App. 3d at 279-80. To the extent Fortinet contends otherwise, it is seeking to enforce the non-solicitation provisions as though they are unlawful and unenforceable "no-hire" agreements. *Thomas Weisel*, 2010 WL 546497, at *4.

### D. Fortinet's "Trade Secret" Allegations Are a Red Herring.

Fortinet has accused Mr. Valentine and Mr. Clark of breaching their employment agreements with Fortinet by "using Fortinet Trade Secrets." Arb. Demand (Valentine) ¶ 58; Arb. Demand (Clark) ¶ 50. But these allegations are nothing more than a distraction. First, Fortinet cannot even identify with reasonable particularity what its so-called "trade secrets" are. Second, Fortinet has no evidence—none—that either Mr. Valentine or Mr. Clark used any non-public Fortinet information in doing their jobs at Sophos, or for any other reason. And finally, both gentlemen will testify that their jobs and Sophos's competitive positioning are so different that any Fortinet information would be—and is—virtually useless in their current positions at Sophos.

## V. FORTINET SUFFERED NO DAMAGES FROM MR. VALENTINE AND MR. CLARK'S ACTIONS.

At the end of the day, Fortinet has suffered no damages from the actions of Mr. Valentine and Mr. Clark. The only legitimate measure of damages is the cost to replace the employees who were supposedly wrongfully solicited, or perhaps some showing of lost sales or revenue from the departures (the latter category being much more attenuated). But as Sophos is learning through discovery, Fortinet filled the vacancies left by the departing employees by dividing up their responsibilities among existing Fortinet employees or promoting existing Fortinet employees. So the "damages" from the departures is minimal or nonexistent. And by all public accounts, Fortinet's sales and revenues continue to rise, so Fortinet cannot claim it was "damaged" because 10 of its more than 2,500 employees left the company to join Sophos.

/////

-13-

## VI. CONCLUSION

Mr. Valentine and Mr. Clark look forward to addressing these issues at the upcoming arbitration. The claims against them are false and unfounded, and both gentlemen look forward to being vindicated for doing what California law permits them to do—change jobs and enhance their careers in the process.

Dated: October 17, 2014

                                  DLA PIPER LLP (US)

                                  By */s/ Kathryn Riley Grasso*
                                      SEAN C. CUNNINGHAM
                                      JOHN E. FITZSIMMONS
                                      KATHRYN RILEY GRASSO
                                      DAVID R. KNUDSON
                                      KEVIN D. HARLOW
                                      Attorneys for Respondents MICHAEL VALENTINE and JASON CLARK