PAGES 1 – 70

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


FORTINET, INC.,                )
                               )
            PLAINTIFF,         )    NO. C-13-5831 EMC (DMR)
                               )
   VS.                         )    THURSDAY, AUGUST 27, 2015
                               )
SOPHOS, INC., ET AL.,          )    OAKLAND, CALIFORNIA
                               )
                               )
            DEFENDANTS.        )    MOTION FOR SANCTIONS
_____)    DISCOVERY LETTER BRIEF

**BEFORE THE HONORABLE DONNA M. RYU, JUDGE**


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**
**RECORDING – 12:41 – 1:57 / 2:00 – 2:18 P.M.**

**APPEARANCES:**

**FOR PLAINTIFF:**          QUINN, EMANUEL, URQUHART & SULLIVAN
                            50 CALIFORNIA STREET, 22ND FLOOR
                            SAN FRANCISCO, CALIFORNIA 94111
                       BY:  JOHN M. NEUKOM, ESQUIRE
                            JORDAN R. JAFFE, ESQUIRE


**FOR DEFENDANT:**          DLA PIPER
                            401 B STREET, SUITE 1700
                            SAN DIEGO, CALIFORNIA 92101
                       BY:  SEAN C. CUNNINGHAM, ESQUIRE, ESQUIRE
                            DAVID R. KNUDSON, ESQUIRE, ESQUIRE


**TRANSCRIBED BY:**         DIANE E. SKILLMAN, TRANSCRIBER
                            510-451-2930

THURSDAY, AUGUST 27, 2015                          12:41 P.M.

P R O C E E D I N G S

**THE CLERK:**  CALLING CIVIL CASE C-13-5831 EMC, FORTINET, INCORPORATED VERSUS SOPHOS, INCORPORATED, ET AL.

PLEASE STATE YOUR APPEARANCES, COUNSEL.

**MR. NEUKOM:**  GOOD AFTERNOON, YOUR HONOR.  JOHN NEUKOM FOR FORTINET.  AND WITH ME TODAY IS MY COLLEAGUE, JORDAN JAFFE.

AND IF IT PLEASE THE COURT, OF THE ISSUES TO BE ADDRESSED TODAY, ONE OF THEM IS A CHALLENGE TO SOPHOS'S INTERROGATORY ANSWERS, AND MR. JAFFE WILL BE ARGUING THAT PORTION.

**THE COURT:**  GREAT.  GOOD AFTERNOON TO YOU BOTH.

**MR. CUNNINGHAM:**  GOOD AFTERNOON, YOUR HONOR.  SEAN CUNNINGHAM WITH DLA PIPER FOR DEFENDANT AND COUNTER CLAIMANT SOPHOS, AND ALSO INDIVIDUAL DEFENDANTS MICHAEL VALENTINE AND JASON CLARK.

**MR. KNUDSON:**  AND DAVID KNUDSON, YOUR HONOR, ALSO FROM DLA PIPER REPRESENTING SOPHOS AS WELL.

**THE COURT:**  GOOD AFTERNOON TO YOU BOTH.

**MR. CUNNINGHAM:**  I LET MR. KNUDSON INTRODUCE HIMSELF BECAUSE HE MAY STEP IN ON SOME OF THE ISSUES.

**THE COURT:**  GREAT.

OKAY.  FIRST THINGS FIRST.  MR. NEUKOM, I HAVE A NOTE AS A REMINDER TO MYSELF, THIS DOESN'T HAPPEN TODAY, BUT COULD YOU SEND SOMEONE TO TAKE BACK THE BOX -- THERE'S A BUNCH OF EXTRA

DOCUMENTS, THEY ARE DUPLICATE COPIES OF CHAMBER MATERIALS THAT WERE BINDERS.  AND IT COST THE COURT TO TRY TO DISPOSE OF THEM, SO IT WOULD BE GREAT IF YOU COULD SEND SOMEONE BACK TO MY CHAMBERS.  AGAIN, IT DOESN'T HAVE TO BE TODAY IF YOU ARE NOT EQUIPPED TO HANDLE IT, BUT HAVE SOMEONE COME BACK.

**MR. NEUKOM:**  THANK YOU, YOUR HONOR, WE WILL.  I APOLOGIZE FOR THAT.

**THE COURT:**  IT'S ALL RIGHT.  THANK YOU.

HERE IS HOW I WANT TO PROCEED.  WE'VE GOT THE MOTION FOR SANCTIONS AND THEN THERE'S THE DISCOVERY LETTER.  I WOULD LIKE TO COVER THE MOTION FOR SANCTIONS FIRST.

I HAD READ EVERYTHING, AND THERE WAS A LOT, COUNSEL.  I WILL -- WHAT I THINK MAKES SENSE IS I'M GOING TO CONCENTRATE FIRST ON THE, ESSENTIALLY THE MAY 1ST THROUGH JUNE 25TH CONDUCT THAT'S CHALLENGED BY FORTINET THAT IS THE BASIS FOR SECTION 1927 AND/OR INHERENT AUTHORITY SANCTIONS.  AND I'LL GIVE YOU MY THOUGHTS AND THEN I'LL LET YOU BRIEFLY RESPOND.

I SAY "BRIEF" BECAUSE I HAVE SPENT A LOT OF TIME ON THE MATERIALS.  SO THE RESOURCES THAT ARE DUE THE PARTIES IN LARGE PART HAS ALREADY BEEN SPENT IN CHAMBERS.  BUT I WILL LET YOU ARGUE BRIEFLY ON BOTH SIDES.

THEN I'LL TURN TO THE RULE 37 CHALLENGED CONDUCT.  SO THINGS THAT HAPPENED AFTER I ENTERED THE ORDER, STIPULATED ORDER ON HOW TO, HOW TO MANAGE THE VARIOUS DEVICES, AND THEN WE WILL TURN TO THE DISCOVERY MATTER.  OKAY?

SO STARTING WITH THE 1927 INHERENT AUTHORITY ARGUMENT.
THIS IS A VERY HIGH STANDARD.  FORTINET HAS TO SHOW BAD FAITH
UNDER EITHER ARGUMENT OR IN KNOWING, RECKLESS, FRIVOLOUS
ARGUMENTS OR MADE FOR HARASSING PURPOSES OR VEXATIOUS
PURPOSES.  SO THOSE ARE NOT WEAK STANDARDS.  THOSE ARE VERY
DEMANDING STANDARDS.  SO I TAKE IT VERY SERIOUSLY.

I WENT THROUGH FORTINET'S ARGUMENTS ONE BY ONE, WHICH I
WILL DO NOW.  SO FIRST OF ALL, FORTINET COMPLAINS THAT SOPHOS
MADE A REPRESENTATION IN BAD FAITH THAT ITS MAY 29TH
PRODUCTION WAS MORE COMPLETE, BUT THEN ENDED UP -- AND THAT
PRODUCTION WAS SOMETHING LESS THAN 500 DOCUMENTS.  BUT SINCE
THERE'S BEEN MORE THAN 800,000 DOCUMENTS PRODUCED AS OF THIS
DATE, THAT MUST HAVE BEEN MADE IN BAD FAITH.

AND FORTINET RELIES ON THE JUNE 2ND DISCOVERY LETTER.  AND
IT POINTS TO LANGUAGE WHERE SOPHOS SAID THAT IT HAS PRODUCED
ALL DOCUMENTS FROM THE SOPHOS-ISSUED COMPUTERS THAT ARE
POTENTIALLY RESPONSIVE TO FORTINET'S DOCUMENT REQUESTS RELATED
TO ITS CLAIM AGAINST SOPHOS FOR TRADE SECRET MISAPPROPRIATION.

THEN THERE'S A FOOTNOTE THAT TALKS ABOUT, WE'LL BE TURNING
OVER ALL PREVIOUSLY WITHHELD POTENTIALLY RELEVANT DOCUMENTS.
SO FORTINET CONSTRUES THAT TO MEAN THAT SOPHOS IS SAYING:
WE'VE LOOKED AT EVERYTHING AND WE'RE NOW GIVING YOU EVERYTHING
THAT'S RESPONSIVE.

BUT AS I LOOK AT THE LANGUAGE, WHAT SOPHOS SAID IN THAT
LETTER IS -- WAS RESTRICTED TO SOPHOS-ISSUED DEVICES, SO NOT

THE PERSONAL DEVICES.  SO THE FACT THAT THERE ARE, YOU KNOW, HUNDREDS OF THOUSANDS OF DOCUMENTS NOW DOESN'T TELL ME ANYTHING ABOUT WHETHER SOPHOS MISREPRESENTED THE SCOPE OF ITS PRODUCTION BACK ON MAY 29TH.

SOPHOS ALSO DIDN'T SAY IN THE LETTER THAT ITS MAY 29TH PRODUCTION WAS COMPLETE.  IT MERELY SAID:  WE'RE GOING TO TURN EVERYTHING PREVIOUSLY WITHHELD.  DIDN'T SAY WE'VE LOOKED AT EVERYTHING, BOTH SOPHOS-ISSUED AND PERSONAL DEVICES AND WE'VE NOW GIVEN YOU EVERYTHING.

SO I THINK -- MY TENTATIVE ON THIS IS I THINK THAT FORTINET IS OVERREADING WHAT SOPHOS SAID IN THE JUNE 2ND LETTER FOR THE REASONS I JUST GAVE.

THE NEXT IS THE ARGUMENT THAT SOPHOS MADE A REPRESENTATION THAT IT DID NOT HAVE POSSESSION, CUSTODY OR CONTROL OF PERSONAL DEVICES BELONGING TO FORMER FORTINET EMPLOYEES, AND THAT THIS WAS UNTRUE AND IN BAD FAITH BECAUSE ACTUALLY THEY DID HAVE THEM AND HAD MIRRORED -- TAKEN MIRROR FORENSIC IMAGES.  SO FORTINET RELIES ON SOPHOS'S RESPONSE TO THE REQUEST FOR INSPECTION.

SO I TOOK A LOOK AT THAT AND READ IT CAREFULLY.  SOPHOS FIRST OBJECTS GENERALLY, AND I QUOTE:

"TO THE EXTENT FORTINET SEEKS AN INSPECTION OF ITEMS NOT WITHIN THE POSSESSION, CUSTODY OR CONTROL OF SOPHOS".

SO IT'S A CONDITIONAL OBJECTION.  AND THEN SPECIFICALLY

SOPHOS OBJECTS ON THE BASIS THAT THE REQUEST SEEKS ITEMS THAT MAY BE OUTSIDE SOPHOS'S POSSESSION, CUSTODY OR CONTROL, AGAIN, DOESN'T SUGGEST THAT THEY DO OR DON'T HAVE ALL OF THEM.

AND THEN IN THE ACTUAL BODY OF THE SPECIFIC RESPONSE, AND THIS LANGUAGE IS NOT TERRIBLY CLEAR, BUT IT SAYS:

"TO THE EXTENT FORTINET IS SEEKING TO INSPECT THE FORMER FORTINET EMPLOYEES' PERSONAL COMPUTERS AND DEVICES, THOSE COMPUTERS AND DEVICES ARE OUTSIDE OF SOPHOS'S POSSESSION, CUSTODY OR CONTROL."

THAT'S WHAT FORTINET RELIES ON.  BUT FORTINET DOES NOT QUOTE THE NEXT SENTENCE, WHICH IS:  TO THE EXTENT ANY SUCH COMPUTER OR DEVICE IS WITHIN SOPHOS'S POSSESSION, CUSTODY OR CONTROL, THEN THEY ARE NOT GOING TO PERMIT INSPECTION UNTIL THERE'S A FULL COMPLIANCE WITH THE DISCLOSURE REQUIREMENT.

SO IT'S NOT THE CLEAREST STATEMENT I'VE EVER SEEN IN A DISCOVERY RESPONSE, BUT IT SEEMS PRETTY CLEAR.  AND I'M A LITTLE DISAPPOINTED THAT FORTINET LEFT THIS SENTENCE OUT.

IT SEEMS CLEAR THAT SOPHOS IS SAYING WE ARE MAKING THIS OBJECTION, BUT TO THE EXTENT THAT WE ACTUALLY HAVE THEM, WE ARE OBJECTING ON OTHER GROUNDS.

SO I DON'T TAKE THAT TO MEAN SOPHOS IS MAKING A REPRESENTATION TO FORTINET AND THE COURT THAT IT DOESN'T HAVE ANY OF THESE.  IT'S SAYING QUITE THE OPPOSITE.  IT'S SUGGESTING IT HAS SOME AND NOT OTHERS.

SO, AGAIN, I DON'T SEE THAT AS A BASIS FOR A FINDING OF

BAD FAITH.

THE NEXT CHALLENGE IS JUST SOPHOS'S CHANGING POSITIONS ON THE DEVICES OF OTHER EX-FORTINET EMPLOYEES.  AND FORTINET SAYS SOPHOS FIRST AGREED TO PRODUCE DEVICES FOR THESE FOLKS, AND THEN WITHIN A FEW DAYS RESCINDED THAT AGREEMENT.

SO I TURN TO THE DOCUMENTS.  AND, FIRST OF ALL, I LOOK AT DOCUMENT 130, WHICH IS THE MAY 21ST JOINT LETTER.  AND SOPHOS IS ARGUING ABOUT RES JUDICATA.  AND THEN IT SAYS:  BUT AS TO THESE OTHER EX-FORTINET EMPLOYEES, THERE'S NO RES JUDICATA ARGUMENT THERE AND WE WILL ALLOW A QUOTE "LIMITED INSPECTION" OF THOSE OTHER EMPLOYEES' COMPUTERS WITH APPROPRIATE INSPECTION PROCEDURES.  THERE'S SOME FOOTNOTE THAT TALKS ABOUT THAT.  SO LIMITED INSPECTION.

FORTINET READS THAT TO MEAN YOU AGREED TO GIVE US ALL OF THE DEVICES.

SO I DON'T THINK THAT'S WHAT IT SAID.  FIVE DAYS LATER, SOPHOS CLARIFIES THAT THEY ARE GOING TO ALLOW INSPECTION OF PERSONAL DEVICES IF THEY CONTAIN FORTINET -- RELEVANT FORTINET INFORMATION, BUT NOT SOPHOS-ISSUED DEVICES BECAUSE THAT'S ALREADY BEING REVIEWED AND DOCUMENTS ARE BEING TURNED OVER.

SO I DON'T SEE THAT AS A RESCISSION.  I DON'T -- IT WOULD ONLY BE A RESCISSION IF SOPHOS CLEARLY SAID WE'RE GOING TO GIVE YOU ALL OF THESE THINGS AND LET YOU LOOK AT EVERYTHING WITHOUT LIMITATION.  THAT'S NOT WHAT THEY SAID.  IT WAS A MUCH -- IT WAS A ONE SENTENCE MORE EQUIVOCAL STATEMENT.  SO,

AGAIN, I DON'T SEE BAD FAITH.

THE NEXT ONE, FORTINET CLAIMS THAT SOPHOS LIED BY SAYING IT ONLY HAD THE PERSONAL DEVICES FOR KRAUSE AND ACOSTA, BUT IN FACT IT HAD ALL OF THEM AND IT IMAGED ALL OF THEM.

SO THE MAY 27TH LETTER DOES NOT SAY THAT.  I READ IT, AND WHAT IT SAYS IS THAT SOPHOS IS STILL GATHERING DATA ON WHICH EX-EMPLOYEES HAVE PERSONAL COMPUTERS THAT MAY CONTAIN FORTINET DOCUMENTS.  AND THEN THEY SAID KRAUSE AND ACOSTA ARE AVAILABLE IF WE, YOU KNOW, FIGURE OUT THE PROCEDURES.

I DON'T READ THAT TO MEAN SOPHOS IS REPRESENTING THEY ONLY HAVE KRAUSE AND ACOSTA.  IN CONTEXT, AND AGAIN WHILE SOPHOS COULD HAVE BEEN CLEARER, IT SEEMS LIKE SOPHOS WAS SAYING WE'RE INVESTIGATING THESE OTHER PERSONAL DEVICES, PERHAPS THEY'RE LOOKING TO SEE IF THERE'S FORTINET-RELATED DOCUMENTS ON THERE, BUT THAT KRAUSE AND ACOSTA ARE READY TO GO.

SO I DON'T SEE THAT AS A MISREPRESENTATION TO FORTINET OR TO THE COURT.

ON THE CHALLENGE TO THE RES JUDICATA ARGUMENT, YOU KNOW, CANDIDLY IT WAS NOT THE STRONGEST ARGUMENT.  BUT EVEN IF IT WASN'T STRONG, IT WAS NOT FRIVOLOUS.  I DON'T THINK THERE'S -- IT WAS NOVEL TO ARGUE THAT DISCOVERY IN AN ARBITRATION HAS A RES JUDICATA EFFECT ON DISCOVERY IN CIVIL JUDICIAL PROCEEDING. THERE'S NO CASES ON POINT.  IT WAS NOT A STRONG ARGUMENT.

IT'S NOT A SANCTIONABLE ARGUMENT.  A SANCTIONABLE ARGUMENT IS WHEN THERE'S CLEAR GUIDING LAW AND IT IS NOT ARGUING FOR AN

EXTENSION OF THE LAW, IT IS MAKING AN ARGUMENT THAT IS FRIVOLOUS.  THAT'S NOT THIS.  AND EVENTUALLY THE ARGUMENT WAS DROPPED.

I WILL SAY APPARENTLY IT WAS DROPPED ON JUNE 1ST.  THE COURT NEVER LEARNED ABOUT IT.  NEITHER SIDE TOLD THE COURT, SO THE COURT GOT TO EXPEND LOTS OF RESOURCES TO PREPARE FOR THAT ARGUMENT ON JUNE 25TH.  THE COURT, IN READING THIS AND FINDING IT OUT, WAS NOT PARTICULARLY PLEASED ABOUT THAT, BUT THERE'S NOT A BASIS HERE FOR SANCTIONS AGAINST SOPHOS FOR MAKING THE RES JUDICATA ARGUMENT AND THEN DROPPING IT.

TURNING TO SOPHOS'S REFUSAL TO CONCEDE THE TWO JOINT DISCOVERY LETTERS.  FIRST, THERE IS THE RES JUDICATA ARGUMENT. AS I SAID, THEY ENDED UP DROPPING THAT AS A BASIS FOR WITHHOLDING INFORMATION.  THEY CAME UP WITH ANOTHER ONE.  I DON'T KNOW THAT THAT'S SANCTIONABLE.

THE SECOND LETTER FORTINET CHARACTERIZES IT AS BASICALLY MAKING DEMANDS THAT SOPHOS ENDS UP, YOU KNOW, CONCEDING TO ON THE COURTHOUSE STEPS.  BUT WHEN I REVIEWED THE DOCUMENTS, WHAT BECAME CLEAR IS A FEW DAYS BEFORE THE HEARING, FORTINET MAKES A PROPOSAL.  SOPHOS REJECTS THE PROPOSAL.  THERE IS SOME BACK AND FORTH.  BY THE TIME YOU END UP IN COURT THAT MORNING AND PRESENT THE PROPOSAL, IT'S CLEAR TO ME THAT THE PROPOSAL REPRESENTS A COMPROMISE ON CERTAIN ISSUES FOR BOTH SIDES.  SO FORTINET GOT A LOT OF WHAT IT ASKED FOR, BUT SOPHOS ALSO GOT SOME OF WHAT IT ASKED FOR.

SO I DON'T SEE THAT AS A BAD FAITH DISCOVERY LETTER THAT -- WHEREIN FORTINET WAS ASSURED TO WIN AND SOPHOS'S BEHAVIOR MADE YOU GO THROUGH THAT PROCESS.

THE LAST COUPLE OF POINTS THAT FORTINET COMPLAINS ABOUT, ONE WAS THE 30(B)(6) BEING FORCED ON JUNE 16TH, THE LAST DAY OF DISCOVERY WHILE THERE WAS STILL FORENSIC INVESTIGATION THAT WAS GOING ON.

YOU KNOW, IT WAS AGGRESSIVE, BUT WHEN I READ THE EMAILS BACK AND FORTH, IT ALSO SEEMED LIKE SOPHOS WAS OPEN TO THE ARGUMENT THAT THERE WOULD BE FURTHER DEPOSITIONS, WHY DON'T WE CROSS THAT BRIDGE WHEN WE COME TO IT.  THEY SAID THESE TWO THINGS, THE 30(B)(6) SOPHOS DEPOSITION DOESN'T HAVE OVERLAP NECESSARILY WITH WHAT'S GOING ON BACK IN THE INVESTIGATION WITH THE COMPUTERS.

AGAIN, AGGRESSIVE POSITION, BUT LET ME JUST SAY, OF THE FIRMS IN FRONT OF ME, INCLUDING THE TWO IN FRONT OF ME TODAY, YOU KNOW, THERE ARE AGGRESSIVE POSITIONS THAT ARE TAKEN; THAT DOESN'T MEAN THEY ARE SANCTIONABLE.

FINAL ONE IS FORTINET COMPLAINS THAT SOPHOS FRIVOLOUSLY ARGUED BURDEN TO PRODUCE THE DEVICES FOR INSPECTION WHEN IT TURNED OUT IT WASN'T BURDENSOME BECAUSE THEY HAD THEM ALL ALONG AND IT IMAGED THEM.

SO HERE, A COUPLE OF THINGS.  FIRST OF ALL, THE BURDEN OBJECTION, IT WAS ALMOST HARD TO FIND IN THE RECORD.  YES, IT WAS MADE.  IT WAS NOT THE FULCRUM, THE MOST IMPORTANT PART OF

SOPHOS ARGUMENT AROUND WHY IT WAS RESISTING OR INSISTING ON CERTAIN PROCEDURES FOR EXAMINATION OF THOSE DEVICES.

THE OTHER THING IS IT DID TURN OUT TO BE SOMEWHAT BURDENSOME BECAUSE EVEN AFTER THE IMAGES WERE TAKEN, THERE WAS THIS BACK AND FORTH OF DATA IMAGES THAT WAS MESSY AND INCONVENIENCING.

SO, AGAIN, IS IT -- WAS IT THE BEST ARGUMENT TO PUT OUT THERE IN LIGHT OF THE FACT THAT THEY HAD ALREADY IMAGED THEM? PROBABLY NOT.  WAS IT A LIE OR SANCTIONABLE?  NO.

SO MY TENTATIVE ON ALL OF THESE IS I SEE, YOU KNOW, WHAT I'LL CALL AGGRESSIVE LAWYERING, FOR LACK OF A BETTER WORD, BUT NOT CONDUCT THAT ARISES TO THE HIGH LEVEL OF BAD FAITH CONDUCT THAT WOULD JUSTIFY AN AWARD OF SANCTIONS UNDER SECTION 1927 FOR THE COURT'S INHERENT AUTHORITY.

MR. NEUKOM, I WILL ALLOW VERY BRIEF ARGUMENT ON THIS.

**MR. NEUKOM:**  THANK YOU, YOUR HONOR.  THIS IS JOHN NEUKOM.  I WILL BE BRIEF.  I KNOW YOUR HONOR KNOWS I'M JOHN NEUKOM, BUT FOR THE --

**THE COURT:**  YES, PLEASE DO THAT.  I APPRECIATE THAT.

**MR. NEUKOM:**  FORTINET RESPECTFULLY DISAGREES WITH SOME OF THE FINDINGS THAT YOUR HONOR HAS TENTATIVELY ANNOUNCED, ALTHOUGH IT IS CLEAR TO FORTINET COUNSEL THAT THE COURT HAS DEVOTED AN AWFUL LOT OF ATTENTION TO THIS AND FORTINET IS GRATEFUL FOR THAT.

RATHER THAN TILT AT THE PROVERBIAL WINDMILL ACROSS EVERY

POINT, I WOULD LIKE TO HIGHLIGHT A COUPLE OF POINTS FOR YOUR HONOR.

THE COURT:  OKAY.

MR. NEUKOM:  THE FIRST IS ON THE FIRST BUCKET, NAMELY, THE THREE STATEMENTS IN DOCKET NUMBER 138 IN WHICH SOPHOS STATED THAT IT HAD PRODUCED ALL POTENTIALLY RELEVANT DOCUMENTS FROM THE SOPHOS COMPUTERS.  I THINK YOUR HONOR IS RIGHT, AND I READ IT THE SAME WAY, THAT THAT WAS A STATEMENT OF A BLANKET PRODUCTION OF ALL POTENTIALLY RESPONSIVE DOCUMENTS JUST FROM THE SOPHOS-ISSUED LAPTOPS.

THE PROBLEM IS, EVEN IF THE STATEMENT IS LIMITED TO JUST THE SOPHOS-ISSUED LAPTOPS, IT'S WRONG.  AND IT'S WAY WRONG. AND --

THE COURT:  IT'S 160,000 DOCUMENTS WRONG.

MR. NEUKOM:  YES.

THE COURT:  OKAY.  BUT NOT NECESSARILY.  AND HERE'S WHERE -- I DID LOOK AT THAT.  BUT THERE'S A COUPLE OF THINGS.

FIRST OF ALL, THEY DON'T SAY WE'VE REVIEWED EVERYTHING.  I MEAN, THIS IS IN THE MIDDLE OF DISCOVERY.  THEY SAID:  WE'RE TURNING OVER PREVIOUSLY WITHHELD DOCUMENTS.  THEY ARE NOT REPRESENTING WE HAVE LOOKED AT EVERYTHING, THIS IS ALL THERE IS, WE ARE DONE WITH OUR REVIEW.

THE OTHER PART OF IT IS, IF WE GO BACK AND NOW SEE, WELL, 160,000 CAME FROM THOSE SOPHOS-ISSUED DEVICES.  FIRST OF ALL, SOME OF THEM MAY HAVE TURNED UP LATER, AS I SAID, BUT EVEN IF

THEY DIDN'T, THERE'S NO ANALYSIS TO TELL ME, WELL, YOU KNOW, ARE THESE DUPLICATES?  HOW DO THESE CORRESPOND TO THE DOCUMENTS THAT WERE ACTUALLY PRODUCED?

THERE'S NOTHING IN THE RECORD THAT REALLY CAN LEAD ME TO THE CONCLUSION THAT THEY LIED ABOUT... ABOUT WHAT THEY WERE TURNING OVER.

**MR. NEUKOM:**  I THINK THAT'S A GREAT POINT, YOUR HONOR, ABOUT THE LACK OF INFORMATION ON THAT VERY SPECIFIC POINT IN THE RECORD, BUT THAT IS, QUITE FRANKLY, BECAUSE YOUR HONOR MAY HAVE INFERRED FROM THE PAPERS THAT THERE IS A TEAM AT QUINN EMANUEL WORKING AS FAST AS THEY CAN TO PROCESS THROUGH THIS INFORMATION.

WE WOULD -- I THINK I HAVE AN INKLING OF THE WAY YOUR HONOR IS GOING TO COME DOWN ON THIS ASPECT OF OUR MOTION.  I WOULD ASK THAT THE COURT AT LEAST HOLD IN ABEYANCE THE ISSUE OF THE PROPRIETY OF STATEMENTS MADE ABOUT THE PRIOR PRODUCTIONS FROM THESE SOPHOS MACHINES BECAUSE WE ARE -- YOUR HONOR ASKED ME TO BE BRIEF, SO I WON'T DO IT, BUT I DO HAVE A SUMMARY OF SOME OF THE DOCUMENTS AND SOME OF THE EVIDENCE THAT WE HAVE BEEN DISCOVERING JUST IN THE LAST WEEK OR TWO FROM THESE MACHINES.

MR. CUNNINGHAM WOULD DISAGREE.  I THINK IT'S PRETTY POWERFUL EVIDENCE ABOUT NUMEROUS DOCUMENTS EXPRESSLY MARKED "FORTINET INTERNAL USE ONLY" WITH METADATA INDICATING ACCESS DATES AFTER THEY HAVE BEEN AT SOPHOS.  THEY ARE ON THEIR

SOPHOS MACHINES.

HOW THAT STUFF DIDN'T GET PRODUCED WITHOUT US HAVING TO FIGHT TWO MOTIONS TO COMPEL IS TROUBLING. AND THAT ACTUALLY LEADS ME TO MY LAST POINT, WHICH IS THIS HAS BEEN A TROUBLING EPISODE FOR US OR FOR ME.

I -- MR. CUNNINGHAM AND I HAVE CROSSED SWORDS A NUMBER OF TIMES, AND I UNDERSTAND WE ARE ALL ENGAGED IN ZEALOUS ADVOCACY. IF ONE REVIEWS THE WHOLE RECORD AND LOOKS AT THE HISTORY OF NUMEROUS STATEMENTS MADE OVER TIME AND, YOU KNOW, FOR EXAMPLE, ABOUT HAVING JUST THE KRAUSE AND THE ACOSTA DEVICES. AND I THINK YOUR HONOR SAID THAT THEY LIED WHEN THEY SAID THAT. IF WE DID, I DON'T THINK WE MEANT TO ARGUE THAT THAT WAS SUGGESTIVELY MISLEADING.

IF YOU TAKE THAT STATEMENT, THE STATEMENTS ABOUT YOU SHOULDN'T GET THE ACCESS TO THESE DEVICES BECAUSE WE HAVE ALREADY PRODUCED EVERYTHING FROM THEM. THE STATEMENTS ABOUT THAT SENTENCE WHICH I TOOK AS AN AFFIRMATIVE STATEMENT TO BE YOU'RE ASKING FOR PERSONAL WORK COMPUTERS? TO THE EXTENT YOU ARE ASKING FOR PERSONAL COMPUTERS, WE DON'T HAVE POSSESSION OF THEM.

TAKING THE PATTERN OF THIS, I THINK WE'RE PRETTY AGGRESSIVE ON BOTH SIDES. AND I CAN TELL YOU THAT ON THE QUINN EMANUEL SIDE ON BEHALF OF FORTINET, THIS HAS BEEN PEELING AN ONION. AND WE FELT -- OR THAT'S THE WRONG ANALOGY, MAYBE IT'S WE'VE BEEN CHASING OUR TAIL.

IF THIS PROCESS WERE TO HAVE UNFOLDED I THINK IN THE RIGHT, GOOD FAITH WAY, COUNSEL FOR SOPHOS COULD HAVE TOLD US WHERE THEY'D LIKE US TO STICK IT, PARDON THE EXPRESSION, IF WE WANTED FORENSIC IMAGED FILES, OR WE WANTED ACCESS TO THESE MACHINES, BUT THEY SHOULDN'T HAVE BEEN HIDING THE BALL ABOUT WHICH MACHINES THEY HAD ACCESS TO VERSUS DIDN'T, WHICH OF THEM THEY ALREADY IMAGED OR NOT, WHETHER THEY HAD SEARCHED FOR RESPONSIVE DOCUMENTS FROM THEM.

SO I PROMISED YOUR HONOR I WOULD BE BRIEF, AND I THINK I VIOLATED THAT PROMISE. SO I'M HAPPY TO TURN OVER THE MICROPHONE. BUT THERE'S A SECTION IN OUR OPENING BRIEF WHERE WE TALK A LITTLE BIT ABOUT THE TOTALITY OF THE CIRCUMSTANCES. AND THE TOTALITY OF THESE CIRCUMSTANCES HAS BEEN, AS I SAY, PERHAPS I'M WRONG, BUT ON MY END IT'S BEEN TROUBLING BECAUSE WE DON'T THINK THAT ON THIS ISSUE OUR ADVERSARY HAS BEEN FORTHRIGHT WITH US.

**THE COURT:** I WOULD PROBABLY AGREE WITH THE WORD "TROUBLING", OKAY? IN THIS SENSE, YOU KNOW, EVERYBODY DRAWS A LINE DIFFERENTLY ABOUT HOW THEY LAWYER. I'M NOT SURE THAT I PERSONALLY WOULD FEEL COMFORTABLE MAKING THE STATEMENTS THAT SOPHOS MADE ABOUT CERTAIN THINGS.

THEY WERE, TURN OUT IN HINDSIGHT AS I'M UNPEELING THIS, TO HAVE BEEN LESS THAN FORTHCOMING. AND I LIKE FORTHCOMING LAWYERS. THAT'S JUST A PERSONAL PREFERENCE.

BUT TROUBLING IS NOT BAD FAITH. AND IT'S SUCH A HIGH

STANDARD THAT THIS IS, YOU KNOW, THIS IS NOT A RULE 37 SITUATION.  AND FOR THAT REASON BECAUSE I COULDN'T FIND STATEMENTS THAT WERE FLAT OUT MISREPRESENTATIONS OR, YOU KNOW, LIES, I THINK WHAT YOU ARE TRYING TO ARGUE IS THAT IF YOU LOOK AT EVERYTHING, THEY HAVE JUST -- WE ARE NOT ABOVEBOARD.  THAT IS NOT, UNFORTUNATELY, ENOUGH TO MEET THE STANDARDS THAT I WOULD NEED TO MEET IN ORDER TO ISSUE SANCTIONS ON THAT CONDUCT.

**MR. NEUKOM:**  UNDERSTOOD.  FORTINET APPRECIATES YOUR HONOR'S ATTENTION TO THESE ISSUES.

**THE COURT:**  OKAY.

MR. CUNNINGHAM, ANYTHING ON THE SANCTIONS?  ON THE SANCTIONS THAT I JUST TALKED ABOUT?

**MR. CUNNINGHAM:**  YES, YOUR HONOR.  THANK YOU FOR THE TIME.

**THE COURT:**  YOU JUST WON.  ARE YOU SURE YOU WANT TO TALK?  IF YOU WANT TO, GO AHEAD.

**MR. CUNNINGHAM:**  YOUR HONOR, SO MY PERSONAL REPUTATION IS GETTING IN THE WAY OF PERHAPS MY JUDGMENT BECAUSE, YOU KNOW, WE'VE GOT COMMENTS THAT I'M PERSONALLY A LIAR, THAT I'VE MISREPRESENTED THAT I HAVE BEEN DECEITFUL, AND I FEEL LIKE -- I HAVE BEEN DOING THIS FOR ALMOST 22 YEARS NOW. I'VE NEVER HAD THAT KIND OF ALLEGATION LEVIED AGAINST ME.  NOT ONCE.

**THE COURT:**  I GUESS I DIDN'T TAKE IT AS LEVIED AT

YOU.  I DIDN'T SEE ANYTHING LEVIED AT YOU.

MR. CUNNINGHAM:  I'M LEAD COUNSEL.  THE BUCK STOPS WITH ME, YOUR HONOR.  AND I WROTE THE SENTENCE IN THE BRIEF THAT IS BEING DISCUSSED HERE.  I WROTE IT.  AND I STAND BY IT.

WHEN I SAID WE WENT BACK AND PRODUCED ALL PREVIOUSLY WITHHELD DOCUMENTS, THAT'S EXACTLY WHAT WE DID.  WE HAD HUMAN BEINGS ACTUALLY SIT DOWN AND REVIEW THE DOCUMENTS THAT HIT ON SEARCH TERMS FROM THOSE COMPUTERS.  WE MADE DECISIONS ABOUT WHAT WAS RESPONSIVE TO THEIR TRADE SECRET DISCOVERY RESPONSES -- DISCOVERY REQUESTS AND WHAT WEREN'T.  AND WE CREATED A PILE OF DOCUMENTS THAT WOULD BE PRODUCED ONCE THEY GAVE US AN APPROPRIATE 2019.210 STATEMENT.

I WILL SUBMIT TO YOUR HONOR THAT THAT STILL HASN'T HAPPENED, BUT WE'RE PASSED THAT POINT.

THE COURT:  WE ARE PASSED THAT POINT.

MR. CUNNINGHAM:  WE HAVE AGREED THAT THEY'VE MARGINALLY COMPLIED WITH THE STATUTE SO WE ARE INTO DISCOVERY NOW.

WHEN THEY WENT BACK AND STARTED DOING THEIR SEARCHES THROUGH THOSE SAME COMPUTERS, THROUGH THE IMAGES OF THOSE SAME COMPUTERS, THEY USED TERMS LIKE "FORTINET" AND "CONFIDENTIAL" TO DO THEIR SEARCHES.  SO THE FACT THAT THEY CAME UP WITH A WHOLE LOT MORE DOCUMENTS THAT HIT ON THOSE TERMS IS TO BE EXPECTED.

THE COURT:  I COMPLETELY AGREE WITH YOU.  THERE'S

NOTHING ABOUT THE AMOUNT -- AND YOU HEARD -- I DIDN'T RELY ON THAT.  I DIDN'T THINK THAT TURNING UP 800,000 DOCUMENTS TELLS ME A LOT BECAUSE YOUR ORIGINAL STATEMENT WAS ABOUT SOPHOS-ISSUED DEVICES.

MR. CUNNINGHAM:  CORRECT.  SO I GUESS I'LL STOP THERE, BUT THERE'S PLENTY MORE ABOUT THIS THAT TROUBLES ME TOO.

THE COURT:  WELL, THE SANCTIONS MOTION ONLY WENT ONE WAY.  I AM FINDING NOT SANCTIONABLE BEHAVIOR HERE.  BUT, YOU KNOW, TO THE EXTENT THAT YOU ARE REACTING TO MY COMMENTS THAT I WISH THAT SOME OF THE WRITING HAD BEEN MORE FORTHRIGHT, I UNDERSTAND THAT.  BUT I DID READ THROUGH THIS, AND WHILE NOT SANCTIONABLE, I THINK THERE ARE CERTAIN THINGS THAT COULD HAVE BEEN CLEARER.

MR. CUNNINGHAM:  OKAY.

THE COURT:  AND I WILL LEAVE IT AT THAT.

MR. CUNNINGHAM:  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  LET'S TURN TO RULE 37 SANCTIONS.

AGAIN, MR. NEUKOM, I'M NOT SEEING THE SANCTIONABLE BEHAVIOR.  WE HAVE THREE THINGS.  FIRST OF ALL, THE MISSING USB'S.  MY ORDER REQUIRES SOPHOS TO, YOU KNOW, TRY TO LOCATE THEM.  AND THAT'S WHAT THEY SAID THEY'VE BEEN DOING; THEY'VE BEEN LOOKING.  THEY HAVE GIVEN SOME EXPLANATIONS FOR WHY THEY HAVEN'T FOUND EVERYTHING THAT THEY THOUGHT MIGHT BE OUT THERE,

BUT USB'S ARE USB'S.  I MEAN PEOPLE DO LOSE THEM.  PEOPLE DO -- YOU KNOW, THERE'S A REASON WHY THEY MAY BE HARDER TO FIND.

I DON'T THINK THERE'S A GROUNDS TO FIND THAT THEY HAVE WILLFULLY -- THEY ARE WILLFULLY HIDING THINGS OR NOT LOOKING.

SO I CAN'T FIND THAT AS A BREACH OF MY ORDER.  IS THERE SOMETHING MORE THAT I AM MISSING?

**MR. NEUKOM:**  YES, YOUR HONOR.  AND LET ME -- SANCTIONS IS OBVIOUSLY A HOT BUTTON TOPIC BETWEEN COUNSEL IN JUST ABOUT ANY CASE.  I JUST WANT TO MAKE IT CLEAR TO THE COURT WHAT OUR PRIORITIES ARE HERE.

WHAT IS MUCH MORE IMPORTANT TO FORTINET IS THAT WE GET THE DISCOVERY THAT WE NEED RATHER THAN WE GET AN ORDER WHICH HAS THE WORD "SANCTIONS" IN IT.

WHAT WE WOULD LIKE ARE TWO THINGS:  NUMBER ONE, WE WANT AN ACCOUNTING.  AND WE WANT THE ACCOUNTING TO BE COMPLETE AND WE WANT IT TO BE RESPONSIBLE.  WE ARE FINDING SO MUCH ANECDOTAL EVIDENCE BASED ON OUR OWN RESEARCH THAT THIS ACCOUNTING IS INCOMPLETE.

WE HAVE RAISED IT WITH SOPHOS.  THEY HAVEN'T SUPPLEMENTED THE ACCOUNTING, I DON'T BELIEVE, UNTIL TODAY.  WE'VE GOT -- I'LL JUST GIVE YOUR HONOR SOME EXAMPLES.

ACROSS NUMEROUS IF NOT ALL OF THE FORMER FORTINET EMPLOYEES, WE HAVE STROZ FRIEDBERG DATA SAYING THAT THERE WERE A NUMBER OF USB DEVICES WHICH CORRESPOND TO OR APPEAR TO BE

BASED ON THE NUMBERS THUMB DRIVES.  AND I UNDERSTAND THAT COUNSEL FOR SOPHOS MAY NOT BE ABLE TO FIND THOSE.  I HATE TO THINK HOW MANY THUMB DRIVES I HAVE MISLAID, YOUR HONOR, BUT THEY NOW HAVE, BECAUSE OF OUR GUM SHOE WORK, THEY NOW HAVE A MENU OF USB DEVICES AND SERIAL NUMBERS OF WHAT KINDS OF DATA-PORTING INSTRUMENTS WERE PLUGGED INTO AND OUT OF THESE COMPUTERS.

AND WE WOULD LIKE FOR THEM TO MAKE AN ACCOUNTING FOR THAT, TO ACKNOWLEDGE IN A SIGNED PAPER THAT THESE USB DEVICES WERE PLUGGED INTO THESE MACHINES.  AND IF THEY CAN'T FIND THEM, THEY CAN SAY THAT.  BUT IT NEEDS TO BE IN THE ACCOUNTING.  BUT THE ISSUE HERE --

**THE COURT:**  CAN YOU TIE THAT BACK TO THE ORDER?  IS THERE SOMETHING IN THE ORDER THAT SAYS --

**MR. NEUKOM:**  YES.

**THE COURT:**  -- THAT?

**MR. NEUKOM:**  YES.  I AM LOOKING, YOUR HONOR, AT PARAGRAPH 5 WHICH READS AS FOLLOWS:

"SOPHOS, THROUGH ITS COUNSEL, WILL PROVIDE AN ACCOUNTING OF ALL DEVICES IN ITS POSSESSION RESPONSIVE TO THE REQUEST, INCLUDING ALL DEVICES CURRENTLY IN SOPHOS'S OR THE FORMER FORTINET EMPLOYEES' POSSESSION, ANY DEVICES THAT ARE RESPONSIVE TO THE REQUESTS BUT THAT NO LONGER EXIST AND/OR NO LONGER AVAILABLE, INCLUDING THE CIRCUMSTANCES OF WHY THEY ARE UNAVAILABLE, AND IDENTIFYING ANY EMPLOYEE," SO ON AND SO

FORTH. NOW --

**THE COURT:** AND JUST SO I UNDERSTAND, YOU'RE SAYING THAT YOU HAVE, THROUGH YOUR INVESTIGATIVE WORK, COME UP WITH A LOT MORE THINGS THAN ARE SHOWING UP ON THAT ACCOUNTING?

**MR. NEUKOM:** YES. AND, IN FACT, NOT JUST FROM STROZ FRIEDBERG, WE ALSO HAVE, BECAUSE THE DEPOSITIONS ARE HAPPENING AT A PRETTY HIGH CLIP, YOUR HONOR, WE HAVE SOME ADMISSIONS AS RECENT AS TWO DAYS AGO ABOUT EXTERNAL HARD DRIVES, LAPTOPS AND THUMB DRIVES, THE EXISTENCE OF WHICH ARE KNOWN TO THESE FORMER FORTINET EMPLOYEES, AND THEY ARE NOT IN THE ACCOUNTING EITHER.

IT HAS FELT TO US AS THOUGH -- LET ME JUST, TO BE PERFECTLY CLEAR WITH THE COURT. THERE'S TWO REASONS WHY WE WANT THE ACCOUNTING, RIGHT? ONE IS BECAUSE WHY THE LAW IS GREAT, WE WANT TO BE TRUTH SEEKERS. WE WOULD LIKE FOR THEM TO TELL US WHAT DEVICES EXIST AND WHAT DON'T SO WE HAVE THE LAY OF THE LAND.

THE SECOND IS, WE WANT TO HOLD SOPHOS ACCOUNTABLE FOR -- GIVEN WHAT WE HAVE BEEN THROUGH THE LAST COUPLE OF MONTHS, WE WANT TO HOLD THEM ACCOUNTABLE FOR WHAT DEVICES EXIST OR DID EXIST BUT YOU NO LONGER HAVE THEM SO THAT WE HAVE SOME SORT OF A TEMPLATE HERE SO THAT -- NOT TEMPLATE, BUT A BAR TO HOLD THEM ACCOUNTABLE TO.

AND WE DON'T HAVE THAT. I MEAN, WE TOOK A DEPOSITION ON MONDAY OF JASON ACOSTA. JASON ACOSTA WAS SHOWN HIS ACCOUNTING. IT WAS BOTH INCORRECT IN TERMS OF WHAT WAS LISTED

AND IT WAS INCOMPLETE IN TERMS OF WHAT WAS LISTED.

I HAVE A HARD TIME UNDERSTANDING HOW COUNSEL, IN A DISPUTE OF THIS SEVERITY WITH LAW FIRMS THIS IMPRESSIVE, AT LEAST ON THE SOPHOS SIDE, HOW YOU CAN HAVE SERVE THAT ACCOUNTING AFTER A COURT ORDER FORCING YOU TO ACCOUNT FOR EVERY DEVICE, INCLUDING THE ONES YOU NO LONGER HAVE -- IT TOOK US TWO MINUTES OF DEPOSITION Q AND A'S FOR HIM TO SAY:  THAT'S WRONG. THIS IS MISSING.  THIS IS MISSING.

THE WHOLE POINT, I THINK, OF THE COURT'S ORDER WAS, OR THIS ASPECT OF THE COURT'S ORDER WAS, SOPHOS NEEDS TO MAKE THAT ACCOUNTING, AND THEY SHOULD THEN BE HELD ACCOUNTABLE TO IT.  NOT TO MAKE AN OUTDATED OR PRETTY CASUAL STAB AT IT, WHICH WE THEN USE TO SHOW HOW INCOMPLETE IT IS IN THE WEEKS FOLLOWING.

**THE COURT:**  MR. CUNNINGHAM, WHAT EFFORTS HAVE BEEN TAKEN BY YOUR TEAM TO MAKE THE ACCOUNTING?

**MR. CUNNINGHAM:**  WE HAVE INTERVIEWED ON MULTIPLE OCCASIONS ALL OF THE FORMER FORTINET EMPLOYEES.  WE HAVE -- CONFISCATED IS THE WRONG WORD -- WE HAD THEM SEND THE DEVICES THAT THEY STILL HAVE TO STROZ FRIEDBERG FOR IMAGING.  WE HAVE HAD THEM CHECK EVERY SPOT THEY CAN FIND FOR MISSING USB DEVICES FOR, YOU KNOW, CARS, PURSES, DRAWERS, WHEREVER YOU MIGHT PUT AN USB DEVICE.

THE SITUATION WITH MR. ACOSTA IS UNFORTUNATE BECAUSE WE DID MAKE A MISTAKE.  HE TOLD US THAT HE HAD A WORK COMPUTER

AND A PERSONAL MAC. AND WE BROUGHT THOSE IN FOR IMAGING. THOSE HAVE BOTH BEEN IMAGED. THERE'S NO DISPUTE ABOUT THAT.

WELL, IT TURNS OUT THAT WHEN HE WAS REFERRING TO HIS MAC, HE WAS REFERRING TO A SECOND WORK COMPUTER THAT WAS ALSO A MAC. AND SO WE HAD A MISUNDERSTANDING WITH MR. ACOSTA ABOUT THE NUMBER OF COMPUTERS HE HAS.

ONCE WE FOUND THAT OUT, WE IMMEDIATELY SAID WE'LL SEND IT -- WE'LL SEND THAT WORK -- MAC WORK COMPUTER TO STROZ AND HAVE IT IMAGED AS WELL. IT'S GOING TO CONTAIN THE SAME DATA AS THE OTHER TWO DEVICES, BUT FOR COMPLETENESS SAKE, WE WILL CERTAINLY PROVIDE THAT COMPUTER. THEY HAVEN'T TAKEN US UP ON THAT OFFER YET, BUT WE'RE READY, WILLING, AND ABLE.

THIS IS NOT -- IT CAN'T BE AN ISSUE OF US TRYING TO WITHHOLD DEVICES THAT WE CAN OTHERWISE PUT OUR HANDS ON BECAUSE WE KNOW THESE PEOPLE ARE GOING TO BE DEPOSED, WE KNOW THEY ARE GOING TO ANSWER TRUTHFULLY ABOUT WHAT DEVICES THEY USE, SO THIS IS ALL ABOUT US TRYING TO GET STRAIGHT WITH OUR OWN EMPLOYEES.

ALL OF THE DEVICES THAT THEY HAVE USED IN THE LAST TWO, THREE, FOUR YEARS, AND MEMORIES ARE NOT PERFECT. PEOPLE KEEPING THINGS AROUND ARE NOT PERFECT. BUT WHAT I CAN TELL YOU ABOUT THE STROZ FRIEDBERG SCANS IS, WE DO KNOW THAT SOME OF THOSE DEVICES THAT SHOW UP AS STORAGE DEVICES BEING PLUGGED INTO COMPUTERS, TURN OUT TO BE THINGS LIKE IPHONES THAT HAVE STORAGE ON THEM.

SO WHEN WE'RE SAYING THERE'S 20 USB DEVICES THAT HAVE BEEN PLUGGED INTO A CERTAIN COMPUTER, WELL, FIVE OR SIX OF THEM MAY BE SMART PHONES THAT HAVE BEEN IMAGED OR LOST OR WHAT HAVE YOU.  SO SIMPLY SAYING "USB DEVICES" IS, I THINK, AN OVERGENERALIZATION ABOUT WHAT WE ARE TALKING ABOUT.

SO I'LL END MY COMMENTS BY SAYING IF THE COURT WANTS US TO SERVE A SUPPLEMENTAL ACCOUNTING OF DEVICES TO ACCOUNT FOR THE THINGS THAT WE HAVE LEARNED ABOUT SINCE THE ORIGINAL ONE, I'M HAPPY TO DO THAT.  I THINK, IN FACT, I THINK IT'S APPROPRIATE THAT WE DO THAT.

THE COURT:  THE COURT WANTS YOU TO DO THAT.

MR. CUNNINGHAM:  OKAY.

THE COURT:  WHEN IS AN APPROPRIATE TIME TO GET THAT DONE?  HOW HARD WOULD IT BE TO PULL IT TOGETHER QUICKLY?

MR. CUNNINGHAM:  MAY I CONFER WITH MR. KNUDSON?

THE COURT:  YES.

(PAUSE IN THE PROCEEDINGS.)

MR. CUNNINGHAM:  NEXT TUESDAY, YOUR HONOR?

THE COURT:  MR. NEUKOM?

MR. NEUKOM:  IF THAT'S THE SOONEST THAT MR. CUNNINGHAM CAN GET IT DONE BY, THEN FORTINET UNDERSTANDS THAT, YOUR HONOR.

THE COURT:  OKAY.  IS THERE ANYTHING THAT'S GOING TO BE PREJUDICED BY WAITING UNTIL NEXT TUESDAY?

MR. NEUKOM:  CAN I THINK ON THAT?  JUST ONE MOMENT.

LET MEET CONFER WITH MR. JAFFE ABOUT THE DEPOSITION SCHEDULE.

THE COURT:  OKAY.

(PAUSE IN THE PROCEEDINGS.)

MR. NEUKOM:  THERE IS SOME PREJUDICE, YOUR HONOR, DUE TO NUMEROUS DEPOSITIONS TOMORROW, BUT I DON'T THINK IT'S PREJUDICE THAT CAN BE AVOIDED ANYWAY AT THIS POINT GIVEN IT'S THURSDAY AFTERNOON.

THE COURT:  WHICH DEPOSITIONS ARE THEY?

MR. CUNNINGHAM:  THEY ARE SHROLL, DEHAVEN AND GATTIS. TWO IN DALLAS AND ONE IN IRVINE.

THE COURT:  IS THERE ANY WAY TO PROVIDE UPDATED ACCOUNTINGS AS TO THOSE INDIVIDUALS ONLY BEFORE THE -- THEIR DEPOSITIONS?

MR. CUNNINGHAM:  YES.  WE'LL DO THAT.

THE COURT:  OKAY.  AND THEN THE FULL UPDATED ACCOUNTING BY NEXT TUESDAY.

MR. CUNNINGHAM:  DONE.

MR. NEUKOM:  IF I MAY, YOUR HONOR, JUST FOR THE SAKE OF THE RECORD, MR. CUNNINGHAM MAY HAVE A -- MAY GIGGLE AT THIS, BUT I HAVE A FEW COMMENTS WHICH I HOPE ARE ACTUALLY HELPFUL TO THE PROCESS HERE.

THERE ARE SOME DEVICES THAT WE ARE AWARE OF INCLUDING BASED ON THE LAST COUPLE OF DAY'S TESTIMONY.

THE COURT:  OKAY.

MR. NEUKOM:  SO I WANT TO MAKE SURE THAT -- I DON'T

ASK MR. CUNNINGHAM TO CONCEDE THAT THESE SHOULD BE IN THE ACCOUNTING, BUT WHAT WE ARE AWARE OF.

THERE ARE A NUMBER OF USB DEVICES ACROSS ALMOST ALL OF THE FORMER FORTINET EMPLOYEES, AND I THINK COUNSEL IS WELL AWARE OF THAT.

MR. ACOSTA ALSO TESTIFIED EARLIER THIS WEEK TO AN EXTERNAL DRIVE AND ALSO TO VARIOUS OR NUMEROUS USB'S.  AND COUNSEL, IF IT HELPS, I'M LOOKING AT PAGE 57 AND 58 OF THE ROUGH TRANSCRIPT.  I BELIEVE HE ALSO TESTIFIED TO AN EXTERNAL DRIVE THAT HE TESTIFIED HE USED TO BACK UP FORTINET DATA -- PARDON ME, DOLPH SMITH ADDITIONALLY TESTIFIED EARLIER THIS WEEK ABOUT AN EXTERNAL DRIVE THAT HE USED TO BACK UP FORTINET DATA.  I AM LOOKING AT PAGES 19 THROUGH 21 OF HIS ROUGH.

MR. SMITH ALSO TESTIFIED TO HIS USE OF NUMEROUS USB DEVICES ON PAGES, PAGE 22 OF HIS ROUGH.

**MR. CUNNINGHAM:**  THAT WAS DOLPH SMITH?

**MR. NEUKOM:**  YES, DOLPH SMITH.

AND, COUNSEL, TO THE EXTENT I'M MISREPRESENTING THE SUBSTANCE OF THOSE DEPOSITION TRANSCRIPTS, IT IS INADVERTENT. I AM RELYING ON A MIXTURE OF MY OWN REVIEW OF THEM AND SOME REPORTS TO ME.

MR. ARCHER TESTIFIED YESTERDAY, I BELIEVE ON PAGE 13, TO AN EXTERNAL DEVICE NOT ON THE ACCOUNTING.  AND I'M NOT SURE IF ITS FROM STROZ FRIEDBERG OR FROM OTHER DISCOVERY THAT WE HAVE AN UNDERSTANDING THAT MR. GATTIS HAS USB WITH LABELS KINGSTON

AND MY PASSPORT FROM MAC.

**MR. CUNNINGHAM:** IS THAT IN SOMETHING -- MAY I ADDRESS COUNSEL, YOUR HONOR?

**THE COURT:** YES.

**MR. CUNNINGHAM:** IS THAT IN SOMETHING THAT WE'VE BEEN GIVEN SO WE CAN -- SO I DON'T NEED TO REMEMBER THAT?

**MR. NEUKOM:** EACH OF THESE?

**MR. CUNNINGHAM:** WELL, THE GATTIS ONE IN PARTICULAR.

**MR. NEUKOM:** IF IT'S NOT, JUST TO BE SURE WE WILL SEND YOU ANOTHER.

**MR. CUNNINGHAM:** OKAY. THANK YOU. I WANT TO SHOW HIM EXACTLY WHAT YOU ALL HAVE FOUND TO TRY AND JOG HIS MEMORY.

**MR. NEUKOM:** AND, FINALLY, JUST ONE NOTE OF CLARIFICATION ON THIS.

PART OF WHAT WE ARE LOOKING FOR IS THE ACCOUNTING SHOULD NOT JUST INCLUDE DEVICES THAT THEY HAVE BEEN ABLE TO DEFINITIVELY LOCATE AND IDENTIFY. WHAT WE ARE LOOKING FOR IN PART IS AN ACKNOWLEDGMENT THAT THERE ARE OTHER DEVICES -- I MEAN, CONSISTENT WITH THE REQUEST FOR INSPECTION IN DOCKET NUMBER 170, I BELIEVE, YOUR HONOR'S CORRECTED ORDER ON THIS, WE'RE LOOKING FOR AN ACKNOWLEDGMENT OR A DESCRIPTION TO THE BEST OF THEIR ABILITY OF WHAT DEVICES ARE OUT THERE OR MAY NO LONGER BE OUT THERE. THAT INCLUDES A STATEMENT ALONG THE LINES OF, I REMEMBER I USED TO HAVE A FORTINET BRANDED THUMB DRIVE AND I THINK I USED IT OVER THE HOLIDAY SEASON, BUT I NO

LONGER HAVE IT.

WE THINK THAT KIND OF INFORMATION SHOULD BE IN THE ACCOUNTING SO WE CAN GET AN UNDERSTANDING OF WHAT DEVICES ARE LEFT AND WHAT DEVICES ARE NO LONGER WITH US.

THE COURT:  I DON'T HAVE THE PARAGRAPH 5 THAT MR. NEUKOM REFERRED TO RIGHT IN FRONT OF ME, BUT MY RECOLLECTION OF WHAT HE SAID IS THAT THAT IS PART OF WHAT THE PARTIES AGREED TO AND I SIGNED OFF ON; THAT THERE BE AN EXPLANATION IF SOMETHING IS NO LONGER AVAILABLE.

DO YOU AGREE, MR. CUNNINGHAM?

MR. CUNNINGHAM:  YES.  THERE'S A PARENTHETICAL INCLUDING THE CIRCUMSTANCES WHY THEY ARE UNAVAILABLE.  SO I AGREE.

THE COURT:  SO THINGS LIKE, YOU KNOW, I GAVE TO SO AND SO, WHO GAVE IT TO HIS DAUGHTER WHO IS IN COLLEGE.  THAT'S SOMETHING THAT SHOULD BE PUT THERE SO THAT IF FORTINET WANTS TO FOLLOW UP ON THAT, THERE WOULD BE SOME MEET AND CONFER.

SO THE ACCOUNTING SHOULD INCLUDE DESCRIPTIONS OF ANYTHING THAT PEOPLE CAN REMEMBER AND A DESCRIPTION OF IF IT DOESN'T EXIST ANYMORE, WHERE THEY LOST TRACK OF IT OR HOW IT GOT DISPOSED OF.  OKAY?

MR. CUNNINGHAM:  I BELIEVE THERE WILL BE ONE, YOUR HONOR, THAT WILL SAY I DROPPED IT THROUGH THE HOLE WHILE I WAS ICE FISHING.

THE COURT:  OKAY.  WELL, THAT CAN BREAK UP THE

OTHERWISE SOMEWHAT TEDIOUS QUALITY OF IT ALL.

ANYWAY, I THINK YOU HAVE AN UNDERSTANDING OF WHAT IS EXPECTED AT THIS POINT AND THE DEADLINE FOR TURNING THAT OVER.

CAN WE NOW TURN TO THE DISCOVERY LETTER BEFORE I LET YOU GO?

**MR. NEUKOM:**  WELL, IF I MAY, YOUR HONOR, THERE IS ONE OTHER ASPECT OF THE RULE 37 MOTION WHICH IS NOT JUST OUR REQUEST FOR AN UPDATED ACCOUNTING, BUT OUR REQUEST FOR ACCESS TO AND TO IMAGE A NUMBER OF OTHER DEVICES.  AND IN A WAY, THAT'S ACTUALLY THE MOST IMPORTANT PART OF THE WHOLE KITTEN CABOODLE BEFORE YOUR HONOR.

**THE COURT:**  SO YOU STYLED IT AS A RULE 37, BUT IT SEEMS LIKE -- AND YOU'RE TALKING ABOUT THE HARD DRIVE FROM, SORRY --

**MR. NEUKOM:**  I CAN ACTUALLY GO THROUGH IT PRETTY QUICKLY IF THAT WOULD HELP, YOUR HONOR.

**THE COURT:**  WELL, LET ME JUST MAKE SURE I'M ON THE SAME PAGE WITH YOU, BECAUSE I HAD GONE OVER THIS.  HOLD ON.

(PAUSE IN THE PROCEEDINGS.)

THERE IS THE DOLPH SMITH EXTERNAL DRIVE, AND THEN CERTAIN COMPUTERS, I THINK THERE WERE FOUR OR FIVE, COMPUTERS AND PHONES THAT ARE UNAVAILABLE OR DAMAGED OR DELETED OR REFORMATTED, RIGHT?

**MR. NEUKOM:**  THAT -- THAT'S NOT -- JUST TO TRY TO SIMPLIFY OR CLARIFY THE ISSUES FOR THE COURT.

THERE ARE A NUMBER OF COMPUTERS OR DEVICES WHICH WE BELIEVE ARE AVAILABLE, UNDISPUTABLY (SIC) AVAILABLE, AND THOSE INCLUDE -- THAT'S WHAT WE WANT.  THOSE INCLUDE THE FOLLOWING.

FIRST, JASON ACOSTA'S SECOND WORK COMPUTER.  AS MR. CUNNINGHAM NOTED, THAT IN LIGHT OF THE DEPOSITION WHICH TOOK PLACE EARLIER THIS WEEK, THAT WILL BE PRODUCED, I BELIEVE, TO STROZ FRIEDBERG TOMORROW.

THERE IS, THERE IS ALSO AN EXTERNAL HARD DRIVE AND USB'S THAT MR. ACOSTA TESTIFIED TO.  WE WOULD LIKE PRODUCTION OF THOSE.

MR. ARCHER TESTIFIED TO A PERSONAL COMPUTER WHICH HE WIPED AND IS NOW BEING USED BY HIS WIFE.

THE COURT:  IS THIS IN THE RULE 37 SANCTIONS MOTION?

MR. NEUKOM:  I BELIEVE IT IS, YOUR HONOR.  YES.

MR. CUNNINGHAM:  I'M NOT SEEING IT, YOUR HONOR, ALTHOUGH I WILL NOTE THAT THE ACOSTA INFORMATION IS NEW.

THE COURT:  YEAH.

MR. CUNNINGHAM:  IT CAME OUT OF HIS DEPOSITION.

THE COURT:  THAT IS WHAT I WAS WONDERING.

MR. CUNNINGHAM:  THE ONE THING WHILE WE ARE LOOKING AND I WANT TO NOTE ON THE JASON ACOSTA WORK MACINTOSH IS THAT AN OFFER WAS MADE ON MONDAY AT THE CONCLUSION OF HIS DEPOSITION TO DELIVER IT TO STROZ OFFICES IN BOSTON.  AND WE'RE STILL WAITING TO BE TOLD THAT THAT'S WHAT WE SHOULD DO.

SO IF I'M BEING -- IF THE REQUEST IS BEING MADE OF ME

RIGHT NOW, WE WILL COMPLY WITH IT.

**MR. NEUKOM:**  IF NOBODY'S GOTTEN BACK TO ON THAT, THAT'S A MISCOMMUNICATION.  STROZ FRIEDBERG IS READY FOR MR. ACOSTA'S DEVICE.

**MR. CUNNINGHAM:**  OKAY.

**THE COURT:**  THERE'S SPECIFIC DEVICES IDENTIFIED ON PAGE 24 OF FORTINET'S MOTION.  MR. CUNNINGHAM, DO YOU HAVE THAT IN FRONT OF YOU?

**MR. CUNNINGHAM:**  THAT'S WHERE I AM, YOUR HONOR.

**THE COURT:**  OKAY.  SO IS THERE ANY PROBLEM WITH TURNING OVER THE DEVICES THAT ARE IDENTIFIED HERE FOR FORENSIC REVIEW OR EXPLAINING WHY THEY CAN'T BE?

**MR. CUNNINGHAM:**  YOUR HONOR, ON THE FIRST BULLET POINT, WE CAN EITHER PRODUCE THE DEVICE OR EXPLAIN WHY ITS NOT AVAILABLE.

**THE COURT:**  THAT'S THE ARCHER USB DRIVE?

**MR. CUNNINGHAM:**  WELL, ALL OF THE FIRST BULLET.

**THE COURT:**  ALL OF IT.

**MR. CUNNINGHAM:**  YES, ALL OF THOSE.

**THE COURT:**  OKAY.

**MR. CUNNINGHAM:**  AND MR. KNUDSON WILL THROW SOMETHING AT ME IF I SAY SOMETHING WRONG HERE.

ON THE SECOND BULLET POINT, THERE ARE A COUPLE OF ISSUES. AND THAT IS, WHEN THEY SAY "CLARK'S OLD PERSONAL LAPTOP, SO WHAT HAPPENED WAS, MR. DEHAVEN AND MR. CLARK SWAPPED

COMPUTERS.  AND WHEN THEY DID THAT, THEY WIPED THEM BOTH.

SO THEY TRADED COMPUTERS AND MR. CLARK GAVE MR. DEHAVEN'S OLD COMPUTER TO HIS NOW COLLEGE-AGE DAUGHTER WHO HAS IT AT COLLEGE AND IS USING IT.

I'M LOOKING FOR YOUR GUIDANCE ABOUT WHETHER THAT'S SOMETHING THAT I HAVE TO GO, YOU KNOW, BOTHER A COLLEGE FRESHMAN OR SOPHOMORE, WHATEVER SHE IS, GET HER COMPUTER AND IMAGE IT TO CONFIRM THAT THE WIPING THAT WAS DONE WAS EFFECTIVE.

I'M STRUGGLING WITH THAT ONE.

**MR. NEUKOM:**  HERE, IF IT HELPS, YOUR HONOR, HERE IS WHAT WE ARE LOOKING FOR FROM THOSE TWO DEVICES.

THIS LAWSUIT WAS FILED ON, I BELIEVE IT WAS DECEMBER 16TH OF 2013.  IF I'M WRONG ON THAT DATE, IT IS ONLY BY A COUPLE OF DAYS.

ACCORDING TO, I BELIEVE, MR. ACOSTA -- PARDON ME, MR. CLARK AND/OR MR. DEHAVEN'S TESTIMONY, THEY WIPED, COMPLETELY WIPED AND EXCHANGED THESE COMPUTERS, AS THEY TESTIFIED, FOR INNOCUOUS PURPOSES SOMETIME IN EARLY TO MID-DECEMBER.

AND WHAT WE REALLY WANT TO KNOW FROM FORTINET'S -- WE HAVE NO INTEREST IN INTERFERING WITH THIS POOR YOUNG WOMAN'S COLLEGE CAREER BY TAKING HER MACHINE FOR 24 HOURS.  I CAN ONLY IMAGINE HOW MUCH DATA A COLLEGE STUDENT HAS PUT IN HER COMPUTER IN THAT TIME.

WE WANT TO KNOW WHEN THAT IMAGE -- WHEN THE MACHINE WAS WIPED.  IF THAT MACHINE WAS WIPED ON DECEMBER 13TH VERSUS IF IT WAS WIPED ON DECEMBER 19TH, RIGHT, THE FORMER WOULD BE A COUPLE OF DAYS BEFORE THIS LAWSUIT, THE LATTER WOULD BE A COUPLE OF DAYS AFTER, FROM FORTINET'S PERSPECTIVE WE ARE GOING TO HAVE A BIG ISSUE.

SO WHAT WE WOULD LIKE, AND I AM TRYING TO THINK OF SOME PROPOSAL TO MAKE THIS WORKABLE.  IF WE CAN BE PROVIDED WITH AN ACCEPTABLE OR APPROPRIATE DATE AND TIME FOR MR. CLARK'S DAUGHTER AND MR. DEHAVEN'S WIFE TO SHOW UP WITH THEIR COMPUTERS, I THINK A STROZ FRIEDBERG PROFESSIONAL CAN PROBABLY HOOK UP TO THOSE COMPUTERS AND I BELIEVE CAN VERY, VERY QUICKLY DETERMINE WHAT THE INSTALL DATE OF THE OPERATING SYSTEM WAS, AND MAYBE TAKE A COUPLE OF SCREEN SHOTS.

AND IF IT TURNS OUT THE COMPUTERS WERE WIPED BEFORE THE LAWSUIT WAS FILED, THEN I'VE JUST WASTED A LITTLE BIT OF FORTINET'S MONEY ON STROZ FRIEDBERG.  IF IT TURNS OUT THEY WERE WIPED AFTER THE LAWSUIT WAS FILED, THEN WE'VE GOT WHAT WE NEED.  THAT'S --

**THE COURT:**  WHERE IS SHE IN COLLEGE?

**MR. CUNNINGHAM:**  WE DON'T KNOW WHERE.  I AM SORRY. MR. CLARK LIVES IN DALLAS, BUT I DON'T KNOW WHERE SHE GOES TO COLLEGE.

**THE COURT:**  IS STROZ FRIEDBERG NATIONAL?

**MR. NEUKOM:**  THEY ARE.  THEY HAVE GOT OFFICES ALL

OVER, INCLUDING, I BELIEVE, AT LEAST ONE IN TEXAS.

TO THE EXTENT THEY ARE NOT CLOSE TO HER, AGAIN, SHE MAY NOT WANT A STROZ FRIEDBERG GUY WITH A BACKPACK TO SHOW UP AT HER DORM ROOM.  HE CAN MEET HER AT STARBUCKS OR SHE CAN GO TO THE NEAREST STROZ FRIEDBERG OFFICE.  WE DON'T WANT TO INTIMIDATE THIS YOUNG WOMAN, WE JUST WANT TO SEE WHEN THAT MACHINE WAS WIPED.

**THE COURT:**  OKAY.  WELL, IT SEEMS LIKE THE PARTIES SHOULD MEET AND CONFER ABOUT THIS.  IF IT IS SOMETHING THAT CAN BE DONE WITHOUT DAMAGING HER WORK PRODUCT, HER STUDIES, AND CAN BE DONE WITH MINIMAL INCONVENIENCE TO HER, THEN IT'S SOMETHING THAT I WOULD LIKELY ORDER.

BUT I'LL LET YOU WORK IT OUT.  BECAUSE I'M ASSUMING YOU CAN AND YOU WILL BE IN A BETTER POSITION TO DO THAT ONCE YOU FIND OUT WHERE SHE IS IN SCHOOL AND HOW, YOU KNOW, HOW SOMEONE CAN GET OUT TO HER.  BUT IT SOUNDS LIKE THIS IS FIVE MINUTES, NOT KEEPING IT FOR A DAY.  CORRECT?

**MR. NEUKOM:**  I'M HOPEFUL --

**THE COURT:**  SAY 15 MINUTES.  NOT EVEN AN HOUR IS WHAT YOU'RE DESCRIBING.

**MR. NEUKOM:**  THAT'S MY CURRENT UNDERSTANDING, YOUR HONOR.  IF THAT UNDERSTANDING IS WRONG, I WILL RAISE THE ISSUE PROMPTLY WITH MR. CUNNINGHAM.

**THE COURT:**  OKAY.  PLEASE CHECK TO SEE EXACTLY HOW THEY DO IT, HOW QUICKLY THEY CAN DO IT, AND WHETHER THEY CAN

DO IT REMOTELY -- NOT REMOTELY, BUT --

**MR. CUNNINGHAM:**  ON-SITE.

**THE COURT:**  ON-SITE AT A PLACE OF THE STUDENT'S CHOOSING.  SAME WITH -- IS IT SOMEBODY'S SPOUSE?

**MR. NEUKOM:**  MR. DEHAVEN'S WIFE'S COMPUTER.

**MR. CUNNINGHAM:**  THAT ONE WILL BE LESS OF A PROBLEM, ALTHOUGH I DO WANT TO HEAR WHAT THE TIMING ASPECT AND THE GEOGRAPHY ASPECTS OF THIS IS.

BECAUSE WE THOUGHT WE HAD A PROTOCOL WORKED OUT FOR THE ACTUAL EMPLOYEES, AND IT TURNS OUT THAT A LOT OF THEM HAD TO MAIL THEIR COMPUTERS TO STROZ AND IT TOOK FOUR, FIVE, SIX, SEVEN DAYS FOR THEM TO GET 'EM BACK.  WE CAN'T DO THAT TO SOMEBODY'S COLLEGE KID.

**THE COURT:**  I DID READ ABOUT THAT AND I'M ANTICIPATING, BASED ON WHAT YOU ARE SAYING MR. NEUKOM, IT IS A FAR DIFFERENT PROCEDURE.  BUT IF IT TURNS OUT TO BE DIFFERENT FROM THE 15 MINUTES, I'LL COME MEET YOU AT STARBUCKS SCENARIO, THEN I THINK, YOU KNOW, THE FURTHER IT GETS AWAY FROM THAT, THE LESS INCLINED I WOULD BE TO ORDER AT LEAST AT THIS POINT.

**MR. NEUKOM:**  WE HAVE NO DOUBT, I SAY THIS WITH A TOUCH OF GALLOWS HUMOR, YOUR HONOR.  WE HAVE NO DOUBT THAT THESE MACHINES HAVE BEEN COMPLETELY WIPED OF ANY RELEVANT EVIDENCE THAT USED TO BE ON THEM, OR THAT WE BELIEVE WAS LIKELY ON THEM.

SO I DON'T THINK WE NEED TO TAKE A SCAN.  I THINK WHAT WE

NEED TO KNOW IS WHEN IT WAS REFORMATTED, AND I BELIEVE THAT CAN BE DONE QUICKLY.

THE COURT:  OKAY.  GREAT.

MR. CUNNINGHAM:  YOUR HONOR, ON ONE FINAL POINT.  I'M JUST SITTING HERE THINKING ABOUT THIS -- STANDING HERE THINKING ABOUT THIS.  IF IT WERE ME AND SOMEBODY WERE SENDING A STRANGER TO MY JUNIOR IN COLLEGE DAUGHTER'S, YOU KNOW, COLLEGE CAMPUS TO DO SOMETHING TO HER -- UNKNOWN TO HER COMPUTER, I WOULD WANT TO BE THERE.

SO I'M GOING TO ASK COUNSEL, BUT I WOULD ASK YOUR HONOR THAT IF MR. CLARK WANTS TO BE THERE TO SUPERVISE WHAT HAPPENS TO HIS DAUGHTER'S COMPUTER, I WOULD LIKE THAT TO BE PART OF THE PROTOCOL.

THE COURT:  I DON'T SEE ANYTHING WRONG WITH THAT, MR. NEUKOM, DO YOU?

MR. NEUKOM:  NOT ONE BIT, YOUR HONOR.

MR. CUNNINGHAM:  OKAY.

MR. NEUKOM:  THERE ARE ALSO, YOUR HONOR, A HANDFUL OF OTHER COMPUTERS WHICH ARE IN THE ACCOUNTING BUT WHICH HAVE NOT BEEN PRODUCED.

FOR EXAMPLE, CRAIG BRADSHAW'S PERSONAL COMPUTER, BEN ELLERING'S PERSONAL COMPUTER, DEAN SHROLL'S PERSONAL COMPUTER. THE EXPLANATION IN THE ACCOUNTING IS:  THESE WERE NEVER USED FOR FORTINET WORK AND THEREFORE THEY DON'T HAVE TO BE PRODUCED.

THAT'S ACTUALLY AN INCOMPLETE READING OF THE REQUEST FOR INSPECTION IN THE ORDER COMPELLING COMPLIANCE FOR THE REQUEST FOR INSPECTION.  ANY DEVICE WHICH WAS USED FOR FORTINET WORK OR FOR SOPHOS WORK NEEDS TO BE PRODUCED FOR SOME SORT OF INSPECTION OR SCAN.  AND I -- IF IT WOULD --

THE COURT:  I'M A LITTLE CONCERNED THAT I THINK -- I'M ALL FOR BEING EFFICIENT, BUT THESE ARE THINGS THAT ARE GOING BEYOND THE SCOPE OF WHAT WAS BEFORE ME.  AND I ACTUALLY HAVE A SETTLEMENT CONFERENCE WAITING RIGHT OUTSIDE THE DOOR.

SO ARE THESE THINGS THAT ARE -- THAT YOU RAISED IN THE PAPERS?

MR. NEUKOM:  I BELIEVE WE DID.  I DON'T HAVE THE PIN CITE FOR YOUR HONOR.

MAYBE I CAN TRY TO MAKE EVERYBODY'S LIFE EASIER.  WHAT WE WOULD LIKE IS IF YOUR HONOR CAN ENTER AN ORDER COMPELLING SOPHOS, RE-COMPELLING, IF YOU WILL, SOPHOS TO PRODUCE ALL PREVIOUSLY WITHHELD MACHINES SATISFYING ANY ASPECT OF THE RFI'S, AS ENFORCED BY DOCKET 170, THAT THAT STUFF NEEDS TO BE, NEEDS TO BE PRODUCED.

THE COURT:  MR. CUNNINGHAM, ARE THERE ANY SUCH THINGS?

MR. CUNNINGHAM:  CERTAINLY THERE ARE AT LEAST TWO, TWO COMPUTERS THAT WE HAVE BEEN TOLD WERE NEVER USED FOR FORTINET BUSINESS.  EVER.

THE COURT:  OKAY.  NOW I KNOW WHICH ONES YOU ARE

TALKING ABOUT.

MR. CUNNINGHAM:  RIGHT.  AND SOME OF THESE FOLKS ACTUALLY DON'T HAVE PERSONAL COMPUTERS AT ALL.  SO THEY DON'T HAVE AN ACCOUNTING TO GIVE.

THE COURT:  BUT THERE ARE SOME THAT YOU'RE SAYING WE ARE NOT GOING TO TURN OVER BECAUSE THEY HAVE TOLD US THEY DIDN'T USE THEM FOR FORTINET WORK.

MR. CUNNINGHAM:  THEY ARE PURELY PERSONAL COMPUTERS THAT THEY DID NOT USE AT FORTINET.

THE COURT:  DOES THE LANGUAGE OF THE ORDER ADDRESS THAT QUESTION?

MR. CUNNINGHAM:  WELL, IT SAYS:  ALL DEVICES IN ITS POSSESSION RESPONSIVE TO THE REQUESTS.

AND SO THE REQUESTS AND THE OBJECTIONS THERETO I HAD READ THEM AS BEING EITHER RELATED TO USE DURING YOUR EMPLOYMENT AT SOPHOS OR USE DURING YOUR EMPLOYMENT AT FORTINET.  I DIDN'T READ ANY REQUEST FOR INSPECTION THAT JUST SAID THAT YOU'VE EVER USED FOR ANY PURPOSE.

NOW, MAYBE I'M MISREAD THEM, BUT THAT'S HOW I TOOK THEM AND CERTAINLY HOW -- WHAT WE BASED OUR OBJECTIONS ON.

MR. NEUKOM:  I THINK THERE ARE TWO ISSUES.  I DON'T NECESSARILY DISAGREE WITH WHAT MR. CUNNINGHAM JUST SAID, BUT WHEN THE RFI'S SAY YOU NEED TO TURN OVER EVERY DOCUMENT -- EVERY DEVICE, PARDON ME, WHICH YOU'VE USED FOR -- THERE'S A NUMBER OF CRITERIA.  IF YOU USED IT FOR FORTINET WORK.  IF YOU

USED IT FOR SOPHOS WORK.  IF YOU EVER LOADED ANY FORTINET DOCUMENTS OR INFORMATION ONTO IT.

WHAT WE GET IN RESPONSE, RIGHT, SO THOSE ARE THREE CRITERIA.  THERE'S ACTUALLY FOUR OR FIVE.  BUT JUST FOR THE SAKE OF ARGUMENT, THERE ARE THREE CRITERIA THAT SPECIFY WHEN A DEVICE MUST BE PRODUCED.  WHEN THE ACCOUNTING SAYS, I'M NOT PRODUCING THAT DEVICE BECAUSE IT DOESN'T SATISFY ONE OF THE THREE CRITERIA, I'VE LEARNED TO GET PRETTY SUSPICIOUS IN THIS EXCHANGE.

SO I WANT TO KNOW WHY IS THAT NOT BEING PRODUCED TO ME. WHAT ABOUT THE OTHER CRITERIA?  IF THAT COMPUTER WAS USED, MAYBE NOT FOR FORTINET WORK, BUT IT WAS USED FOR SOPHOS WORK OR IF IT WAS USED FOR PERSONAL PURPOSES EXCEPT THEY ALSO LOADED A COUPLE OF FORTINET FILES ON THERE AFTER THEY LEFT FORTINET USING A THUMB DRIVE.

**THE COURT:**  OKAY.  CAN SOPHOS CERTIFY THAT IT DOESN'T MEET ANY OF THE CRITERIA OR IF IT DOES, TURN IT OVER?

**MR. CUNNINGHAM:**  YES, WE CAN DO THAT.

**THE COURT:**  HOW SOON CAN YOU DO THAT?

**MR. CUNNINGHAM:**  I'M GOING TO A SAY TUESDAY AGAIN.

**THE COURT:**  OKAY.

**MR. CUNNINGHAM:**  WITHOUT EVEN CHECKING.

**THE COURT:**  ALL RIGHT.  OKAY.  ANYTHING MORE BEFORE WE TURN TO THE DISCOVERY LETTER?

**MR. NEUKOM:**  NOT FROM FORTINET, YOUR HONOR.

THE COURT:  MR. CUNNINGHAM?

MR. CUNNINGHAM:  NO, YOUR HONOR.

THE COURT:  OKAY.

MR. NEUKOM:  WELL, SORRY, YOUR HONOR, JUST ONE LAST COMMENT.

I THINK I KNOW WHERE YOUR HONOR'S HEADED ON THIS, BUT WE WOULD ASK -- AS I SAID BEFORE, THE MOST IMPORTANT RELIEF WE WERE SEEKING TODAY IS ORDERING SPECIFIC PERFORMANCE, IF YOU WILL, OF SOME OF THESE DISCOVERY REQUESTS.

WE ARE AT THE PLEASURE OF THE COURT ON THE ISSUE OF FEES. WE HAVE TRIED TO GET THESE ISSUES RESOLVED.  IT HASN'T BEEN AN AVAILING PROCESS.  WE WOULD ASK YOUR HONOR TO CONSIDER THAT IN FASHIONING THE APPROPRIATE REMEDY TO MAKE SURE NOT JUST THAT FORTINET IS GETTING THE DISCOVERY IT ASKS FOR, BUT THAT THERE IS SOME ACCOUNTABILITY FOR DISCOVERY PRACTICE WHICH IS MAKING -- WHICH IS MAKING US TO HAVE TO COME TO YOUR HONOR'S COURTROOM TO GET THIS STUFF DONE.

AND I THINK YOUR HONOR IS PRETTY WELL BRIEFED ON THE BACKGROUND OF COMMUNICATIONS, SO I DON'T NEED TO REHASH THAT, BUT WE DO ASK YOUR HONOR, AGAIN, TO CONSIDER THAT ISSUE.

THE COURT:  OKAY.  WELL, I WILL TAKE A LOOK BACK AT WHETHER THERE WAS A VIOLATION OF MY ORDER IN ANYTHING THAT YOU JUST ASKED ME TO ADDRESS.  AND IF THERE IS, THEN IT'S POSSIBLE THERE WOULD BE SANCTIONS THAT ARE ISSUED.

BUT I'M NOT SURE THAT THERE IS A -- IT SEEMED TO ME,

ALTHOUGH I HAVE GOTTEN A FULLER EXPLANATION, BUT WHEN I READ IT, IT SEEMED TO ME THERE'S A LOT OF THINGS THAT NEED TO BE DISCUSSED THAT, THERE NEEDS TO BE THE KIND OF DISCUSSION THAT WE HAD TODAY; WHERE'S THAT, WHY DID YOU WITHHOLD IT.  AND, YOU KNOW, THE COURT DOESN'T NEED TO SUPERVISE THAT.  AND MAYBE YOU ARE SAYING, UNFORTUNATELY THE RELATIONSHIP BETWEEN COUNSEL HAS BROKEN DOWN SUCH THAT IT IS HARD TO HAVE THOSE CONVERSATIONS, BUT THAT DOESN'T MEAN IT'S SANCTIONABLE.

MR. NEUKOM:  WELL, IF I MAY, YOUR HONOR.  I DON'T KNOW THE EXACT EXHIBIT NUMBER, BUT WE DID WRITE COUNSEL AN EMAIL.  AND IT'S NOT A FLAMING EMAIL, IF YOU WILL.  WE DID WRITE THEM AN EMAIL TELLING THEM WHERE WE THOUGHT THEIR ACCOUNTING WAS DEFICIENT.  AND IN SOME ASPECTS OF COMPUTER DEVICES THAT THEY HAD NOT PRODUCED TO US BY THE DEADLINE THAT WE WANTED, AND I THINK IF YOUR HONOR -- I WILL -- WHILE MR. JAFFE IS ARGUING, I WILL FIND THAT EXHIBIT NUMBER SO I DON'T SEND YOU ON A HUNT, BUT WE DID ASK FOR THIS AND DIDN'T GET RELIEF ON IT UNTIL TODAY.

THE COURT:  OKAY.  BUT UNLESS -- MY ORDER REQUIRES THAT THERE BE EMAIL OR PHONE CALL MEET AND CONFER.

MR. NEUKOM:  WE DID BOTH.

THE COURT:  OKAY.

MR. NEUKOM:  PARDON ME.  I DIDN'T MEAN TO INTERRUPT THE COURT.

THE COURT:  I'M MERELY COMMENTING THAT MY INITIAL

REACTION TO THE RULE 37 SANCTION WAS THAT THERE'S THINGS THAT YOU WANTED AND YOU WERE FRUSTRATED THAT YOU WEREN'T GETTING THEM, BUT IT DIDN'T SOUND LIKE THERE HAD BEEN A LOT OF MEET AND CONFER ON IT.  IT FELT LIKE IT WAS JUST BEING PUT IN FRONT OF ME FOR THE FIRST TIME, THAT I MIGHT -- THE KIND OF THING I WOULD SEE IN A DISCOVERY LETTER FIRST BEFORE IT WOULD BE SUBJECT TO SANCTIONS.

SO WHY WASN'T IT RAISED IN A DISCOVERY LETTER FIRST?

MR. NEUKOM:  WELL, YOUR HONOR, WE WROTE -- IT IS EXHIBIT Z IS THE EXHIBIT THAT I HAVE IN QUESTION, IF THAT HELPS.

THE COURT:  OKAY.

MR. NEUKOM:  AND AFTER WE, AFTER WE SENT THAT EMAIL, WE HAD A MEET AND CONFER WITH COUNSEL BY TELEPHONE.  ON OUR END, I BELIEVE IT WAS ME AND MR. JAFFE.  FOR SOPHOS IT WAS MR. PATTERSON AND ONE OF HIS COLLEAGUES.  I APOLOGIZE, COUNSEL, I CAN'T REMEMBER WHO HIS COLLEAGUE WAS.

WE DID DISCUSS THE RELIEF THAT FORTINET ASKED.  THERE WERE PARTS OF THAT MEET AND CONFER WHICH I'M NOT SURPRISED THAT THEY DIDN'T AGREE TO.  FOR EXAMPLE, WE TOLD THEM WE WOULD BE MOVING FOR SANCTIONS OR FOR ATTORNEY'S FEES, BUT THERE WERE OTHER ASPECTS OF THAT PHONE CONVERSATION IN WHICH WE TOLD THEM, WE TOLD THEM WE WANTED THE CLARK AND DEHAVEN SWAPPED COMPUTERS.  WE TOLD THEM WE WANTED THUMB DRIVES.  WE WANTED A BETTER EXPLANATION OF THE MISSING THUMB DRIVES.

THE CONTENTS OF EXHIBIT Z AND THE MEET AND CONFER TRACK PRETTY DARN WELL WHAT HAPPENED IN THIS MOTION. AND WE DIDN'T -- WHAT WE ARE HEARING TODAY IS, LET'S ALL BE REASONABLE AND WE WILL PRODUCE THE STUFF.

I APPRECIATE THAT, BUT WE STARTED RAISING THIS, I BELIEVE, OVER A MONTH AGO AND IT TOOK THIS MOTION TO GET IT. SO I BELIEVE I'VE MADE THE POINT SO I DON'T WANT TO REPRESS THE POINT ON YOUR HONOR. WE WOULD ASK YOUR HONOR TO RECONSIDER THAT ISSUE IN THE FAIRNESS OF COMPENSATING THE PARTIES OR ISSUING APPROPRIATE SANCTIONS FOR THE FACT THAT THIS IS HOW WE'VE -- THIS APPEARS TO BE THE ONLY WAY WE HAVE BEEN SUCCESSFUL IN GETTING DISCOVERY TWICE NOW IN FRONT OF YOUR HONOR ON RELATED ISSUES FOR THE LAPTOPS.

**THE COURT:** OKAY.

**MR. CUNNINGHAM:** YOUR HONOR, OBVIOUSLY I DISAGREE WITH COUNSEL'S SPEECH.

REASONABLE MINDS AND EVEN UNREASONABLE MINDS CAN DIFFER OVER THE ENORMOUS DISCOVERY DEMANDS THAT WE HAVE BEEN GETTING, ESPECIALLY FOR THINGS LIKE COMPUTERS IN THE HANDS OF COLLEGE DAUGHTERS. SO WE ARE ENTITLED TO SEEK ACCESS TO THE COURT TO RESOLVE THESE DISPUTES.

AND I SAW YOUR HONOR COME UP WITH WHAT I THINK IS A POTENTIALLY REASONABLE COMPROMISE ON THAT PARTICULAR ISSUE THAT I DON'T THINK THESE TWO PARTIES COULD HAVE COME TO BY THEMSELVES. SO SIMPLY PRESSING THINGS, DISAGREEING WITH

COUNSEL THAT THEY ARE ENTITLED TO THE SUN AND THE MOON AND THE STARS IN DISCOVERY IS NOT SANCTIONABLE CONDUCT. I DON'T CONTEND IT IS WHEN THEY ARE DOING IT TO ME.

SO I DISAGREE VERY VEHEMENTLY WITH WHAT WAS JUST SAID.

**MR. NEUKOM:** I ACTUALLY AGREE WITH SOMETHING MR. CUNNINGHAM JUST SAID. I THINK WHAT IS SANCTIONABLE IS VIOLATING A COURT ORDER AND WHAT WE RESPECTFULLY BELIEVE WHAT WE HAVE PUT BEFORE YOUR HONOR IS A NUMBER OF VIOLATIONS OF THE COURT ORDER, BOTH ON DEVICE PRODUCTION AND ON THE ACCOUNTING.

**THE COURT:** OKAY.

**MR. NEUKOM:** THANK YOU, YOUR HONOR.

**THE COURT:** LET'S TURN TO THE DISCOVERY LETTER. I THINK WE ARE DOWN TO THREE INTERROGATORIES AND THE REQUEST FOR PRODUCTION.

SO AS TO FORTINET'S INTERROGATORIES, WE HAVE INTERROGATORY 16 AND 17. LET'S START WITH THAT. AND THAT'S FORTINET WANTING SOPHOS TO IDENTIFY THE ACCOUNTS WORKED ON BY FORMER FORTINET EMPLOYEES AND THE INCOME.

I AGREE WITH SOPHOS THAT THAT'S ASKING FOR INFORMATION -- SOME INFORMATION THAT IS CONFIDENTIAL BUSINESS INFORMATION UNRELATED TO THE CASE; THAT THERE'S SOME INFORMATION IN THERE THAT CERTAINLY FORTINET WOULD BE ENTITLED TO, BUT THE ONLY WAY TO GET AT THAT OVERLAP IS TO COME UP WITH A WAY TO... WELL, TO ADDRESS THAT.

SO WHY NOT HAVE FORTINET GIVE A LIST OF THE SUSPECT

ACCOUNTS TO SOPHOS AND SOPHOS HAS TO ANSWER WHETHER OR NOT THEY -- YOU KNOW, ANSWER THE INTERROGATORY AS TO THOSE ACCOUNTS.

IS THAT WORKABLE, MR. JAFFE?

**MR. JAFFE:**  GOOD AFTERNOON, YOUR HONOR.

SO IF I CAN JUST RESTATE WHAT I THINK I UNDERSTAND YOUR QUESTION IS, WHICH IS, AS TO THE NONOVERLAPPING ACCOUNTS, IS THERE A RELEVANCE SHOWING, ESSENTIALLY.  IS THAT CORRECT?

**THE COURT:**  AS TO THE NONOVERLAPPING ACCOUNTS, RIGHT. IS THERE ANYTHING ABOUT THIS THAT'S RELEVANT THAT FORTINET HAS A RIGHT TO SEE?

**MR. JAFFE:**  OKAY.  SO WITH THAT UNDERSTANDING, AND THERE'S KIND OF TWO ANSWERS TO IT.

NUMBER ONE IS... THE FIRST ANSWER IS THE LIBERAL STANDARD OF DISCOVERY THAT WE ARE LOOKING AT HERE.  THE QUESTION IS, IS THIS REASONABLY LIKELY TO LEAD TO POTENTIALLY RELEVANT EVIDENCE.

**THE COURT:**  NO, THAT IS NOT THE STANDARD.

**MR. JAFFE:**  WELL, I MEAN IT'S PARAPHRASING.

**THE COURT:**  IT'S NOT EVEN CLOSE.  IT'S RELEVANCE TO A CLAIM OR DEFENSE.  RULE 26.

**MR. JAFFE:**  OKAY.  SORRY ABOUT THAT.

THE POINT BEING HERE, IS ON THE ACTUAL SUBSTANTIVE RELEVANCE, IS THAT WE HAVE NOT ONLY THE OVERLAPPING ACCOUNTS TO BE RELEVANT, BUT ALSO THE POINT BEING THAT WE KNOW FROM

PRIOR DEPOSITIONS THAT SOME OF THESE FOLKS HAVE GONE AND THEY WORK ON EXACTLY OVERLAPPING TERRITORIES, EXACTLY OVERLAPPING SALES AREAS.  AND, IN FACT, THE PERCENTAGE OF THE ACCOUNTS THAT ARE OVERLAPPING AS BETWEEN WHEN THEY WERE WORKING AT FORTINET AND WHEN THEY WERE WORKING AT SOPHOS IS RELEVANT EVIDENCE AS TO SOME OF OUR CLAIMS.  FOR EXAMPLE, THE DAMAGES CLAIMS AND THE LIKE.

THE OTHER POINT THAT I WOULD MAKE IS THAT --

THE COURT:  WELL, STILL YOU ARE JUST LOOKING AT -- YOU ONLY GET INFORMATION ABOUT ACCOUNTS THAT WERE ONCE IN THE HANDS OF FORTINET, RIGHT?

MR. JAFFE:  WELL, I WOULD DISAGREE WITH THAT, YOUR HONOR.

THE COURT:  WHY DO YOU GET ANYTHING BEYOND THAT?

MR. JAFFE:  WELL, THERE'S THE ONE REASON THAT I MENTIONED WHICH IS THERE'S THE PERCENTAGE OF OVERLAP, I THINK, IS POTENTIALLY RELEVANT EVIDENCE AS TO --

THE COURT:  I GUESS I AM NOT UNDERSTANDING WHAT THAT MEANS.

MR. JAFFE:  WELL LET ME CLARIFY.

SO IF EMPLOYEE A WORKED AT FORTINET AND THEY WORKED ON FIVE ACCOUNTS, AND THEN THEY LEFT, AND SOPHOS -- AND THEY WORK ON SIX ACCOUNTS, AND FIVE OF THE SIX ARE ENTIRELY OVERLAPPING.

THE COURT:  SURE.

MR. JAFFE:  THE IS FACT THAT THERE'S A FIVE OUT OF

SIX OVERLAP, WE WOULD SUBMIT IS RELEVANT EVIDENCE TO OUR CLAIMS OF THE MASSIVE EMPLOYEE MIGRATION FROM ONE TO THE OTHER AND IS RELEVANT TO OUR CLAIMS FOR POTENTIALLY --

**THE COURT:** WELL FOR THAT, YOU KNOW, YOU DON'T GET THE NAME OF NUMBER SIX.  YOU MIGHT GET THE FACT THAT SIX EXISTS.

**MR. JAFFE:** WELL, I THINK, YOU KNOW, POTENTIALLY SIX EXISTS.  I THINK ALSO FROM A REVENUE OF PROFIT PERSPECTIVE, IF 90 PERCENT OF THE REVENUE THAT THEY ARE GENERATING IS FROM FORMER FORTINET CLIENTS, THAT WOULD ALSO BE RELEVANT FOR US.

THERE'S A SECOND POINT ALSO ON THE RELEVANCE ISSUE, WHICH IS, THE -- NOT ONLY DO -- CAN WE POTENTIALLY GET DAMAGES FOR OVERLAPPING CLIENTS BETWEEN THE TWO, BUT FORTINET HAS THE POTENTIAL TO SHOW THAT BUT FOR THE EMPLOYEE MIGRATION AND THE BAD ACTS THAT WE HAVE ALLEGED, THAT THEY WOULD HAVE GOTTEN THESE NEW CLIENTS THAT WERE NOT PREVIOUSLY AT FORTINET.

AN EXAMPLE MAYBE IS HELPFUL HERE.  SO LET'S SAY EMPLOYEE A WAS GOING TO TALK TO, YOU KNOW, SUPPLIER B.  THEY DIDN'T ACTUALLY SELL ANYTHING TO THEM WHEN THEY WERE AT FORTINET, BUT THEY DEVELOPED A RELATIONSHIP, AND FORTINET WOULD HAVE GOTTEN A SALE FROM THAT SUPPLIER.

IF WE CAN THEN SHOW THAT THAT'S -- THAT SALE WENT TO SOPHOS UPON --

**THE COURT:** YOU ARE GETTING PRETTY SPECULATIVE.

**MR. JAFFE:** I MEAN IT'S-- YOU KNOW, WE ARE TRYING TO

DEAL WITH THE DISCOVERY.  WE DON'T KNOW WHAT'S OUT THERE.

ESSENTIALLY THEY SAID IF YOU CAN IDENTIFY FOR US THE ACCOUNTS,

WE WILL PROVIDE THOSE, BUT WE DON'T KNOW WHAT OTHER ACCOUNTS

ARE POTENTIALLY HERE THAT FORTINET MAY HAVE GOTTEN IN THE PAST

OR -- ESSENTIALLY WE DON'T HAVE THE FULL PICTURE AND WE ARE

ASKING THEM --

**THE COURT:**  YOU HAVE THE FULL PICTURE OF WHAT

FORTINET -- YOU BELIEVE WAS FORTINET'S TERRITORY.  YOU HAVE

THAT, RIGHT?

**MR. JAFFE:**  YES.

**THE COURT:**  SO ANYTHING THAT WAS IN FORTINET'S

TERRITORY, YOU CAN ASK THEM TO MATCH UP AGAINST.

**MR. JAFFE:**  THAT'S TRUE.  WE CAN ASK THEM.  AND TO BE

CLEAR, THAT'S -- WE'RE NOT -- I THINK THE PARTIES ARE IN

AGREEMENT THAT WE COULD PROVIDE THAT.

WHAT WE ARE FIGHTING ABOUT IS BASICALLY THE DELTA.

**THE COURT:**  THE DELTA ARE THINGS -- ARE ACCOUNTS THAT

FORTINET NEVER HAD, RIGHT?

**MR. JAFFE:**  NEVER HAD I THINK -- YEAH, I THINK THAT'S

FAIR, ACTUALLY.  YES.

**THE COURT:**  OKAY.  SO YOU'RE TRYING TO EXPLAIN TO ME

WHY YOU SHOULD GET CONFIDENTIAL BUSINESS INFORMATION ABOUT

ACCOUNTS THAT FORTINET NEVER HAD.

YOU HAVE GIVEN ME TWO ARGUMENTS.  ONE, THAT SOMEHOW THE

PROPORTION OF ACCOUNTS THAT FORTINET DID HAVE TO THOSE THAT IT

NEVER HAD IS SOMEHOW DEMONSTRATIVE OF SOMETHING.  AND YOU DON'T NEED THE NAMES OF THOSE NONFORTINET BUSINESSES TO MAKE THAT LEAP.

THEN WE GET TO A DAMAGES-BASED QUESTION, BUT I THINK IN ORDER TO GET AT THAT, I'M NOT SAYING YOU CAN NEVER GET THAT INFORMATION, BUT YOU HAVEN'T SHOWN AT THIS POINT THAT YOU'RE ENTITLED TO IT.

SO AS A FIRST STEP, I WANT TO HEAR FROM MR. CUNNINGHAM, BUT I'M NOT ENTIRELY SURE THAT YOU'D BE ENTITLED TO WHAT YOU'VE ASKED FOR AS ARGUED IN THE LETTER.

BUT MR. CUNNINGHAM WHAT IS YOUR VIEW?

**MR. CUNNINGHAM:**  THANK YOU, YOUR HONOR.

I HAVE ONE SORT OF OVERARCHING ISSUE THAT HASN'T COME UP YET, AND THAT IS THE INTERROGATORIES IN QUESTION ARE OBVIOUSLY DIRECTED TO ALL OF THE STATE LAW CLAIMS, INCLUDING THE TRADE SECRET CLAIM.  AND THEY SAY THAT IN THEIR STATEMENT TO YOUR HONOR.

SO WE HAVE A PROBLEM THAT THERE'S NOTHING IN THE 2019.210 STATEMENT THAT TALKS ABOUT ANY OTHER CUSTOMER OR PARTNER OTHER THAN INGRAM MICRO.  SO THEY HAVE GENERALIZED STATEMENTS ABOUT INFORMATION RELATED TO OUR PARTNERS, BUT THAT'S THE ONLY ONE THAT'S SET FORTH BY NAME.

SO PART OF WHAT WE WERE TRYING TO ACCOMPLISH IN SAYING YOU TELL US FIRST, YOU TELL US WHO THE CUSTOMERS THAT YOU ARE INTERESTED IN, IS TO HAVE SOME MEASURE OF COMPLIANCE WITH

2019.210, SOME MEASURE TO AT LEAST HAVE A NAME.

BECAUSE WE'RE IN THE SITUATION, AND IT'S THE SAME ISSUE WITH RESPECT TO ALL OF THE COMPUTER IMAGES WE JUST SPENT THE LAST HOUR TALKING ABOUT, WHERE THEY'RE REVERSE ENGINEERING THEIR TRADE SECRET CLAIM.  THEY'RE REVERSE ENGINEERING IT BY GETTING DISCOVERY AND THEN SAYING AH-HAH, THAT'S -- THAT WAS OUR TRADE SECRET ALL ALONG.

THAT'S WHAT'S GOING ON HERE.  SO I JUST WANTED TO FRAME THE ISSUE.  AND THERE'S A WONDERFUL QUOTE FROM JUDGE ALSUP IN A CASE LAST YEAR THAT I CAN READ YOUR HONOR IF YOU'RE INTERESTED, BUT I KNOW YOU ARE RUNNING OUT OF TIME, WHERE HE ACKNOWLEDGED THAT THAT'S THE PROBLEM THAT 2019.210 SEEMS TO SOLVE.

SO, A VERY MINIMUM STEP TO TAKE WOULD BE TO HAVE THEM TELL US:  HERE ARE THE CUSTOMER ACCOUNTS THAT WE ARE INTERESTED IN, HERE IS THE INFORMATION ABOUT THOSE CUSTOMER ACCOUNTS THAT WE THINK YOU USED TO IMPROVE YOUR RELATIONS WITH THAT CUSTOMER OR ESTABLISHED RELATIONSHIP, SO NOW YOU TELL US WHAT OCCURRED ON YOUR SIDE.

THAT, I THINK, IS THE BEAR MINIMUM TO TRYING TO AVOID -- TO TRY TO AVOID THIS PROBLEM OF REVERSE ENGINEERING THEIR TRADE SECRET.  BECAUSE, FRANKLY, WE HAVEN'T SEEN ONE SHRED OF ANYTHING THAT SAYS WE HAD THIS SUPER SECRET THING ABOUT CUSTOMER X, Y, Z, DAVE DEHAVEN, JUST TO PICK ON HIM, WALKED OUT WITH IT AND USED IT TO GET BUSINESS.  THAT'S NOWHERE IN

ANYTHING WE'VE SEEN.  NOT IN INTERROGATORY RESPONSES, NOT IN DEPOSITION TESTIMONY, NOT IN THE COMPLAINT, NOT ANYWHERE.

SO WE -- WE'RE AT A LOSS AS TO WHY... WHY THEY'RE NOT REQUIRED AS A MATTER OF STATUTORY LAW TO PROVIDE US WITH THAT INFORMATION.

AND, YOUR HONOR, I'M REFERRING -- IF YOU'RE LOOKING AT THE LETTER, I AM REFERRING AT PAGE 7.

THE COURT:  I AM ACTUALLY LOOKING AT THE DISCOVERY REQUESTS THEMSELVES.

OKAY.  SO WITH RESPECT TO -- YOU WANT FORTINET TO NOT ONLY GIVE YOU THE SUSPECT ACCOUNTS, BUT ALSO PROVIDE ANOTHER LAYER.

MR. CUNNINGHAM:  THE TRADE SECRETS.  IF THESE -- IF THESE REQUESTS GET TO DAMAGES FOR TRADE SECRET MISAPPROPRIATION, WE ARE ENTITLED UNDER STATUTORY LAW TO KNOW WHAT TRADE SECRETS SPECIFIC TO EACH SUCH CUSTOMER WERE ALLEGEDLY MISAPPROPRIATED.

THE COURT:  WHY ISN'T IT RELEVANT?  WHY ISN'T IT WITHIN THE SCOPE OF RELEVANCE FOR THEM TO IDENTIFY THE OVERLAPPING ACCOUNTS?

MR. CUNNINGHAM:  WHY ISN'T IT?

THE COURT:  YEAH.  I MEAN, THIS IS DISCOVERY --

MR. CUNNINGHAM:  YES.

THE COURT:  -- SO THEY CAN ASK FOR RELEVANT INFORMATION.

MR. CUNNINGHAM:  CORRECT.  BUT IN THE CASE OF A TRADE

SECRET CLAIM, THERE'S A THRESHOLD TEST THAT THEY HAVE TO MEET, AND THAT IS 2019.210.  AND IT SAYS YOU HAVE TO IDENTIFY THE TRADE SECRETS BEFORE YOU GET DISCOVERY ON THEM.

THE COURT:  BUT YOU HAVE ACCEPTED FOR NOW, FOR PURPOSES OF DISCOVERY, THAT THEY HAVE ADEQUATELY ANSWERED THAT.

MR. CUNNINGHAM:  FOR PURPOSES OF THE DISCOVERY OF THE INDIVIDUALS' COMPUTERS, YES.  FOR PURPOSES OF DISCOVERY OF SPECIFIC CUSTOMER ACCOUNTS THAT APPEAR NOWHERE IN THEIR 2019.210 STATEMENT, NOWHERE, NO MENTION OF ANY OTHER CUSTOMER ACCOUNTS WHATSOEVER, WE HAVE NOT ACCEPTED THAT.

THE COURT:  OKAY.  WELL, I DON'T KNOW WHAT TO SAY THEN.  BECAUSE THEN WE ARE BACK TO GROUND ZERO AROUND WHETHER OR NOT -- WELL, WOULD YOU AGREE, MR. JAFFE, THAT MR. CUNNINGHAM'S CLIENT ACCEPTED THE 2019.210 DISCLOSURES AS SUFFICIENT SOLELY FOR PURPOSES OF MOVING FORWARD ON THE FORENSIC INVESTIGATION?

MR. JAFFE:  NO, I WOULD NOT, YOUR HONOR.  SO THE --

THE COURT:  WHY DON'T WE LOOK AT WHAT THEY SAID SO I CAN FIGURE IT OUT.  WHEN -- WHERE IS IT?

MR. JAFFE:  THAT'S PROBABLY IN THE SANCTIONS RECORD. I CAN GET YOU THE EXHIBIT CITE.

BUT THERE'S BACK AND FORTH ON THAT POINT, AND THEY RESPONDED TO -- WE HAVE DISAGREEMENTS AS TO YOUR DISCLOSURE, BUT FOR PURPOSES WE ARE WILLING TO MOVE FORWARD WITH

DISCOVERY.

THE -- ONE ADDITIONAL POINT I THINK IS RELEVANT ON THIS BEFORE WE MOVE ON, WHICH IS --

**THE COURT:**  SO, MR. NEUKOM, ARE YOU LOOKING FOR THAT?

**MR. NEUKOM:**  I AM, YOUR HONOR.  I THINK I SHOULD HAVE IT IN TWO MINUTES TOPS.

**THE COURT:**  OKAY.

**MR. JAFFE:**  THE SECOND POINT IS FORTINET IS NOT PURSUING ONLY CLAIMS FOR TRADE SECRETS AND MISAPPROPRIATION. THERE ARE CLAIMS FOR CIVIL CONSPIRACY, INDUCEMENT TO BREACH OF CONTRACT ON BEHALF OF SOPHOS WITH THESE FORMER FORTINET EMPLOYEES AND THE CONTRACTS THEY HAD WITH FORTINET, UNFAIR COMPETITION, AND A FEW OTHERS THAT I WON'T GO THROUGH THE LAUNDRY LIST RIGHT NOW.  THESE INTERROGATORIES ARE RELEVANT BEYOND MERELY TRADE SECRET.

SO PUTTING ASIDE MR. CUNNINGHAM'S ARGUMENT THAT THERE'S -- THEY CAN RE-RAISE 2019, THEY ARE STILL RELEVANT TO OTHER CLAIMS SUCH THAT THE DISCOVERY SHOULD PROCEED.

**THE COURT:**  MR. CUNNINGHAM?

**MR. CUNNINGHAM:**  YOUR HONOR, I AGREE IT'S RELEVANT TO OTHER CLAIMS, BUT IT'S UNDOUBTEDLY RELEVANT TO THE TRADE SECRET CLAIM.

SO 2019.210 APPLIES IF THE COURT VIEWS WHAT WE TOLD THEM, WHICH I HAVE RIGHT HERE AS NOT ACCEPTING AN OPEN-ENDED INVITATION TO GO LOOK AROUND IN OUR CUSTOMER ACCOUNTS TO FIND

PURPORTED TRADE SECRETS, AND HERE'S WHAT WE SAID.

**THE COURT:**  WHY DON'T YOU JUST -- I'M BETTER AT READING IT MYSELF.  WHAT EXHIBIT IS IT?

**MR. CUNNINGHAM:**  IT IS EXHIBIT J.

**THE COURT:**  OKAY.  GIVE ME A MOMENT TO CATCH UP WITH YOU.

(PAUSE IN THE PROCEEDINGS.)

**MR. NEUKOM:**  YOUR HONOR, IF IT HELPS, WE HAVE AN EXTRA COPY RIGHT HERE.

**THE COURT:**  I HAVE EXHIBIT J RIGHT IN FRONT OF ME.  IS THIS A MAY 11TH EMAIL?

**MR. CUNNINGHAM:**  IT IS, YOUR HONOR.

**THE COURT:**  WHERE DO YOU WANT ME TO FOCUS?  WHICH PARAGRAPH?

**MR. CUNNINGHAM:**  YOUR HONOR, I THINK YOU NEED TO READ BOTH OF THE FIRST TWO PARAGRAPHS.

**THE COURT:**  GIVE ME A MOMENT, PLEASE.

(PAUSE IN THE PROCEEDINGS.)

**MR. JAFFE:**  I'LL JUST FOCUS YOU ON THE LAST SENTENCE OF THE FIRST FULL PARAGRAPH.

**THE COURT:**  WHY DON'T I READ THE WHOLE THING.

**MR. JAFFE:**  OF COURSE.

(PAUSE IN THE PROCEEDINGS.)

**THE COURT:**  WELL, IT SAYS IT WILL ACCEPT THE DISCLOSURE FOR DISCOVERY MOTION PRACTICE ON FORTINET'S TRADE

SECRETS CLAIM AMONG OTHER THINGS.

SO IT SORT OF GIVES WITH ONE HAND AND THEN TAKES BACK SOME OF IT WITH THE OTHER.  I'M NOT SURE WHAT TO MAKE OF THAT STATEMENT, BUT EVEN -- LET'S JUST FOR ARGUMENT SAKE -- MS. GARCIA....

(COURT AND CLERK CONFER.)

**THE COURT:**  I AM SORRY, I WASN'T FOCUSING ON THAT.

COUNSEL, WE ARE GOING TO HAVE TO TAKE A SHORT BREAK. APOLOGIES TO GRAND JURY RETURNS.  CAN I ASK, IS IT SOMETHING WHERE I NEED TO SEAL THE COURTROOM?

**MR. HEIMAN:**  NO, YOUR HONOR.

**THE COURT:**  WE ARE IN A CIVIL PROCEEDING.  I'M NOT SURE THAT THERE IS A GREAT RISK --

**MR. HEIMAN:**  THERE'S NOT.

**THE COURT:**  OKAY.

**MR. HEIMAN:**  WE CAN PROBABLY IDENTIFY THEM GENERICALLY.  I WILL JUST DO THEM IN ORDER.  WELL, WE PROBABLY NEED TO SAY THE NAMES.

**THE COURT:**  IS THERE A PROBLEM WITH SAYING THE NAMES? HOLD ON.  LET ME JUST CHECK AND SEE.  NORMALLY IT'S ON THE RECORD.  IT'S JUST THAT WE HAVE OTHER INDIVIDUALS HERE.

**MR. HEIMAN:**  I DON'T THINK IT'S A PROBLEM.

**THE COURT:**  OKAY.  CIVIL COUNSEL, CAN YOU WAIT A MOMENT?  THIS WILL NOT TAKE LONG.

(RECESS TAKEN AT 1:57; RESUMES AT 2:18 P.M.)

**THE COURT:**  I INVITE CIVIL COUNSEL BACK UP TO THE PODIUM.  WE ARE ALREADY HALF AN HOUR OVER TIME.  WHERE I LEFT OFF WAS -- SORRY, ARE YOU STILL WAITING TO PUT US BACK ON....

(DISCUSSION HELD WITH CLERK.)

**MR. JAFFE:**  YOUR HONOR, IF I MAY?

**THE COURT:**  I HAD A QUESTION.

SO ASSUMING FOR THE MOMENT THAT MR. CUNNINGHAM'S CLIENT HAS RESERVED THE OBJECTION BASED ON THE TRADE SECRET DISCLOSURE, DOES THAT MEAN THAT NO DISCOVERY GOES FORWARD ON ANY CLAIM?  IF IT IS RELEVANT TO OTHER CLAIMS, THEN WHY CAN'T IT GO FORWARD?

**MR. CUNNINGHAM:**  SO, YOUR HONOR, MY UNDERSTANDING OF THE LAW, AND I HAVEN'T LOOKED AT THIS IN A WHILE, IS IF IT BEARS UPON THE TRADE SECRET CLAIM -- IN OTHER WORDS, IT OVERLAPS WITH OTHER CLAIMS, THAT DISCOVERY IS HALTED ON THAT PARTICULAR SUBJECT UNTIL THE 2019.210 STATEMENT IS ISSUED.

AND THE REASON I SAY THAT IS THE CASE I REFERRED TO A MINUTE AGO, WHICH IS THE *JOB SCIENCE* CASE ISSUED BY JUDGE ALSUP.  AND HE SAYS IN THIS RULING -- AND THIS WAS A TRADE SECRET PLAINTIFF THAT HAD NOT FILED EITHER AT ALL A 2019.210 STATEMENT OR ONE THAT HE FOUND NOT ACCEPTABLE.  HE SAYS -- HE PUTS OUT THAT THE FOUR THINGS THAT HE -- YOUR HONOR, I HAVE A COPY OF THIS CASE FOR COUNSEL AND THE COURT IF YOU WOULD LIKE TO SEE IT.

**THE COURT:**  I THINK WHAT I'M -- I'M LIKELY TO

POSTPONE THIS.  BECAUSE IT SOUNDS LIKE YOU ARE GETTING INTO ARGUMENTS.  IN THE INITIAL LETTER THAT YOU SUBMITTED TO ME HAD MANY MORE ARGUMENTS THAN ARE CURRENTLY BEFORE ME BECAUSE A BUNCH OF THEM YOU WERE ABLE TO RESOLVE.

**MR. CUNNINGHAM:**  CORRECT.

**THE COURT:**  THERE'S -- THERE ARE ARGUMENTS NOW BEING MADE THAT WERE -- I'M NOT SAYING THEY WEREN'T MADE IN THE LETTER, BUT THEY CERTAINLY DIDN'T JUMP OUT TO ME IN THE WAY THAT YOU'RE RAISING THEM NOW.

**MR. CUNNINGHAM:**  OKAY.

**THE COURT:**  SO CERTAINLY THE RELEVANCE ARGUMENTS, MR. JAFFE, I DON'T REALLY THINK YOU STATED.

SO WHAT I WANT YOU TO DO IS TO TALK FURTHER ABOUT THIS AND SUBMIT ANOTHER LETTER ON INTERROGATORIES 16 AND 17.  YOU GET A PAGE AND A HALF EACH, SO THREE PAGES TOTAL.  AND GET IT TO ME WHEN YOU WANT TO GET IT TO ME.

DO YOU WANT TO DO IT BY NEXT FRIDAY, THE 4TH?

**MR. NEUKOM:**  IF I MAY YOUR HONOR?

**THE COURT:**  OKAY.

**MR. NEUKOM:**  WE ARE ON A PRETTY ACCELERATED EXTENDED DISCOVERY SCHEDULE FOR THIS CASE, AND I THINK THAT JUDGE CHEN -- THERE'S ACTUALLY -- THIS IS A RELATED ISSUE THAT WE WERE GOING TO PUT TO YOUR HONOR.

JUDGE CHEN, I THINK, ASKED US TO APPROACH YOUR HONOR FOR ACCELERATED DISPUTE RESOLUTION SO IN EFFORTS TO MAKE SURE THAT

WE COULD -- THAT WE COULD HIT AN AUGUST 28TH EXTENDED FACT DISCOVERY DEADLINE.

WE HAVE A HANDFUL OF OTHER ISSUES TO TALK ABOUT WITH YOUR HONOR.  I REALIZE, TO PUT IT MILDLY, NOW IS NOT THE TIME, MAYBE AN HOUR AGO WAS, WE WOULD LIKE YOUR HONOR'S GUIDANCE ABOUT -- FOR THIS ISSUE, I WOULD SAY WE CAN GET IT IN ON OUR END TOMORROW OR WE CAN GET IT IN BY MONDAY AT NOON TO MAKE SURE THAT YOU HAVE THESE THREE PAGES AS QUICKLY AS POSSIBLE.

**THE COURT:**  WHAT IS THE CLOSE OF DISCOVERY?

**MR. NEUKOM:**  I BELIEVE IT HAS BEEN EXTENDED UNTIL THE 28TH.

**MR. CUNNINGHAM:**  TOMORROW.

**MR. NEUKOM:**  TOMORROW.

**THE COURT:**  AND HOW MANY DISPUTES ARE OUTSTANDING?

**MR. NEUKOM:**  ABOUT FIVE.

**MR. CUNNINGHAM:**  I WOULD SAY HALF DOZEN.

**MR. NEUKOM:**  RELATING TO DISCOVERY, WHICH HAS BEEN UNFOLDING IN THE LAST COUPLE OF WEEKS.  AND WE DON'T WANT TO FLOOD YOUR HONOR WITH A NUMBER OF HIGH PAGERS IF THERE'S --

**THE COURT:**  NO.  IT'S ALL GOING TO BE ONE OMNIBUS. IT'S GOING TO BE SENT TO ME BY -- WELL, NORMALLY YOU WOULD FILE BY THE END OF DISCOVERY, WITHIN SEVEN DAYS, BUT WE WILL CUT THAT SHORT.  SO OMNIBUS SHOULD BE -- DID JUDGE CHEN GIVE SOME INDICATION THAT THEY HAD TO BE ON FILE BY A CERTAIN DATE?

**MR. NEUKOM:**  NOT TO THE BEST OF MY MEMORY, YOUR

HONOR, NO.

MR. CUNNINGHAM:  I DON'T THINK SO, YOUR HONOR.

MR. NEUKOM:  HE LEFT THAT TO THE PARTIES AND YOUR HONOR.

THE COURT:  IS THERE A MOTION THAT WOULD BE HELD UP?

MR. NEUKOM:  NOT FROM OUR PERSPECTIVE, NO.  I THINK THAT WE CAN -- SO LONG AS WE ARE ALL --

THE COURT:  SO IF I HAD A DEADLINE FOR AN OMNIBUS LETTER BY SEPTEMBER 4TH, WOULD THAT WORK?

MR. NEUKOM:  THAT IS FINE FROM FORTINET'S PERSPECTIVE.

THE COURT:  MR. CUNNINGHAM?

MR. CUNNINGHAM:  YES.

THE COURT:  SO WRAP THIS IN, BUT IT SHOULD BE NO MORE THAN TEN PAGES TOTAL.  OKAY?

AND THE REASON WHY I GIVE -- MOST OF THESE THINGS SHOULD GET WORKED OUT, COUNSEL.  AND I'M GETTING A SENSE OF HOW DIFFICULT THIS HAS BEEN, BUT YOU ARE AWARE OF OUR PROFESSIONAL GUIDELINES THAT SAY THAT DISCOVERY MOTIONS SHOULD BE USED SPARINGLY.

SO REALLY, AFTER TODAY, GIVEN HOW MUCH TIME WE HAVE PUT INTO THIS, GIVEN THAT THERE HAVE BEEN THINGS THAT WE HAVE BEEN ABLE TO TAKE CARE OF, I CERTAINLY EXPECT THAT YOU WILL CONTINUE TO DO THAT AND THAT THE ONLY THINGS THAT ARE PUT BEFORE ME ON THE 4TH ARE THINGS THAT REALLY ARE GENUINE

DISPUTES THAT YOU REALLY COULDN'T WORK OUT ANY OTHER WAY. OKAY? WHERE YOU REALLY EXPLORED ALL POSSIBILITIES AND COMPROMISES AND IT JUST DIDN'T GET THERE. NOT ONES WHERE YOU JUST GOT TIRED OF EACH OTHER AND DUG IN YOUR HEELS.

I AM NOT SUGGESTING THAT THAT'S WHAT'S HAPPENING HERE, BUT I HAVE SOME CONCERN THAT IS A -- YOU KNOW, A POSSIBILITY. OKAY?

SO FIND YOUR BEST SELVES. MEET AND CONFER. TRY AND MAKE COMPROMISES. OMNIBUS MOTION BY -- JOINT LETTER MOTION BY THE 4TH. NO MORE THAN TEN PAGES TOTAL. OKAY? THAT SHOULD INCLUDE 16 AND 17 IN THERE.

INTERROGATORY 24, THAT'S ABOUT THE MISSING USB'S. DIDN'T WE KIND OF COVER THAT? IS THERE MORE TO DO ON THAT?

MR. NEUKOM: THAT WOULD BE, I THINK, THE SUBSTANCE OF THAT INTERROGATORY WOULD BE A MIRROR IMAGE OF THE PART OF THE ACCOUNTING.

THE COURT: WE HAVE TAKEN CARE EVER THAT I THINK.

MR. NEUKOM: YES.

THE COURT: ON THE SOPHOS END USER SURVEYS, ARE THEY ALL ON FORTINET'S WEBSITE?

MR. KNUDSON: IF I MAY YOUR HONOR I THOUGHT IN THE STIPULATION THAT WE FILED THAT THAT IS OFF THE TABLE.

THE COURT: OH.

MR. KNUDSON: MY UNDERSTANDING --

THE COURT: IS IT?

**MR. JAFFE:**  -- COUNSEL CAN FEEL FREE --

**THE COURT:**  MR. CUNNINGHAM?

**MR. CUNNINGHAM:**  YES, YOUR HONOR.  THAT'S OFF THE TABLE.

**THE COURT:**  FINE WITH ME.

**MR. JAFFE:**  WE RESOLVED IT.

**THE COURT:**  THEN THE REST I WILL SEE IN THE LETTER ON THE 4TH.

**MR. NEUKOM:**  ONE OTHER THOUGHT, YOUR HONOR, WHICH -- TWO OTHER THOUGHTS.  ONE IS IN TERMS OF THE TIMING.

OPENING EXPERT REPORTS ARE DUE SEPTEMBER 1, OR AT LEAST SUPPLEMENTAL EXPERT REPORTS, OPENING REPORTS BASED ON THE EXTENDED DISCOVERY ARE DUE SEPTEMBER 1.  I DON'T THINK THIS IS A PROBLEM FOR YOUR HONOR TO FIX, BUT I JUST NOTE IT FOR THE RECORD.

IN LIGHT OF THE FACT THAT WE MAY NOT HAVE RESOLUTION OF A MASSIVE AMOUNT OF SALES DATA THAT WE ARE ASKING FOR, WHICH IS, AS YOU MIGHT IMAGINE TO PUT IT MILDLY, IS PRETTY DARN RELEVANT TO OUR DAMAGES THEORY, WE WILL MEET AND CONFER WITH COUNSEL AND POSSIBLY APPROACH JUDGE CHEN ABOUT THE CALENDAR TO FIND A WAY TO GET THAT DONE.

BUT I DID JUST WANT TO NOTE THAT, BECAUSE YOUR HONOR ASKED IF IT AFFECTED ANY MOTIONS --

**THE COURT:**  RIGHT.

**MR. NEUKOM:**  AND IT DOESN'T FROM OUR PERSPECTIVE.

THERE IS AN EXPERT REPORT ISSUE THAT WE ARE DEALING WITH, BUT --

THE COURT:  WHAT EXACTLY ARE YOU MISSING FOR YOUR EXPERT REPORT EXACTLY?  WHICH DISCOVERY REQUESTS ARE PROBLEMATIC?

MR. NEUKOM:  THE SALES DATA ON A PER ACCOUNT BASIS. AND IF IT HELPS, YOUR HONOR, I THINK MR. JAFFE AND I CONFERRED JUST A BIT DURING THE GRAND JURY READING IN, IF IT HELPS, WE THINK WE CAN GET DONE WHAT WE NEED TO GET DONE FOR OUR DAMAGES REPORT IF WE HAVE SORT OF TWO POCKETS OF INFORMATION.

THE COURT:  OKAY.

MR. NEUKOM:  NUMBER ONE IS SALES MADE ON A PER ACCOUNT BASIS FOR A GROUP OF ACCOUNTS WHICH WE WILL SEND TO COUNSEL.  THAT, I BELIEVE, TAKES CARE OF THE OVERLAP ISSUE; THE IDEA THAT WE SHOULDN'T GET TO GO DISCOVER A BUNCH OF ACCOUNTS THEY HAVE THAT WE DIDN'T HAVE.

NUMBER TWO, SOME -- SO THAT FIRST BUCKET WOULD BE SALES, IF YOU WILL, INFORMATION ON A PER ACCOUNT BASIS WHERE YOU'RE IDENTIFYING THE ACCOUNT BASED ON A LIST WE WILL PROVIDE.

THE SECOND IS SALES MADE OR COMMISSIONS EARNED ON A PER EMPLOYEE BASIS WITHOUT DISCLOSING THE ACCOUNTS.

IF WE HAVE THOSE TWO THINGS, I THINK, NUMBER ONE, IT TAKES CARE OF THE OBJECTION THAT WE'RE ASKING FOR A WHOLE LOT OF SENSITIVE SOPHOS INFORMATION THAT WE ARE NOT ENTITLED TO, AND

NUMBER TWO, IT SERVICES OUR END OF -- WE ARE TRYING TO GET --
WE THINK THE EXPERT WILL NEED AND THE JURY WILL WANT SORT OF A
PICTURE OF, OKAY, SO SOPHOS IS SELLING TO THE FOLLOWING
UMPTEEN FORTINET ACCOUNTS USING THE FORMER EMPLOYEES, AND WE
WILL ALLEGE RELYING ON A BUNCH OF FORTINET CONFIDENTIAL DOCS,
SO ON AND SO FORTH.

THEN, YOU KNOW, HOW MUCH ARE THESE FOLKS MAKING?  WHAT
PERCENTAGE OF THEIR DOCKET, IF YOU WILL, ARE FORMER FORTINET
ACCOUNTS?  AND I THINK, RIGHT, IF WE GET THOSE TWO CATEGORIES,
WE'VE ADDRESSED SOME, IF NOT MOST OR ALL OF SOPHOS'S CONCERNS
AND YET WE CAN GET WHAT WE NEED FOR OUR EXPERT REPORT.

**THE COURT:**  SALES MADE ON A PER ACCOUNT BASIS FOR
IDENTIFIED ACCOUNTS, IDENTIFIED BY FORTINET.  AND IS THAT
SALES -- ALL SALES OR SALES BY EMPLOYEE ON THOSE ACCOUNTS?

**MR. NEUKOM:**  I DON'T KNOW HOW SOPHOS TRACKS THEIR
INFORMATION INTERNALLY, SO I WOULD ASK FOR IT TO BE BROKEN
DOWN PER ACCOUNT AND PER EMPLOYEE IF THEY TRACK IT THAT WAY.

MY -- WE HAVE ALL LEARNED A LOT ABOUT THE SALES CULTURE
THROUGH THIS CASE.  MY GUESS IS THAT IF ANY INDIVIDUAL SALES
ENGINEER OR SALESMAN IS GETTING CREDIT FOR A SALE TO A
PARTICULAR CUSTOMER, HIS OR HER NAME IS PROBABLY ALSO
ASSOCIATED WITH ALL SUCH SALES.  SO I'M NOT SURE IT'S A
MATERIAL DIFFERENCE.

**THE COURT:**  THE SECOND BUCKET IS THE AMOUNT OF SALES
MADE BY EACH EMPLOYEE WITHOUT REGARD TO THE ACCOUNTS.  JUST

THE TOTAL NUMBER.

**MR. NEUKOM:**  YEAH.

**THE COURT:**  TOTAL SALES FIGURE.

**MR. NEUKOM:**  I DON'T KNOW HOW THEY TRACK THIS.  I CAN BE OPEN MINDED.  MAYBE IT'S A YEAR-END REPORT, MAYBE IT'S A COMMISSIONS REPORT.  WE JUST NEED TO GET OUR HANDS AROUND SOME WAY TO SHOW HOW MUCH REVENUE ARE THESE FOLKS DRIVING, HOW SUCCESSFUL ARE THEY BEING, HOW PROFITABLE FOR THE COMPANY AND FOR THEMSELVES.

**THE COURT:**  WE ARE TALKING ABOUT EX-FORTINET.

**MR. NEUKOM:**  THAT'S CORRECT.

**THE COURT:**  OKAY.  MR. CUNNINGHAM?

**MR. CUNNINGHAM:**  SO ON THE FIRST, ON THE FIRST ONE, I THINK WE'RE JUST -- NOW WE ARE BACK TO WHERE WE WERE FIVE MINUTES AGO, WHICH IS, FIRST OF ALL, HOW MANY ACCOUNTS ARE WE TALKING ABOUT?  IS IT A THOUSAND?  IS IT 500?  IS IT 12?

**THE COURT:**  HOW MANY IS IT?

**MR. NEUKOM:**  I DON'T KNOW OFF THE TOP OF MY HEAD, BUT WE CAN GET THAT INFORMATION TO COUNSEL FOR SOPHOS QUICKLY.

**MR. CUNNINGHAM:**  AND THE SECOND QUESTION IS, IS IT GOING TO BE FED INTO THEIR TRADE SECRETS CLAIM?  BECAUSE THEN I'M BACK TO WHAT I WAS SAYING BEFORE WHICH PROMPTED YOU TO ASK FOR MORE BRIEFING, AND I WOULD LIKE TO GIVE YOU THAT BRIEFING.

**MR. NEUKOM:**  CAN I TELL YOUR HONOR WHAT'S REALLY GOING ON HERE?

THE COURT:  NO.  WHAT I REALLY WANT TO KNOW IS WHAT -- IT'S DAMAGES FOR WHAT?

MR. NEUKOM:  IT'S DAMAGES FOR BOTH TRADE SECRET AND NONTRADE SECRET CLAIMS, YOUR HONOR.  BUT WE HAVE AN ADVERSARY HERE.  OF ALL THE RESERVATIONS IN THIS EMAIL, THE ONE AREA IN WHICH THEY SAID THEY WERE DROPPING THE OBJECTIONS WAS QUOTE "FOR DISCOVERY PURPOSES".

THE COURT:  I UNDERSTAND.

MR. NEUKOM:  SO IF MR. CUNNINGHAM WANTS TO BRING A MOTION FOR SUMMARY JUDGMENT, I'LL LOOK THAT MOTION IN THE EYE AND DO MY BEST AND WE'LL SEE HOW IT PLAYS OUT.  BUT AT THIS STAGE OF THE GAME, WE ARE AFTER THE CLOSE OF FACT DISCOVERY, WE'VE GOT ONE-SIDED FORTINET DISCOVERY ONLY ORDER BY JUDGE CHEN.  FOR US AT THIS STAGE OF THE GAME, ON THE SECOND TO LAST DAY TO HEAR THAT SUDDENLY THERE'S A 2019 OBJECTION FOR DISCOVERY PURPOSES?  MY GOODNESS --

THE COURT:  OKAY.

MR. CUNNINGHAM:  YOUR HONOR, THESE INTERROGATORIES HAD NOT EVEN BEEN SERVED WHEN WE SENT THAT EMAIL.

THE COURT:  DO YOU HAVE ANY OTHER OBJECTIONS TO THE FIRST BUCKET?

MR. CUNNINGHAM:  I DO NOT.

THE COURT:  HOW ABOUT TO THE SECOND BUCKET?

MR. CUNNINGHAM:  THE SECOND BUCKET IS LESS OF AN OBJECTION AND MORE OF A LOGISTICAL ISSUE BECAUSE MY

UNDERSTANDING IS THAT WE TRACK SALES AND REWARD OUR EMPLOYEES BASED ON THE PERFORMANCE OF A REGION, NOT A PARTICULAR EMPLOYEE.

SO, IN OTHER WORDS, IF THEIR REGION DOES WELL, ALL THE BOATS IN THAT REGION RISE.  IF THEIR REGION DOES POORLY, ALL THE BOATS IN THAT REGION FALL.  SO I DON'T THINK I CAN GIVE HIM WHAT HE WANTS.

**THE COURT:**  THERE'S NO SUCH THING AS A REPORT THAT CAN BE MADE ON SALES PER EMPLOYEE?

**MR. CUNNINGHAM:**  I DON'T -- I WILL ASK, BUT MY UNDERSTANDING AS I STAND HERE TODAY IS THAT'S CORRECT.

**MR. NEUKOM:**  YOUR HONOR, IF IT'S TRACKED ON A -- WE DON'T MEAN TO BE ASKING FOR SOMETHING THAT THEY DON'T HAVE.

**THE COURT:**  OKAY.

**MR. NEUKOM:**  IF THE BEST THEY CAN DO IS A REGIONAL BASIS, HOWEVER THEY ARE TRACKING IT INTERNALLY, THAT'S WHAT WE WOULD LIKE TO SEE.

**THE COURT:**  OKAY.

GIVEN WHAT IS IN THE EMAIL THAT I SAW, EVEN THOUGH IT'S NOT THE CLEAREST THING, IT DID SAY FOR DISCOVERY PURPOSES YOU ARE WAIVING THAT.  THEREFORE, I'M GOING TO ORDER -- AND THAT WAS THE ONLY OBJECTION YOU HAD TO THE FIRST BUCKET AND THE ONLY OBJECTION YOU HAD TO THE SECOND BUCKET WAS THAT IT'S NOT AVAILABLE, BUT IT'S AVAILABLE ON A REGIONAL BASIS, PLAINTIFF IS WILLING TO ACCEPT THAT, SO THAT SHOULD BE TURNED OVER, THE

TWO BUCKETS OF INFORMATION, WHICH HOPEFULLY WILL TAKE CARE OF A LOT OF THE INFORMATION THAT YOU WERE SEEKING IN INTERROGATORY 16 AND 17, OR WHATEVER NUMBERS THEY WERE.  THERE MAY BE SOME OTHER DISPUTES.  OKAY?

MR. NEUKOM:  THANK YOU, YOUR HONOR.

MR. CUNNINGHAM:  YOUR HONOR, CAN WE HAVE SOME UNDERSTANDING OF HOW MANY ACCOUNTS WE ARE TALKING ABOUT BEFORE YOU ENTER THAT ORDER?  BECAUSE IF THEY COME BACK WITH A THOUSAND, THAT'S A MUCH DIFFERENT --

THE COURT:  FAIR ENOUGH.  FAIR ENOUGH.

MR. NEUKOM:  SO, I THINK I CAN REPRESENT IT'S NOT GOING TO BE A THOUSAND.  IT IS VERY EMPLOYEE SPECIFIC.

FOR EXAMPLE, JASON ACOSTA HAS HAD ONE ACCOUNT ONLY.  MAYBE I SHOULDN'T SAY IT IN OPEN COURT, BUT HE'S AN INDIVIDUAL WE KNOW WHO HAS ONLY ONE ACCOUNT.  SOME OF THE OTHER FORMER FORTINET EMPLOYEES HAD MANY MORE ACCOUNTS.  SO I DON'T HAVE --

THE COURT:  CAN YOU GIVE A BALLPARK?  IS IT LESS THAN A HUNDRED?

MR. NEUKOM:  I THINK IT WILL BE MORE THAN A HUNDRED.  I THINK IT WILL BE LESS THAN 300.

THE COURT:  MR. CUNNINGHAM?

MR. CUNNINGHAM:  YOUR HONOR --

MR. NEUKOM:  TO BE CLEAR, YOUR HONOR, I AM NOT ESTIMATING, I AM GUESTIMATING AT THIS POINT.

MR. CUNNINGHAM:  WELL, YOUR HONOR, IT'S DIFFICULT FOR

ME TO AGREE TO SOMETHING THAT'S GOING TO BE IN A COURT ORDER WHEN I DON'T KNOW THE SCOPE OF WHAT I'M AGREEING TO.

**THE COURT:** OKAY. SO --

**MR. NEUKOM:** CAN I MAKE --

**THE COURT:** GO AHEAD.

**MR. NEUKOM:** I AM SORRY.

WHY DON'T WE DO THIS. I CAN -- EVEN IF, RIGHT, WHAT WE ARE GOING TO DO AFTER THIS IS GO LOOK AT THE DATA PULL OR GO HAVE A DATA PULL FROM FORTINET'S FINANCE OR THE SALES TEAM TO MAKE SURE WE HAVE GOT ALL THESE ACCOUNTS.

WHY DON'T I SAY -- THAT MAY, MAYBE IT'S GOING TO BE 700 ACCOUNTS. WHY DON'T WE PROCEED AT OUR OWN PERIL. I WILL TELL THE COURT THAT IT WILL BE NO MORE THAN 200 ACCOUNTS. IF IT IS GOING TO BE MORE THAN 200 ACCOUNTS, MY GUESS IS WE CAN SORT THEM IN SOME FASHION TO FIGURE OUT WHICH ONES ARE BIGGER OR SMALLER, LESS OR MORE IMPORTANT. SO WE WILL FOREGO THE RIGHT TO GET ANY OF THIS INFORMATION FOR ACCOUNTS 201 AND BEYOND IF THERE ARE, IN FACT, MORE THAN THOSE ACCOUNTS. THAT WAY WE ALL HAVE SOME TRANSPARENCY GOING FORWARD.

**THE COURT:** MR. CUNNINGHAM?

**MR. CUNNINGHAM:** YOUR HONOR, I -- IF YOUR HONOR IS ORDERING ME TO PRODUCE INFORMATION FOR THOSE 200 ACCOUNTS, THEN I WILL DO IT.

**THE COURT:** OKAY. THEN I AM ORDERING IT.

**MR. CUNNINGHAM:** ALL RIGHT.

**THE COURT:**  ALL RIGHT.  IS THERE ANYTHING FURTHER TODAY?

**MR. NEUKOM:**  JUST ONE QUESTION, WHICH IS -- BECAUSE IT'S TIME SENSITIVE.

AS THE NEW EVIDENCE HAS COME OUT IN THE LAST COUPLE OF WEEKS, IT HAS BEEN CLEAR TO US THAT OUR DAMAGES MODEL WOULD HAVE TO CHANGE TO REFLECT THE SCOPE OF ALLEGED -- WHAT WE ALLEGE TO BE WRONGFUL CONDUCT.

WE HAVE RETAINED A NEW EXPERT.  HIS NAME IS PATRICK KENNEDY.  MR. KENNEDY HAS A SPECIALTY IN OR BACKGROUND IN ENTERPRISE VALUE, THE RISE IN AN ENTERPRISE VALUE AND WHAT IT IS ATTRIBUTABLE TO.

WE HAVE DISCLOSED DR. KENNEDY TO OPPOSING COUNSEL AND ASKED FOR SIGN-OFF UNDER THE PROTECTIVE ORDER.  I DON'T KNOW IF WE ARE MISCOMMUNICATING OR NOT, BUT WE HAVEN'T GOTTEN IT YET, AND I WAS JUST HOPEFUL THAT BY RAISING IT IN OPEN COURT WE MIGHT GET AN ANSWER.

IT'S -- WE'VE DISCLOSED DR. KENNEDY NINE DAYS AGO. COUNSEL HAS -- WE HAVE ASKED FOR HIS SIGN-OFF, AND I'M HOPEFUL WE CAN EITHER GET THE SIGN-OFF RIGHT NOW SO DR. KENNEDY CAN START GETTING INTO THE DOCUMENTS, OR IF NOT, WE CAN GET SOME SORT OF A GUIDANCE OR ORDER ABOUT WHEN WE CAN GET THAT SIGN-OFF.

**MR. CUNNINGHAM:**  YOUR HONOR, I HAVE NOT BEEN INVOLVED IN REVIEWING DR. KENNEDY'S C.V., BUT IF YOU CAN GIVE ME UNTIL

THE CLOSE OF BUSINESS, I WILL GET THE SIGN-OFF THAT I NEED.

**THE COURT:**  OKAY.

**MR. NEUKOM:**  CLOSE OF BUSINESS IS FINE.  AND WE APPRECIATE IT.  THANK YOU.

**THE COURT:**  ALL RIGHT.  ANYTHING FURTHER?

**MR. CUNNINGHAM:**  NOT FROM SOPHOS.

**THE COURT:**  OKAY.  THANK YOU.

**MR. CUNNINGHAM:**  THANK YOU, YOUR HONOR.

**MR. NEUKOM:**  THANK YOU, YOUR HONOR.

(PROCEEDINGS CONCLUDED AT 2:18 P.M.)

**CERTIFICATE OF TRANSCRIBER**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER..

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*Diane E. Skillman*

DIANE E. SKILLMAN, TRANSCRIBER

TUESDAY, SEPTEMBER 1, 2015