SEAN C. CUNNINGHAM, Bar No. 174931
sean.cunningham@dlapiper.com
KATHRYN RILEY GRASSO, Bar No. 211187
kathryn.riley@dlapiper.com
DAVID R. KNUDSON  Bar No. 265461
david.knudson@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone:     619.699.2700
Facsimile:     619.699.2701

TODD S. PATTERSON (*pro hac vice*)
todd.patterson@dlapiper.com
**DLA PIPER LLP (US)**
401 Congress Avenue
Suite 2500
Austin, Texas 78701-3799
Telephone:    512.457.7000
Facsimile:    512.457.7001

Attorneys for Defendant and Counterclaim Plaintiff
SOPHOS INC. and Counterclaim Plaintiff SOPHOS
LTD.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FORTINET, INC., a corporation,<br><br>Plaintiff,<br><br>v.<br><br>SOPHOS INC., a corporation, MICHAEL VALENTINE, an individual, and JASON CLARK, an individual,<br><br>Defendants. | CASE NO.  3:13-cv-05831-EMC<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS SOPHOS INC., MICHAEL VALENTINE AND JASON CLARK**<br><br>Date:      October 8, 2015<br>Time:      1:30 pm<br>Place:     Courtroom 5, 17th Floor<br>Judge**:**    Edward M. Chen<br><br>**ORAL ARGUMENT REQUESTED** |
| SOPHOS INC. and SOPHOS LTD., corporations,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>FORTINET, INC., a corporation,<br><br>Counterclaim Defendant. | |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF FORTINET, INC ("FORTINET") AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 8, 2015 at 1:30 p.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Edward M. Chen, located at 450 Golden Gate Avenue, San Francisco, California, 94102, there will be a hearing on the motion of Defendants Sophos Inc. ("Sophos"), Michael Valentine and Jason Clark for summary judgment on the grounds that there exists no genuine issue of material fact on the following claims: (1) Fortinet's claim for trade secret misappropriation against Sophos (Count No. XI of Fortinet's First Amended Complaint); (2) all claims alleged against individual defendants Michael Valentine and Jason Clark (Count Nos. VII, VIII, IX, X, XII and XIII of Fortinet's First Amended Complaint); and (3) Fortinet's claim for pre-suit damages on two of its asserted patents, United States Patent Nos. 7,333,430 ("the '430 patent") and 7,376,125 ("the '125 patent").

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the Declaration of Sean C. Cunningham ("Cunningham Decl.") in support of this Motion and the exhibits attached thereto, the complete record in this action, all matters of which the Court may take judicial notice, and such other written or oral argument as may be presented at or before the time this Motion is taken under consideration by the Court.

## RELIEF REQUESTED

Defendants respectfully request summary judgment be entered in their favor on (1) Fortinet's claim for trade secret misappropriation against Sophos (Count No. XI of Fortinet's First Amended Complaint); (2) all claims alleged against Defendants Michael Valentine and Jason Clark (Count Nos. VII, VIII, IX, X, XII and XIII of Fortinet's First Amended Complaint); and (3) Fortinet's claim for pre-suit damages on two of its asserted patents, the '430 patent and the '125 patent.

Dated:  September 7, 2015                    DLA PIPER LLP (US)


                                            By: */s/ Sean C. Cunningham*
                                                SEAN C. CUNNINGHAM
                                                KATHRYN RILEY GRASSO
                                                DAVID R. KNUDSON
                                                TODD S. PATTERSON

                                                Attorneys for Defendant and Counterclaim
                                                Plaintiff SOPHOS INC. and Counterclaim
                                                Plaintiff SOPHOS LTD.

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II. BACKGROUND AND STATEMENT OF FACTS ......................................................... 1

III. LEGAL STANDARD FOR SUMMARY JUDGMENT ..................................................... 3

IV. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON FORTINET'S
CLAIM FOR TRADE SECRET MISAPPROPRIATION AGAINST SOPHOS ............. 4

    A. Summary Judgment Is Warranted Because Fortinet Has Not Identified Any
Information That Constitutes A Legally Protectable Trade Secret ...................... 4

        1. Fortinet Cannot Define Its Alleged Trade Secrets Using Broad,
Generic Categories ....................................................................................... 5

        2. Fortinet Has Not Proven That The 136 Documents Listed By Bates
Number In Its 2019.210 Statement Are Trade Secrets ........................... 10

        3. Fortinet's New "Exhibit D" Identification Is Untimely And Also
Does Not Identify Any Alleged Trade Secrets ....................................... 12

    B. Summary Judgment Is Warranted Because Fortinet Has Not Proven That
Its Purported Trade Secrets Were The Subject of Reasonable Efforts To
Maintain Their Secrecy ........................................................................................ 13

        1. Fortinet Has Not Made Reasonable Efforts To Maintain the Secrecy
Of Its Purported Trade Secrets .............................................................. 13

        2. Fortinet Failed To Show That Its Purported Trade Secrets Are Not
Generally Known Or Readily Ascertainable ......................................... 14

    C. Summary Judgment Is Warranted Because Fortinet Has Not Proven That
Sophos Misappropriated Any Alleged Fortinet Trade Secret ........................... 16

        1. Fortinet Has No Evidence That Sophos Used Or Disclosed A
Fortinet Trade Secret ............................................................................... 17

        2. Fortinet Cannot Show That Sophos Did Not Independently Derive
The Alleged Trade Secret Information .................................................... 19

    D. Summary Judgment Is Warranted Because Fortinet Has Not Proven Any
Damages .............................................................................................................. 20

V. SUMMARY JUDGMENT IS WARRANTED ON ALL CLAIMS ALLEGED
AGAINST MICHAEL VALENTINE AND JASON CLARK, BECAUSE THOSE
CLAIMS WERE FULLY ADJUDICATED IN ARBITRATION ................................. 21

VI. FORTINET IS NOT ENTTITLED TO RECOVER PRE-SUIT DAMAGES FOR
TWO OF ITS PATENTS BECAUSE FORTINET DID NOT PROVIDE
ACTUAL NOTICE TO SOPHOS ............................................................................... 23

    A. Fortinet Has A Duty to Mark Its Products But Failed To Do So ...................... 24

    B. Fortinet Did Not Provide Sophos Actual Notice Before Filing Suit ................. 25

VII. CONCLUSION ............................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page**

Cᴀsᴇs

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ............ 23

*Advanced Modular Sputtering Inc. v. Sup. Ct.*,
  132 Cal.App.4th 826 (2005) ........... 7

*Agency Solutions.Com LLC v. TriZetto Group, Inc.*,
  No. CV F 11-1014, AWI 2011 WL 4084702 (E.D. Cal. 2011) ............ 6

*Aldrich Supply Co., Inc. v. Hanks*,
  2007 WL 30309 (Cal. App. 4 Dist.) ............ 16

*Allen v. McCurry*,
  449 U.S. 90 (1980) ............ 22

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
  6, F.3d 1523, 1538-39 (Fed. Cir. 1993) ............ 24

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994) ............ 25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............ 4

*Bayer Corp. v. Roche Molecular Systems, Inc.*,
  72 F.Supp.2d 1111 (N.D. Cal. 1999) ............ 16

*Brookhaven Typesetting Services, Inc. v. Adobe Systems, Inc.*,
  No. C-01-20813 RMW, 2007 WL 2429653 (N.D. Cal. Aug. 24, 2007) ............ 16

*Bunnell v. Motion Picture Assoc. of Am.*,
  567 F.Supp.2d 1148 (C.D. Cal. 2007) ............ 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............ 4

*Clark v. Bear Stearns & Co.*,
  966 F.2d 1318 (9th Cir. 1992) ............ 22

*Computer Econ., Inc. v. Gartner Group, Inc.*,
  50 F. Supp. 2d 980 (S.D. Cal. 1999) ............ 7

*Dunlap v. Schofield*,
  152 U.S. 244 (1894) ............ 23

*DVD Copy Control Ass'n v. Bunner*,
116 Cal. App. 4th 241 (2004)............................................................................................ 15

*Excelligence Learning Corp. v. Oriental Trading Co., Inc.*,
2004 WL 2944048 (N.D. Cal. Dec. 20, 2004) ................................................................... 20

*Fortinet, Inc. v. FireEye, Inc.*,
No. 3:13-cv-02496-HSG-PSG, Dkt. No. 173 ..................................................................... 2

*Fortinet, Inc. v. FireEye, Inc.*,
No. 3:13-cv-02496-HSG-PSG, 8/25/15 ............................................................................. 8

*Fortinet, Inc. v. FireEye, Inc.*,
No. 3:13-cv-02496-HSG-PSG, Dkt. No. 71 ....................................................................... 8

*Gallardo v. AT&T Mobility, LLC*,
937 F. Supp. 2d 1128 (N.D. Cal. Mar. 29, 2013)............................................................... 22

*Globespan, Inc. v. O'Neill*,
151 F.Supp.2d 1229 (C.D. Cal. 2001).................................................................................. 16

*Golden Bridge Tech., Inc. v. Apple, Inc.*,
No. 12-cv-04882-PSG, 2014 WL 1928977 (N.D. Cal. May 14, 2014) ............................. 23

*Hilderman v. Enea Teksci, Inc.*,
551 F.Supp.2d 1183 (S.D. Cal. 2008) ................................................................................. 15

*HiRel Connectors, Inc. v. United States*,
No. CV01–11069 DSF, 2005 WL 4958547 (C.D. Cal. Jan. 4, 2005)................................ 14

*HiRel Connectors, Inc. v. United States*,
No. CV01–11069 DSF, 2006 WL 3618011 (C.D. Cal. Jan. 25, 2006).............................. 13

*Iconix, Inc. v. Tokuda*,
457 F. Supp. 2d 969 (N.D. Cal. 2006) ................................................................................ 12

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998)....................................................................................... passim

*Integral Development Corp. v. Viral Tolat and Does 1-20*,
C 12-06575 JSW, 2014 WL 721844 (N.D. Cal. Feb. 24, 2014) ........................................ 21

*Jobscience, Inc. v. CVPartners, Inc.*,
No. C 13–04519-WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ............................... 13

DLA PIPER LLP (US)
EAST PALO ALTO

-iii-

WEST\260589067.2

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:13-CV-05831-EMC

*MAI Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993) ...................................................................................... 5

*Mintz v. Mark Bartelstein & Assoc., Inc.*,
   906 F.Supp.2d 1017 (2012) ................................................................................... 4, 16

*Morton v. Rank America, Inc.*,
   812 F. Supp. 1062 (C.D. Cal. 1993) ......................................................................... 13

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998) .......................................................................... 23, 24

*Pixion, Inc. v. Placeware Inc.*,
   421 F. Supp. 2d 1233 (N.D. Cal. 2005) .................................................................... 12

*PMC, Inc. v. Kadisha*,
   78 Cal. App.4th 1368 (2000) ..................................................................................... 16

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ................................................................................... 11

*Religious Tech. Center v. Netcom On–Line Comm. Servs., Inc.*,
   923 F. Supp. 1231 (N.D. Cal. 1995) .............................................................. 13, 15, 18

*Rita Medical Systems, Inc. v. Resect Medical, Inc.*, No. C 05–03291 WHA, 2007 WL
   161049 (N.D. Cal. Jan. 17, 2007) ............................................................................. 19

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) ................................................................................................... 15

*Sargent Fletcher, Inc. v. Able Corp.*,
   110 Cal. App. 4th 1658 (2003) ............................................................................... 4, 19

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal.App.4th 210 (2010), *overruled on other grounds by Kwikset Corp. v. Superior
   Court (Benson)*, 51 Cal. 4th 310 (2011) .................................................................... 6

*Social Apps, LLC v. Zynga, Inc.*,
   No. 4-11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 4, 2012) .................... 6

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
   308 F.3d 1193 (Fed. Cir. 2002) ................................................................................. 24

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
   494 Fed. Appx. 743 (9th Cir. 2012) .......................................................................... 20

## TABLE OF AUTHORITIES
## (CONT.)

**Page**

*U.S. Postal Serv. v. Gregory,*
   534 U.S. 1 (2001) ........................................................................................................ 22

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.,*
   707 F. Supp. 1170 (C.D. Cal.1989) .......................................................................... 11

*W.L. Gore & Assoc., Inc. v. GI Dynamics, Inc.,*
   872 F.Supp.2d 883 (2012) ...................................................................... 9, 11, 12, 14

*WiAV Solutions LLC v. Motorola, Inc., et al.,*
   732 F. Supp. 2d 634 (E.D. Va. 2010) ........................................................................ 23

### STATUTES

35 U.S.C. § 187 ................................................................................................................... 1

35 U.S.C. § 287 ................................................................................................................. 23

Cal. Civ. Code § 3426.1 ...................................................................................................... 4

Cal. Civ. Code § 3426.1(a) ................................................................................................ 16

Cal. Civ. Code § 3426.1(d) ........................................................................................... 5, 13

Cal. Civ. Proc. Code § 2019.210 ............................................................................ 2, 4, 5, 7

Cal. Civil Code § 3426.1(b) ............................................................................................... 16

### OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ............................................................................................................ 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants request summary judgment on the following three grounds.  <u>First</u>, no genuine issue of material fact exists on Fortinet's claim against Sophos for trade secret misappropriation, because Fortinet has failed to identify any information that qualifies as a trade secret under California law and because Fortinet has no evidence that Sophos acquired any alleged Fortinet trade secrets through improper means.  <u>Second</u>, all of the claims against Michael Valentine and Jason Clark should be dismissed, because those claims were fully adjudicated and resolved in a Court-ordered arbitration earlier this year.  <u>Third</u>, the Court should enter summary judgment on Fortinet's claim for pre-suit damages on two of its asserted patents, because Fortinet practices the claims of those patents but failed to mark its products with the patent numbers as required by 35 U.S.C. § 287.

## II.     BACKGROUND AND STATEMENT OF FACTS

Fortinet filed this lawsuit against Sophos and Michael Valentine on December 16, 2013, accusing Sophos of patent infringement and accusing Mr. Valentine, a former Fortinet Senior Vice-President who left Fortinet for Sophos, of breach of his employment agreement for allegedly soliciting other Fortinet employees to join him at Sophos.  Dkt. No. 1.  Fortinet filed this lawsuit in response to several employees leaving Fortinet for Sophos.  *Id.* at 6.  On January 9, 2014, following the departure of several more Fortinet employees for Sophos, Fortinet filed a First Amended Complaint, added Jason Clark as a defendant and pled a bevy of other allegations, including a claim for trade secret misappropriation against Sophos, as well as additional solicitation claims against Mr. Valentine and Mr. Clark.  Dkt. No. 9.

Because Fortinet had included an arbitration provision in its employment contract with Mr. Valentine, Mr. Valentine moved to compel arbitration as to the claims asserted against him. The parties ultimately stipulated to arbitrating the claims against Mr. Valentine and Mr. Clark, and the Court thereafter ordered all of the claims against Mr. Valentine and Mr. Clark to arbitration.  Dkt. No. 45.  A week-long arbitration hearing was held before the Hon. Jack Komar at JAMS from November 10-17, 2014.  Following post-hearing briefing, Judge Komar issued a

1    Final Award on March 10, 2015, which disposed of all of Fortinet's claims against Mr. Valentine

2    and Mr. Clark.

3         Shortly after Fortinet filed its trade secret misappropriation claim, Sophos demanded that

4    Fortinet identify its alleged trade secrets with particularity, as Fortinet was required to do

5    pursuant to California Code of Civil Procedure § 2019.210 before commencing discovery on its

6    misappropriation claim.  Fortinet initially refused to provide a § 2019.210 statement, but did so

7    on August 5, 2014 after Sophos informed Fortinet that Sophos would move to compel the

8    identification.  Fortinet's initial § 2019.210 statement mirrored Fortinet's previous response to a

9    Sophos interrogatory seeking the identification of Fortinet's trade secrets, which was woefully

10   inadequate and failed to comply with the requirements of the statute.  Fortinet's initial § 2019.210

11   statement listed only categories and types of information that Fortinet alleged to be trade secrets,

12   and did not identify any specific document alleged to have been misappropriated.  After Sophos

13   objected, Fortinet amended its § 2019.210 statement on September 8, 2014 but again, the

14   identification failed to comply with the requirements of the statute.  With the arbitration hearing

15   looming, Fortinet's lead counsel promised not to "back burner" providing an adequate § 2019.210

16   statement, but that is exactly what happened.  Fortinet ultimately abandoned its trade secret

17   breach of contract claims against Mr. Valentine and Mr. Clark in the arbitration, and did not

18   resume pursuing its trade secret claim against Sophos until March 2015, when Fortinet sought to

19   inspect the computers of the former Fortinet employees.

20        Fortinet served a second amended § 2019.210 statement on May 1, 2015, nearly 14

21   months after it filed its trade secret misappropriation claim.  Because the fact discovery period

22   was rapidly coming to a close, Sophos accepted the statement for the purpose of completing

23   discovery, but Sophos reserved all rights to challenge the sufficiency of the § 2019.210 statement

24   for all other purposes, including summary judgment.

25        Failing to identify its alleged trade secrets in litigation is becoming a pattern for Fortinet.

26   In a very similar case brought against another competitor (FireEye, Inc.), Fortinet recently found

27   itself on the losing end of a motion for protective order for its failure to identify its trade secrets

28   with particularity.  *See Fortinet, Inc. v. FireEye, Inc.*, No. 3:13-cv-02496-HSG-PSG, Dkt. No.

173 (Aug. 24, 2015 Order Granting FireEye's Motion for Protective Order). Fortinet's failed identification of its alleged trade secrets in that case is nearly identical to its failed identification of its alleged trade secrets in this case. *Compare* Case No. 3:13-cv-02496 at Dkt. No. 114, Ex. A to Decl. of Shane Brun *with* Cunningham Decl., Ex. 1.[1]

Because Fortinet could not identify any trade secrets purportedly misappropriated by Sophos when Fortinet filed its First Amended Complaint, it embarked on a fishing expedition during discovery to try to "reverse engineer" what it believed had been misappropriated. Fortinet ultimately gained access to the forensic images of all of the former Fortinet employees' personal and work computers, and by running extremely broad search terms (such as "Fortinet" + "confidential" in the same document) was able to generate thousands of "hits" which it used to cherry-pick certain documents it then claimed were its misappropriated trade secrets.

For purposes of this motion, therefore, the material facts are: (1) Fortinet has not identified any alleged trade secret with the particularity required by California law, and it is too late to do so now; (2) there is no evidence that Fortinet took reasonable measures to maintain the secrecy of its alleged trade secrets; (3) there is no evidence that Sophos obtained any alleged Fortinet trade secret by "improper means" or that Sophos misappropriated any alleged Fortinet trade secret; (5) there is no evidence that Fortinet has been damaged by any alleged trade secret misappropriation; (6) there are no remaining claims to be adjudicated against Mr. Valentine and Mr. Clark because those claims have been resolved through arbitration; and (7) Fortinet did not provide Sophos with the requisite notice to be entitled to seek pre-suit damages for two of Fortinet's asserted patents.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), the Court must grant summary judgment to a moving party when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If, as here, a non-moving party bears the burden of proof, the Court should grant summary judgment if there is

---

[1] Unless otherwise noted, all exhibits cited in this Motion are attached to the Declaration of Sean C. Cunningham filed with this Motion and are cited as "Ex. #."

a "complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). To oppose summary judgment, a non-moving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

## IV.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON FORTINET'S CLAIM FOR TRADE SECRET MISAPPROPRIATION AGAINST SOPHOS.

The Court should grant summary judgment on Fortinet's claim for trade secret misappropriation under the California Uniform Trade Secrets Act ("UTSA"), Count No. XI of its First Amended Complaint. To prevail on a trade secret claim under the UTSA, a plaintiff must establish that it owns a clearly identified trade secret, that the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and that the misappropriation caused damage to the plaintiff. *Mintz v. Mark Bartelstein & Assoc., Inc.,* 906 F. Supp. 2d 1017, 1038 (2012); Cal. Civ. Code § 3426.1; *see also Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003). For at least four independent reasons, the Court should enter summary judgment on Fortinet's trade secret claim. <u>First</u>, Fortinet has not identified any information that constitutes a legally protectable trade secret as defined in the UTSA—not in deposition testimony, not in interrogatory responses, not in expert reports, and certainly not in its "Second Supplemental Identification of Trade Secrets Pursuant to Cal. Code of Civ. Proc. § 2019.210." Ex. 1. <u>Second</u>, Fortinet has not proven that its purported trade secrets (whatever they may be) were the subject of efforts that are reasonable under the circumstances to maintain their secrecy. <u>Third</u>, Fortinet has not proven that Sophos misappropriated any alleged Fortinet trade secret through "improper means." <u>Fourth</u>, Fortinet has not proven it suffered any actual loss from any alleged misappropriation, or that Sophos was unjustly enriched as a result of any alleged misappropriation.

### A.  Summary Judgment Is Warranted Because Fortinet Has Not Identified Any Information That Constitutes A Legally Protectable Trade Secret.

The UTSA defines a "trade secret" as information that "[d]erives independent economic value, actual or potential, from not being generally known to the public or other persons who can

obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d). A trade secret

plaintiff "must identify the trade secrets and carry the burden of showing that they exist." *MAI*

*Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). When a party fails to

identify its trade secrets with particularity, summary judgment is appropriate. *Imax Corp. v.*

*Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998); *see also* Cal. Civ. Code § 2019.210

(trade secret plaintiff "shall identify the trade secrets with reasonable particularity").

      Fortinet failed to identify its trade secrets with any reasonable particularity. After 17

months of litigation and two false starts,[2] Fortinet served its Second Supplemental Identification

of Trade Secrets Pursuant to Cal. Code of Civ. Proc. § 2019.210 (the "2019.210 Statement").[3]

Ex. 1. The 2019.210 Statement contains eight broad categories of information that Fortinet

claims are its trade secrets, including things like "[i]nformation and compilations concerning

Fortinet's former, present, and prospective employees" and "[a]ll trade secret information

contained in Fortinet's password-protected Salesforce database." Ex. 1 at 1, 4. Knowing that was

not good enough, Fortinet also listed 136 documents by Bates number in its 2019.210 Statement.

Later, after obtaining discovery from Sophos and the Former Fortinet Employees,[4] Fortinet

created an exhibit for one of its expert reports listing 187 new documents that it claims were

"retained or accessed" by the Former Fortinet Employees. For the reasons that follow, Fortinet

has not proven that any of this information constitute a trade secret under the UTSA.

      **1.**    **Fortinet Cannot Define Its Alleged Trade Secrets Using Broad, Generic Categories.**

      The Court should reject Fortinet's attempt to define its alleged trade secrets using broad,

generic categories. California courts have held that broad, generic categories of information are

---

[2] Fortinet served its initial 2019.210 Statement on August 5, 2014 and its First Supplemental 2019.210 Statement on September 8, 2014.
[3] Sophos accepted Fortinet's 2019.210 Statement so the parties could finish discovery, but Sophos believed then (and discovery has borne out this belief) that the 2019.210 Statement did not and does not properly identify any alleged trade secrets. Sophos therefore reserved its right to challenge the sufficiency of Fortinet's disclosure of its alleged trade secrets for all other purposes, including through this summary judgment motion. Ex. 2.
[4] The "Former Fortinet Employees" are: Michael Valentine, Kendra Krause, Rob Gattis, Craig Bradshaw, Dave DeHaven, Jason Clark, Ryan Archer, Jason Acosta, Dean Shroll, Ben Ellering, and Dolph Smith.

insufficient to establish the existence of trade secrets. *See Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1167-68 (9th Cir. 1988). In *Imax*, the Ninth Circuit affirmed a grant of summary judgment against the plaintiff where the plaintiff claimed trade secrets in the design a film projector, but failed to specify "the precise numerical dimensions and tolerances with sufficient particularity." The plaintiff's failure to specifically identify the dimensions and tolerances meant that the Court and the trier of fact would be unable to distinguish the plaintiff's trade secrets from other systems, and that the defendant "could not be expected to prepare its rebuttal to Imax's trade secrets claim." *Id*. at 1167-68. The court's holding in *Imax* is consistent with other cases holding that identifying broad categories of information without specifics is not a sufficient identification of a trade secret. *See Social Apps, LLC v. Zynga, Inc.*, No. 4-11-CV-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 4, 2012) ("description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret"); *Agency Solutions.Com LLC v. TriZetto Group, Inc.*, No. CV F 11-1014, AWI 2011 WL 4084702, at *11 (E.D. Cal. 2011) ("ideas and broad conceptualizations are not trade secrets"); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010), *overruled on other grounds by Kwikset Corp. v. Superior Court (Benson)*, 51 Cal. 4th 310, 337 (2011) (trade secret identification insufficient where it "[did] not designate information as such but rather describes various features, functions, and characteristics of the design and operation of … [the] software products" at issue).

Fortinet's 2019.210 Statement here contains the generic descriptions of information in categories and subcategories that California courts have found to be improper. For example, Fortinet's 2019.210 Statement includes the generic category of "All trade secret information contained in Fortinet's password-protected Salesforce database," and provides generic sub-category entries such as "dashboards displaying summaries of sales, financial information, opportunities and forecasts," "customizable reports of sales and opportunities," "reports and summaries from 'Opportunities' tab in Salesforce interface," "records of accounts," "SalesForce Chatter pages," "records of marketing campaigns," "reports pertaining to special pricing requests," and "customer and partner leads." Ex. 1 at pp. 1-3. Although these entries describe

-6-

certain types of document and references broad categories of information within such documents, it does not sufficiently explain what in the documents is supposedly a trade secret.

Indeed, Fortinet does not identify a single specific document or piece of information in any of these broad categories. Although Fortinet goes on to identify various sub-categories that these top-level categories "include" (for example, it identifies "employee skill-sets" and "employee preferences" as sub-categories of Category 3(c) regarding information about Fortinet's employees), none of those sub-categories identify the actual trade secret information supposedly at issue in this case either. What Fortinet has submitted instead is a hodge-podge that variously identifies dozens of broad categories of documents (e.g., "inventory reports") and generic concepts (e.g., "employee preferences"), calling them all "trade secrets" and making no effort to distinguish any information as a true trade secret. Such broad identification, in direct conflict with the particularity requirements of Section 2019.210, would allow Fortinet to claim as a trade secret nearly any information related in any possible way to its sales process, including any "proprietary," "confidential," or "non-public" information "contained in its Salesforce database," about its "customers," " partners," "employees," "products," or "how it markets its products versus Sophos." This violates the letter and spirit of Section 2019.210.

Section 2019.210 is not merely a discovery rule. Rather, it serves several important purposes:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints.
>
> Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets.
>
> Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope.
>
> Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Advanced Modular Sputtering Inc. v. Sup. Ct.*, 132 Cal. App. 4th 826, 8333-34 (2005) (*quoting Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (emphasis and line breaks added; internal citations omitted). In short, the identification of trade secrets

serves to set the boundaries, not just for discovery, but for the case as a whole, so that everyone knows what information is at issue, and against what the defendant must defend.

Fortinet's attempt to define its alleged trade secrets by generic categories has already come under scrutiny in this District. On August 25, 2015, Magistrate Judge Grewal granted a motion for protective order filed by FireEye, Inc. in a case with an eerily similar fact pattern to this one. There, as here, Fortinet sued FireEye after several employees left Fortinet to join FireEye. *Fortinet, Inc. v. FireEye, Inc.*, No. 3:13-cv-02496-HSG-PSG, Dkt. No. 71. There, as here, Fortinet sued its competitor for patent infringement and trade secret misappropriation, claiming that the former Fortinet employees took trade secrets to FireEye. *Id.* There, as here, Fortinet has been unable to identify any of its alleged trade secrets with particularity. At the hearing on the motion, Judge Grewal granted the motion for protective order and openly questioned whether Fortinet even had a Rule 11 basis to file a trade secret claim against FireEye:

> THE COURT: How do you satisfy 2019 if you don't know what they took?
>
> MR. NEUKOM: Primarily, your honor, by identifying the Salesforce database.
>
> THE COURT: Okay. So what within the Salesforce database did they take?
>
> MR. NEUKOM: It's impossible for us to know.
>
> THE COURT: Then that means you don't know, which means you don't have a trade secret claim.
>
> MR. NEUKOM: If I may try an analogy, your honor?
>
> THE COURT: How about trying a specific compilation or document that you think they took? I'm just asking for an allegation at this point that, under Rule 11, you're comfortable representing to this Court that you believe they took.

Ex. 3, *Fortinet, Inc. v. FireEye, Inc.*, No. 3:13-cv-02496-HSG-PSG, 8/25/15 Hrg Tr. at 31:15-32:4. Judge Grewal continued:

> THE COURT: Yeah. You're saying your six-page 2019 statement lists all kinds of examples of what you're claiming as a trade secret in this case. I'm saying, show me one. Give me one example of what you're willing to say, under Rule 11, is a trade secret that we're claiming and that they took.

MR. NEUKOM:  Oh, we would be happy to lodge under seal with the court a handful of examples from the Salesforce database.

THE COURT:  And you're saying that you believe, under Rule 11, that they took those trade secrets?  It's not just that you're claiming them as trade secrets.  It's that you believe that they took them.

MR. NEUKOM:  Not those specific documents, and I'll be the first to admit that, Your Honor.  We just don't know.

*Id.* at 39:8-40:6.

The same thing is at work in this case—Fortinet has alleged its trade secrets using generic, malleable language, to make identification of the precise information Fortinet alleges to be its trade secrets impossible to discern.  The Court should therefore enter summary judgment on each of alleged trade secrets in Fortinet's 2019.210 Statement that is expressed in broad, generic language—namely, the information identified in Category 1 ("All trade secret information contained in Fortinet's password-protected Salesforce database"); Category 2 ("All non-public, confidential information pertaining to reseller Ingram Micro"); Category 3 ("Information and compilations concerning Fortinet's former, present and prospective employees");[5] Category 4 ("Information and compilations of information about Fortinet's current, former and prospective customers, customer relationships and end-users");[6] Category 5 ("Information and compilations of information about Fortinet's current, former and prospective partners, distributors, wholesalers, value-added re-sellers, and downstream companies in the sales channel");[7] Category 6 ("Non-public information and compilations of information about Fortinet's products"); [8] Category 7 ("Information contained in Fortinet's 'E-Staff' reports");[9] and Category 8 ("Proprietary and confidential information and compilations of information about how Fortinet markets its products versus Sophos products").[10]  *See W.L. Gore & Assoc., Inc. v. GI Dynamics, Inc.*, 872 F. Supp. 2d

---

[5]  Fortinet only identified two specific "Reseller Reports" in Category 3(a).
[6]  Fortinet only identified 32 specific reports in Category 4(a), and only 5 reports in 4(b).
[7]  Fortinet only identified 69 specific Point of Sale ("POS") reports in Category 5(a), and only two specific Special pricing authorizations in 5(b).
[8]  Fortinet only identified two specific "Inventory reports" in Category 6(a), two specific marketing reports in 6(d), 15 "Confidential price lists" in 6(e), and one Bates range of "competitive intelligence" documents in 6(f).
[9]  Fortinet only identified one specific "E-Staff" report in Category 7.
[10]  Fortinet only identified the same Bates range of documents in Category 8 as it did for Category 6(f).

883, 898 (2012) (summary judgment warranted on individual trade secrets when there is no sufficient evidence to support a claim based on that particular secret).

### 2. Fortinet Has Not Proven That The 136 Documents Listed By Bates Number In Its 2019.210 Statement Are Trade Secrets.

Fortinet also has not proven that any of the 136 documents identified by Bates number in its 2019.210 Statement actually qualifies as a trade secret. Simply referring to a range of documents without identifying what exactly in those documents constitutes the plaintiff's trade secret is insufficient to identify the secret with particularity, making summary judgment appropriate. *Bunnell v. Motion Picture Assoc. of Am.*, 567 F.Supp.2d 1148, 1155 (C.D. Cal. 2007) (granting summary judgment). In *Bunnel*, the plaintiff had employed an associate who was alleged to have "hacked" into the plaintiff's email and then sold 34 documents allegedly containing the plaintiff's business information to the defendant. *Id.* at 1150-51. The plaintiff attempted to identify its trade secrets simply as those 34 documents, but the court found that "[p]laintiffs in this case have not identified with any measure of particularity what trade secrets the documents given to MPAA contain." *Id.* at 1155.

Even if Fortinet had identified what information in any of these 136 documents supposedly qualifies as a trade secret (which it did not), these documents still do not rise to the level of trade secrets. None of the 136 documents are labeled "Trade Secret." In fact, 92 of the 136 documents contain no confidentiality label of any kind. Ex. 4 at 16. But most significantly, Fortinet has never explained what trade secrets are supposedly hidden in these 136 documents. During fact discovery, Sophos issued an interrogatory asking Fortinet to "identify all trade secrets and/or confidential information Fortinet contends has been misappropriated by Sophos, including identifying the person(s) from whom Sophos allegedly obtained the trade secrets or confidential information, and how Sophos purportedly misused the trade secrets or confidential information." Ex. 6. In response, Fortinet provided no facts—rather, it simply pointed back to its faulty 2019.210 Statement.[11] *Id.* Sophos also issued a Rule 30(b)(6) deposition topic asking for: "A

---

[11] *See, e.g., Imax,* 152 F.3d at 1164-67 (affirming summary judgment on trade secret misappropriation claim where interrogatories failed to adequately identify trade secrets at issue);

complete description of each piece of information alleged to be Fortinet Trade Secret

Information, including how each such piece of information allegedly is not generally known to

the public and/or allegedly subject to reasonable measures to maintain its secrecy." Ex. 7.  At the

deposition, Fortinet's designee on trade secret-related topics <u>refused</u> to identify Fortinet's alleged

trade secrets:

> Q.  And I'm trying to get at, what does Fortinet consider to be its
> trade secrets?
>
> A.  And what I am saying is that you have been -- what we -- in --
> under -- in the course of this litigation, I believe that designation of
> trade secrets has been -- has been a subject of a lot of back-and-
> forth and a lot of specific disclosure.  So you have the answer to
> your question, so I don't know why you're asking me.

Ex. 8, Nelson Depo. at 136:24-137:7.

Fortinet then served its expert reports on trade secret-related topics.  Fortinet's experts did

not offer <u>any</u> opinions identifying a single Fortinet alleged trade secret.  *See* Ex. 9 (Kennedy

Report); Ex. 10 (Calandrino Report); Ex. 11 (Read Report).  Rather, their opinions were limited

to opining that Fortinet's "trade secret program" was adequate under the circumstances:  "It is my

opinion that Fortinet uses reasonable measures to maintain the secrecy of its confidential

information given the perceived threat and trust placed in employees based upon their

professional roles."  Ex. 10 (Calandrino Report) at ¶ 20.

Because Fortinet refused at every turn to participate in discovery by identifying its alleged

trade secrets with particularity, summary judgment is appropriate.  *Imax*, 152 F.3d at 1164-67;

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170 , 1177 (C.D.

Cal.1989) (granting summary judgment where defendant established that plaintiff had "failed to

inform [Defendant] or the Court precisely which trade secret it alleges was misappropriated").

And Fortinet cannot cure its failure by coming forward with "evidence" at the summary judgment

stage—the law is clear that Fortinet cannot attempt to cure its discovery failures by citing new

evidence for the first time in opposing summary judgment.  *Provenz v. Miller*, 102 F.3d 1478,

*W. L. Gore* at 898 (dismissing trade secrets claims not listed in response to interrogatory seeking
identification of same).

1483 (9th Cir. 1996); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 975-76 (N.D. Cal. 2006); *Pixion, Inc. v. Placeware Inc.*, 421 F. Supp. 2d 1233, 1241-42 (N.D. Cal. 2005) (granting summary judgment based on plaintiff's description of its trade secrets in the C.C.P. 2019(d) statement, not on "further details" cited by Plaintiff for the first time in opposing the motion).

### 3. Fortinet's New "Exhibit D" Identification Is Untimely And Also Does Not Identify Any Alleged Trade Secrets.

Fortinet's latest attempt to identify its alleged trade secrets comes in the form of an exhibit to the report of one its experts, Dr. Patrick Kennedy. In Exhibit D to his report, Dr. Kennedy identifies 189 unique (*i.e.*, non-duplicative) documents that Fortinet claims were "accessed or retained by" the Former Fortinet Employees. Ex. 9, Kennedy Report, Ex. D thereto. Notably, neither Dr. Kennedy nor Fortinet claims that any of these documents constitute or contain an alleged Fortinet trade secret, so summary judgment is warranted on that basis alone.

However, the "Exhibit D" identification of documents fails to support Fortinet's trade secrets claim for several other reasons. <u>First</u>, 187 of these documents do not appear in Fortinet's 2019.210 Statement (nor are they listed in response to Sophos's interrogatory), and therefore were not properly identified as alleged trade secrets. *Imax*, 152 F.3d at 1164-67 (affirming summary judgment on trade secret claim where interrogatories failed to adequately identify trade secrets); *W. L. Gore*, 872 F. Supp. 2d at 898 (dismissing trade secrets claims not listed in response to interrogatory seeking identification of same). <u>Second</u>, a significant amount of these documents are Sophos business records, not Fortinet's. *See* Ex. 9 at Ex. D. <u>Third</u>, Exhibit D appears to be Fortinet's (failed) effort to "reverse engineer" its trade secrets, which is not permitted under the law of this District. As Judge Alsup observed just last year:

> Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff. A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery. This order will not allow this old trick of vague pleading with the blanks to be artfully filled in only after discovery.

*Jobscience, Inc. v. CVPartners, Inc.*, No. C 13–04519-WHA, 2014 WL 852477 at *5 (N.D. Cal. Feb. 28, 2014).

In short, Fortinet has failed at every turn to identify its alleged trade secrets with the particularity required to survive summary judgment. *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1167-68 (9th Cir. 1988). The Court should enter judgment for Sophos.

**B.  Summary Judgment Is Warranted Because Fortinet Has Not Proven That Its Purported Trade Secrets Were The Subject of Reasonable Efforts To Maintain Their Secrecy.**

Not surprisingly, no genuine issue of material fact exists on the next element of Fortinet's trade secret claim—that its (unidentified) trade secrets were the subject of reasonable efforts to maintain their secrecy. "A trade secret may only exist if: (1) reasonable steps were taken to maintain its secrecy, and (2) the information alleged to be a trade secret is not generally known to the public or people who can obtain economic value from its use." *HiRel Connectors, Inc. v. United States,* No. CV01–11069 DSF, 2006 WL 3618011 at *6 (C.D. Cal. Jan. 25, 2006), citing Cal. Civ. Code § 3426.1(d); *Religious Tech. Center v. Netcom On–Line Comm. Servs., Inc.*, 923 F. Supp. 1231, 1250 (N.D. Cal. 1995); *Morton v. Rank America, Inc.,* 812 F. Supp. 1062, 1075 (C.D. Cal. 1993). Here, Fortinet cannot prove either of the elements identified in *HiRel*.

**1.  Fortinet Has Not Made Reasonable Efforts To Maintain the Secrecy Of Its Purported Trade Secrets.**

Fortinet has presented no evidence that it took "reasonable steps" to protect the specific documents it is claiming to be its trade secrets. Fortinet's expert, Dr. Calandrino, opines that "[i]t is my opinion that Fortinet uses reasonable measures to maintain the secrecy of its confidential information given the perceived threat and trust placed in employees based upon their professional roles." Ex. 10 (Calandrino Report) at ¶ 20. But Dr. Calandrino stops short of opining that any of the documents discussed above was actually subject to reasonable steps to maintain their secrecy. There is a good reason he does not offer that opinion—because the documents in question were not subject to <u>any</u> measures to maintain their secrecy. The following facts are material and undisputed:

1
• Seven of the Former Fortinet Employees testified that they were permitted—even

encouraged—to use their personal computers to conduct Fortinet business. Ex. 12, Acosta

10/10/14 Depo. at 87:20-88:21; Ex. 15, Valentine 9/3/15 Depo. at 36:8-37:13; Ex. 16, Krause

10/2/14 Depo. at 34:13-35:8; Ex. 17, Krause 8/19/15 Depo. at 149:5-15; Ex. 18, Gattis 8/28/15

Depo. (Rough) at 12:15-13:8; Ex. 19, DeHaven 8/28/15 Depo. (Rough) at 5:19-6:8; Ex. 20, Clark

10/8/14 Depo. at 303:7-304:5; Ex. 23, Archer 8/26/15 Depo. at 12:23-15:14. This is why these

employees ended up having Fortinet data on their personal computers—because they maintained

those documents on their personal computers in the ordinary course of their jobs at Fortinet.

• Because Fortinet does not have protocols for identifying materials that may

contain sensitive information, Fortinet employees generally mark everything they generate as

"Fortinet Confidential" or similar words. A simple Google search for the words "Fortinet

confidential" returns 536 documents labeled "Fortinet Confidential" on publicly accessible

websites, including on Fortinet's own public website. Ex. 4, Tippit Report at 14-15, 21; Ex. 5.

These documents include public presentations given by Fortinet's CEO, presentations made by

Fortinet's partners, and information about Fortinet's products . Ex. 4, Tippit Report at 21, 23, 24.

• One Former Fortinet Employee, Ryan Archer, testified that Fortinet allowed

roughly 30-40 Fortinet employees to share a single password to access Fortinet's Salesforce

database—the very database that Fortinet claims contains many of its purported trade secrets. Ex.

23, Archer Depo. at 58:4-59:4.

## 2. Fortinet Failed To Show That Its Purported Trade Secrets Are Not Generally Known Or Readily Ascertainable.

A trade secret requires proof of "independent economic value, actual or potential, from

not being generally known to the public or to other persons who can obtain economic value from

its disclosure or use." UTSA § 3426.1(d)(1). Fortinet also bears the burden at this stage to show

that its alleged trade secrets are not generally known or readily ascertainable, and its failure to do

so warrants summary judgment. *See W. L. Gore*, 872 F.Supp.2d 883, 900 ("Furthermore, GID

has presented no evidence that Trade Secrets 7 and 19 were not generally known, and claims

regarding those secrets are dismissed"); *see also HiRel Connectors, Inc. v. United States,* No.

CV01–11069 DSF, 2005 WL 4958547 at *6 (C.D. Cal. Jan. 4, 2005) ("Even if reasonable steps had been taken, Plaintiff cannot bring a suit for misappropriation unless it can also show that the information alleged to be a trade secret is not generally known or readily ascertainable.")

Not only has Fortinet failed to present any evidence that any of its alleged trade secrets were not generally known or were not readily ascertainable, but the uncontroverted evidence shows that the public Internet is awash with hundreds of Fortinet's alleged "confidential" documents, that are readily accessible through simple Google searches. Ex. 4, Tippit Report at 14-15, 21; Ex. 5. Once trade secrets have been exposed to the public, they cannot later be recalled. *Religious Tech. Center v. Netcom Online Comm'cn Svcs Inc.,* 923 F. Supp. 1231, 1254 (N.D. Cal. 1995); *see also id.* at 1256 ("posting works to the Internet makes them 'generally known' "). Further, a trade secret loses its status as a secret when it is made available to the members of the relevant industry. *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1002 (1984) (information that is generally known in an industry not a trade secret); *see also DVD Copy Control Ass'n v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) (information is not a secret if it has become generally known to potential competitors); *Hilderman v. Enea Teksci, Inc*., 551 F.Supp.2d 1183, 1199 (S.D. Cal. 2008) (granting summary judgment on certain aspects of trade secret claim where contested information was in the public domain and not a trade secret).

Further, Fortinet's retail prices, and even its discounted prices, are generally known in the industry, as they are available on several websites, including http://www.virtualgraffiti.com/Partner/Fortinet and www.avfirewalls.com. Many of the Former Fortinet Employees have testified that Fortinet's price lists and pricing structure is easily found online. Ex. 12, Acosta 10/10/14 Depo. at 91:18-92:4; 93:24-94:4; Ex. 13, Acosta 8/24/15 Depo. at 37:16-38:7; Ex. 14, Valentine 10/6/14 Depo. at 262:12-263:12; Ex. 16, Krause 10/2/14 Depo. at 39:23-41:2; Ex. 17, Krause 8/19/15 Depo. at 145:6-148:5; Ex. 20, Clark 10/8/14 Depo. at 331:7-332:9; Ex. 21, Clark 6/16/15 Depo. at 147:23-150:14; Ex. 22, Archer 9/23/14 Depo. at 271:17-272:6. Fortinet's price lists, therefore, are also not protectable trade secrets. Thus, any and all information which Fortinet claims as "confidential" cannot be a trade secret once it has been publically disclosed. Sophos is entitled to summary judgment on this independent basis.

**C.**     <u>**Summary Judgment Is Warranted Because Fortinet Has Not Proven That**</u>
<u>**Sophos Misappropriated Any Alleged Fortinet Trade Secret.**</u>

Summary judgment is warranted because Fortinet has failed to come forward with any facts whatsoever that Sophos misappropriated any alleged Fortinet trade secret. *Mintz v. Mark Bartelstein and Assoc. Inc.*, 906 F.Supp.2d 1017, 1038 (C.D. Cal. 2012) (granting summary judgment where record was "utterly devoid" of any evidence of misappropriation); *see also Brookhaven Typesetting Services, Inc. v. Adobe Systems, Inc.*, No. C-01-20813 RMW, 2007 WL 2429653 at *10-11(N.D. Cal. Aug. 24, 2007) (granting summary judgment where plaintiff failed to produce any evidence that defendant misappropriated plaintiff's alleged trade secrets); *Aldrich Supply Co., Inc. v. Hanks*, 2007 WL 30309, at *12 (Cal. App. 4 Dist.) (affirming summary judgment where plaintiff failed to show that customer list and other information was a trade secret, or that the information was misappropriated).

"To find misappropriation, California courts require that the trade secret be used by the Defendant or disclosed by the Defendant to a third party." *Globespan, Inc. v. O'Neill*, 151 F.Supp.2d 1229, 1235 (C.D. Cal. 2001) (citing Cal. Civil Code § 3426.1(b), defining "misappropriation"); *see also Bayer Corp. v. Roche Molecular Systems, Inc.*, 72 F.Supp.2d 1111, 1120 (N.D. Cal. 1999) ("California trade-secrets law does not recognize the theory of inevitable disclosure; indeed, such a rule would run counter to the strong public policy in California favoring employee mobility. A trade-secrets plaintiff must show an actual use or an actual threat."); *PMC, Inc. v. Kadisha*, 78 Cal. App.4th 1368, 1383 (2000) ("Use of a trade secret without knowledge it was acquired by improper means does not subject a person to liability unless the person receives notice that its use of the information is wrongful.").

Here, Fortinet's trade secret misappropriation claims against Sophos fails because Fortinet has not produced any evidence that Sophos acquired any alleged Fortinet trade secret or did so through "improper means."[12] Indeed, the fact that a document is marked "Fortinet Confidential" does not make that document a trade secret, and the fact that many hundreds of documents

---

[12] "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means." Cal. Civ. Code § 3426.1(a).

marked "Fortinet Confidential" are available on the Internet demonstrates that any given document could have been obtained by legitimate means.

### 1. Fortinet Has No Evidence That Sophos Used Or Disclosed A Fortinet Trade Secret.

Fortinet must come forward with evidence that Sophos used or disclosed a Fortinet trade secret. It has not and cannot do so. All Fortinet can point to is the fact that there are certain Fortinet documents residing on various computers of the Former Fortinet Employees. That does not equate to use by Sophos of these documents, let alone use of trade secrets by Sophos.

Sophos does not dispute that certain Former Fortinet Employees retained Fortinet data on their personal computers when they left Fortinet. They did. And they did because Fortinet permits its employees to use their personal computers for business purposes, and does not take steps to ensure that an employee who leaves the company actually returns or destroys the data on their personal computers. But Fortinet cannot demonstrate that Sophos acquired any alleged Fortinet trade secret with knowledge that the trade secret "was acquired by improper means" under the UTSA. Indeed, Fortinet can point to only three instances of a Former Fortinet Employee accessing and using a Fortinet document in conjunction with his or her work at Sophos, and none of them come anywhere close to misappropriation of a Fortinet trade secret.

<u>First</u>, Jason Acosta testified that he looked at a Fortinet "Battlecard"[13] while he was at Sophos, proofreading existing Sophos documents. Ex. 13, Acosta Depo. at 39:14-24, 40:24-41:17. However, Mr. Acosta testified that all of the information on that Fortinet Battlecard could be found publically. *Id.* Indeed, with a simple Internet search, one can find dozens of Fortinet Battlecards online. Ex. 5; Ex.13, Acosta Depo. at 202:14-205:18. Further, Fortinet did not identify any Battlecards on its 2019.210 Statement or in response to Sophos's trade secret interrogatory, so it has no trade secret claim for these documents anyway. <u>Second</u>, Kendra Krause testified that she accessed a Fortinet price list because it was "quicker," but that she could have just as easily found the same information online. Ex. 17, Krause Depo. at 145:6-148:5.

---

[13] A "Battlecard" is a sheet that is used to show how one company's product is better than a competitor's product.

<u>Third</u>, Rob Gattis testified that he accessed a Fortinet spreadsheet, but only did so to get the

2   formulas, and did not use any of the actual Fortinet data.  Ex. 18, Gattis Depo. at 169:8-170:14.

3          The other Former Fortinet Employees have testified that (a) they have not used Fortinet

4   confidential information in their work at Sophos; (b) the information they did retain would not

5   have been helpful to them at Sophos even if they had looked at it; or (c) the information Fortinet

6   is concerned about is publically available in various forms.  Ex. 12, Acosta 10/10/14 Depo. at

7   92:25-94:4; Ex. 13, Acosta 8/24/15 Depo. at 37:16-38:7; 37:16-39:12; 39:14-24; 40:24-41:17;

8   47:18-48:2; 159:5-17; Ex. 14, Valentine 10/6/14 Depo. at 270:23-271:18; Ex. 15, Valentine

9   9/3/15 Depo. at 63:3-64:11; Ex. 16, Krause 10/2/14 Depo. at 43:2-44:14; 126:24-129:1; Ex. 17,

10  Krause 8/19/15 Depo. at 144:1-8; Ex. 18, Gattis 8/28/15 Depo. (Rough) at 41:17-42:5; 54:3-11;

11  143:4-23; Ex. 20, Clark 10/8/14 Depo. at 329:18-332:9; Ex. 21, Clark 6/16/15 Depo. at 139:9-

12  140:20; 147:23-149:13; Ex. 23, Archer 8/26/15 Depo. at 32:3-35:21; Ex. 24, Ellering 9/25/14

13  Depo. at 268:24-270:5; Ex. 25, Ellering 8/20/15 Depo. at 59:18-60:17; Ex. 26, Shroll 8/28/15

14  Depo. (Rough) at 16:7-22; Ex. 27, Smith 9/30/14 Depo. at 230:9-231:5; 234:6-16; Ex. 28, Smith

15  8/25/15 Depo. at 51:17-52:7; 73:20-74:23.  The only information Fortinet can point to as being

16  even remotely useful to the Former Fortinet Employees in their jobs at Sophos is (1) Fortinet

17  pricing information, which is readily available from public sources, and (2) product information

18  used to compare how Fortinet's products work versus Sophos's products.  All of this information

19  is also widely publically available, which means it is not a trade secret.  *Religious Tech. Center*,

20  923 F. Supp. at 1254-1256.

21          Even Fortinet's experts cannot opine that any Fortinet document (let alone a Fortinet trade

22  secret) was actually accessed and used by the Former Fortinet Employees.  Fortinet's forensics

23  expert, Mr. Read, admits that the "last access date" from a document's metadata does not

24  necessarily indicate that the access was done by a human being: "[t]he Last Accessed Date in the

25  Active, Deleted, and Deleted User Files Reports identifies when a file was last accessed, which

26  could be either because of interaction by the user, or some system process. However, in recent

27  versions of Windows, the Last Accessed Date, by default, is not updated when a user accesses a

28  file."  Ex. 11, Read Report at ¶ 20.  Mr. Read opined that "additional artifacts of file access may

be used to corroborate the time a user last accessed, or opened, a file," *id.*, but as Sophos's forensic expert confirmed, the additional artifacts used by Mr. Read do not prove that any of the files were actually accessed. Ex. 29, French Report at ¶ 17.

Simply put, despite repeated depositions of the Former Fortinet Employees, despite the production of hundreds of thousands of documents in this case, and despite having the full forensic images of the Former Fortinet Employees' Sophos-issued and personal computers, smartphones, and tablets, Fortinet is unable to produce any admissible evidence that Sophos misappropriated any alleged Fortinet trade secret. Summary judgment is warranted.

### 2. Fortinet Cannot Show That Sophos Did Not Independently Derive The Alleged Trade Secret Information.

Fortinet has the burden of establishing that Sophos did not independently derive the alleged trade-secret information. *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1669 (2003); *see also Rita Medical Systems, Inc. v. Resect Medical, Inc.*, No. C 05–03291 WHA, 2007 WL 161049, *8 (N.D. Cal. Jan. 17, 2007) (granting summary judgment on trade secret misappropriation claim where plaintiff could not establish that defendant independently derived list of overlapping customers). The facts in *Rita Medical* are very similar to the facts in this case. In *Rita Medical*, the court noted that "[t]his case presents a familiar fact pattern: an employee leaves one company for another and is accused by the first of stealing trade secrets and other company assets." 2007 WL 161049 at *1. The plaintiff accused the departing employee of, among other things, removing and copying work related files, including the plaintiff's customer list. *Id.* at *2. The court, noting that "plaintiff has the burden of establishing that defendants did not independently derive trade-secret information," found that "[t]he sum of the evidence Rita presents in support of this claim shows that Resect and Rita had some customers in common, but falls short of excluding independent derivation." *Id.* at *8. After the defendant provided evidence that he had previously obtained contact information for the overlapping clients, the court found that "no reasonable juror could find that Resect and Daniel did not independently derive their customer list" and granted defendants' motion for summary judgment. *Id.* at *8.

Not only has Fortinet failed to establish that Sophos has not independently derived the information it claims as trade secret, but the evidence demonstrates that Sophos obtained any purportedly "confidential" Fortinet information from public sources. Fortinet's speculation that Sophos "must have" misappropriated its trade secrets is not enough to survive summary judgment. *Excellence Learning Corp. v. Oriental Trading Co., Inc.*, 2004 WL 2944048, at *8 (N.D. Cal. Dec. 20, 2004). In *Excellence Learning,* the plaintiff accused its recently departed employee of misappropriating knowledge of sales, pricing and cost information for products offered in its catalog that allowed the employee to "cherry-pick" that catalog's best sellers for use in a similar catalog she was in charge of creating for her new employer. 2004 WL 2944048 at *1, *4. The plaintiff asserted that the employee "*must* have taken copies of master catalogs or other financial information when she left," asserting there was no other way to account for her rapid creation of the new catalog and the overlap in the products. *Id.* at * 6 (emphasis in original). The plaintiff contended that 90% of the products in the new catalog also appeared in its catalog, and that 90% of those overlapping products were its best sellers. *Id.* at *7. The court state that "[a]t first blush, this statement appears rather damning," *id.*, but upon closer examination of the plaintiff's statistics, found "serious questions" as to how the plaintiff actually calculated its numbers. *Id.* The court granted summary judgment of no misappropriation, finding that "[w]hat appears initially to be a colorable claim based upon statistical analysis and other circumstantial evidence appears upon closer examination to be nothing more than speculation fueled by Elliot's obvious and intense dislike of Martini." *Id.* at *8.

This is the case here. Fortinet's intense dislike of the fact that its employees would rather work at a competitor such as Sophos has caused Fortinet to speculate that those employees "must have" misappropriated trade secrets. This is not enough to survive summary judgment.

### D. Summary Judgment Is Warranted Because Fortinet Has Not Proven Any Damages.

Finally, Fortinet has not proven it suffered any actual loss from any alleged misappropriation by Sophos, or that Sophos was unjustly enriched as a result of any alleged misappropriation. Thus, summary judgment is appropriate. *See U.S. Auto Parts Network, Inc. v.*

-20-

*Parts Geek, LLC,* 494 Fed. Appx. 743, 744 (9th Cir. 2012) (partially affirming grant of summary judgment where there was no evidence that use of trade secrets damaged plaintiff); *Integral Development Corp. v. Viral Tolat and Does 1-20,* C 12-06575 JSW, 2014 WL 721844, at *4 (N.D. Cal. Feb. 24, 2014) (granting summary judgment because "even if Integral had met its burden to identify a legally cognizable trade secret and had produced evidence of misappropriation, the Court also finds Integral cannot prevail on its CUTSA claim as it has not demonstrated that it has suffered damages as a result of any alleged misappropriation.").

Fortinet's claim for damages is limited to its contentions in response to Sophos's Interrogatory No. 16, which required Fortinet to explain in detail the damages it suffered as a result of Sophos's alleged misappropriation of Fortinet's trade secrets. Ex. 6, Response to Interrogatory No. 16. But in its response, Fortinet failed to identify a single sale or opportunity lost to Sophos because of the misappropriation of an alleged trade secret, failed to identify a single document evidencing damages, and failed to identify any witness testimony supporting its claim for damages. *Id.* Instead, Fortinet merely stated that it intends to seek damages under broad theories such as unjust enrichment, compensatory damages, reasonable royalty damages, or the costs incurred by Fortinet to develop and maintain as confidential the stolen trade secrets. *Id.* This is insufficient. *See Integral Development Corp.*, 2014 WL 721844, at *4.

This is not surprising because the evidence is to the contrary. Fortinet's stock price, for example, has more than doubled since this lawsuit was filed. Ex. 30. And Fortinet has produced no evidence of lost customers or business opportunities as a result of any alleged misappropriation. Summary judgment is therefore appropriate because Fortinet has failed to establish any damages resulting from Sophos's alleged misappropriation of Fortinet's alleged trade secrets.

**V.    SUMMARY JUDGMENT IS WARRANTED ON ALL CLAIMS ALLEGED AGAINST MICHAEL VALENTINE AND JASON CLARK, BECAUSE THOSE CLAIMS WERE FULLY ADJUDICATED IN ARBITRATION.**

Summary judgment is warranted on all claims asserted against Defendants Valentine and Clark under the doctrine of *res judicata* because they either were or could have been fully adjudicated in the JAMS arbitration. "A valid and final award by arbitration has the same effects

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:13-CV-05831-EMC

DLA PIPER LLP (US)
EAST PALO ALTO

1  under the rules of *res judicata*, subject to the same exceptions and qualifications, as a judgment of

2  a court." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 16 (2001) (Ginsburg, J., concurring);

3  *Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128, 1134 (N.D. Cal. Mar. 29, 2013) ("Final

4  arbitration awards can have preclusive effect," *citing Clark v. Bear Stearns & Co.*, 966 F.2d 1318,

5  1321 (9th Cir. 1992)). Under *res judicata*, an arbitration award bars a claim if: (1) the claim in

6  question and those settled by arbitration are identical, (2) the arbitrator reached a final judgment

7  on the merits, (3) the current claim involves the same parties as those which were before

8  arbitration, and (4) the arbitrator had the authority to make a binding decision on the claim in

9  question. *Gallardo*, 937 F. Supp. 2d at 1134-35. *Res judicata* also bars those claims that could

10  have been raised in the previous action (here, the arbitration). *Allen v. McCurry*, 449 U.S. 90, 94

11  (1980).

12  Here, all four conditions are satisfied. <u>First</u>, the claims asserted here and in the arbitration

13  are identical. In its First Amended Complaint, Fortinet alleged five causes of action against

14  Valentine and Clark. Dkt No. 9. Valentine moved to compel arbitration based on an arbitration

15  provision in his employment agreement with Fortinet. Dkt. No. 9, Ex. A. The arbitration clause

16  provides that the parties agree to arbitrate "any and all controversies, claims, or disputes …

17  arising out of, relating to, or resulting from my employment with the company or the termination

18  of my employment with the company, including any breach of this agreement." *Id*. § 12(A). The

19  clause also states that "this agreement to arbitrate also applies to any disputes that the company

20  may have with me," and emphasizes that "arbitration shall be the sole, exclusive and final remedy

21  for any dispute between me and the company" and that "neither I nor the company will be

22  permitted to pursue court action regarding claims that are subject to arbitration." *Id*. § 12(C). In

23  March 2014, the parties agreed to arbitrate all claims against Valentine and Clark, and the Court

24  ordered it. Dkt. No. 45. The only claim not raised in the arbitration was Count XII (Civil

25  Conspiracy), but there was no reason Fortinet could not have raised it there, thus it is now barred.

26  *Allen*, 449 U.S. at 94. Fortinet never withdrew any of those claims from arbitration or "reserved"

27  them to be litigated in this Court. Thus, every claim against Valentine and Clark is now barred.

28  <u>Second</u>, final judgment was reached in the arbitration on March 10, 2015. Ex. 31. The Final

-22-

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:13-CV-05831-EMC

Award disposed of all claims asserted against Valentine and Clark. *Id.* at 19-24. <u>Third</u>, the same parties involved in the arbitration (Fortinet, Valentine and Clark) are also parties to this case. <u>Fourth</u>, the JAMS arbitrator had the authority to make a final decision on the claims. Thus, summary judgment as to all claims against Valentine and Clark is warranted.

## VI. FORTINET IS NOT ENTTITLED TO RECOVER PRE-SUIT DAMAGES FOR TWO OF ITS PATENTS BECAUSE FORTINET DID NOT PROVIDE ACTUAL NOTICE TO SOPHOS.

The Court should grant Sophos partial summary judgment that Fortinet may not recover pre-suit damages for two of its asserted patents, United States Patent Nos. 7,333,430 ("the '430 patent") and 7,376,125 ("the '125 patent") because (a) Fortinet's products practice these patents and (b) Fortinet failed to mark its products with the patent numbers as required by 35 U.S.C. § 287. "If a patentee practices the claimed invention and fails to mark its product with the relevant patent number, damages may be limited." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333-34 (Fed. Cir. 2012) (citing 35 U.S.C. § 287). Under section 287, if a patentee was required to mark but failed to do so, it may not recover pre-suit damages unless it proves that it gave actual notice to the accused infringer and the infringement continued after notice. *Id.* at 1334.[14]

The patentee bears the burden of proving its compliance with section 287. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998); *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894). However, courts appear to disagree about whether a patentee also bears the burden of proving that it did not practice its own patent. *Compare WiAV Solutions LLC v. Motorola, Inc., et al.*, 732 F. Supp. 2d 634, 640 (E.D. Va. 2010) (a patentee "bears the burden of showing that it, and its licensees, were not required to mark under § 287") *with Golden Bridge Tech., Inc. v. Apple, Inc.*, No. 12-cv-04882-PSG, 2014 WL 1928977, at *11-12 (N.D. Cal. May 14, 2014) ("the right incentive structure is set by requiring the party seeking limited damages to identify unmarked products believed to practice the accused claims"). Given this split in authority, Sophos identifies below the Fortinet products that practice the '430 and '125 patents. *Golden*

---

[14] Because the filing of a lawsuit constitutes actual notice under section 287(a), Sophos seeks summary judgment only as to Fortinet's claim of pre-suit damages.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\260589067.2

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:13-CV-05831-EMC

*Bridge*, 2014 WL 1928977, at *12 fn. 97 (under court's interpretation of burdens associated with marking statute, Apple met its burden by identifying unmarked products on summary judgment).

Fortinet seeks pre-suit damages for Sophos's alleged infringement of the '430 and '125 patents. Ex. 33, Kearl Report at ¶46. Thus, to be entitled to pre-suit damages, Fortinet must prove that (a) it has no duty to mark its products or (b) it complied with the marking requirement. *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002). Fortinet cannot prove either one.

### A.     Fortinet Has A Duty to Mark Its Products But Failed To Do So.

Despite Fortinet's contention to the contrary,[15] the evidence is undisputed that Fortinet's products practice certain claims of the '430 and '125 patents, and therefore Fortinet had a duty to mark those products with the patent numbers. Fortinet asserts apparatus claims from the '430 and '125 patents against Sophos. Ex. 32 (identifying claims 14-15 of the '430 patent and claims 3-5 of the '125 patent); Ex. 35-36. Sophos's expert, Dr. Aaron Striegel, has opined that Fortinet's 5000-series FortiGate appliances practice claims 14-15, 25-27, and 39 of the '430 patent, and that Fortinet's FortiGate appliances with software version 5.2 practice claims 3 and 5 of the '125 patent. Ex. 34, Striegel Decl. at ¶¶3-7, Ex. 1 thereto. His expert opinion is unrebutted. Indeed, as Dr. Striegel explains, Fortinet's corporate representatives have essentially confirmed that Fortinet practices these patents. Ex. 34, Striegel Decl., Ex. 1 thereto at ¶¶ 49, 159 and 170. As a result, Fortinet has a duty to mark these products with the patent numbers. *Nike*, 138 F.3d at 1443; *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6, F.3d 1523, 1538-39 (Fed. Cir. 1993) (patentee required to mark when it asserted both apparatus and method claims and there was a device capable of being marked).

It also is undisputed that Fortinet does not mark its products that practice the '430 and '125 patents with the patent numbers. Fortinet's corporate representative confirmed this fact:

> Q.  Does Fortinet include any of the Fortinet asserted patents, the
> six that I named earlier, on any of its EULAs, documentations or—

---

[15] Fortinet issued an interrogatory response claiming that it "does not presently contend that its products practice the Fortinet Asserted Patents." Ex. 6 at 67. However, Fortinet offered no facts or expert opinions to back up this contention.

1    or Fortinet products?

2        A. List the specific patent?

3        Q. Correct.

4        A. No.

5   Ex. 8, Nelson Depo. at 60:11-17.  Because the evidence shows that Fortinet practices the '430 and

6   '125 patents and that Fortinet has not marked, Fortinet cannot claim pre-suit damages unless it

7   provided Sophos with actual notice of these patents before filing suit.

8        **B.      <u>Fortinet Did Not Provide Sophos Actual Notice Before Filing Suit.</u>**

9        To show that it provided Sophos with actual notice, Fortinet must prove that it

10  communicated to Sophos "a specific charge of infringement by a specific accused product or

11  device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

12  Thus, to satisfy the "actual notice" requirement, Fortinet must prove it provided Sophos with

13  notice of the specific Sophos activities it believed infringed the '430 and '125 patents.  *Id.*

14  Fortinet has not produced any evidence that it provided Sophos with actual notice of its alleged

15  infringement of the '430 and '125 patents before filing suit, because no such evidence exists.  Ex.

16  6 at pp. 60-65 (no disclosure of evidence of Fortinet providing actual notice to Sophos).

17       Accordingly, the Court should enter partial summary judgment that Fortinet may not

18  recover damages for Sophos's alleged infringement of the '430 and '125 patents before the filing

19  of this lawsuit.

20  **VII.    <u>CONCLUSION</u>**

21       For the foregoing reasons, Sophos respectfully requests that the Court enter summary

22  judgment on Fortinet's claim for trade secret misappropriation (Count No. XI), all claims asserted

23  against Michael Valentine and Jason Clark (Count Nos. VII, VIII, IX, X, XII and XIII), and

24  Fortinet's claim for pre-suit damages for the '430 and '125 patents.

25

26

27

28

Dated:  September 7, 2015

DLA PIPER LLP (US)


By: */s/ Sean C. Cunningham*
SEAN C. CUNNINGHAM
KATHRYN RILEY GRASSO
DAVID R. KNUDSON
TODD S. PATTERSON

Attorneys for Defendant and Counterclaim Plaintiff SOPHOS INC. and Counterclaim Plaintiff SOPHOS LTD.

DLA PIPER LLP (US)
EAST PALO ALTO
WEST\260589067.2