1   JOHN M. NEUKOM (CA Bar No. 275887)
    johnneukom@quinnemanuel.com
2   JORDAN R. JAFFE (CA Bar No. 254886)
    jordanjaffe@quinnemanuel.com
3   QUINN      EMANUEL      URQUHART      &
    SULLIVAN, LLP
4   50 California Street, 22nd Floor
    San Francisco, California 94111
5   Telephone:  (415) 875-6600
    Facsimile:  (415) 875-6700
6
    DANIEL B. OLMOS (CA Bar No. 235319)
7   dolmos@nbbolaw.com
    NOLAN, BARTON, BRADFORD, OLMOS LLP
8   600 University Avenue
    Palo Alto, CA 94301
9   Telephone: (650) 326-2980
    Facsimile: (650) 326-9704
10
11  Attorneys for Plaintiff FORTINET, INC.
12

13  **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**
14  **SAN FRANCISCO DIVISION**

15  FORTINET, INC., a corporation                    Case No. 3:13-cv-05831-EMC (DMR)

16              Plaintiff,
                                                     **FORTINET,  INC.'S  MOTION  FOR**
17       vs.                                         **PARTIAL SUMMARY JUDGMENT**

18  SOPHOS, INC., a corporation, MICHAEL             Judge: Honorable Edward M. Chen
    VALENTINE,  an  individual,  and  JASON          Hearing Date: Oct. 8, 2015
19  CLARK, an individual.                            Hearing Time: 1:30 PM

20              Defendants.                           **[UNREDACTED VERSION OF**
                                                     **DOCUMENT SOUGHT TO BE**
21  ──────────────────────────────────              **SEALED]**
    SOPHOS INC. and SOPHOS LTD.,
22  corporations,

23              Counterclaim Plaintiffs,
         vs.
24
    FORTINET, INC., a corporation,
25
                Counterclaim Defendant.
26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 8, 2015 at 1:30 PM or as soon thereafter as the matter may be heard by the Honorable Edward M. Chen in Courtroom 5, 17th Floor, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff and Counterclaim Defendant Fortinet, Inc. ("Fortinet") shall and hereby does move the Court for an order granting partial summary judgment on several issues in this case.

This Motion is made pursuant to the Federal Rule of Civil Procedure 56. Fortinet brings this motion on multiple grounds. First, there is no genuine dispute as to any material fact that Defendants and Counterclaim Plaintiffs Sophos, Inc. and Sophos Ltd. (collectively "Sophos") do not mark their products that are alleged to practice U.S. Patent Nos. 6,195,587 (the '587 patent) and 8,607,347 and that Fortinet had no actual notice of infringement. Thus, Sophos is barred from seeking damages before the filing of its counterclaims for those patents. Second, there is no genuine dispute as to any material fact that Sophos infringes the asserted claims of Fortinet's U.S. Patent 7,333,430. Third, Fortinet there is no genuine dispute as to any material fact that the asserted claims U.S. Patent Nos. 7,757,002, 8,220,050, and 8,266,687 are invalid. Fourth, Claim 9 of the '587 Patent is not infringed, or, in the alternative, invalid.

This Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities in support thereof, the Declaration of Jordan R. Jaffe, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

DATED: September 7, 2015

Respectfully submitted,

By    */s/ John M. Neukom*
John M. Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Plaintiff FORTINET, INC.

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................................ 1

II.    LEGAL STANDARD .................................................................................................... 2

III.   FORTINET IS ENTITLED TO SUMMARY JUDGMENT EXCLUDING PRE-
       SUIT DAMAGES FOR SOPHOS' '587 AND '347 PATENTS ................................. 3

       A.     Factual Background ........................................................................................... 3

       B.     Legal Standard ................................................................................................... 5

       C.     Argument ............................................................................................................ 5

              1.     Sophos Claims to Practice The '587 and '347 patents. ........................ 6

              2.     Sophos is Required to Mark Because of its Asserted Apparatus
                     Claims ..................................................................................................... 6

              3.     Sophos Does Not Mark—At All. ........................................................... 7

              4.     *U.S. Ethernet Innovations* Demonstrates Fortinet is Entitled to
                     Summary Judgment Under These Facts. ................................................ 8

IV.    SOPHOS INFRINGES OF FORTINET'S U.S. PATENT NO. 7,333,430 ................. 9

       A.     Factual Background ......................................................................................... 10

       B.     Legal Standards ............................................................................................... 11

       C.     Argument .......................................................................................................... 12

              1.     Fortinet Provides Overwhelming Evidence of Infringement of Its
                     '430 Patent ........................................................................................... 12

              2.     Sophos Does Not Dispute Stavrou's Infringement Analysis and
                     Concedes Infringement ....................................................................... 13

V.     FORTINET IS ENTITLED TO SUMMARY JUDGMENT OF INVALIDITY
       AND NONINFRINGEMENT AS TO SOPHOS' ABANDONED PATENTS ................. 14

              1.     The Asserted Claims of The '002, '050 And '687 Patents Are
                     Invalid .................................................................................................. 15

                     (a)    The Asserted Claims of the '002 Patent are Invalid ................. 15

                     (b)    The Asserted Claims of the '050 Patent are Invalid ................. 16

                     (c)    The Asserted Claims of the '687 Patent are Invalid ................. 18

2.     Fortinet is Entitled to Judgment of Noninfringement ................................. 20

VI.    CLAIM 9 OF THE '587 PATENT IS NOT INFRINGED, AND IS INVALID. ............... 21

    A.     Factual Background ........................................................................ 21

    B.     Legal Standards ............................................................................ 22

    C.     Argument ..................................................................................... 23

    D.     In the Alternative, Claim 9 Is Invalid As Indefinite Because At Least One Means Plus Function Term Does Not Have A Corresponding Structure ............... 24

VII.    CONCLUSION ........................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993) ........................................................................5, 7, 8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ....................................................................................2, 12

*In re Baxter Int'l, Inc.*,
   678 F.3d 1357 (Fed. Cir. 2012) ...............................................................................25

*Biomedino, LLC v. Waters Techs. Corp.*,
   490 F.3d 946 (Fed. Cir. 2007) ................................................................................24

*Centricut, LLC v. Esab Grp., Inc.*,
   390 F.3d 1361 (Fed. Cir. 2004) ..........................................................................12, 20

*EMD Millipore Corp. v. AllPure Techs., Inc.*,
   768 F.3d 1196 (Fed. Cir. 2014) ...............................................................................12

*Elcommerce.com, Inc. v. SAP AG*,
   745 F.3d 490 (Fed. Cir. 2014) ....................................................................12, 14, 20

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
   389 F.3d 1370 (Fed. Cir. 2004) ...............................................................................22

*Function Media, L.L.C. v. Google, Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013) ...............................................................................24

*Intellectual Sci. & Tech., Inc. v. Sony Electronics, Inc.*,
   589 F.3d 1179 (Fed. Cir. 2009) ...............................................................................22

*Kemco Sales, Inc. v. Control Papers Co.*,
   208 F.3d 1352 (Fed. Cir. 2000) ...............................................................................22

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ........................................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ....................................................................................12, 14

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) ...................................................................5, 6, 7, 8

*McKesson Info. Solutions LLC v. Trizetto Grp., Inc.*,
   426 F. Supp. 2d 197 (D. Del. 2006) .........................................................................23

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
   830 F. Supp. 2d 815 (N.D. Cal. 2011) .......................................................................7

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ............................................................................... 12

*Toshiba Corp., v. Imation Corp.*,
   681 F.3d 1358 (Fed. Cir. 2012) ................................................................................. 2

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
   34 F. Supp. 3d 1061 (C.D. Cal. 2014) ...................................................................... 5

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
   2013 WL 4456161 (N.D. Cal. Aug. 16, 2013) .................................................. 3, 8, 9

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
   2014 WL 5812175 (N.D. Cal. Nov. 7, 2014) ............................................... 8, 9, 23

<u>**Statutes**</u>

35 U.S.C. § 287 ................................................................................................ passim

Fed. R. Civ. P. 56 ........................................................................................................ 2

## I.  **INTRODUCTION**

Fortinet commenced this litigation in December 2013 to remedy Sophos' patent infringement, trade secret misappropriation and related wrongs under California state law. As the dispute has proceeded, Fortinet has prosecuted its claims with vigor. Fortinet has already succeeding in recovering approximately $1█ million in a related arbitration (in which the arbitrator found that Fortinet's former head of sales, and Sophos' current head of sales, engaged in "egregious" and "despicable" conduct towards Fortinet). And Fortinet's claims against Sophos in this case are now coming closer to resolution. For its patent claims, Fortinet has been diligently prosecuting its affirmative case including by reviewing Sophos source code; taking the depositions of Sophos' engineers; updating its infringement contentions to reflect Sophos source code; and serving detailed expert testimony supporting its patent infringement claims that include highly technical subject matter.

On the other hand, while Sophos filed retaliatory counter-claims against Fortinet on seven Sophos patents, Sophos has not been diligent in prosecuting those claims. For all but one of its seven asserted patents, Sophos never identified *any* source code in infringement contentions. For three of its seven asserted patents, Sophos has abandoned those entirely. Specifically, Sophos failed to serve any expert reports on infringement for those patents, and failed even to serve "validity" rebuttal reports on the same patents (despite Fortinet's prior service of invalidity expert reports on those patents).  For yet another counter-claim patent, Sophos' expert failed to conduct any of the required analysis for "means-plus-function" claim limitations despite black letter law requiring that analysis. Finally, on damages, Sophos' expert has disclosed an opinion for *pre-suit* damages even though it is undisputed that Sophos failed to comply with the marking requirements of Section 287 which, in the circumstances present here, make pre-suit damages unavailable as a matter of law.

With this motion, Fortinet seeks to streamline matters for trial that are now either effectively undisputed or for which Sophos has no real ability to respond. That is, with this motion, Fortinet does not present thorny factual disputes before the Court for summary judgment

resolution. Rather, Fortinet asks the Court to apply black letter law in almost every case to undisputed expert testimony. Fortinet moves for summary judgment on the following grounds:

- Sophos is not entitled to recover pre-suit damages for Sophos' '587 and '347 patents because it is undisputed Sophos failed to comply with the patent marking requirements of Section 287 (and it is not disputed that Fortinet had no actual notice).

- Sophos infringes the asserted claims of Fortinet's '430 patent based on the unrebutted and undisputed testimony of Fortinet's expert.

- The asserted claims of three of Sophos' asserted patents (the '002, '050 and '687 patents) are invalid in view of the prior art. Fortinet presented detailed expert testimony showing the asserted claims of these patents are invalid. Sophos did not respond or dispute this testimony, failing even to accept Fortinet's offer to depose its expert. These patents are thus invalid, and, based on a failure of proof, not infringed.

- Claim 9 of Sophos' '587 patent is not infringed, or, in the alternative, invalid. It is undisputed that Claim 9 of the '587 patent is replete with means-plus-function limitations which require connecting specific accused functionality with corresponding structure in the patent specification. Sophos' expert never performed this analysis for purposes of infringement. Sophos thus cannot meet its burden of proof for this technical patent claim. In the alternative, the patent is invalid for indefiniteness in light of the U.S. Patent Office's finding to that effect when instituting an *inter partes* review of the '587 patent.

## II.     LEGAL STANDARD

"Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Toshiba Corp., v. Imation Corp.*, 681 F.3d 1358, 1361 (Fed. Cir. 2012) (*citing* Fed. R. Civ. P. 56 and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Where the moving party does not bear the burden of proof on an issue at trial, the moving party

may discharge its burden of production by either . . . produc[ing] evidence negating an essential element of the nonmoving party's case, or . . . the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2013 WL 4456161, at *3 (N.D. Cal. Aug. 16, 2013).

## III.  FORTINET IS ENTITLED TO SUMMARY JUDGMENT EXCLUDING PRE-SUIT DAMAGES FOR SOPHOS' '587 AND '347 PATENTS

To recover pre-suit damages for patent infringement, the alleged infringer needs to be on notice. 35 U.S.C. § 287. Notice can come in two forms, constructive or actual. As for Sophos' claims of patent infringement against Fortinet, Sophos has not even alleged actual notice. To get pre-suit damages, Sophos must therefore show constructive notice pursuant to Section 287—also known as the patent marking requirement. Sophos cannot make that showing. In fact, the evidence entirely supports the opposite conclusion: Sophos has served signed interrogatory responses contending in limitation-by-limitation form how it practices these asserted patents. Sophos has furthermore produced unambiguous corporate-representative testimony that Sophos does not and has never marked those products with any patent numbers. There can therefore be no genuine dispute that Sophos is barred from recovering pre-suit damages for these two asserted patents.

### A.  Factual Background

<u>Asserted Patents</u>. Among others, Sophos asserts counterclaims on U.S. Patent Nos. 6,195,587 (the "587 patent") and 8,607,347 (the "347 patent"). These two patents involve alleged technology for detecting potentially unwanted data, such as malware. Declaration of Jordan Jaffe ("Jaffe Decl."), Ex. 3 (the '587 patent); Jaffe Decl., Ex. 4 (the '347 patent). Relevant here, the final asserted claims of both the '587 and '347 patents describe apparatuses which are required to be marked under 35 U.S.C. § 287 if the patentee seeks pre-suit damages in any subsequent litigation. *See* Jaffe Decl., Ex. 2 at 2 (Sophos' Election of Asserted claims); Jaffe Decl., Ex. 3 at 10-11 (claim 9); Jaffe Decl., Ex. 4 at 19 (claims 13, 17, 19).

<u>Sophos' asserted patents claim apparatuses, and Sophos affirmatively claims to practice these claims.</u> When Sophos served its infringement contentions in 2014, at the same time it

disclosed its infringement contentions against Fortinet, Sophos disclosed its contention that its own products practice certain of Sophos' patents. *See* Jaffe Decl., Ex. 1 at 12-13 ("Sophos contends that the following Sophos products practice all asserted claims . . ."). Sophos has never backed away from its assertion that it practices these patents. It has embraced it. A year after serving its infringement contentions, on May 5, 2015, Sophos served Fortinet with certified interrogatory responses contending that it sells and has sold products that practiced the asserted claims of the '587 and '347 patents for many years prior to the filing of this litigation. Jaffe Decl., Ex. 5; Jaffe Decl., Ex. 6.

Sophos' witnesses confirm that Sophos' products are not marked. Fortinet served Sophos with a Fed. R. Civ. P. 30(b)(6) deposition notice as to the issue of marking. Jaffe Decl., Ex. 7 at 7-8. Sophos then designated Sally Whitehead as the corporate representative for that issue, and her deposition was taken on June 3, 2015. *See* Jaffe Decl., Ex. 8. At her deposition, Ms. Whitehead testified unequivocally that Sophos does not, and has never, marked its products with any patent numbers. *See* Jaffe Decl., Ex. 9 at 18:3-8.

Fortinet Has No Actual Notice of Infringement: Sophos has never alleged that Fortinet had actual notice before Sophos filed its counterclaims, and discovery has confirmed this basic fact. For example, Fortinet's corporate witness and Vice President of Legal, Todd Nelson, testified that he was unaware of the Sophos asserted patents before the lawsuit was filed. *See, e.g.*, Jaffe Decl., Ex 12 at 19:16-19. Sophos has never challenged this testimony or other discovery consistent with Mr. Nelson's testimony (fittingly, given that Sophos has not even alleged that Fortinet had actual notice of these patents before Sophos filed its counterclaims in this case).

Sophos improperly seeks pre-suit damages at trial. In August of 2015—well after Ms. Whitehead testified that Sophos does not mark its products and Mr. Nelson's testimony about lack of actual notice—Sophos served on Fortinet the report of Mr. Brian Napper, Sophos' damages expert opining on alleged damages as far back as 2008. *See* Jaffe Decl. Ex. 10 at 83-87, 97-99 (opining to damages "from January 24, 2008 through January 23, 2014" and "from . . . December 10, 2013"). Thus, Sophos intends to introduce a theory of pre-suit damages at trial.

Given the uncontested evidence that Sophos has been selling products that embody the asserted claims the '587 and '347 patents for years, has not marked any of its products with those patents, and Fortinet's lack of actual notice: Fortinet now brings this motion for summary judgment to limit damages Sophos is permitted to claim for alleged pre-suit infringement of the '587 and '347 patents (namely, none).

**B.    Legal Standard**

35 U.S.C. § 287 provides that "[p]atentees, and persons making, offering for sale, or selling . . . any patented article . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.," together with the number of the patent," and further that where the patentee "fail[ed] so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter[.]" The Federal Circuit has explained that "the patentee [] ha[s] the burden of pleading and proving at trial that she complied with the statutory requirements." *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see also Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 34 F. Supp. 3d 1061, 1094 (C.D. Cal. 2014) ("Compliance with the marking requirement is a question of fact, on which the patentee bears the burden of proof."). Finally, while it is true that "the marking statute does not apply to method claims," the Federal Circuit has further explained that "to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so [.]" *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993).

**C.    Argument**

It is undisputed that: (1) Sophos claims to practice the '347 and '587 patents, (2) those patents include asserted apparatus claims, and (3) Sophos does not mark its products which it claims practice the patents-in-suit. Nonetheless, Sophos bears the burden of proof on the question of marking. *Maxwell*, 86 F.3d at 1111. Accordingly, there is no issue of material fact regarding the question of marking in this litigation, and Fortinet is entitled to summary judgment on that issue as a matter of law.

1        **1.    Sophos Claims to Practice The '587 and '347 patents.**

2        From the time Sophos first served its infringement contentions on Fortinet, Sophos has

3    claimed to practice the '587 and '347 patents. Jaffe Decl., Ex. 1 at 12-13 (disclosing Sophos'

4    contention pursuant to Patent Local Rule 3-1(g) that it practiced all asserted claims of the '587 and

5    '347 patents). This contention was further reiterated in an interrogatory response served *after*

6    Sophos had narrowed its election of asserted claims. *See* Jaffe Decl., Ex. 5 at 2; Jaffe Decl., Ex. 6

7    at 2. Indeed, Sophos provided a limitation-by-limitation mapping of its own products to the

8    asserted claims of the '587 and '347 patents, leaving no ambiguity that it contends its products

9    practice these claims.  Sophos has further represented that it did sell, and currently sells, all of the

10   products claimed to practice the '587 and '347 patents. *See* Jaffe Decl., Ex. 1 at 12-13  (claiming

11   that Unified Threat Management and Next Generation Firewall (collectively, "UTM"), Secure

12   Web Gateway (or Web Appliance), Secure Email Gateway. Enduser Protection Suites, Endpoint

13   Antivirus, Sophos cloud, Mobile Control, Virtualization Security, Server Security, SharePoint

14   Security, Network Storage Antivirus, and PureMessage Exchange" practice the patents in suit);

15   Jaffe Decl., Ex. 10 at 67-67, 75-79, 81-82 (Sophos' damages expert report discussing Sophos'

16   sales of accused products. Thus Sophos is a "[p]atentee[] . . . offering for sale, or selling" patented

17   articles as described by 35 U.S.C. § 287.

18        **2.    Sophos is Required to Mark Because of its Asserted Apparatus Claims.**

19       Sophos' final election of asserted claims, served on March 5, 2015, lists apparatus claims

20   for both the '587 and '347 patents. S*ee* Jaffe Decl., Exs. 2, 3, and 4. Sophos is therefore required

21   to mark its products pursuant to 35 U.S.C. § 287 if it wants to collect any pre-suit damages for

22   these patents. As a court in this district previously explained, "if a plaintiff chooses to assert both

23   apparatus and method claims under a patent, damages [for apparatus or method claims] prior to

24   actual notice are available ***only if the apparatuses have been marked***[.]" *Mformation Techs., Inc.*

25   *v. Research in Motion Ltd.,* 830 F. Supp. 2d 815, 837 (N.D. Cal. 2011) (emphasis added); *see also*

26   *Am. Med. Sys., Inc.*, 6 F.3d at 1538.

27       Here there is no question that Sophos has elected to assert both method and apparatus

28   claims for the '587 and '347 patents. *See* Jaffe Decl., Exs. 2, 3, and 4. Specifically, claim 9 of the

'587 patent is directed not to "a method" but rather to "a data processing system . . . ." Jaffe Decl., Ex. 3. Likewise, claims 13, 17, and 19 of the '347 patent are directed *not* to "a method" but rather to "a system comprising . . . a network device . . . ." Jaffe Decl., Ex. 4. As Sophos has elected to assert all of these claims, Sophos has implicated 35 U.S.C. § 287, and Sophos now bears the burden of demonstrating pre-suit marking (or actual notice) before seeking pre-suit damages. *Mformation Techs., Inc.,* 830 F. Supp. 2d at 838.

Moreover, even if Sophos had not explicitly elected to assert apparatus claims—and it has—the method claims of both the '587 and '347 patents incorporate apparatuses. *See, e.g.*, Jaffe Decl., Ex. 3 (claim 1 of the '587 patent incorporating "at least two interconnected data processors"); Jaffe Decl., Ex. 4 (claim 1 of the '247 patent incorporating "a content requesting computing facility" and a "scanning facility"). Where a method claim incorporates an apparatus, the Federal Circuit has explained that "to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a)." *Am. Med. Sys., Inc.*, 6 F.3d at 1538-39. Thus, where Sophos' products practice the method claims of the asserted patents through a tangible apparatus (such as a device containing two interconnected data processors) that apparatus must still be marked.

### 3. <u>Sophos Does Not Mark—At All.</u>

Under 35 U.S.C. § 287, the patentee bears the burden of demonstrating that it has marked "substantially all" of its practicing products with the relevant patent number. *Maxwell*, 86 F.3d at 1111. Where the party moving for summary judgment does not bear the burden of persuasion "it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim." *U.S. Ethernet Innovations, LLC*, 2013 WL 4456161, at *3. Sophos has not produced the required evidence to carry its burden at trial under 35 U.S.C. § 287. In fact, Sophos has done the opposite—on one hand, Sophos affirmatively contends that it practices the asserted claims of these patents; on the other hand, Sophos' binding corporate-representative testimony is that Sophos does not mark its products with any patent numbers. Fortinet is thus entitled to summary judgment on this issue.

35 U.S.C. § 287 serves to limit damages in an action for patent infringement to "the time [period] when marking begins in compliance with the statute or actual notice is given" to the defendant. *Am. Med. Sys., Inc.*, 6 F.3d at 1536; *see also* 35 U.S.C. § 287 (filing of lawsuit provides actual notice). As with statutory compliance, the patentee *also* bears the burden of proving actual notice, if any is claimed prior to the time of filing suit. *Maxwell*, 86 F.3d at 1111.

Here, it is undisputed that Fortinet was unaware of any of the Sophos' patents prior to filing suit. *See* Jaffe Decl., Ex. 11 at 9 ("Fortinet first became aware of the Sophos Asserted Patents at or around the time that Sophos filed and served its counterclaims of patent infringement in this action"); Jaffe Decl., Ex. 12 (deposition transcript of T. Nelson) at 19:16-19. If wanting pre-suit damages, Sophos was required to come forward with evidence of marking, or in the alternative, actual notice to Fortinet. Sophos has failed entirely to do so, and Fortinet is therefore entitled to summary judgment on the issue of pre-suit damages.

### 4. *U.S. Ethernet Innovations* Demonstrates Fortinet is Entitled to Summary Judgment Under These Facts.

While it is Sophos' burden to demonstrate marking—and Sophos cannot meet that burden given its own corporate-representative testimony that Sophos marks no products with any patents—Fortinet is also entitled to summary judgment where it can demonstrate "evidence negating an essential element of the nonmoving party's" claim. *U.S. Ethernet Innovations, LLC*, 2013 WL 4456161, at \*3. In *U.S. Ethernet Innovations*, the court found that the accused infringer had produced evidence sufficient to negate a claim of marking based upon: (1) infringement contentions served by the patentee indicating that it sold products practicing the patent-in-suit, and (2) the testimony of the patentee's 30(b)(6) witness that the plaintiff "did not know" if the product in question was marked. *Id*. at \*10. Under these facts, the court granted summary judgment on marking. *Id*. Fortinet's facts, however, are materially stronger than those present in *U.S. Ethernet Innovations*.

First, as in *U.S. Ethernet Innovations*, Sophos served infringement contentions on Fortinet which explicitly and affirmatively represented that the '587 and '347 patents were practiced by multiple Sophos products. Jaffe Decl., Ex. 1 at 12-13. After Sophos served its final election of

asserted claims, Sophos served responses to Fortinet's contention interrogatories, once again affirming that multiple Sophos products practiced the asserted claims. Jaffe Decl., Ex. 5: Jaffe Decl., Ex. 6. While *U.S. Ethernet Innovations* required only the infringement contentions to demonstrate practice of the asserted patent, 2013 WL 4456161, at *10, here Fortinet can also point to an interrogatory response and detailed claim charts provided by Sophos demonstrating that Sophos practices the '587 and '347 patents. Fortinet has met this requirement.

Second, Fortinet deposed Sophos' 30(b)(6) designee on marking, Ms. Sally Whitehead on June 3, 2015. Jaffe Decl., Ex. 8. Ms. Whitehead's responses on marking were unambiguous:

Q. Does Sophos mark its products with its patent numbers?

A. **No.**

Q. Okay. And has it ever marked its products with its patent numbers?

A. **Not to my knowledge, no.**

Jaffe Decl., Ex. 9 at 18:3-8.

Once again, this is more than was before the court in *U.S. Ethernet Innovations*: Here, Sophos' 30(b)(6) witness did not merely state that she "does not know" if the products are marked (2013 WL 4456161, at *10), but in fact affirmatively represented that Sophos' products *are not marked and never have been*. Fortinet has made the required showing under *U.S. Ethernet Innovations* that Sophos does not mark its products, and Sophos cannot claim that there is a material issue of fact as to the question of marking. Accordingly, Fortinet is entitled to summary judgment on this issue.

## IV.  SOPHOS INFRINGES OF FORTINET'S U.S. PATENT NO. 7,333,430

Fortinet also moves for summary judgment of infringement of its '430 patent. Fortinet has provided infringement contentions with detailed source code citations and followed it up with limitation-by-limitation analysis by its expert, Professor Angelos Stavrou. *See* Declaration of Angelos Stavrou ("Stavrou Decl."), Ex. 1. Faced with this overwhelming evidence of infringement, detailed in Professor Stavrou's report, Sophos elected to not respond with any expert analysis, effectively conceding infringement. Given Sophos' concession of infringement, Fortinet moves to establish infringement to streamline matters for trial.

### A. **Factual Background**

**Fortinet's U.S. Patent No. 7,333,430**: The '430 patent generally describes methods of distributing the processing of network traffic among various "worker modules." In disclosed embodiments, the disclosed system includes a pair of "IO modules" that interface with senders and receivers of network traffic. The IO modules receive network traffic and distribute that traffic (via packets) to a worker module, such as worker modules for processing. The '430 patent discloses various distribution algorithms that can be used to determine which worker module should receive the packet. Once a worker module receives a packet, it can perform one or more of a number of different tasks, including source verification, destination verification, user authentication, anti-virus, content scanning, content detection, intrusion detection, or other functions associated with policy enforcement. The IO modules and worker modules may also tag packets to assist in routing of packets and communication of packet status. Fortinet asserts claims 1, 5, 9, 14, and 15 of the '430 patent. Jaffe Decl., Ex. 17 at 1.

**Sophos' Accused Functionality**: Fortinet alleges that the following Sophos products infringe the asserted claims of the '430 patent: Sophos' Unified Threat Management (UTM) products including Sophos UTM 100, UTM 110, UTM 120, UTM 220, UTM 320, UTM 425, UTM 525, UTM 625, SG 210, SG 230, SG 310, SG 330, SG 430, SG 450, Sophos UTM 9 software appliance, Sophos UTM 9 virtual appliance, Sophos UTM 9 cloud deployments, Sophos RED, UTM Wireless, Sophos Web Appliance, and Sophos Email Appliance. Sophos has only produced one version of source code for the above infringing products and Fortinet has, through extensive discovery, presented evidence of clear infringement. At a high level, the accused Sophos UTM products perform "clustering" to ensure that all packets sent from the same source to the same destination, sometimes referred to as a "flow," are passed to the same "worker module," so that the same worker module can process all packets traveling from the same source to the same destination. The Sophos UTM products perform this task by maintaining a record of which worker module is handling each flow.

**Undisputed Expert Discovery Confirms '430 Infringement**: On July 20, 2015, Fortinet served the "Expert Report of Dr. Angelos Stavrou Regarding Infringement of U.S. Patent Nos.

7,698,744, 8,069,487, 8,195,938, 7,376,125 and 7,333,430" ("Stavrou Expert Report"). In his report, Dr. Stavrou performs an element-by-element analysis of the asserted claims of the '430 patent. Dr. Stavrou's analysis includes a line-by-line correlation of Sophos' source code from its UTM products to the asserted patent claims. Dr. Stavrou identifies software functionality by file name and analyzes specific lines of source code that infringe the '430 patent. In addition, Dr. Stavrou also identifies portions of the deposition transcript of Daniel Stutz (a Technology Strategist at Sophos who served as software engineer and technical product manager for Sophos' UTM products) supporting his opinions. Finally, Dr. Stavrou made extensive use of Sophos' technical documentation such as Sophos' UTM Administration Guides and other documents supporting Fortinet's claim of infringement. Having reviewed this evidence, Dr. Stavrou concludes that Sophos infringes the asserted claims of the '430 patent.

On August 19, 2015, Sophos served a "rebuttal" report authored by its invalidity expert Frederick B. Cohen. Though his report purported to identify Sophos' position regarding "non-infringement," Dr. Cohen's analysis of the '430 patent consists entirely of attacks on the '430 patent's validity. For instance, Dr. Cohen's analysis of claim 1 consists largely of stating that the infringing functionality "was also true of prior art versions of Linux." *See, e.g.*, Jaffe Decl., Ex. 15 at 428. Likewise, Dr. Cohen complains that Dr. Stavrou has "not shown relevant parts of patches to be from a date after the prior art." *Id.* At no point in his report does Dr. Cohen challenge Dr. Stavrou's extensive identification of source code, deposition testimony, or documents that support Fortinet's claims of infringement for the asserted claims of the '430 patent.

### B. <u>Legal Standards</u>

A finding of patent infringement requires a two-step analysis: first, the Court must construe the scope of the claims; second the fact finder must compare each of the asserted claims to the accused devices to determine if each limitation of the claim is present. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 374 (1996); *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1323 (Fed. Cir. 2002). Summary judgment of infringement may be granted where there is no genuine issue of material fact as to whether the asserted claims read on the accused device, or when no reasonable jury could find that every limitation in an asserted claim is not found in the

accused device. *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1200-01 (Fed. Cir. 2014). Once the moving party has satisfied its burden, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

In cases involving complex technology, the Federal Circuit has observed that expert testimony will "typically" be necessary to prove or rebut a claim of infringement. *Centricut, LLC v. Esab Grp., Inc.,* 390 F.3d 1361, 1370 (Fed. Cir. 2004) (requiring expert testimony where infringement claims involved "complex" technology). Likewise, in certain circumstances, the Federal Circuit has observed that proof of infringement of particular claims can require the use of expert testimony. *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 506 (Fed. Cir. 2014), *vacated on other grounds*, 564 F. App'x 599 (Fed. Cir. 2014) ("The burden was on SAP to prove its case, and in the absence of evidence provided by technical experts who meet the *Daubert* criteria there is a failure of proof.").

C.    **Argument**

1.    **Fortinet Provides Overwhelming Evidence of Infringement of Its '430 Patent**

After providing initial infringement contentions on May 15, 2014, Fortinet engaged in extensive discovery to prosecute its claims. Fortinet took 30(b)(6) depositions of Sophos engineers on April 13, 2015, April 14, 2015, April 21, 2015, and April 22, 2015, who identified the infringing source code in Sophos' products. Thereafter, Fortinet moved to amend its infringement contentions, identifying the source code in Sophos' products responsible for the infringement. Dkt. 135; *see also* Dkt. 153 (granting Fortinet leave to amend).

Fortinet's expert witness then provided a detailed expert report showing Sophos' infringement of the '430 patent. Dr. Stavrou devoted over twenty pages of his report to analyzing Sophos' infringement of claims 1, 5, 9, 14, and 15 of the '430 patent based on Sophos' UTM products. In his report, Dr. Stavrou conducted a limitation-by-limitation analysis of the asserted claims of the '430 patent and made extensive reference to Sophos' source code, document

production, and deposition testimony. *See* Stavrou Decl., Ex. 1. Going even further, Dr. Stavrou offered an assessment of Sophos' non-infringement contentions which had been set forth in its responses to Fortinet's interrogatories. As part of this assessment, Dr. Stavrou addressed each claim element that Sophos claimed it did not infringe and identified the factual basis rebutting Sophos' contention.

Dr. Stavrou explained how a "master" UTM receives network traffic and passes it to one of a number of worker nodes for processing. *See* Stavrou Decl., Ex. 1 ¶¶ 842-848, 863-870, 886-890. Dr. Stavrou further explained how the passing of network traffic is performed "based on a quantity of worker modules," ███████████████████████████████████████████████████████████████████. *See* Stavrou Decl., Ex. 1 ¶¶ 849-854, 871-875, 891-892. Dr. Stavrou further explained how each worker node was assigned an identification number, ████████████████████████████████████████████████████████████████████████████████. *See* Stavrou Decl., Ex. 1 ¶¶ 855-857, 876-881, 893-898. Dr. Stavrou likewise explained how the Sophos' UTM products met the requirements of the asserted dependent claims of the '430 patent—claims 5 and 9. *See* Stavrou Decl., Ex. 1 ¶¶ 858-861.

Finally, Sophos does not and cannot dispute that it has sold the accused UTM products in the United States. *See* Jaffe Decl., Ex. 14 (reflecting Sophos' damages expert position that Sophos has generated ████████████ in revenues from sales of its UTM products).

### 2. Sophos Does Not Dispute Stavrou's Infringement Analysis and Concedes Infringement

Because Fortinet has met its burden as the moving party with detailed source code evidence and expert testimony, Sophos as the non-moving party is required to put forth evidence demonstrating the existence of a genuine issue of material fact to survive summary judgment. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 585–86. On August 19, 2015, Sophos served a "rebuttal" report authored by its invalidity expert Frederick B. Cohen. In his report, Dr. Cohen never addressed Dr. Stavrou's contention that Sophos' products practice the claim elements of the '430

patent. Instead, Dr. Cohen's entire rebuttal as to the '430 patent focused not on infringement but instead on the '430 patent's validity. Indeed, neither Dr. Cohen or Sophos have offered <u>any</u> factual evidence (not a single document or line of source code) to dispute infringement. Sophos' inability to rebut or even challenge Fortinet's evidence renders summary judgment appropriate here. *Elcommerce.com, Inc.,* 745 F.3d at 506, *vacated on other grounds*, 564 F. App'x 599 (requiring expert testimony to satisfy burden at summary judgment where technology was complex). Indeed, Dr. Cohen's conclusions with respect to the '430 patent confirm that the accused UTM products infringe: Dr. Cohen argued only that the claims of the '430 patent are invalid and that Dr. Stavrou did not demonstrate use or sale in the United States. *See* Jaffe Decl., Ex. 15 at 427. And yet there is no dispute as to the latter fact given that Sophos' own damages expert has used revenue data conceding this point. *See* Jaffe Decl., Ex. 14 (disclosing Sophos' position that it generated ███ ████ from sales of its UTM products). The former (validity) is irrelevant to the question of infringement, while the latter (use or sale in the United States) is undisputed by Sophos.

## V.    <u>FORTINET IS ENTITLED TO SUMMARY JUDGMENT OF INVALIDITY AND NONINFRINGEMENT AS TO SOPHOS' ABANDONED PATENTS</u>

At one time, Sophos asserted seven patents in this litigation. At some point during this case, for three of these patents—U.S. Patent Nos. 7,757,002 ("'002 patent"), 8,220,050 ("'050 patent"), and 8,266,687 ("'687 patent")—Sophos realized it had no infringement read, and that these patents were manifestly invalid in light of the prior art. Sophos never moved to amend its infringement contentions to identify any source code for these patents. Sophos then failed to serve any expert report supporting its now-abandoned infringement assertions. Making matters worse: While Fortinet disclosed detailed expert testimony on the invalidity of these patents, Sophos failed to respond even on that score. As a result, the uncontested evidence available to this Court is that Fortinet does not infringe these patents and that they are invalid to boot. Fortinet is therefore entitled to summary judgment that it does not infringe, and, based on the prior art identified by Fortinet and its experts, that these patents invalid.[1]

_____

[1]   Fortinet has declaratory judgment claims of noninfringement and invalidity for these patents. Dkt. No. 30 ¶¶ 11-13, 17-19, 23-25, 32-34, 38-40, 44-46.

1          1.          **The Asserted Claims of The '002, '050 And '687 Patents Are Invalid**

2          In contrast to Sophos' abandoning of its infringement allegations, Fortinet identified key

3    prior art for these patents, providing limitation-by-limitation mappings in its invalidity

4    contentions, and then served a detailed expert report from its expert, Dr. Seth Nielson, supporting

5    its invalidity contentions. Dr. Nielson provided a comprehensive analysis showing that each of

6    these patents is anticipated by or obvious in light of prior art. *See* Declaration of Dr. Seth Nielson

7    ("Nielson Decl."), Ex. 1.

8          Dr. Nielson's report lays out the detailed basis for why each patent is invalid, to which

9    Sophos has simply chosen not to respond. Fortinet offered a chance for Sophos to take Dr.

10   Nielson's deposition. Sophos declined. Jaffe Decl. ¶ 19. As such, Dr. Nielson's opinions stand

11   unrebutted, and Fortinet is entitled to judgment these patents are invalid.

12          (a)          The Asserted Claims of the '002 Patent are Invalid

13          The '002 patent, which was filed on March 23, 2007, is entitled "Method and Systems for

14   Analyzing Network Content in a Pre-Fetching Web Proxy." Sophos asserts claims 4, 6, 8, 27, and

15   28 of the '002 patent. Generally, the '002 patent describes an alleged invention for "pre-fetching

16   linked content for analysis in advance of user access via a proxy." Nielson Decl, Ex. 1 ¶ 219

17   (quoting the '002 patent at 1:22-24). In particular, the alleged invention of the '002 patent relates

18   to conducting content analysis of web pages without creating latency between the request for the

19   web page and any notification that the web page is blocked. *See id*. at ¶¶ 221-225 (citing the '002

20   patent).

21          As prior art to the '002 patent, Dr. Nielson described U.S. Patent No. 8,037,527 to Milener

22   et al. ("Milener"), which describes an invention that "scan[s] a requested web document for links

23   to other content and to proactively scan and analyze that content *before* the user requests it."

24   Nielson Decl., Ex. 1 ¶¶ 262 (emphasis in original); *see generally id.* at ¶¶ 261-266. Dr. Nielson

25   further identified U.S. Patent No. 7,487,540 to Shipp ("Shipp") and U.S. Patent No. 6,665,838 to

26   Brown et al. ("Brown") as prior art to the '002 patent. *See id.* ¶¶ 267-276. Shipp describes

27   scanning content, including replacing the content with a link. *See id.* ¶ 268. Brown describes, *inter*

28   *alia*, "adjusting the visual depiction of the link based on the presence of positive or negative user

preferences[,]" which it achieves by parsing a requested webpage, extracting the links, prefetching the pages and scanning the content. *Id.* ¶ 276.

Dr. Nielson opined in detail on multiple prior art and invalidating references to the asserted claims of the '002 patent. Given that Fortinet's expert testimony is unopposed, Fortinet provides one example here: Milener.[2] Dr. Nielson provided a detailed chart showing how Milener anticipates the asserted claims of the '002 patent. In particular, Milener discloses a content fetcher which retrieves content to be analyzed. Nielson Decl., Ex. 3 at 3. This content is analyzed for security threats. *See, e.g.*, *id.* at 12. If the link is acceptable, "a user retains access to that content." *Id.* at 14. The reference further discloses a content renderer for indicating the status of links. *Id.* at 17. Milener also describes a content cache, which anticipates asserted dependent claim 4 of the '002 patent (*see id.* at 23); a content policy that is a list of allowed content and a list of prohibited content, which anticipates asserted dependent claim 6 of the '002 patent (*see id.* at 24-25); and, a link status comprising allowed, blocked, or restricted, as required by asserted dependent claim 8 of the '002 patent (*see id.* at 25). To the extent that each limitation of each asserted claim of the '002 patent is not disclosed in Milener, such limitations would be obvious in light of other Shipp, Brown, and the state of the art. *See* Nielson Decl., Ex. 1 ¶¶ 286-406, 411-439. In light of Dr. Nielson's expert report, each limitation of each asserted claim of the '002 patent is rendered anticipated or obvious by the prior art, identified and detailed by Dr. Nielson. Fortinet's unrebutted expert testimony establishes that Fortinet has met its burden of proving by clear and convincing evidence that the asserted claims of the '002 patent are invalid.

(b)     The Asserted Claims of the '050 Patent are Invalid

U.S. Patent No. 8,220,050 (the "'050 patent"), which was filed on March 31, 2008, is entitled "Method and System for Detecting Restricted Content Associated with Retrieved Content." Sophos has asserted claims 11, 14, 15, 16, and 17 of the '050 patent. The '050 patent is

---

[2]     Mindful of its page limits and for the purposes of this summary judgment motion, Fortinet does not provide a detailed analysis of other prior art references for the '002, '050, and '687 patents. However, discussion of such references can be found in Dr. Nielson's expert report and exhibits attached thereto, and Fortinet by no means intends to waive the right to prove invalidity through references or theories not detailed herein.

generally directed to "secure computing, and more specifically related to contextual scanning of data for detecting restricted content." Nielson Decl., Ex. 1 ¶ 462. Contextual information, such as that indicating the source of requested content, could be attached to data as it passes through a series of computing devices, and said contextual information could then be scanned to detect the presence of target data. *Id.* ¶¶ 466, 472.

Among the references Fortinet elected as prior art, Dr. Nielson described and charted U.S. Patent No. 8,544,086 to Field ("Field"). Field, which was filed June 9, 2006, is directed to "providing enhanced security with regard to obtained file[s]" where "[u]pon obtaining a file from an external location, the obtained file is tagged with tagging information regarding the origin of the obtained file," said tagging information further contemplated for use in "subsequent security policy decisions such as whether to allow or block execution or rendering of the content." Nielson Decl., Ex. 1 ¶ 522.

Dr. Nielson provided a detailed chart showing how Field anticipates the asserted claims of the '050 patent. *See* Nielson Decl., Ex. 4. In particular, as to independent claim 11, Field discloses "causing contextual information to be attached to data as it passes through a series of computing device, the contextual information relating to the series of computing devices" at least by identifying "tagging information" such as origin information tagged by each application that obtains files from external sources. *See id.* at 2-9. Field discloses "a plurality of sub-deliverables" at least in that a file may have various complementary elements such as Active X objects. "contextual information include[ing] a source address for each of the . . . sub-deliverables" at least by disclosing Active X and style sheets that are downloaded separately and tagged based on origin information. *See id.* at 9-17. Field further discloses a "pattern of changing source addresses for each . . . sub-deliverable[]" at least through its tagging of core files to allow for identification of identical malware in different locations. *See id.* at 18-21. Field discloses "authorizing delivery of

the data and the contextual information to a client device" at least through generation of a signature and comparison to a white list. *See id.* at 22-26. Field discloses "scanning . . . and determin[ing] whether a target data is present" at least scanning and identification of malware. *See id.* at 26-31. Field discloses "communicating the contextual information . . . to a central repository" at least through its contemplated use of centralized white list data stores. *See id.* at 31-36. Finally, Field discloses "analyzing . . . at the central repository in relation to other information" stored there to "determine a remedial action for the target data" at least through white-list and black-list data stores and associated rules that could impose certain restrictions. *See id.* at 36-43. The remaining limitations of the dependent claims are likewise disclosed by Field, as explained in Dr. Nielson's chart. *See id.* at 44-62.

Dr. Nielson also provides a detailed analysis of how the '050 patent would have been obvious in light of what was known in the art as of the filing date of the '050 patent, including the Field reference. Nielson Decl., Ex. 1 ¶¶ 599-608, 612-676. To the extent that the Field reference does not disclose all limitations in the asserted claims, Dr. Nielson provided evidence that it, in combination with the knowledge of a person of ordinary skill in the art, would render obvious each and every one of the asserted claims of the '687 patent. *See id.* Sophos has never identified any secondary consideration supporting any contention that the asserted claims of the '050 patent are non-obvious. *Id.* ¶ 676.

Fortinet's unrebutted expert testimony establishes that Fortinet has met its burden of proving by clear and convincing evidence that the asserted claims of the '050 patent.

(c) The Asserted Claims of the '687 Patent are Invalid

The '687 patent, entitled "Discovery of the Use of Anonymizing Proxies by Analysis of HTTP Cookies," was filed on March 27, 2009. Sophos asserts claims 1, 10, 11, 12, and 13 in this

case.[3] The '687 patent generally relates to "detection of website requests from proxy websites or anonymizers," and relates "[m]ore specifically" to "detection that involves analyzing characteristics of cookies present in website requests." Dkt. 15, Ex. F ('687 Patent) at 1:9-12. The inventors of sought to '687 patent sought to improve upon known methods of detecting anonymizing proxies by "analyzing the properties of the request rather than the content itself, which would in turn make it harder for the developers of anonymizer software to change the properties in order to circumvent detection." *Id*. at 1:50-54.

As Dr. Nielson's expert report sets forth in detail, the '687 patent is anticipated by U.S. Patent Application Publication No. 2007/0255821 filed by Ge et al. ("Ge") on May 1, 2007. Ge discloses the use of proxy servers detecting and blocking certain types of click fraud, namely (1) affiliate or competitor repeat clicking for fraudulently increasing revenue, and (2) software products generating false clicks. *See* Nielson Decl., Ex. 1 ¶¶ 750-52. Specifically, Ge discloses assigning a permanent cookie to the client performing the "clicks," and that permanent cookie is transmitted for every request along with IP address and other information, which is then compared to tracking information. *See id.* at 753. A score is then generated based on those comparisons, and if the score is greater than a certain threshold, the request is blocked and the click is not recorded. *See id.* ¶¶ 753-54.

Exhibit 687-1 to Dr. Neilson's report demonstrates how each element of the asserted claims of the '687 patent is found in Ge. In particular, Ge discloses a computer program product that intercepts a website request and identifies at least one cookie (e.g., a permanent cookie). Nielson Decl., Ex. 5 at 4-7. The program disclosed in Ge analyzes a predetermined characteristic associated with the cookie (e.g., the count of the cookie is monotonically increasing growth for a 24 hour period), which includes detecting a monotonic growth in the cookie (e.g., the count of the cookie is monotonically increasing growth for a 24 hour period). *Id.* at 9-11. Ge discloses applying a rule corresponding to said predetermined characteristic of said cookie by returning a warning page if the fraud score calculated in part on the count of the cookie exceeds a threshold. *Id.* Finally, the program disclosed by Ge determines whether the website request is an anonymizing

---

[3] Claims 10-13 depend from claim 1.

proxy website request by maintaining a database of known fraudulent sources, including anonymizing proxies, and identifying click fraud routed through anonymizing proxies. *Id.* at 16-19.

Dr. Nielson further provided a detailed analysis of how the '687 patent would have been obvious in light of what was known in the art as of the filing date of the '687 patent, including the Ge reference. Nielson Decl., Ex. 1 ¶¶ 781-884; *id.*, Ex. 5. To the extent that the Ge reference does not disclose all limitations in the asserted claims, Dr. Nielson provided evidence that Ge, in combination with the knowledge of a person of ordinary skill in the art, would render obvious each and every one of the asserted claims of the '687 patent. *Id.*, Ex. 1 ¶ 845 ("[I]n my opinion, Ge in combination with the knowledge of a person of ordinary skill in the art, renders the asserted claims of the '687 patent obvious."). Sophos has never identified any secondary consideration supporting any contention that the asserted claims of the '687 patent are non-obvious. *Id.* ¶ 884.

Fortinet's unrebutted expert testimony establishes that Fortinet has met its burden of proving by clear and convincing evidence that the asserted claims of the '687 patent.

### 2.   Fortinet is Entitled to Judgment of Noninfringement

Before expert discovery, Fortinet supplied numerous discovery responses explaining why it did not infringe these patents. *See* Jaffe Decl., Ex. 13 at 8-51 (Fortinet's second supplemental response to Sophos's non-infringement interrogatory). For example, Claims 1, 4, and 27 of the '002 patent require "pre-fetched network content" (and/or similar limitations)—which Sophos has failed to demonstrate is in any Fortinet product accused of infringement (nor is it). *See id.* at 32-33. Furthermore, the '002 patent requires a "content renderer" (which renders links to allowed content based on the status of the link) in claims 1 and 27, which is not in any accused Fortinet product and which Sophos has failed to identify in any accused Fortinet product. *See id.* at 33-34. Similarly, Sophos has failed to prove Fortinet products include "a plurality of sub-deliverables" (nor do the products include this) as required by claim 11 of the '050 patent. *See id.* at 40. Claims 11 and 14 of the '050 patent require a "remedial action" and/or "determine a remedial action for the target data"—neither of which is present in the accused Fortinet products and which Sophos has failed to prove. *See id.* at 41-42. The '687 patent requires, in claim 1, "analyzing a

predetermined characteristic," "predetermined characteristic associated with said at least one cookie," and "analyzing includes detecting a monotonic growth in said at least one cookie," which are limitations that Sophos has not demonstrated any Fortinet products include or perform (and which Fortinet products do not include or perform). *See id.* at 50. Finally, claims 10 and 11 of the '687 patent recite "said website request" which depends on the limitation of claim 1 that "analyzing includes detecting a monotonic growth in said at least one cookie," which (again) Fortinet products do not include and Sophos has failed to prove the accused Fortinet products include this limitation. *See id.* at 51.

Sophos chose to abandon its infringement claims in view of these contentions, failing to provide any expert opinion in support. Given the highly technical subject matter claimed by those patents, and the complexity of the accused Fortinet products, Sophos's failure to present any expert opinion on infringement is a failure of proof. Accordingly, Fortinet is entitled to summary judgment that none of its products infringe. *Centricut*, 390 F.3d at 1370; *Elcommerce.com*, 745 F.3d at 506.

## VI.    CLAIM 9 OF THE '587 PATENT IS NOT INFRINGED, AND IS INVALID.

In addition to some of its failed claims, Sophos also has effectively abandoned claim 9 of its '587 patent by failing to perform the required means-plus-function analysis. Fortinet is thus entitled to summary judgment of noninfringement as to this claim.

### A.    Factual Background

The '587 Patent, titled "Validity Checking," claims priority to a British application filed on October 29, 1993.  In the early 1990s it was "conventional" for workstations—client machines—to check their own data for potential computer viruses. Jaffe Decl., Ex. 3 ('587 Patent) at 1:28-37. In proposing their claim constructions, both parties agreed that claim 9 contained four terms subject to pre-AIA section 112 ¶ 6. Dkt. 80, Appx. B at 14-16. Specifically, both Sophos and Fortinet proposed constructions for the four means-plus-function terms that included a function and what each party argued was the corresponding structure disclosed in the specification. *Id.* Sophos, however, did not prosecute its allegation that Fortinet's products infringe claim 9. That is,

it did not seek discovery to relate the accused products to the structures allegedly corresponding to the means plus function terms—whether under Fortinet's or Sophos' proposed constructions.

Sophos' infringement expert's report shows the direct result of Sophos' failure to prosecute its allegations of infringement of these means-plus-function terms: Mr. Stillerman's July 20, 2015, report does not analyze the means plus function terms of claim 9 and does not identify any structures in Fortinet's accused products identical or equivalent to the structures allegedly corresponding to each of the four means plus function terms. As one example, for the first means-plus-function term of claim 9—*viz.* the term "means in a first data processor of the network for providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor"—Mr. Stillerman's infringement analysis consists entirely of the following two paragraphs:

> 175. Fortinet's systems contain a means in a first data processor of the network for providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor.
>
> 176. 

Jaffe Decl., Ex. 16 ¶¶ 175-76 (footnotes omitted). As is evident from this excerpt, Mr. Stillerman did not explain what structure carries out the function of this term nor did he identify the requisite identical or equivalent structure in Fortinet's accused products. His analyses of the other three means-plus-function terms suffer from the same deficiency as they also do not identify the identical function and identical or equivalent structures in Fortinet's products. *Id.* ¶¶ 177-85.

These fundamental flaws foreclose Sophos' contention that claim 9 is infringed.

## B. Legal Standards

It is black letter law that infringement of a means-plus-function claim limitation "requires that the relevant structure in the accused device perform the identical function recited in the claim

---

[4] These cited paragraphs relate to Claim 1 of the '587 patent, which contains no means plus function language. Regardless, there is no mapping of any corresponding structure of the '587 patent to the accused functionality in these paragraphs. *See* Jaffe Decl., Ex. 16 ¶¶ 128-135.

and be identical or equivalent to the corresponding structure in the specification." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004). Infringement analysis for a means-plus-function term requires comparing the structure disclosed in the specification as corresponding to the term to the structure of the accused product. *Id.* Without an identical function and identical or equivalent structure in the accused product, there can be no infringement of a means-plus-function term. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364-65 (Fed. Cir. 2000).

### C. <u>Argument</u>

The parties agree that claim 9 contains four means-plus-function terms. Dkt. 80, Appx. B at 14-16. To prove infringement of a means-plus-function limitation, one must identify functionality that performs the recited function and map the accused functionality to the corresponding structure or its equivalent. *Frank's Casing Crew*, 389 F.3d at 1378. Sophos did not perform such analysis here, and thus summary judgment of noninfringement is warranted.

Sophos' infringement expert, Mr. Stillerman, admits that Claim 9 includes means plus function terms. Jaffe Decl., Ex. 16 ¶¶ 175-85. Despite this acknowledgement and the parties' agreement, Mr. Stillerman does not (anywhere in his report) explain how Fortinet's accused products have an identical or equivalent structure to these four means-plus-function terms. *See id.* ¶¶ 175-185. Under these facts—where the plaintiff has not met its burden—the Court should grant Fortinet summary judgment of non-infringement as to claim 9. *See, e.g., Intellectual Sci. & Tech., Inc. v. Sony Electronics, Inc.*, 589 F.3d 1179, 1184, 1187 (Fed. Cir. 2009) (affirming summary judgment of non-infringement where plaintiff's expert "d[id] not sufficiently identify the structural elements of the claimed 'data transmitting means'" and admonishing that "a party may not . . . simply fram[e] the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device."); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2014 WL 5812175, at *5 (N.D. Cal. Nov. 7, 2014) (granting summary judgment of non-infringement where plaintiff's expert "fail[ed] to proffer any evidence that the identified structures in the accused products are identical or equivalent to the corresponding structure identified by the Court" in the means plus function claim); *McKesson Info. Solutions LLC v. Trizetto Grp., Inc.*, 426 F. Supp. 2d 197, 202 (D.

Del. 2006) (summary judgment of non-infringement where plaintiff's report "d[id]not include a structure to structure analysis of the algorithm disclosed in the patent and the accused products").

**D.** **In the Alternative, Claim 9 Is Invalid As Indefinite Because At Least One Means Plus Function Term Does Not Have A Corresponding Structure**

In the alternative, Fortinet should be granted summary judgment that claim 9 of the '587 patent is invalid because the specification does not disclose a structure clearly linked to at least one of the claim's means-plus-function terms. Specifically, claim 9 includes the limitation:

> means in a first data processor of the network for providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor

According to the Patent Trials and Appeals Board (PTAB), which reviewed the '587 patent and its prosecution history, "claim 9 is not amenable to construction because the Specification does not disclose structure that performs the function" of this limitation. Jaffe Decl., Ex. 18 (IPR 2015-00617, Paper 9, at 8-10 (PTAB August 13, 2015)).

As explained by the Patent Office, the patent discloses no corresponding structure that performs the stated function. Sophos disclosed the following construction in support of this term.

> **Function**: providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor
>
> **Structure**: data processing system, including communications means 8 within workstations 2a, 2b, and 2c, depicted in Fig. 1 and described, for example, at 3:39-54 and 5:41-6:5, and box 13 of Fig. 2a described, for example, at 4:20-22, and statutory equivalents thereof.

Dkt. 80, Appx. B at 14. But considering that proposed construction, the Patent Office found it insufficient:

> The written description of the '587 patent discloses that "the first data processor is a workstation of the network," while "the second data processor is a file server of the network." Ex. 1001, 1:60–62. Petitioner directs us to the written description which further discloses that a workstation of the network includes "storage means 6, data processing means 7 and communication means 8 for communication with the file server." *See* Pet. 20 (citing Ex. 1001, 3:49–51).
>
> Petitioner contends that "[t]he corresponding structure for this [means-plus-function] limitation is the data processing system, including communications means 8 within workstations 2a, 2b, 2c in Fig. 1 . . . and box 13 of Fig. 2a." Pet. 20. We are unpersuaded by Petitioner's contention in this regard. First, Petitioner does not identify any portion of the written description that offers guidance as to the structure of the communication means 8 or the structure for performing the

function recited in box 13 (i.e., "copy the item to a central server where it will be scanned for data of characteristic forms"). *See Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 952 (Fed. Cir. 2007) ("As we have previously explained, § 112, ¶ 6 requires some disclosure of structure in the specification corresponding to the claimed means."). Second, the written description links the communication means 8 to the function of communicating with the file server (*see* Ex. 1001, 3:49–51), not the function of providing the file server with a copy of an item of data. *See Aoyama*, 656 F.3d at 1297. Finally, Petitioner does not direct us to any disclosure in the written description of structure that is linked to the function of providing the file server with a copy of an item of data. *See id.* Nor can we identify such disclosure.

Based on the record before us, we determine that claim 9 is not amenable to construction because the Specification does not disclose structure that performs the function of providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor. *See Aristocrat Techs.*, 521 F.3d at 1331.

Jaffe Decl., Ex. 18 (IPR 2015-00617, Paper 9, at 8-10 (PTAB August 13, 2015)).

The PTAB reached this conclusion after examining the same allegedly corresponding structure for this claim as Sophos presented in the parties Joint Claim Construction Statement. *Compare id. with* Dkt. 80, Appx. B at 14. "[Section] 112, ¶ 6 requires some disclosure of structure in the specification corresponding to the claimed means," and absent such corresponding structure, the claim is invalid as indefinite. *Biomedino, LLC*, 490 F.3d at 952 (affirming indefiniteness finding); *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013) (affirming judgment that claim was indefinite and therefore invalid because the specification failed to disclose a structure corresponding to a means plus function term). To the extent this Court does not grant summary judgment of non-infringement of claim 9, it should find claim 9 indefinite and therefore invalid, just as the PTAB already determined. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1366 (Fed. Cir. 2012) (deferring to Patent Office's finding in post-grant proceeding that patent is invalid as obvious even though district court previously found the patent not invalid as obvious).

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, Fortinet's motion for partial summary judgment should be granted.

DATED: September 7, 2015                    Respectfully submitted,


                                    By     _/s/ John M. Neukom_
                                           John M. Neukom (Bar No. 275887)
                                           johnneukom@quinnemanuel.com
                                           50 California Street, 22nd Floor
                                           San Francisco, California  94111-4788
                                           Telephone:     (415) 875-6600
                                           Facsimile:     (415) 875-6700

                                           Attorneys for Plaintiff FORTINET, INC.