UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORTINET, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SOPHOS, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-05831-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 218 |

Plaintiff Fortinet, Inc. has filed suit against Defendants Sophos, Inc. and two of its officers, Michael Valentine and Jason Clark, both of whom left employment with Fortinet to work for Sophos. In the operative first amended complaint ("FAC"), *see* Docket No. 9 (FAC), Fortinet has asserted a variety of claims against Sophos, including patent infringement. Sophos has counterclaimed for infringement of its own patents. Currently pending before the Court is Fortinet's motion for summary judgment, in which it seeks summary judgment as to some of Sophos's patent claims and summary judgment as to one of its own patent claims.

**I. DISCUSSION**

A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may seek summary judgment on a claim or even part of a claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As indicated by the language of the rule, "[t]he moving party has the burden of establishing the absence of a genuine dispute of material fact. The court must view the evidence in the light most favorable to the non-movant and draw all reasonable

inferences in the non-movant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049-50 (9th Cir. 2014). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.*

Where the plaintiff ultimately bears the burden of proof, the defendant may prevail on a motion for summary judgment by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In contrast, where a plaintiff seeks summary judgment in favor of its own claim, it "'must offer evidence sufficient to support a finding upon every element of [its] claim . . . , except those elements admitted . . . ' by the adversary." *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983).

As indicated above, in the instant case, Fortinet seeks summary judgment on some of Sophos's claims (*i.e.*, where Fortinet is the defendant) as well as summary judgment on one of its own claims (*i.e.*, where Fortinet is the plaintiff). More specifically, Fortinet makes the following arguments:

(1)   Sophos is not entitled to pre-suit damages for its '587 and '347 patents because of its failure to mark;

(2)   Sophos infringes on Fortinet's '430 patent because it has failed to rebut the testimony of Fortinet's expert;

(3)   Three of Sophos's patents – the '002, '050, and '687 patents – are invalid based on the unrebutted testimony of Fortinet's expert;

(4)   Claim 9 of Sophos's '587 patent is either not infringed or invalid.

Each of these arguments is addressed below.

B.   <u>Sophos's '587 and '347 Patents – Pre-Suit Damages</u>

Title 35 U.S.C. § 287 provides as follows:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with

2

> the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).

Here, Fortinet argues that Sophos is not entitled to pre-suit damages on two of its patents (the '587 and '347 patents) because it failed to mark in compliance with the statute. As the Court held in its order on Sophos's summary judgment motion, the patentee generally has the burden of pleading and proving compliance with § 287 (*i.e.*, actual or constructive notice), but, where the predicate issue is whether the patentee's product practices the claimed invention in the first place, the accused infringer has the burden of production which, if met, then shifts the burden of persuasion to the patentee.

Here, Fortinet has met its burden of production by pointing to evidence that Sophos practices the inventions claimed in the '587 and '347 patents. That evidence consists of Sophos's own infringement contentions and interrogatory responses. As Fortinet has met its burden of production, then the burden of persuasion shifts to Sophos to show that its products do not practice the claimed inventions or that it did mark the products. Sophos has failed to do either, and therefore Fortinet is entitled to summary judgment – *i.e.*, there should be no pre-suit damages for Sophos, should it prevail, on the '587 and '347 patents.

In its opposition brief, Sophos contends that summary judgment is appropriate only if Fortinet concedes that the Sophos products practice the claimed inventions or this Court rules as a matter of law that Sophos practices the claimed inventions. *See* Opp'n at 2. According to Sophos, without such a concession or ruling, there is an issue of fact for the jury to decide. This argument lacks merit for the reasons stated above. *See U.S. Ethernet Innovations, LLC*, No. C 10-3724 CW, 2013 U.S. Dist. LEXIS 116640 (N.D. Cal. Aug. 16, 2013) at *51-53 (noting that "Movants offered

3

1  evidence that the marking requirement was not met and thus the burden shifted to USEI to raise an
2  issue of fact to preclude summary judgment[;] [i]t cannot meet its burden to do so simply through
3  argument unsupported by evidence"). In any event, the Court also notes that, in its reply brief,
4  Fortinet essentially stated that, although it need not make a concession, it is willing to do so. *See*
5  Reply at 2-3 ("[W]hile no concession is necessary from Fortinet, Fortinet agrees that it will not
6  dispute before the jury Sophos's position that Sophos sold unmarked 'patented articles' under the
7  '587 and '347 patents before asserting those those patents against Fortinet in this case.").

8  Accordingly, on this issue of pre-suit damages, the Court grants Fortinet summary
9  judgment.

### C. Fortinet's '430 Patent – Infringement

11  One of Fortinet's patent infringement claims is based on the '430 patent. Fortinet
12  contends that it is entitled to summary judgment that Sophos infringes on the '430 patent because
13  Fortinet provided an expert report (from Angelos Stavrou) detailing how Sophos infringes, *see*
14  *generally* Stavrou Decl., but Sophos failed to provide an expert report to the contrary. Fortinet
15  notes that, although there is an expert report from Sophos (from Frederick Cohen), *see*
16  Cunningham Decl., Ex. P (Cohen report), which is titled "Expert Report . . . Regarding Non-
17  Infringement"), the substance of that report is about invalidity only, not infringement.

18  In its opposition, Sophos's argument boils down to the contention that it cannot be said to
19  infringe the '430 patent because it is invalid, and therefore summary judgment is not proper. *See*
20  Opp'n at 4 ("'It is axiomatic that one cannot infringe an invalid patent.'") (quoting *Richdel, Inc. v.*
21  *Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983)).

22  Sophos's position lacks merit. Fortinet is not asking this Court to make a liability
23  determination on the '430 patent. Rather, Fortinet is just asking for partial summary judgment to
24  dispose of the issue of infringement. That does not bar Sophos from still arguing that the '430
25  patent is invalid (which would preclude liability); it simply prevents Sophos from taking the
26  position that it does not practice the invention claimed in the '430 patent. As Fortinet notes in its
27  reply, it is not uncommon for courts to render partial summary judgment on infringement. *See,*
28  *e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 8157, at

4

1  \*156 (N.D. Cal. Jan. 21, 2014) (granting Apple's motion for summary judgment of infringement
2  of the '172 patent).
3        Accordingly, the Court grants Fortinet summary judgment on infringement of the '430
4  patent, although this ruling does not bar Sophos from contesting the validity of the patent.
5  D.    <u>Sophos's '002, '050, and '687 Patents – Invalidity</u>
6        For three of the patents asserted by Sophos – i.e., the '002, '050, and '687 patents –
7  Fortinet argues that it is entitled to summary judgment because Sophos never served an expert
8  report on infringement and then failed to respond to Fortinet's expert's report on invalidity. See
9  Mot. at 14; see also note 2, supra.
10       Fortinet presented the above argument in its opening brief filed on September 7, 2015.
11 Sophos's opposition brief was due on September 18, 2015. On September 17, 2015 (at 12:55
12 p.m., to be precise) – *i.e.*, the day before its opposition brief was to be filed – Sophos offered
13 Fortinet a covenant not to sue on the three patents. See Jaffe Reply Decl., Exs. 6-7 (e-mail and
14 letter). Sophos argues that, in light of the covenant, this Court no longer has jurisdiction over the
15 patent infringement claims. *See Super Sack Mfg. v. Chase Pkg. Corp.*, 57 F.3d 1054, 1058-59
16 (Fed. Cir. 1995) (evaluating whether a covenant not to sue on patents extinguished an actual
17 controversy between the parties).
18       In its reply brief, Fortinet argued that the covenant not to sue is insufficient to divest this
19 Court of jurisdiction. At the hearing, the Court echoed some of Fortinet's concerns, which led to
20 Sophos essentially offering a covenant not to sue with additional terms. As Sophos has now
21 offered this covenant not to sue – which is irrevocable and covers both direct and indirect
22 infringement, currently existing and past products and even certain future products, and extends
23 even to customers, *see* Docket No. 286 (notice of covenant not to sue) – this Court no longer has
24 jurisdiction over Sophos's claims and Fortinet's counterclaims on the three patents. All claims
25 related to the three patents at issue are therefore dismissed. The dismissal is with prejudice. At
26 the hearing, Sophos did not dispute that a dismissal with prejudice would be appropriate given a
27 sufficient covenant not to sue.
28 ///

5

E. Sophos's '587 Patent – Noninfringement or Invalidity

The final issue for the Court is whether Fortinet is entitled to summary judgment of noninfringement and/or invalidity on claim 9 of Sophos's '587 patent. Claim 9 reads as follows:

> 9. A data processing system comprising a plurality a plurality of data processors interconnected as a network, and comprising:
>
> means in a first data processor of the network for providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor;
>
> storage means for access by the second data processor for storing a set of information defining data of a plurality of characteristic forms that are indicative of invalidity[;]
>
> means in the second data processor for testing for the presence of any of the characteristic forms, in the item of data, and generating a validity signal indicative of whether data of any of the characteristic forms has been detected in the item of data; and
>
> means for transmitting the validity signal to the first data processor to indicate whether it may allow access to the item of data.

'587 patent, claim 9. As indicated by the language above, claim 9 is a means-plus-function claim.[1]

1. Noninfringement

In its noninfringement argument, Fortinet seems to assume that the specification for the '587 patent describes the structures which perform the specified functions in claim 9. Fortinet argues, however, that Sophos has failed to point to any structure in the accused Fortinet products that perform the specified functions.

The Court has reviewed the report of Sophos's expert, Robert Stillerman, which is the main evidence tendered by Sophos to support its claim of infringement. Based on that report, *see* Cunningham Reply Decl., Ex. A (Stillerman Report ¶¶ 102, 103-16, 174-85), the Court concludes

---

[1] While Sophos makes a passing suggestion that the claim is not a means-plus-function claim, *see* Opp'n at 8 (stating that "the Court has neither evaluated nor determined whether these limitations should be interpreted as 'means-plus-function'"), its opposition brief effectively treats the claim as a means-plus-function claim.

6

1  that Sophos has sufficiently raised a genuine dispute of material fact regarding infringement. The
2  Court rejects Fortinet's contention that "Mr. Stillerman does not (anywhere in his report) explain
3  how Fortinet's accused products have an identical or equivalent structure to these four means-
4  plus-function terms." Mot. at 23; *see also* Reply at 10 (arguing that Mr. Stillerman's expert report
5  does not "map[] any corresponding structure or claimed function from claim 9 of the '587 patent
6  to anything in Fortinet's products"). For example, for the means-plus-function limitation "storage
7  means for access by the second data processor for storing a set of information defining data of a
8  plurality of characteristic forms that are indicative of invalidity," Mr. Stillerman identifies the
9  following structure in Fortinet's products: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮
17          Accordingly, the Court denies Fortinet's motion for summary judgment on
18 noninfringement.
19          2.   <u>Invalidity</u>
20          The Court now turns to invalidity.[2] According to Fortinet, the first means-plus-function
21 limitation above – *i.e.*, "means in a first data processor . . . for providing a second data processor . .
22 . with a copy" – is invalid because it is indefinite. The party claiming indefiniteness has the
23 burden of establishing such by clear and convincing evidence. *See TecSec v. Int'l Bus Machines*
24 *Corp.*, 731 F.3d 1336, 1349 (Fed. Cir. 2013).

---

[2] As to invalidity, the Court ordered the parties to provide supplemental briefing. After the parties filed their cross-briefs, Fortinet asked for leave to file a brief in response to Sophos's supplemental brief. *See* Docket No. 298 (motion). Sophos opposed the motion. While the Court is not unsympathetic to Sophos's opposition, the Court shall grant Fortinet's motion, especially as Sophos's opposition addresses the merits of Fortinet's responsive brief.

1    Generally, "[t]he definiteness requirement focuses on whether 'a patent's claims, viewed in
2    light of the specification and prosecution history, inform those skilled in the art about the scope of
3    the invention with reasonable certainty.'" *Id.* For a means-plus-function claim, there must be
4    corresponding structure, material, or acts described in the specification or the claim will be
5    deemed indefinite. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, No. 2014-1218, 2015
6    U.S. App. LEXIS 15767, at *16 (Fed. Cir. Sept. 4, 2015); *see also See Williamson v. Citrix
7    Online*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc) (noting that, means-plus-function claiming
8    allows "patentees to express a claim limitation by reciting a function to be performed rather than
9    by reciting structure for performing that function, [but] plac[es] specific constraints on how such a
10   limitation is to be construed, namely, by restricting the scope of coverage to only the structure,
11   materials, or acts described in the specification as corresponding to the claimed function and
12   equivalents thereof"); *Saffran v. Johnson & Johnson*, 712 F.3d 549, 562 (Fed. Cir. 2013) (stating
13   that the "'duty to link or associate structure to function is the quid pro quo for the convenience of
14   employing § 112, ¶ 6'").

15   Whether a claim is indefinite or definite is a question of law. *See DDR Holdings, LLC v.
16   Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014). But while "[i]ndefiniteness is . . . a legal
17   determination arising out of the court's performance of its duty construing the claims," "[l]ike
18   enablement, definiteness, too, is amenable to resolution by the jury where the issues are factual in
19   nature." *BJ Servs. Co. v. Halliburton Energy Servs.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003).

20   In the instant case, Fortinet asserts that the first means-plus-function limitation in claim 9
21   is indefinite because it lacks corresponding structure for the claimed function. As indicated above,
22   to evaluate this argument, the Court must consider the specification for the '587 patent to
23   determine if there is corresponding structure. According to Sophos, the corresponding structure
24   identified in the specification "is 'any of the workstations 2-A, 2-B, or 2-C.'" Opp'n at 9; *see also*
25   '587 patent, col. 3:39-41 ("FIG. 1 shows a data processing system in the form of a network
26   including data processors configured as a file server 1 and workstations 2a, 2b and 2c.") (emphasis
27   added).

28   Workstations are, in essence, computers. Sophos admits that, in *Aristocrat Technologies*

8

1  *Australia Pty Ltd. v. International Game Tech*nology, 521 F.3d 1328 (Fed. Cir. 2008), the Federal
2  Circuit stated, "[i]n cases involving a computer-implemented invention in which the inventor has
3  invoked means-plus-function claiming, this court has consistently required that the structure
4  disclosed in the specification be more than simply a general purpose computer or microprocessor."
5  *Id.* at 1333. This is because "[f]or a patentee to claim a means for performing a particular function
6  and then to disclose only a general purpose computer as the structure designed to perform that
7  function amounts to pure functional claiming." *Id.* "[I]n a means-plus-function claim 'in which
8  the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm,
9  the disclosed structure is not the general purpose computer, but rather the special purpose
10 computer programmed to perform the disclosed algorithm.'" *Id.*

11 While Sophos concedes the holding in *Aristocrat*, it points out that the Federal Circuit has
12 also held that a general purpose computer or microprocessor *can* serve as sufficient structure
13 where the claimed function can be done *without* special programming. Sophos cites, *inter alia*,
14 *Katz Interactive Call Processing Patent Litigation v. American Airlines, Inc.*, 639 F.3d 1303 (Fed.
15 Cir. 2011), and *EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616 (Fed. Cir.
16 2015).

17 In *Katz*, the lower court held that "claims directed to a 'means for processing' were
18 indefinite" under *Aristocrat* because "the specifications of each of the patents at issue disclosed
19 only general purpose processors and did not disclose the algorithms that those processors used to
20 perform the recited functions." *Katz*, 639 F.3d at 1314. On appeal, the Federal Circuit agreed that
21 some of the claims were indefinite. For example, certain claims "recite[d] a 'processing means . . .
22 for receiving customer number data entered by a caller and for storing the customer number data .
23 . . and based on a condition coupling an incoming call to the operator terminal, the processing
24 means visually displaying the customer number data.'" *Id.* The Federal Circuit explained that the
25 claims were indefinite because they did "not disclose an algorithm that corresponds to the 'based
26 on a condition coupling an incoming call to the operator terminal' function." *Id.*

27 The court, however, went on to reject the indefiniteness conclusion reached by the district
28 court for other claims. More specifically, the district court had interpreted *Aristocrat* "too

9

1 broadly" by understanding *Aristocrat* to mean that the specification in a patent must disclose an

2 algorithm for any recited function performed solely or predominantly by a general purpose

3 computer. *Id.* at 1315-16.

> [T]hat interpretation of our prior cases [including *Aristocrat*] is too broad.  Those cases involved specific functions that would need to be implemented by programming a general purpose computer to convert it into a special purpose computer capable of performing those specified functions.  By contrast, in the seven claims identified above, Katz has not claimed a specific function performed by a special purpose computer, but has simply recited the claimed functions of "processing," "receiving," and "storing." *Absent a possible narrower construction of the terms "processing," "receiving," and "storing,"* discussed below, those functions can be achieved by any general purpose computer without special programming.  As such, it was not necessary to disclose more structure than the general purpose processor that performs those functions.  Those seven claims do not run afoul of the rule against purely functional claiming, because the functions of "processing," "receiving," and "storing" are coextensive with the structure disclosed, i.e., a general purpose processor.

*Id.* at 1316 (emphasis added).

Ultimately, the Federal Circuit remanded to the district court to determine what the terms "processing," "receiving," and "storing" meant. "Based on its construction, the district court can then determine whether the functions recited in those seven contested claims can be performed by a general purpose processor or, instead, constitute specific computer-implemented functions as to which corresponding algorithms must be disclosed." *Id.* at 1317.

In *EON*, the Federal Circuit expanded on the exception to the algorithm rule created in *Katz*. It noted that, since *Katz*, it had analyzed the exception only once and found that it did not apply.

> The *Ergo* court explained that "[i]t is only in the rare circumstances where any general-purpose computer without any special programming can perform the function that an algorithm need not be disclosed."  The court found that an algorithm was needed to lend sufficient structure to the terms at issue because "[t]he EON 'control means' at issue in this case cannot be performed by a general-purpose computer without any special programming.  The function of 'controlling the adjusting means' requires more than merely plugging in a general purpose computer."

*EON*, 785 F.3d at 621.

The Federal Circuit then went on to emphasize that "special programming" had nothing to do with how complex or simple the function was to implement. *See id.* at 623 (stating that "'special programming' does not denote a level of complexity" and that "the district court erred in holding that 'special programming' does not encompass commercially available off-the-shelf software").

> To the contrary, . . . . "special programming" includes any functionality that is not 'coextensive' with a microprocessor or general purpose computer. In other words . . . the general purpose computer becomes a special purpose computer when loaded with the special programming, so a general purpose computer or microprocessor no longer lends sufficient structure to the claim. . . . A microprocessor or general purpose computer lends sufficient structure only to basic functions of a microprocessor. All other computer-implemented functions require disclosure of an algorithm.

*Id.*

Finally, the Federal Circuit rejected the contention that "a microprocessor can serve as sufficient structure for a software function if a person or ordinary skill in the art could implement the software function" because that argument improperly conflated the definiteness requirement in 35 U.S.C. § 112 with the enablement requirement in the statute. *Id.* at 623-24. The court elaborated: "[A] person of ordinary skill in the art plays no role whatsoever in determining whether an algorithm must be disclosed as structure for a functional claim element." *Id.* at 623.

> "[O]ur case law regarding special purpose computer-implemented means-plus-functions claims is divided into two distinct groups: First, cases in which the specification discloses no algorithm; and second, cases in which the specification does disclose an algorithm but a defendant contends that disclosure is inadequate." Where the specification discloses no algorithm, the skilled artisan's knowledge is irrelevant. Where the specification discloses an algorithm that the accused infringer contends is inadequate, we judge the disclosure's sufficiency based on the skilled artisan's perspective.

*Id.* at 623-24. In *EON* itself, the parties agreed that the specification of the patent at issue disclosed no algorithms, "so this case falls in the first category, in which the skilled artisan's knowledge is irrelevant." *Id.* at 624.

11

1   Ultimately, the *EON* court held that there was no clear error in any of the district court's
2   factual findings, "based on expert testimony, that each of the eight claim terms at issue recited
3   complicated, customized computer software" – and consequently there was no error in the lower
4   court's conclusion of indefiniteness either.

> Signficantly, EON does not contend on appeal that the terms at issue
> recite functions that are coextensive with a microprocessor. . . . In
> fact, EON cites to testimony from its expert that a person skilled in
> the art would need to consult algorithms outside the specification to
> implement the claimed functions. Similarly, based on expert
> testimony, the district court found that "special code would have to
> be written in order to accomplish the claimed functionality."

*Id.*

In its supplemental briefing, Sophos argues that the claimed function in the first means-plus-function limitation of claim 9 falls within the *Katz*/*EON* exception to the *Aristocrat* rule – *i.e.*, that the claimed function is something that can be done with a general purpose computer because the claimed function simply involves accessing, processing, and sending. *See* Docket No. 297 (Supp. Br. at 3) ("To achieve the claimed function, a standard microprocessor performs the basic functions of 'accessing' (to obtain the stored data), 'processing' (to provide the item of data to the second processor) and 'sending' (transmitting the item of data to the second processor)."). Fortinet contends otherwise. *See* Docket No. 298-1 (Resp. Br. at 2) ("Whether some 'copying' in the abstract may fall within *Katz* is not the issue; instead, the issue is whether the specific recited function within Claim 9(a) is a basic function of a microprocessor.").

But for Fortinet to prevail at summary judgment, it must show that there is clear and convincing evidence that the claimed function (*i.e.*, providing a copy from one processor to another) is a function that can only be accomplished through special programming. In contrast to *EON*, where there was expert testimony that the claims at issue recited complicated, customized computer software, here, Fortinet has not offered any evidence, expert or otherwise. This is especially troubling given that, as *Katz* indicates, copying and sending are arguably functions that can be accomplished by a general purpose computer. Accordingly, the Court denies Fortinet's motion for summary judgment on this issue. This ruling, however, does not bar Fortinet from later

arguing indefiniteness (a legal question which may or may not be informed by disputed facts) at trial.

    The Court acknowledges that Sophos, in its opposition to Fortinet's motion for summary judgment, has suggested that the Court could sua sponte grant summary judgment in Sophos's favor. *See* Opp'n at 19; *see also Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) (stating that, "if one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party"). But the Court refuses to do so for several reasons. First, Sophos could have, but did not, move for summary judgment on the affirmative defense of indefiniteness in its own motion for summary judgment. Second, while copying and sending are arguably functions that can be accomplished by a general purpose computer, it is not clear that that is the case here. Notably, even in *Katz*, the Federal Circuit remanded so that a determination could be made as whether the functions recited in the contested claims could actually be performed by a general purpose computer. *See Katz*, 639 F.3d at 1317. Sophos has not demonstrated on the present record that it is entitled to summary judgment.

    The Court also acknowledges Sophos's argument that, even if the *Aristocrat* rule is applicable, it should still prevail because expert testimony (whether from its own expert, *see* Jaffe Decl., Ex. 16 (Stillerman Report ¶¶ 176, 131), or from Fortinet's,[3] *see* Cunningham Decl., Ex. O (Crovella Depo. at 88-89)) establishes that a person of ordinary skill in the art would find corresponding structure. But, as explained in *EON*, expert testimony can only "fill in the blanks" where there is a *partially disclosed* algorithm; it cannot be relied upon in the absence of any disclosure of an algorithm. *See Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1313 (Fed. Cir. 2012) (noting that, "[w]here no structure appears, the question 'is not whether the algorithm that was

---

[3] Contrary to what Sophos suggests, it is not clear from the deposition of Fortinet's expert that he found no indefiniteness problem. Dr. Crovella stated, for example, that "I had difficulty identifying the structure" and "that was the best structure I could come up with." Cunningham Decl., Ex. O (Crovella Depo. at 88-89).

13

1   disclosed was described with sufficient specificity, but whether an algorithm was disclosed at
2   all'[;] [w]hen the specification discloses some algorithm, on the other hand, the question is
3   whether the disclosed algorithm, from the viewpoint of a person of ordinary skill, is sufficient to
4   define the structure and make the bounds of the claim understandable").

As for Sophos's suggestion that the specification contains at least a partially disclosed algorithm, *see* Docket No. 297 (Supp. Br. at 4) (asserting that "any of workstations 2a-2c, which include communication means 8 and storage means 6, is the structure corresponding to 'providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor'"), the Court does not agree.  The Court finds the PTAB's analysis during the IPR proceedings – although not binding in any way[4] – persuasive.

The PTAB decision cited by Fortinet can be found at Exhibit 18 to the Jaffe declaration. The relevant portion of the decision is as follows:

> Claim 9 recites "means in a first data processor of the network for providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor." . . .
>
> The written description of the '587 patent discloses that "the first data processor is a workstation of the network," while "the second data processor is a file server of the network."  Petitioner directs us to the written description which further discloses that a workstation of the network includes "storage means 6, data processing means 7 and communication means 8 for communication with the file server."
>
> Petitioner contends that "[t]he corresponding structure for this [means-plus-function] limitation is the data processing system, including communications means 8 within workstations 2a, 2b, 2c in

---

[4] As Sophos points out, the PTAB was not asked to invalidate based on indefiniteness, *see* Jaffe Decl., Ex. 18 (PTAB Decision at 5) (taking note of contention that claims were unpatentable under 35 U.S.C. §§ 102 and 103), nor could it technically do so during inter partes review.  *See* 35 U.S.C. § 311(b) (providing that "[a] petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications").  *But see* Inter Partes Review And Indefinite Claims (Apr. 6, 2015), available at http://www.law360.com/articles/630498/inter-partes-review-and-indefinite-claims (last visited October 16, 2015) (noting that "a petitioner requesting IPR must proposed how the challenged claim(s) should be construed," and "[t]hree PTAB panels, with no overlapping administrative judges between the panels, have now denied or terminated IPR proceedings on the ground that the claims could not be construed because they were indefinite").

14

> Fig. 1 . . . and box 13 of Fig. 2a." We are unpersuaded by Petitioner's contention in this regard. First, Petitioner does not identify any portion of the written description that offers guidance as to the structure of the communication means 8 or the structure for performing the function recited in box 13 (i.e., "copy the item to a central server where it will be scanned for data of characteristic forms"). Second, the written description links the communication means 8 to the function of communicating with the file server, not the function of providing the file server with a copy of an item of data. Finally, Petitioner does not direct us to any disclosure in the written description of structure that is linked to the function of providing the file server with a copy of an item of data. Nor can we identify such disclosure.
>
> Based on the record before us, we determine that claim 9 is not amenable to construction because the Specification does not disclose structure that performs the function of providing a second data processor of the network with a copy of an item of data which is stored for access by the first data processor.

Jaffe Decl., Ex. 18 (PTAB Decision at 8-10).

## II. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Fortinet's motion for summary judgment. More specifically, the Court rules as follows:

(1)  Fortinet's motion is granted with respect to the issue of pre-suit damages for Sophos's '587 and '347 patents.

(2)  Fortinet's motion is granted with respect to the issue of infringement of Fortinet's '430 patent.

(3)  Fortinet's motion is denied with respect to Sophos's '002, '050, and '687 patents, but (in light of the covenant) all claims and counterclaims regarding the patents are dismissed with prejudice.

///
///
///
///
///
///
///
///

(4) Fortinet's motion is denied with respect to claim 9 of the '587 patent (indefiniteness). Sophos's request that this Court sua sponte grant summary judgment in its favor is likewise denied.

This order disposes of Docket No. 218.

**IT IS SO ORDERED**.

Dated: October 28, 2015

_____
EDWARD M. CHEN
United States District Judge